## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | | |
|---|---|---|
| DONALD J. TRUMP, in his capacity as a candidate for President of the United States, | ) ) ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO:** |
| | ) | _____ |
| | ) | |
| BRIAN P. KEMP, in his official capacity as Governor of the State of Georgia; BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, | ) ) ) ) | |
| | ) | |
| *Defendants.* | ) ) | |

---

**VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND**

**DECLARATORY RELIEF**

**COMES NOW** PRESIDENT DONALD J. TRUMP, in his capacity as a

candidate for President of the United States, and hereby requests this Honorable

Court GRANT an Emergency Injunction,[1] directing Defendants to de-certify the election, that they certified following an election that was conducted contrary to the "Manner" for choosing presidential electors that had been established by the Legislature of the State of Georgia in violation of Article II and the Due Process Clause of the United States Constitution and, thus, certification of illegal votes[2] causes a substantive failure under federal law. These violations included not even assigning a judge with authority to hear the Plaintiff's statutory election contest as provided by Georgia law. Currently, there are only 11,779 votes out of over five (5) million votes that separate the two (2) candidates, which is a less than a 0.1% differential. As a remedy, the State Legislature must decide which electors, if any,

---

[1] Pursuant to Fed. Civ. P 65b(3) in the event the Court desires to hold a hearing, to be COVID-19 sensitive, Plaintiff's counsel can appear at the Court's convenience telephonically, or personally with at least three (3) hours' prior notice.

[2] Gabriel Sterling, on Facebook December 22, 2020, acting under color of law, and acting as the Secretary of State's agent for the Office of the Secretary of State has stated and represented that "I and the office have said repeatedly there was illegal voting."

shall be the official slate for the State of Georgia or refrain, thereby leaving the decision to Congress.

In support, Plaintiff states as follows:

## PARTIES

1.  President Donald J. Trump is a natural person and is a candidate for President of the United States of America.

2.  Defendant Brian P. Kemp is a natural person currently serving as the Governor of the State of Georgia.  His place of business and, the Governor's Mansion, is located in the Northern District of Georgia.  He is being sued in his official capacity as Governor.

3.  Defendant Brad Raffensperger is a natural person currently serving as Georgia Secretary of State. His place of business and his residence, is in the Northern District of Georgia.  He is being sued in his official capacity as Secretary of State.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202; 42 U.S.C. § 1983.

5.   Venue is proper in this Court under 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim, including the illegal administration of the November 3, 2020 presidential election, occurred in this district and Defendants perform their official duties and state functions in this district.

## FACTS

6.   On November 3, 2020, the 50 States and the Federal District of Columbia held general elections to select electors for the office of President of the United States.

7.   Illegal voting occurred in Georgia.[3]

8.   In Georgia, that election was conducted contrary to clearly established law, duly enacted by the Legislature of Georgia pursuant to authority derived directly from Article II, § 1, cl. 2 of the United States Constitution.

---

[3] Gabriel Sterling, on Facebook December 22, 2020, acting under color of law, and acting as the Secretary of State's agent for the Office of the Secretary of Sate stated and represented that "I and the office have said repeatedly there was illegal voting."

**Unqualified Voters**

9. Specifically, Georgia election officials allowed unqualified individuals to register and vote in violation of O.C.G.A. § 21-2-216; allowed convicted felons still serving their sentence to vote in violation of O.C.G.A. § 21-2-216(b); allowed underage individuals to register and then vote, in violation of O.C.G.A. § 21-2-216(c); allowed unregistered or late-registered individuals to vote in violation of O.C.G.A. § 21-2-224(a); allowed votes by individuals who had registered to vote (and in some cases did vote) in another state, in violation of O.C.G.A. § 21-2-217; allowed individuals to vote who had moved across county lines, in violation of O.C.G.A. § 21-2-218(b); allowed individuals to vote who had registered at a P.O. Box, church, or courthouse rather than their residence, in violation of O.C.G.A. § 21-2-217(a)(1); and accepted votes cast by deceased individuals, in violation of O.C.G.A. § 21-2-23 l(a)-(b) and (d). The violations above (and others) have resulted in more than 11,779 "illegal" votes to be counted in the State of Georgia which is sufficient to change the outcome of the election or place the outcome in doubt as determined by the

Legislature and set forth in the Election Code.  *See* copy of Verified Petition and exhibits collectively attached hereto as **EXHIBIT 1** as a judicial record.[4]

---

[4] The facts and figures set forth in the state court action's Verified Petition was presented to Plaintiff through the affidavits and expert opinions/reports attached to the Verified Petition and such information was presented to that lower court in affidavit form based on information publicly available to said experts, and without having access to the actual information being withheld and kept private by the Georgia Secretary of State and other governmental entities.  Open Records requests have been timely submitted to attempt to obtain such information, but no records have been timely produced or made available.  Accordingly, as a state court election contest is required to be verified, the facts and figures submitted by affidavits and experts reports/opinions in the lower court and incorporated herein by reference, have been relied upon by Plaintiff only to the extent that such information has been provided to Plaintiff, and which are subject to amendment, adjustment, and cure through expert opinion and final reports based on actual data and completion of ongoing government investigations (which the Secretary of State and other agencies

**Illegal Absentee Votes**

10.  Georgia election officials also ignored or altered statutory election procedures established by the Legislature.

11.  In violation of O.C.G.A. § 21-2-381, Defendant Raffensperger sent unsolicited absentee ballot applications before the 2020 primary election to all persons on the list of qualified electors, whether or not an application had been requested by the voter.  Those primary election absentee ballot applications included a box to request an absentee ballot for the general election, in violation of the requirement in O.C.G.A. § 21-2-381(a)(l)(A) that applications for absentee ballots may be submitted "not more than 180 days prior to the" election.

12.  Election officials failed to verify the signatures on absentee ballots against the signatures in the voter's registration record *and* on the voter's absentee ballot application, as required by O.C.G.A. §§ 21-2-381, 21-2-385.

---

are currently conducting).  Plaintiff has not sworn to any facts under oath for which he does not have personal knowledge or belief.

13.  Although the illegal signature verification process was ostensibly mandated by a March 2020 "Compromise and Settlement Agreement and Release" ("Settlement Contract") agreed to by Defendant Raffensperger and the State Election Board in response to litigation filed by Democratic Party of Georgia, Inc., the Democrat Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee, Raffensperger and the State Election Board had no legal authority to alter the statutory verification process established by the State Legislature and required by Georgia's Election Code.[5]

---

[5] Laches is not a bar to challenging the illegal signature verification process because Raffensperger and the Board contended (and continue to contend) that the Settlement Agreement would be implemented in compliance with Georgia law. *See* WSB-TV "Raffensperger Stands By Georgia's Signature Match Program" November 18, 2020 10:10am ("We've actually strengthened signature match [by using the Settlement Contract] …It hasn't changed anything. That's just another red herring that has been thrown out there by a campaign that doesn't have the votes in this state, and apparently other states.") Only when absentee ballots were cast during

*See Carson v. Simon*, 978 f.3d 1051 (8th Cir. Oct. 29, 2020) (holding consent decree entered by Secretary of State that arrogates power and abrogates laws enacted by legislature is unconstitutional).

14.   The Settlement Contract specifically provides that the parties take no position on the constitutionality of that agreement, yet Raffensperger implemented the agreement fully throughout the entire 2020 general election process. A true and correct copy of the Settlement Contract is attached hereto as **EXHIBIT 2**.

15.   The Georgia Election Code requires that the identity and eligibility of absentee voters be confirmed before the absentee ballot is separated from the certification envelope and submitted to be counted.  In the 2016 general election, 6,059 absentee ballots (2.9% of those submitted) were disqualified.  In the 2018 general election, 7,889 absentee ballots (3.46% of those submitted) were disqualified.  Yet despite the fact that over a million more absentee ballots were received in 2020, only 4,471 (.34%) were disqualified, strongly indicating that

the November 3 general election without compliance with the statutory signature verification process did a challenge become ripe.

election officials failed to adequately validate absentee voter identification before submitting the ballots to be counted.

16. Concerning rejections, the data in Georgia shows that 48 out of the total 159 counties in the state did **_not_** reject a single absentee ballot.[6]

### Misconduct At Vote Tabulation Centers

17. Georgia law also requires that all proceedings at vote tabulation centers be open to the view of the public under O.C.G.A. § 21-2-483. The Verified Petition filed by Plaintiff attached hereto as Ex. 1, identifies many violations of this statute. Perhaps the most egregious violation is by the conduct of Fulton County Election Officials. At about 10:00 pm on the evening of the November 3, 2020 election day, Fulton County election officials falsely informed observers at the State Farm Arena in Atlanta, which was serving as the vote tabulation center, that counting of ballots was being stopped for the evening and would recommence the next morning at 8:00 a.m. Observers and members of the media departed, but several election officials then proceeded

---

[6] This includes any absentee ballots that may have been "cured."

to remove suitcases full of ballots from under a table where they had been hidden, and processed those ballots without open viewing by the public in violation of O.C.G.A. § 21-2-483. Whether the ballots were properly placed under the table is not the question, or is whether the ballots were fraudulent, rather, the *actus reus* was processing the ballots after fraudulently informing the public that counting was to stop and then restarting counting, without open viewing by the public. This illegal activity was captured on video tape. This is but one example of such misconduct by election officials and corruption of the process.

### The "No Process" Election Contest

18. The Georgia Election Code allows a candidate to contest the results of an election based on, *inter alia*, "misconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result" **or** "when illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result." O.C.G.A. § 21-2-522(1), (3). These legal standards are disjunctive.

19. The facts stated above, ¶¶ 9-17, involve significantly more votes counted as a result of "misconduct, fraud, or irregularity" and/or the receipt and tabulation of "illegal votes" to change the results of the election or at the very least place the results into doubt.

20. The facts do not require a finding of a vast or coordinated conspiracy to conduct a systemically fraudulent election.  Simply put, illegal votes cannot be counted and cannot be a part of a lawful certification by Defendants as a matter of law.

21. Plaintiff timely brought an election contest challenge under the Georgia Election Code to contest the election results pursuant to O.C.G.A. § 21-2-522 in the Superior Court of Fulton County, as required, on December 4, 2020. *Trump v. Raffensperger*, No. 2020CV343255. The action also included other Consitutional claims, including that the settlement agreement entered into by Secretary Raffensperger was void as against public policy pursuant to O.C.G.A. §13-8-2 as "tending to corrupt legislation."

22. As of this date, an eligible judge has not even been assigned to hear the challenge or the Constitutional claims.

23. To the contrary, an ineligible judge, The Honorable Constance C. Russell, was assigned by the "wheel" and actively began to preside over the case.

24. Plaintiff's Verified Petition specifically plead in his Prayer for Relief (¶ 1) a specific request for an expedited assignment to a judge that had standing to hear this matter pursuant to O.C.G.A. § 21-2-523. The entire Verified Petition and its incorporated exhibits thereto in Civil Action File No. 2020cv343255 styled as *Trump v. Raffensperger, et al.* and pending before the Fulton County Superior Court, are expressly incorporated herein by reference.

25. Due to the nature of the election contest, both the Fulton County Superior Court Clerk and the Court were to coordinate and cooperate in expeditiously assigning that matter to a proper judge with authority to hear that case consistent with state law.

26. The Clerk of Court was also to issue "notice, in the form of special process" to the Sheriff to thereafter effectuate service.

27. However, service by the Sheriff was delayed as the Clerk of Court had apparently not immediately issued "notice, in the form of special process directed to the Sheriff of [Fulton] County…" as required pursuant to O.C.G.A. § 21-2-524(f).

28. On December 9, 2020, The Honorable Constance C. Russell, lacking authority to preside over the case, issued an "Order On Case Status" stating that "… the

action shall proceed in the normal course." The procedure set forth in O.C.G.A. § 21-2-523 was not even mentioned in that order. A true and correct copy of the Order On Case Status is attached hereto and incorporated by reference as **EXHIBIT 3.**

29. On December 10, 2020, it appearing that no action would be taken by the Court to obtain the appointment of an eligible judge with authority to hear the Petition, the Petitioners filed a Notice and Emergency Request to appoint an Administrative Law Judge to comply with O.C.G.A. § 21-2-523. This Notice of Emergency Request to Appoint an Administrative Law Judge, in detail, laid out the requirements and the factual predicate for why The Honorable Constance C. Russell could not actively preside over this election contest. A true and correct copy of Petitioners' Notice of Emergency Request to Appoint Administrative Law Judge is attached hereto and incorporated herein by reference as **EXHIBIT 4.**

30. On December 11, 2020, without an eligible judge or a hearing date, and with the filing of a Second Emergency Motion for Injunctive Relief pending and in light of Judge Russell's improper Order stating that the Petition would run a "normal" scheduling course, Petitioners felt compelled to file an Emergency

Petition to the Supreme Court of Georgia to seek relief from the Order and to request extraordinary relief from that higher court to adhere to the Election Code processes and to seek relief from the "normal course" ("Notice of Appeal"). A true and correct copy of Petitioner's Notice of Appeal and Intention to Seek Writ of Certiorari to the Supreme Court of Georgia is attached hereto and incorporated by reference as **EXHIBIT 5.**

31. On December 11, 2020, the lower court, acknowledging Petitioners' "Notice of Emergency Request to Appoint Administrative Judge," filed its own "Notice of Time for Response to Request To Appoint Administrative Law Judge." The court asked that objections, if any, to the appointment be made prior to December 16, 2020. No objections were made within the time frame; yet no judge was appointed pursuant to O.C.G.A. § 21-2-523. A true and correct copy of the Court's Order is attached hereto and incorporated by reference as **EXHIBIT 6.**

32. On December 12, 2020, the very next day after filing the appeal, the Supreme Court of Georgia rejected Petitioners' Emergency Petition for Writ of Certiorari finding that Judge Russell order was a "non-final order," that is to say the case was still pending in the court below, and the "Court [Supreme Court of Georgia]

lacks jurisdiction to consider the petition and dismisses it." A true and correct copy of the Supreme Court's Order is attached hereto and incorporated by reference as **EXHIBIT 7.**

33. On December 29, 2020, the lower court entered an order stating that "...this Court will not consider this request [to appoint a Judge] until either the appeal is concluded or the notice of appeal is withdrawn." A true and correct copy of that order is attached hereto and incorporated by reference as **EXHIBIT 8.**

34. On December 29, 2020, the Petitioners then file a renewed request for the Court to immediately appoint an Administrative Law Judge, and incorporated Motion for Reconsideration and within this request, withdrew any Notice of Appeal or other appeal that may have still been pending. A true and correct copy of that renewed request is attached hereto and incorporated by reference as **EXHIBIT 9.**

35. Petitioners have taken extraordinary steps in attempts to get the lower courts to follow the fundamental procedures and requirements of appointing a proper judge and to give the clerks of court information and notice to perform its ministerial duties. The lower court and the clerks of court appear to be delaying

(or at minimum, not expediting) despite numerous requests for expedited action to resolve the election contest.[7]

36. An Order was finally entered December 30, 2020 transferring this case to the seventh judicial district for determination. To date, no judge has been appointed to hear this case and no hearing date has been set.[8]

37. Justice delayed is justice denied.

---

[7] Notably, another Georgia election contest known as *Still, et al. v. Raffensperger et al.,* Civil Action Fil No. 2020cv343711 also filed in the Fulton Superior Court and currently pending, has asserted substantially similar claims to Plaintiff in his lower court petition concerning irregularities sufficient to change the outcome of the election, but no Judge has been assigned and service has been delayed in that case as well. The Verified Petition in that case is attached hereto as **EXHIBIT 10** as a judicial record.

[8] A true and correct copy of the Order is attached hereto and incorporated herein by reference at **EXHIBIT 11.**

## The Illegal Certification

38. Despite all of the above including a pending election contest by Plaintiff himself, Defendants certified the results of the November 3, 2020 election on December 7, 2020.

39. That certification is, under Georgia law, subject to the results of and resolution of Plaintiff's statutorily-authorized election contest.

40. Because the Georgia courts have failed to hear Plaintiff's challenge, the certification of election results cannot be sustained or considered valid.

41. Georgia's Election Code duly enacted by the legislature provides for the procedures and processes of addressing and challenging illegal votes; those laws cannot be ignored or obliterated by action of State Officers such as Defendants here, or the court system itself.

42. At this time illegal votes have been counted which Plaintiff contend are sufficient to change the outcome of the election or place the election in doubt, and, therefore, the vote tabulations in Georgia cannot be accurately certified.

43. Irregularities and the failure to adhere to the prescribed processes established by law have been shown by at least one known county, Coffee County. That county submitted a letter to Secretary Raffensperger on December 4, 2020, prior

to his certification on December 7, 2020, informing him that the county election results "cannot be certified" in that county. A copy of the letter and exhibits thereto is attached hereto as **EXHIBIT 12** as part of a judicial record.

44. Open records requests were sent concerning other similar letters, but the Secretary of State (and other government entities) have responded that those records would not be forthcoming until ninety (90) days after the request also in violation of Georgia law and open records act laws. A true and correct copy of an example of letters and email responses are attached hereto as **EXHIBIT 13** as a public record.

45. As a result, Georgia has substantively "failed to make a choice [of electors] on the day prescribed by law." 3 U.S.C. § 2.

46. Electors may therefore "be appointed on a subsequent day in such a Manner as the [Georgia] legislature … may direct." 3 U.S.C. § 2. The Georgia Legislature may avail itself of such remedies as provided by the Constitution of the United States Art. II. *See also,* 3 U.S.C. § 2.

**The January 6, 2021 Joint Session of Congress**

47. Electoral votes will be opened and counted by a joint session of Congress beginning on January 6, 2021.

48. This Court's immediate intervention is necessary to prevent invalidly certified electoral votes from being opened and counted in Congress on January 6, 2021.

49. The colloquially known "Safe Harbor" statute codified at 3 U.S.C. § 5 is inapplicable to this action as the final determination of Plaintiff's lower court election contest was pending and had not been resolved at least six days before the time fixed for the meeting of the electors. Therefore, there are no lawfully certified results from the State of Georgia due to the pending and unresolved election contests showing that State law processes have been violated. Accordingly, the Safe Harbor statute does not apply.

**STANDING**

50. Standing is a separation-of-powers doctrine that "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood" under the United States Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "[T]he irreducible constitutional minimum of standing" requires: (1) an

injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Plaintiff satisfies all of these prongs.

51. First, as President of the United States, Donald J. Trump has a cognizable interest in the outcome of the 2020 election, specifically, precluding Georgia's Presidential electors from casting 16 electoral votes in favor of Mr. Biden.

52. President Trump has significant and overwhelming evidence that shows the purported results of the Presidential election in Georgia (and in other states) are not accurate as they contain illegal votes and should have been invalidated had the state contest proceeding been properly conducted and properly allowed to proceed to conclusion. But the state courts' failure to even appoint a judge to hear or calendar the contest proceeding has rendered null and void Petitioner's statutory right to contest the results of the election.

53. The certification issued by Defendants is therefore invalid, and the perception of such validity will irreparably injure Plaintiff when such votes are counted on January 6, 2021.

54. Second, there is a direct causal connection between Plaintiff's injury and the relief sought, namely, an injunction decertifying the election and directing Defendants to de-certify the results of the election that was conducted in violation of state law and without affording Plaintiff his statutory right to contest the election results.

55. Third, injunctive relief will redress the injury suffered by President Trump. If the Court grants the injunction, the votes of electors currently certified will not have the *imprimatur* of validity before the Joint Session of Congress on January 6, 2021, and, instead, the Georgia Legislature may appoint the electors as allowed by law or leave the decision of which slate of electors to count for Congress.

## GROUNDS FOR GRANTING INJUNCTIVE RELIEF

56. To receive emergency injunctive relief pursuant to Fed. R. Civ. P. 65 et seq., a Plaintiff need only show that he 1) has a substantial likelihood of success on the merits, 2) will suffer irreparable injury in the absence of such requested relief, 3) that the issuance of such relief will not substantially injure other parties interested in the proceeding, and 4) such an injunction is in the public interest.

*Nken v. Holder,* 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *New Georgia Project v. Raffensperger,* 976 F.3d 1278, 1280 (2020).   Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunctive relief in this action pursuant to Fed. R. Civ. P. 65 et seq.

### Plaintiff Has A Substantial Likelihood of Success on the Merits

57.  Plaintiff has a substantial likelihood of success on the merits because the election held on November 3, 2020 did not comply with state law, and, therefore, substantively failed under Article II and the Due Process Clause of the Constitution. *See also*, 3 U.S.C. § 2.

58.  The President's contest in the Superior Court of Fulton County, State of Georgia, incorporated *supra* by reference, alleges there are enough illegal votes sufficient to either change the outcome or to place the result of that election in doubt, as well as constitutional claims under equal protection and due process clauses of State Constitutions.

59.  Georgia's failure to afford Plaintiff his right to the election contest, as well as the violation of Georgia election laws by the state's election officials, means

that the "Manner" for choosing electors established by the Legislature was not followed under Article II, resulting in failure. *See also* 3 U.S.C. § 2.

60. The President is therefore likely to succeed on the merits of his claim that Georgia has substantively "failed" to choose its electors in accord with the "Manner" prescribed by the Legislature violating Due Process.

## Plaintiff Will Suffer Irreparable Injury

61. If the votes of the electors who have been certified contrary to Georgia law are permitted to be counted by the joint session of Congress on January 6, 2021, those electoral votes will benefit Plaintiff's opponent rather than Plaintiff, and depending on the result of still-pending election challenges in other states, may well prove outcome determinative in the election of the next President. That is an irreparable injury.

## The Issuance of an Injunction Will Not Substantially Injure Other Parties Interested in the Proceeding

62. The issuance of an injunction to decertify and directing Defendants to de-certify the election result in violation of state law will not be a cognizable injury to other parties, because no party has a valid interest in illegal votes cast or illegally-certified electoral votes.

63. All parties have an interest in ensuring an election which complies with Article II and Due Process.

**An Injunction is in The Public Interest and Not Violative of Public Policy**

64. An injunction will allow the State Legislature to exercise its inherent authority under Art. II, to decide upon a new Manner for choosing electors when the State has "failed" to choose electors in the "Manner" established by the Legislature. *See also,* 3 U.S.C. § 2.

65. The state court's failure to even designate a judge to hear the state contest deprives the public of the ability to have access to critical information regarding the validity of the election conducted on November 3, 2020.

66. Therefore, Plaintiff's request for an injunction decertifying the election and directing Defendants to de-certify the election of electors should be granted.

**REQUEST FOR DECLARATORY JUDGMENT**

67. Plaintiff requests a declaration that the violations of state law that occurred in the election held on November 3, 2020, contravened the authority to determine the substantive "Manner" for choosing presidential electors that the Legislature of the State has directly from Art. II of the U.S. Constitution.

68. Plaintiff requests a declaration that Defendants' certification of the 2020 Georgia general election results cannot be deemed valid when the state courts have failed to afford Plaintiff his statutory right to challenge the results of the election; implemented a Settlement Contract that is unconstitutional and corrupted the entire election process, and that, as a result, Georgia substantively "failed to make a choice [of electors] on the day prescribed by law," 3 U.S.C. § 2. The electors may therefore "be appointed on a subsequent day in such a Manner as the [Georgia] legislature … may direct," 3 U.S.C. § 2. An illegal certification of electors does not equate to a lawful "choice" of electors.

69. The Declaratory Judgment Act provides:

> [A]ny court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Declaratory Judgment Act, "place[s] a remedial arrow in the district court's quiver." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

## COUNT I
### (Violation of Article II, § 1, cl. 2)

70. Plaintiff realleges applicable factual allegations from paragraphs 1-47 above as if fully set forth herein.

71. Defendants improperly certified the November 3, 2020 General Election results, which was *not* conducted in accord with election laws established by the Legislature, in violation of Article II, § 1, cl. 2 of the United States Constitution. *See also,* 3 U.S.C. § 2 (failed election).

## COUNT II
### (Violation of 14ᵗʰ Amendment, Due Process)

72. Plaintiff realleges applicable factual allegations from paragraphs 1-47 above as if fully set forth herein.

73. Defendants improperly certified the November 3 General Election results while a statutory election contest was pending, and which nearly four weeks after filing, is still pending without even the assignment of a judge or assignment of a court, or the setting of a hearing date for a hearing on the merits. Defendant's certification of final results without Plaintiff being afforded his statutory right to an election contest violates Due Process.

74. Dilution of legal votes by illegal votes cast and counted unlawfully violates Due Process.

75. Such unlawful conduct further violates 42 U.S.C. § 1983 such that the equitable relief sought herein should be granted to Plaintiff.

**WHEREFORE**, PLAINTIFF PRESIDENT DONALD J. TRUMP, in his capacity as a candidate for President of the United States, respectfully requests this Honorable Court:

A. GRANT his request for Injunctive Relief, including a temporary restraining order, preliminary and permanent injunctive relief, directing Defendants to de-certify the November 3, 2020 General Election results in violation of the "Manner" established by the Legislature for the choosing of presidential electors;

B. Identify and declare the constitutional violations that have occurred because the dictates of the Georgia Legislature through the Election Code were not followed, and were, in fact, materially altered;

C. Declare that the 2020 Presidential Election in the State of Georgia failed within the meaning of Article II and 3 U.S.C. §2;

D. Issue a positive injunction decertifying and directing Defendants to de-
certify the election results as the November 3, 2020 General Election was
held in violation of law;

E. Declare that the "Safe Harbor" 3 U.S.C. § 5 is inapplicable as to pending
Georgia election contests as those contests have not been resolved;

F. GRANT his request for declaratory relief, and declare that the violations
of state law that occurred in the election held on November 3, 2020,
contravened the authority to determine the "Manner" for choosing
presidential electors that the Legislature of the State has directly from
Article II of the U.S. Constitution.

G. GRANT his request for declaratory relief, and declare that Defendants'
certification of the election results cannot be deemed valid when the state
courts have failed to afford Plaintiff his statutory right to challenge the
results of the election; that, as a result, Georgia "failed to make a choice
[of electors] on the day prescribed by law," 3 U.S.C. § 2; and that electors
may therefore "be appointed on a subsequent day in such a Manner as the
[Georgia] legislature … may direct," 3 U.S.C. § 2; and

H.  Grant such other relief as this Court deems just, proper and equitable under

the circumstances.

Respectfully submitted and GOD BLESS AMERICA, this 31[th] day of

December, 2020.

THE HILBERT LAW FIRM, LLC

_____

KURT R. HILBERT
GA BAR NO. 352877
205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

Lead Counsel for President of the
United States, as Candidate for
President

*/s/ John Eastman (e-sig.)*
John Eastman
California Bar No. 193726

Proposed Co-Counsel for President of
the United States, as Candidate for
President
(*pro hac vice* admission forthcoming)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONALD J. TRUMP, in his capacity as a candidate for President of the United States, | ) ) ) ) | |
| *Plaintiff* | ) ) ) | |
| v. | ) ) | **CIVIL ACTION FILE NO.** |
| BRIAN P. KEMP, in his official capacity as Governor of the State of Georgia; BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, | ) ) ) ) ) | _____ |
| *Defendants.* | ) ) | |

## CERTIFICATION OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this *VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF* was prepared in Times New Roman, 14 point font, pursuant to Local Rule 5.1C.

This 31st day of December, 2020.

THE HILBERT LAW FIRM, LLC

*/s/ Kurt R. Hilbert (e-sig.)*
KURT R. HILBERT
Ga Bar No. 352877
205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

Lead Counsel for President of the United States, as Candidate for President

## IN THE UNITED STATES DISTRICT COURT
## NORTHERNDISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| DONALD J. TRUMP, in his capacity as a candidate for President of the United States, | ) <br> ) <br> ) <br> ) |
| *Plaintiff,* | ) <br> ) |
| v. | )     **CIVIL ACTION FILE NO:** <br> ) <br> )     _____ |
| BRIAN P. KEMP, in his official capacity as Governor of the State of Georgia; BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, | ) <br> ) <br> ) <br> ) <br> ) |
| *Defendants.* | ) <br> ) |

WASHINGTON

DISTRICT OF COLUMBIA

## VERIFICATION IN SUPPORT OF COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF

Personally appeared before me, a Notary Public, duly authorized by law to administer oaths, President Donald J. Trump, solely in his capacity as a candidate for President of the United States, who on oath says he has reviewed the Verified Complaint for Emergency Injunctive And Declaratory Relief and with regard to the facts contained therein, states that to the best of his knowledge and belief, and relying on the representations contained therein, the facts are true and correct where derived

from his own knowledge and are believed to be true and correct where derived from

the knowledge of others or from documents that are maintained in the course of

business or are public records.

_____
Donald J. Trump, in his capacity as a candidate for
President of the United States,
Plaintiff



_____  12/31/2020
Notary Public

My Commission Expires  1/31/2022

(SEAL)