IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

<table>
<tr><td>DONALD J. TRUMP, in his capacity as a candidate for President of the United States,<br><br>  Plaintiff,<br><br>v.<br><br>BRIAN P. KEMP, in his official capacity as Governor of the State of Georgia; BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State,<br><br>  Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>CIVIL ACTION NO.<br>1:20-cv-05310-MHC</td></tr>
</table>

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DECLARATORY AND INJUNCTIVE RELIEF**

---

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................1

FACTUAL BACKGROUND......................................................................2

ARGUMENT AND CITATION OF AUTHORITIES..............................6

I.   The Court Lacks Subject Matter Jurisdiction because Plaintiff Cannot
     Establish Article III Standing. ......................................................6

   A. Plaintiff lacks standing to assert a claim under the Electors Clause.............8

   B. Plaintiff lacks standing to assert a claim under the Due Process Clause. ......9

II.  Plaintiff's Claims are Moot. ........................................................11

III. Plaintiff's Claims are Barred by Laches........................................13

IV. Plaintiff's Claims are Barred by the Eleventh Amendment...........................17

V.   The Court Should Abstain from Hearing Plaintiff's Claims While the State
     Election Contest is Pending.......................................................19

VI. Plaintiff Fails to Establish the Required Elements for Injunctive Relief.......25

   A. Plaintiff is not likely to succeed on the merits of his claims.......................26

   B. The harm to Plaintiff in denying the injunction is far outweighed by the
      harm to the Defendants and the public if the injunction were issued. .........30

CONCLUSION .......................................................................................32

## INTRODUCTION

On November 3, 2020, approximately 5 million Georgians voted for President of the United States ("the Election"). Pursuant to U.S. Const. art. II, § 1, cl. 2, 3 U.S.C. §§ 1, 5 and 6, O.C.G.A. §§ 21-2-10 and 21-2-499, these votes were counted, hand counted during an audit, certified, recounted, and re-certified under Georgia law. The slate of presidential electors has been sent by Governor Kemp to the Archivist of the United States in conformity with 3 U.S.C. § 6. Pursuant to U.S. Const. art. II, § 1, cls. 2 and 3, 3 U.S.C. §§ 7, 8, 9, 10, 11 and 12, and O.C.G.A. § 21-2-11, the electors have already met and cast their votes for President. The election, certification, and casting of ballots are final and over. The matter is now before Congress as set forth in 3 U.S.C. § 15 to count the certified votes. Georgia has completely complied with all requirements under the United States Constitution, federal and state election law.

There have been numerous suits filed since the November 3, 2020, general election, challenging most of the issues set forth in Plaintiff's motion. In all resolved suits, the claims have been flatly rejected. Plaintiff nevertheless seeks to disenfranchise millions of Georgia voters at the thirteenth hour—despite Plaintiff's own dilatory and confusing actions. Plaintiff lacks standing to bring the claims at issue, the Court should abstain from deciding this matter, and Plaintiff's claims are

1

moot and otherwise frivolous.  Moreover, trial is currently scheduled for Friday, January 8, 2020, in the Superior Court of Fulton County, Georgia to address Plaintiff's claims. Plaintiff's request for preliminary injunction should be denied as Plaintiff has no likelihood of success on the merits of his claims, he has been dilatory in asserting his claims, and the equities weigh in favor of denying preliminary injunctive relief.

## FACTUAL BACKGROUND

Pursuant to United States Constitution art. II, Georgia has legislatively chosen to permit election of presidential electors by popular vote. *See* O.C.G.A. § 21-2-10. On November 3, 2020, nearly 5 million Georgians cast ballots in the Election pursuant to this legislatively-enacted framework. The majority of votes cast were in favor of Joseph Biden. On November 11, 2020, Secretary Raffensperger announced a risk-limiting audit pursuant to O.C.G.A. § 21-2-498. While the Secretary could have merely selected a sampling of ballots of any race to conduct this audit, he authorized a hand recount of all the nearly 5 million ballots cast. This audit confirmed the outcome of the election, and on November 20, 2020, Secretary Raffensperger and the Governor certified that Joseph Biden had prevailed over President Donald Trump. ***See* Exhibit A.**

On November 21, 2020, President Trump submitted his official request for a recount of the results of the election pursuant to O.C.G.A. § 21-2-495(c). *See* **Exhibit B**. This recount concluded on December 4, 2020. Secretary Raffensperger certified the results again on December 7, 2020. *See* **Exhibit C**. Governor Kemp certified the results of the recount on December 7, 2020, and submitted the Certificate of Ascertainment to the Archivist of the United States pursuant to 3 U.S.C. § 6. *See* **Exhibit D**. Georgia's presidential electors met on December 14, 2020 and cast their ballots for president.

Under Georgia law, neither the Secretary of State's certification of the Election results nor the Governor's certification of the slate of electors pursuant to O.C.G.A. § 21-2-499(b) can be undone. That section provides:

> The Secretary of State shall also upon receiving the certified returns for the presidential electors, proceed to tabulate, compute, and canvass the votes for each slate of presidential electors and shall immediately lay them before the Governor. Not later than 5:00 P.M. on the seventeenth day following the date on which such an election was conducted, the Secretary of state shall certify the votes cast for all candidates described in subparagraph (a)(4)(A) of Code section 21-2-497 and upon all questions voted for by the electors of more than one county and shall no later than that same time lay the returns for the presidential election before the Governor.  The Governor shall enumerate and ascertain the number of votes for each person so voted and shall certify the slates of presidential electors no later than 5:00 P.M. on the eighteenth day following the date on which [the] election was conducted.

The people, the Secretary, and the Governor all complied with and discharged their obligations under Georgia and federal law—as have the presidential properly certified presidential electors.

Had Plaintiff not acted in a dilatory manner, Plaintiff could have sought relief under O.C.G.A. § 21-2-499(b), which provides: "Notwithstanding the deadlines specified in this Code section, such times [for certification by the Governor and the Secretary of State] may be altered for just cause by an order of a judge of the superior court." Plaintiff, having never exercised his right to seek or secure the sole relief provided by the General Assembly to delay certification of the presidential election, cannot now seek to retroactively undo the completed acts.

Moreover, while Plaintiff blames the Superior Court of Fulton County for not acting in timely manner to adjudicate his rights, Plaintiff himself is the cause of any delay in the superior court.  Plaintiff never asserted the challenges he raised in the Superior Court in Fulton County prior to the Election. Nor did Plaintiff file any challenge in the month after the Election. Rather, Plaintiff waited to file his challenge until December 4, 2020, in Fulton County Superior Court. Plaintiff's filing was initially rejected because he failed to pay filing fees. That suit was accordingly not docketed until December 7, 2020—the same day the Secretary and the Governor

again certified the Election results and the day the Governor transmitted the certification of the slate of presidential electors to the Archivist of the United States.

Despite his late filing, Plaintiff also sought "emergency relief" seeking to stop the election certification in the superior court on December 7, 2020. *See* **Exhibit E**. Plaintiff voluntarily withdrew that request the following day. *See* **Exhibit F**. On December 10, 2020, Petitioners filed a motion to appoint a judge in the superior court election matter pursuant to O.C.G.A. § 21-2-523 *See* **Exhibit G**. The *next day*, on December 11, 2020, Plaintiff *simultaneously* filed a Second Motion for Emergency Injunctive Relief asking the superior court to decertify the election, and a "notice of appeal and intention to seek writ of certiorari to the Supreme Court of Georgia." *See* **Exhibits H and I**. That appeal, though improvident, ill-conceived, and meritless, divested the Superior Court of Fulton County of any jurisdiction over the matter. The Superior Court of Fulton County reminded Plaintiff of this on December 29, 2020, when it entered an order noting that Plaintiff's appeal had divested the superior court of jurisdiction and thus the "Court [could] not consider [Plaintiffs' request to appoint a judge pursuant to O.C.G.A. § 21-2-523] until either the appeal is concluded or the notice of appeal is withdrawn." *See* **Exhibit J**.

Rather than acting immediately, Plaintiff waited until the next day, December 30, 2020 to actually withdraw the appeal. *See* **Exhibit K**. The superior court then,

that same day, entered an order to start the judicial appointment process and that same day, the Honorable Adele Grubbs was appointed to hear Plaintiff's election dispute. *See* **Exhibit L**. The day after she was assigned, Judge Grubbs set the trail date in the state court matter for January 8, 2020. That same day, December 31, 2020, Plaintiff filed the present suit.

## ARGUMENT AND CITATION OF AUTHORITIES

## I.   The Court Lacks Subject Matter Jurisdiction because Plaintiff Cannot Establish Article III Standing.

The Eleventh Circuit recently emphasized that federal courts are not "constituted as freewheeling enforcers of the Constitution," and "may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts." *Wood v. Raffensperger*, No. 20-14418, 2020 U.S. App. LEXIS 37971 at *2, 10 (11th Cir. Dec. 5, 2020). Accordingly, federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). "For a court to pronounce upon . . . the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.* (citation omitted).

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A party invoking

federal jurisdiction bears the burden of establishing standing at the commencement of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As an irreducible constitutional minimum, Plaintiff must show he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 561. As the party invoking federal jurisdiction, Plaintiff bears the burden at the pleadings phase of "clearly alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Plaintiff's Complaint alleges two constitutional violations: (1) that Defendants violated the Electors Clause, U.S. Const. art. II, § 1, cl. 2, by certifying the general election results (Count I); and (2) that Defendants violated the Due Process Clause of the Fourteenth Amendment by certifying the general election results while the state election contest was pending (Count II). (Doc. 1 at 27-28). In support of standing, Plaintiff alleges that he has "a cognizable interest in the outcome of the 2020 election" and that the presidential election results in Georgia "are not accurate as they contain illegal votes and should have been invalidated had the state contest proceeding been properly conducted and properly allowed to proceed to conclusion." (Doc. 1 at 21, ¶¶ 51, 52). However, because Plaintiff's allegations are insufficient to establish an injury in fact that is traceable to the Defendants, he cannot

establish standing and the Court lacks jurisdiction to consider the merits of Plaintiff's motion.

**A. Plaintiff lacks standing to assert a claim under the Electors Clause.**

Plaintiff alleges that the general election was "not conducted in accord with election laws established by the Legislature." (Doc. 1 at 27 ¶ 71). However, federal courts are not venues for parties to assert a bare right "to have the Government act in accordance with law." *Allen v. Wright*, 468 U.S. 737, 754 (1984).

Specifically, courts have held that only state legislatures have standing to bring a claim under the Electors Clause. In *Bognet v. Secretary Commonwealth of Pennsylvania*, No. 20-3214, 2020 U.S. App. LEXIS 35639 (3d Cir. Nov. 13, 2020), the Third Circuit held that a candidate for federal office, along with four individual voters, lacked standing to sue for alleged injuries attributable to a state government's violations of the Elections Clause and Electors Clause. *Id.* at *19. The Court stated, "[b]ecause Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses." *Id.* at *21; *see also Lance v. Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed."); *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1332-33 (11th

Cir. 2007) (holding that an allegation that the law has not been followed is "the kind of undifferentiated, generalized grievance about the conduct of government" that will not satisfy standing); *Wood v. Raffensperger*, No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058, at *15-16 (N.D. Ga. Nov. 20, 2020) (holding that private plaintiff lacked standing to sue under Electors and Elections Clauses).[1]

Because Plaintiff is not a member of the Georgia General Assembly, he lacks standing to sue under the Electors Clause, and the Court lacks jurisdiction to entertain Count I.

## B. Plaintiff lacks standing to assert a claim under the Due Process Clause.

Plaintiff's due process claim is based on his allegations that "illegal votes were counted" and that Defendants "improperly certified" the general election results "while a statutory election contest was pending." (Doc. 1 at 27-28, ¶¶ 73, 74). Setting aside the fact that Defendants had a statutory duty to certify the presidential electors by November 20, 2020, Plaintiff's allegations fail to satisfy the causation requirement of standing, which requires that "a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Jacobson*, 974 F.3d at

---

[1] Because the Electors and Elections Clauses have "considerable similarities," they are interpreted similarly with respect to standing. *Bognet*, 2020 U.S. App. LEXIS 35639 at *19.

1253 (citation omitted); *see also Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (holding that an injury sufficient to establish standing cannot "result [from] the independent action of some third party not before the court.").

Here, Plaintiff's allegation that "illegal" votes were counted is traceable to the actions of *county* elections officials—*not* the Defendants. Under Georgia law, county elections officials are solely responsible for processing, validating, and tabulating both absentee and in-person ballots. *See* O.C.G.A. §§ 21-2-386; 21-2-493. As such, Plaintiff's claimed injury resulting from alleged irregularities in the signature verification process for absentee ballots or the tabulation of votes is not traceable to or redressable by the Secretary or the Governor. *See Jacobson*, 974 F.3d at 1253 (concluding that alleged injury from state's ballot order statute was not traceable to or redressable by the Secretary of State because county election superintendents were "independent officials who are not subject to the Secretary's control").

Recently, the Eleventh Circuit denied a motion for an injunction pending appeal of the district court's dismissal of an elections case brought by the Perdue and Loeffler Senate campaigns for lack of standing. *Ga. Republican Party, Inc. v. Ga. Sec'y of State*, No. 20-14741-RR, 2020 U.S. App. LEXIS 39969, at *5-7 (11th

Cir. Dec. 21, 2020). Finding that the Secretary does not control the processing and counting of absentee ballots by county officials, the Court cited *Jacobson* in holding that the "Campaigns have failed to make a strong showing that they have standing to bring their constitutional claims because they have failed to demonstrate that any alleged injury is traceable to, and redressable by, the State." *Id.* at *7.

Moreover, Plaintiff's allegation that he has been injured because his election contest has not yet been heard in state court is also not the result of any action by the Defendants. Defendants complied with their statutory obligations to certify the presidential electors in a timely manner. Any delay in the hearing of Plaintiff's election contest was caused by Plaintiff's own dilatory actions in pursuing his claim and his improvidently-filed appeal. In sum, having failed to establish that he has suffered an injury in fact, or that his purported injury is traceable to or redressable by the Defendants, Plaintiff lacks standing and his motion should be denied.

## II.   **Plaintiff's Claims are Moot.**

The Election is over, the votes have been counted three times, the votes are certified, and the presidential electors have cast their ballots. As it relates to any relief that could be afforded against the Secretary of State and the Governor, this matter is moot. The Election and certification processes followed the course proscribed by both the Georgia General Assembly and federal law. *See* O.C.G.A. §§

11

21-2-210, 21-2-11, 21-2-499; 3 U.S.C. §§ 1, 6, 7, 8, 9, 10, 11 and 12. The deadlines for the Governor and Secretary of State to certify the presidential election were not altered pursuant to O.C.G.A. § 21-2-499(b). Thus all relief sought by Plaintiff has been mooted by their delay.

The Eleventh Circuit held in *Wood* that federal challenges seeking to undo the certification of the presidential election results in Georgia are moot. "'We cannot turn back the clock and create a world in which' the 2020 election results are not certified." *Wood*, 2020 U.S. App. LEXIS 37971 at *19 (quoting *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015)). Accordingly, the case "no longer presents a live controversy with respect to which the court can give meaningful relief." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F. 3d 1276, 1282 (11th Cir. 2004). Mootness is jurisdictional; a federal court may only adjudicate cases and controversies, and a ruling that cannot provide meaningful relief is an impermissible advisory opinion. *Id.*

The Court "cannot prevent what has already occurred." *De La Fuente v. Kemp*, 679 F. App'x 932, 933 (11th Cir. 2017). While Plaintiff purportedly seeks "decertification" of the certifications that Secretary Raffensperger and Governor Kemp have already executed, he cites to no authority whatsoever to support the notion that a court could order such relief. The Georgia General Assembly has

provided for no process for decertification of election results and thus none exists. This Court should not now intervene in or alter the election process chosen by the General Assembly without running afoul of *Bush v. Gore*, 121 S. Ct. 525, 530-35 (2000), in which the Supreme Court stated, "[w]ith respect to a Presidential election, the court must be both mindful of the legislature's role under Article II [of the U.S. Constitution] in choosing the manner of appointing electors and deferential to those bodies expressly empowered by their legislatures to carry out its constitutional mandate." *Id.*

Plaintiff could have timely sought and obtained an order to halt or extend the certification pursuant to O.C.G.A. § 21-2-499(b), but he did not do so.  The General Assembly's choice to place certification deadlines in O.C.G.A. § 21-2-499(b) and to place a deadline by which the presidential electors must vote in O.C.G.A. § 21-2-11, shows that the General Assembly wanted to ensure Georgia's presidential electoral votes would be counted and timely cast under federal law. *See* 3 U.S.C. §§ 2, 5, 6, 7, 11, 12, 13, and 14.  This choice cannot be undone.

## III.   Plaintiff's Claims are Barred by Laches.

In addition to his claims being moot, Plaintiff's inexcusable delay in bringing his claims warrants denial of his motion. Laches bars a request for equitable relief when (1) the plaintiff delays in asserting the claim; (2) the delay is not excusable,

and (3) the delay causes the non-moving party undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). In the context of elections, "any claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990). As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made. *Id.*

First, the Plaintiff failed to timely assert his claims. Plaintiff's Complaint contains two counts for alleged constitutional violations and a prayer for relief that mirrors the petition he filed in the Superior Court of Fulton County over a month ago.[2] All of the Plaintiff's (baseless) allegations of misconduct occurred months ago, or at the latest, shortly after the Election. Nevertheless, the Plaintiff waited until almost two months after the election, immediately before the election certification, and a mere six days before the federally required tabulation of electoral votes by the United States Congress, to file the instant suit. Rather than bring his claims in a timely manner and provide the Defendants and the Court the opportunity to consider their allegations in a more thoughtful way, the Plaintiff manufactured a crisis, with

---

[2] As fully set forth in Defendant Raffensperger's Motion to Dismiss filed in the Fulton County Superior Court, Petitioners' claims in that suit were also barred by Laches for these same reasons. The fact that these same claims were brought almost a month ago in a different forum further demonstrate Plaintiff's inexcusable delay in filing the instant suit.

the goal being less about policing the electoral system and more about thrusting Georgia into an electoral and constitutional maelstrom.

Every one of Plaintiff's counts in the Complaint could have been brought significantly sooner than December 31, 2020. In Counts I and II, the Plaintiff broadly alleged that the "evidence" of fraud outlined in their Complaint caused the State of Georgia to "improperly certif[y] the November 3, 2020 General Election Results." *See* Complaint, ¶¶ 70-75. But these supposed failures, assuming they occurred at all, occurred either months before the election (in the case of Plaintiff's claims concerning the Consent Decree) or immediately after the election. Allegations of improprieties with the sending out of absentee ballots or voter registration (which closed in early October) could have, and should have, been made months ago. *See Boland v. Raffensperger*, No. 2020CV343018, slip op. at 6 (Fulton Cty. Sup. Ct. Dec. 8, 2020) (dismissing election challenge as barred by laches "where Plaintiff challenge[d] the validity of the presidential election after it ha[d] already been conducted based on procedures which were adopted long before the election and upon which elections officials and voters alike relied.").

This is also the case with the alleged unconstitutional Settlement Agreement. This Settlement Agreement was finalized in March of 2020, and the Plaintiff could have challenged the agreement then, but neglected to do so. When the Settlement

15

Agreement was challenged in 2020 by Lin Wood, the Court found the Settlement Agreement was constitutional. *See Wood v. Raffensperger*, 2020 WL 6817513, at *4.

Second, these delays are not excusable. As it relates to the allegations of illegal votes, this information was known to the Plaintiff, at the very least, shortly after the election. There is simply no reason for the Plaintiff's delay until December 31, just days before the electoral votes are counted. Furthermore, and perhaps most importantly, many of the delays associated with both the Fulton County case and the instant case are the result of procedural errors by the Plaintiff. For example, Plaintiff filed his original challenge in Fulton County on December 4, 2020, yet Plaintiff failed to pay the filing fee. Then, once the action was properly filed the following week, the Plaintiff filed, then withdrew, his Request for Emergency Relief. Then, the Plaintiff improperly filed a premature and dilatory Notice of Appeal to the Georgia Supreme Court, "effectively depriving [Fulton County Superior Court] of its ability to take any actions on this matter, including any reassignment." *Trump v. Raffensperger*, No. 2020CV343255, slip op. at 2 (Fulton Cty. Sup. Ct. Dec. 30, 2020). Once the Plaintiff withdrew his improper appeal, the matter was properly referred to a judge in accordance with the Georgia Election Code. With respect to the instant suit, the Plaintiff also did not follow proper procedures for a timely

16

hearing. As explained in this Court's January 4, 2020 Order, this Court was not even made aware of the Plaintiff's filing until today as a result of the Plaintiff's failure to properly use the Court's ECF system for an emergency hearing. As such, the Plaintiff's delays in obtaining judicial relief are due to Plaintiff's own errors.

Finally, allowing this action to go forward would cause severe undue prejudice. The United States Congress is slated to meet and tabulate the electoral votes on January 6, 2021—just two days from today. The Plaintiff knew of many of the allegations in his Complaint months ago, and waited until the eleventh hour to file this suit. Granting Plaintiff's requested relief would thrust the State of Georgia into constitutional chaos, would deprive millions of Georgians of their legally cast votes, and would cost the state millions of tax payer dollars. Such an absurd result should not be permitted.

## IV. Plaintiff's Claims are Barred by the Eleventh Amendment.

Plaintiff's claims against Governor Kemp and Brad Raffensperger in their official capacities are also barred by the Eleventh Amendment. The Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because claims against public officials in their official capacities are merely another way of pleading

an action against the entity of which the officer is an agent, "official capacity" claims against a state officer are included in the Eleventh Amendment's bar. *Id.* at 165.

While *Ex Parte Young* provides for an exception to Eleventh Amendment immunity, it does so only for prospective injunctive relief grounded in a violation of *federal* law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984). In other words, "the *Young* doctrine rests on the need to promote the vindication of *federal* rights," and is "inapplicable in a suit against state officials on the basis of *state* law." *Id.* at 105–06 (emphasis added). Here, Plaintiff nominally alleges a federal right, but he has not indicated how the state law actually burdens any such right.

Moreover, the *Young* exception is limited to suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997). "A federal court cannot award retrospective relief, designed to remedy past violations of federal law." Id. Plaintiff's claims for injunctive and declaratory relief, premised on the conduct of the November general election and the certification of results that have already taken place, are barred because they are retrospective in nature. "Retrospective relief is backward-looking, and seeks to remedy harm 'resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238,

1249 (11th Cir. 2014) (citation omitted). "Simply because the remedy will occur in the future, does not transform it into 'prospective' relief. The term, 'prospective relief,' refers to the ongoing or future threat of harm, not relief." *Fedorov v. Bd. of Regents*, 194 F. Supp. 2d 1378, 1387 (S.D. Ga. 2002). Plaintiff's claims for any relief related to the miscounting of votes or election irregularities are entirely retrospective and barred by the Eleventh Amendment.

## V.  The Court Should Abstain from Hearing Plaintiff's Claims While the State Election Contest is Pending.

Plaintiff seeks unprecedented and extraordinary relief at the thirteenth hour seeking to challenge state court determinations and litigate issues raised previously in a state court proceeding initiated weeks before the commencement of this parallel federal proceeding. This Court should decline to entertain the relief sought by Plaintiff, as the state courts have the full authority and expertise to consider the issues raised by Plaintiff *and would have done so were it not for the actions of Plaintiff.* The relief that Plaintiffs seeks is a setting aside of the *state law process* for the election and certification of the slate of presidential electors for Georgia and the creation, by judicial fiat, of a non-statutory remedy that would disenfranchise the electorate of Georgia.

There are numerous problems with this proposed relief. First, it violates the principles of federalism. Second, the *Pullman* doctrine warrants dismissal. Finally,

19

and at the very least, this lawsuit should be stayed, and all emergency relief should be denied at this juncture, pending the outcome of Plaintiff's state election challenge pursuant to the *Colorado River* doctrine. There is no indication in the record, nor any legitimate or supported argument propounded by Plaintiff, that the state court action will not proceed expeditiously now that the improvidently chosen interlocutory appellate strategy *employed by the Plaintiff* has been abandoned and jurisdiction has been returned to the superior court.

Plaintiff pays lip service to his claims being made under federal law, but the actual arguments that he advances belie that assertion. Instead, Plaintiff comes to this court arguing that "violations of *state* law … occurred in the election of November 3, 2020," and that these *state* law violations led to a violation of the Electors Clause, art. II, § 1, cl. 2. Complaint, ¶67 (emphasis added). Additionally, Plaintiff asserts factually unsupported and risible allegations about non-party *county* officials who allegedly allowed tens of thousands of unqualified individuals to cast ballots. Plaintiff continues with assertions again against non-party *county* officials that those county officials allegedly impeded observation of the tabulation process. Even assuming there was *any* merit to the delusive claims raised by Plaintiff, core principles of federalism prevent a federal court from intruding on the decisions that

a state sovereign has made in establishing the electoral system for casting, tabulating, and certifying election results.

Consistent with the express authority granted to it under the Electors Clause, the Georgia Legislature has established the manner of appointing presidential electors, to wit: a statewide vote. Concurrent with that statutory process, and likewise by statutory enactment, the Legislature has delegated authority to the State Board of Elections to issue regulations to ensure that this happens, including the statutory prescription to "obtain uniformity in the practices" amongst local election officials. O.C.G.A. § 21-2-31. Plaintiff attacks a settlement agreement entered into by the State Election Board on March 6, 2020, almost eight full months prior to Plaintiff's loss in the November 3, 2020, election (and which has been in place through the imminent conclusion of Georgia's *fifth* statewide election during this election cycle).

Plaintiff's belated attack on the sovereignty of the decisions made by Georgia's legislature, as well as the repeated assaults of the legitimacy of democratic elections, all fly in the face of our federal framework for selecting our elected leaders. Instead, Plaintiff advocates for the judicial rejection of the state's selected framework for resolving disputes in the selection of presidential electors under 3 U.S.C. § 5 with a non-statutory procedure that apparently Plaintiff believes may

reject the expressed will of the Georgia electorate and hand Georgia's *already cast* electoral votes into his column. This argument is incompatible with all principles of democracy and federalism as well as Congress's deference to state-court mechanisms for resolving presidential election disputes.

The relief sought here is particularly offensive to federalism principles in light of the fact that the presidential election was conducted over two months prior and there are pending election challenges in Georgia state court that significantly mirror the claims brought in this lawsuit. It is hard to imagine a more significant challenge to federalism than for a party to request a federal court to usurp a state sovereign's delegation to its own state judiciary the authority to adjudicate electoral disputes in currently pending state court cases, especially when any delay in the state court administration was *caused by the actions of the Plaintiff.*

These concerns are recognized by the *Pullman* doctrine, which provides that "a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law." *Harman v. Forssenius*, 380 U.S. 528, 534, (1965) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 (1941)). The need to abstain under the *Pullman* doctrine arises and is proper "[w]here resolution of the federal constitutional question is dependent upon, or may be materially altered by, the

determination of an uncertain issue of state law, . . . in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman*, 380 U.S. at 534.

Here, the constitutional issue presented, whether there is some federal constitutional violation arising from the woefully unsupported rambling about alleged violations of state law, is plainly a state law question masquerading as an alleged federal constitutional deprivation. In other words, the Court cannot answer the constitutional question without first deciding whether state actors violated their authority under *state law*. This is a classic *Pullman* situation, which examines and requires that "(1) the case presents an unsettled question of state law, and (2) the question of state law is dispositive of the case or would avoid, or substantially modify, the constitutional question presented." *Rindley v. Gallagher*, 929 F. 2d 1552, 1554-55 (11th Cir. 1991) (citing *Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983). Even assuming *arguendo* that this Court believes that there is a question as to whether the acts of the state officials exceeded their statutory authority, this Court should decline to entertain Plaintiff's request for emergency relief under *Pullman*.

For a similar reason, Plaintiffs' requested relief violates the *Colorado River* Doctrine. *Plaintiff* has a pending state election challenge, for which trial is set to commence this Friday, January 8, 2020. That action raises identical claims as the Plaintiff raises here, except that this case also seeks to argue that state officials have violated the Plaintiff's right to a speedy state court resolution of his claims *due entirely to Plaintiff's own inept handling of his state court action*. The Eleventh Circuit has indicated that a stay of federal proceedings is clearly warranted in this type of situation under the *Colorado River* doctrine, which "authorizes a federal 'district court to dismiss or stay an action when there is an ongoing parallel action in state court.'" *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997–98 (11th Cir. 2004) (citing *LaDuke v. Burlington Northern Railroad Co.*, 879 F.2d 1556, 1558 (7th Cir.1989)).

Factors considered in the *Colorado River* analysis include: the desire to "avoid piecemeal litigation," whether state or federal law governs the issue, and whether the state court can protect all parties' rights. *Id*. at 987 (citation omitted). Each of these factors warrants staying the litigation. Plaintiff's complaint attacks state and non-party county officials' actions that purportedly violate state law: who can lawfully cast a Georgia ballot under Georgia law and how county election officials should verify the legitimacy of lawfully cast absentee ballots under Georgia law.

Thus, the possibility of piecemeal litigation is real, concrete, and exceedingly likely to occur. Finally, the relief that the parties in the state court challenges can obtain would protect all parties' rights. The remedies available to Georgia courts when ruling on election challenges are spelled out in state law. *See* O.C.G.A. § 21-2-527(d). To the extent that Plaintiff may now be precluded from *obtaining* that relief due to his own dilatory state court litigation strategy, that does not counsel against application of the *Colorado River* doctrine. Instead, under the circumstances of this litigation, the *Colorado River* factors are satisfied, and the election challenge should proceed in state court while this Court abstains from entertaining Plaintiff's belated attempt to circumvent the state court process.

## VI.   Plaintiff Fails to Establish the Required Elements for Injunctive Relief.

Finally, even if Plaintiff could overcome the jurisdictional defects that are fatal to his claims, he still fails to satisfy the requirements for the extraordinary injunctive relief they seek. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). To prevail on their motion, Plaintiffs are required to show: (1) a substantial likelihood of prevailing on the merits; (2) that the plaintiff will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and (4) the

injunction would not be adverse to the public interest. *Duke v. Cleland*, 954 F.2d 1526, 1529 (11th Cir. 1992). The Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

## A. Plaintiff is not likely to succeed on the merits of his claims.

Election returns are presumed valid. *Martin v. Fulton Cty. Bd. of Registration & Elections*, 307 Ga. 193, 267 (2019); *Middleton v. Smith*, 273 Ga. 202, 203 (2000); *Bailey v. Caldwell*, 263 Ga. 111, 111 (1993). Registered electors are presumed to be qualified voters. *See, e.g*, *id.*; O.C.G.A. § 21-2-217(b) ("the decision of the registrars to whom such [voter] application is made shall be presumptive evidence of a person's residence for voting purposes"); O.C.G.A. § 21-2-522.1 ("Notwithstanding any other provision of this chapter, for the purposes of election contests, a vote cast by a person who has been listed on the official list of electors for a period of ten years or longer shall be rebuttably presumed to be a legal vote despite an unsigned voter registration card . . . ."). In addition "public officer[s,]" including election officials, are "presumed, until the contrary appears, to have properly performed [their] official duties and not to have exceeded [their] authority." *Fine v. Dade Cty.*, 198 Ga. 655, 663 (1944); *see also Scott v. DeKalb Cty. Hosp. Authority*, 169 Ga.

App. 257, 257 (1983). Given these presumptions, "great weight" is afforded to election results. *Meade v. Williamson*, 293 Ga. 142, 143 (2013).

"In the majority of cases in which [the Georgia Supreme Court] has affirmed an order setting aside an election, [it has] required the evidence to show that a sufficient number of electors voted illegally or were irregularly recorded in the contest being challenged to change or cast doubt on the election." *Id.* (citation and quotations omitted).

> Indeed, the setting aside of an election in which the people have chosen their representative is a drastic remedy that should not be undertaken lightly, but instead should be reserved for cases in which a person challenging an election has clearly established a violation of election procedures and has demonstrated that the violation has placed the result of the election in doubt.
>
> But that is not all.  [The Georgia Supreme Court] h[as] explained that it is not sufficient to show irregularities which simply erode confidence in the outcome of the election, and that elections cannot be overturned on the basis of mere speculation.

*Martin*, 307 Ga. at 193-94 (citation, quotations, and punctuation omitted) (emphasis added). One challenging the election must show specific evidence of a sufficient number of illegal or irregular ballots to put the election in doubt. *Id*.

On top of this, "when the state legislature chooses to a statewide election as the means to implement its power to appoint members of the electoral college" under

27

U.S. Constitution, Art. II, § 1, as the Georgia General Assembly did in O.C.G.A. § 21-2-10, "the right to vote as the legislature has prescribed is fundamental." *Bush*, 121 S. Ct. at 529. That right should accordingly not be disturbed lightly especially after "millions of people lawfully cast their ballots." *Wood*, 2020 WL 6817513 at *38.

Plaintiff seeks the unprecedented remedy of "de-certifying" the election results, effectively disenfranchising millions of Georgians and precluding Georgia's votes in the 2020 presidential election from being counted at all. Plaintiff does this based on so little, so late. The ballots have not only been cast, but they have been counted three times—including through a statewide hand recount of every single vote cast in Georgia. Additionally, Plaintiff's allegation regarding absentee vote counting has been rebutted through extensive investigations by the Georgia Bureau of Investigation and the Secretary. *See*, *e.g.*, ABM Signature Audit Report attached as **Exhibit M**. The Secretary has further found absolutely no credible evidence of voter fraud or other issues that would affect the outcome of the presidential election. For instance, Plaintiff challenges the votes in Cherokee County, Georgia. The Secretary's investigation into those purported issues, including through recounting all the ballots by hand, showed that votes cast were all valid. *See* Affidavit of Frances Watson attached as **Exhibit N** at ¶¶ 11-15. Additionally, claims that "dead people"

were voting and that there was mischief in the vote counting have been investigated and debunked. *See id.* at ¶¶ 5-10.

The Secretary has also investigated the claims of Plaintiff's purported "experts" in the state court action. That investigation has found that these "experts" admitted speculation was both wrong and junk science. *See*, *e.g.*, Affidavit of Chris Harvey attached as **Exhibit O**; Declaration of Charles Stewart III attached as **Exhibit P**; Daubert Motion attached as **Exhibit Q**. Plaintiff's attacks on the March 2020 Settlement Agreement are not only wrong on the law, but they have already been debunked by this Court. *See Wood*, 2020 U.S. Dist. LEXIS 218058, at *31 (rejecting arguments that the Settlement Agreement is invalid and noting that it "is a manifestation of Secretary Raffensperger's statutorily granted authority. It does not override or rewrite state law. It simply adds an additional safeguard to ensure election security by having more than one individual review an absentee ballot's information for accuracy before the ballot is rejected.").

When weighing whether the Plaintiff is likely to prevail on the merits given the numerous recounts, the presumption of voter validity, and the absence of any substantial evidence showing otherwise, it is evident Plaintiff is likely not going to prevail on his claims—either in this Court or in state court. In his numerous legal challenges, Plaintiff has propounded numerous theories and allegations in the hope

29

that "something will stick." A barrage of allegations and suits does not undermine the facts and should not undermine our democracy.

### B. The harm to Plaintiff in denying the injunction is far outweighed by the harm to the Defendants and the public if the injunction were issued.

Plaintiff contends he will suffer irreparable injury without an injunction because, without Georgia's electoral votes, he could lose the election. Even accepting that is a legitimate harm, it is far outweighed by the substantial, indeed fundamental, harm to the interests of the Defendants and the public should this court issue an injunction nullifying the results of the presidential election.

The remaining injunction factors—balancing the equities and public interest—are frequently considered "in tandem" by courts, "as the real question posed in this context is how injunctive relief at this eleventh-hour would impact the public interest in an orderly and fair election, with the fullest voter participation possible." *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018), *aff'd in part, appeal dismissed in part*, 761 F. App'x 927 (11th Cir. 2019). The Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying "particular regard as well for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Here, "the threatened injury to Defendants as state officials and the public at large far outweigh any minimal burden on [Plaintiff]." *Wood*, 2020 U.S. Dist. LEXIS 218058 at *38. "Confidence in the integrity of our electoral process is essential to the functioning of our participatory democracy," and court orders affecting elections "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U. S. at 4-5. For this reason, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (April 6, 2020) (per curiam).

The Eleventh Circuit has held that the *Purcell* principle applies with even greater force when voting has already occurred. *See New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020) ("[W]e are not on the eve of the election—we are in the middle of it, with absentee ballots already printed and mailed. An injunction here would thus violate Purcell's well-known caution against federal courts mandating new election rules—especially at the last minute."); *see also Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) ("Interference with impending elections is extraordinary, and interference with an election after voting has begun is unprecedented."). Here, the election has already been conducted, and the slate of presidential electors has been certified.

31

Granting Plaintiff's extraordinary relief would only serve to "disenfranchise [] voters or sidestep the expressed will of the people." *Donald J. Trump for President, Inc. v. Sec'y Pennsylvania*, No. 20-3371, 2020 U.S. App. LEXIS 37346 at *28 (3d Cir. Nov. 27, 2020).

As the district court in *Wood* correctly recognized, "To interfere with the result of an election that has already concluded would be unprecedented and harm the public in countless ways." 2020 U.S. Dist. LEXIS 218058 at *37-38. Plaintiff seeks even broader relief than that sought in *Wood*. If granted, Plaintiff's requested relief would disenfranchise not only Georgia's absentee voters but would invalidate all votes cast by Georgia electors.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for expedited declaratory and injunctive relief should be denied.

Respectfully submitted, this 4th day of January, 2021.

<div style="margin-left: 40%">

Christopher M. Carr          112505
Attorney General
Bryan K. Webb                743580
Deputy Attorney General
Russell D. Willard           760280
Senior Assistant Attorney General

/s/ *Charlene S. McGowan*
Charlene S. McGowan          697316

</div>

32

Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
404-458-3658 (tel)


Christopher S. Anulewicz
Georgia Bar No. 020914
canulewicz@balch.com
James L. Hollis
Georgia Bar No. 930998
jhollis@balch.com
Jonathan R. DeLuca
Georgia Bar No. 228413
jdeluca@balch.com
Patrick N. Silloway
Georgia Bar No. 971966
psilloway@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been formatted using Times New

Roman font in 14-point type in compliance with Local Rule 7.1(D).

<div align="right">

/s/ <i>Christopher S. Anulewicz</i>
Christopher S. Anulewicz
Georgia Bar No. 020914

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED DECLARATORY AND INJUNCTIVE RELIEF** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for all parties of record via electronic notification.

Dated: January 4, 2021.

/s/ *Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914