# EXHIBIT E

Fulton County Superior Court
***EFILED***QW
Date: 12/7/2020 4:26 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| DONALD J. TRUMP, in his capacity as a Candidate for President, DONALD J. TRUMP FOR PRESIDENT, INC., and DAVID J. SHAFER, in his capacity as a Registered Voter and Presidential Elector pledged to Donald Trump for President,<br><br>   Petitioners,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a Member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a Member of the Georgia State Election Board, ANH LE, in her official capacity as a Member of the Georgia State Election Board, RICHARD L. BARRON, in his official capacity as Director of Registration and Elections for Fulton County, JANINE EVELER, in her official capacity as Director of Registration and Elections for Cobb County, ERICA HAMILTON, in her official capacity as Director of Voter Registration and Elections for DeKalb County, KRISTI ROYSTON, in her official capacity as Elections Supervisor for Gwinnett County, RUSSELL BRIDGES, in his official capacity as Elections Supervisor for Chatham County, ANNE DOVER, in her official capacity as Acting Director of Elections and Voter Registration for Cherokee County, SHAUNA DOZIER, in her official capacity as Elections Director for Clayton County, MANDI SMITH, in her official capacity as Director of Voter Registration and Elections for Forsyth County, AMEIKA PITTS, in her official | CIVIL ACTION FILE NO.<br><br>2020 CV 343255 |

| | |
|---|---|
| capacity as Director of the Board of Elections & Registration for Henry County, LYNN BAILEY, in her official capacity as Executive Director of Elections for Richmond County, DEBRA PRESSWOOD, in her official capacity as Registration and Election Supervisor for Houston County, VANESSA WADDELL, in her capacity as Chief Clerk of Elections for Floyd County, JULIANNE ROBERTS, in her official capacity as Supervisor of Elections and Voter Registration for Pickens County, JOSEPH KIRK, in his official capacity as Elections Supervisor for Bartow County, and GERALD MCCOWN, in his official capacity as   Elections Supervisor for Hancock County,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND FOR LEAVE OF COURT TO ADD ALL OTHER ELECTORS AS RESPONDENTS AND INCORPORATED BRIEF IN SUPPORT

**COMES NOW** David J. Shafer, in his capacity as a Petitioner in the above styled civil action ("Petitioner"), and through their undersigned counsel of record, and file this, his Motion for Emergency Injunctive Relief And For Leave of Court To Add All Other Electors and Incorporated Memorandum of Law, respectfully showing this Honorable Court as follows:

### I.    MOTION FOR LEAVE OF COURT TO ADD ALL ELECTORS

Petitioners herein request leave of court under the Georgia Election Code to add all remaining slates of electors as Respondents to the above captioned action, as the Georgia Secretary of State has now re-certified the election as of December 7, 2020. O.C.G.A. § 21-2-524. Pursuant to Georgia law, adding parties to an action must be granted by Order of Court. O.C.G.A. § 9-11-19, 9-11-20, 9-11-21. Now that Respondent Raffensberger has re-certified the election results, all slates of remaining electors are necessary and proper parties to this action.  There is no prejudice

that will result to any Respondents if the relief sought is granted by the Court. Thus, leave of Court should be freely given to add such parties.

## II.   RELIEF SOUGHT

Petitioners move for an emergency temporary restraining order, as well as preliminary and interlocutory injunctive relief per O.C.G.A. § 9-11-65 and/or O.C.G.A. §§ 9-5-1, 23-3-1 et seq. to:

   a. Appoint a Superior Court or senior status judge pursuant to O.C.G.A. § 21-2-523.

   b. Enjoin the certification of the results of the Contested Election by Respondent counties and the Secretary of State;

   c. Enjoin the Secretary of State from appointing the Electors to the Electoral College;

   d. Order Respondents to respond to this Petition within 3 days;

   e. Order expedited discovery and strict compliance with all existing and future open records requests;

   f. Order Respondents to preserve any and all evidence concerning election documents as contemplated by O.C.G.A. § 21-2-52, including without limitation, applications, envelopes (whether exterior or interior envelopes, and whether stamped or not), and any and all ballots[1];

   g. Require Respondents to immediately fulfill their obligations under the Election Code to properly maintain and update Georgia's list of registered voters to remove ineligible voters;

---

[1] Any argument that private information may not be disclosed can be overcome by this Honorable Court entering a Protective Order pursuant to O.C.G.A. § 9-11-26(c).

h. Prevent Respondents from allowing unqualified, unregistered, and otherwise ineligible individuals from voting in Georgia elections, including but not limited to the upcoming January 5, 2021 run-off[2];

i. Require an immediate audit of the signatures on absentee ballot applications and ballots as described in Exhibit 16;

j. Enjoin and restrain Respondents from taking any further actions or to further enforce the Consent Decree;

k. **Order a new Presidential Election to occur at the earliest opportune time**; and

l. For such other relief that this Court deems just and proper under the circumstances.

### III. THIS CASE IS NOT MOOT

1.

The date by which electors must vote in their respective states is not December 8, 2020, but rather January 6, 2020. Thus, Petitioner's Complaint is not moot or rendered moot, and is ripe to be heard on an expedited basis.

2.

Assuming the electors pledged to Trump meet on December 14, 2020, to cast their votes in the state capitol and send their votes to the President of the Senate in time to be opened on January 6, 2020, a Court decision or state legislature action rendered after December 14, 2020 should be considered timely.

3.

As Justice Ginsburg noted in *Bush v. Gore,* the date which has "ultimate significance" under federal law is the "sixth day of January." 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

---

[2] To the extent ineligible voters have already voted absentee for the January 5, 2021, runoff, those votes should be put into a "provisional" voting status.

4.

Such ripeness is further illustrated by precedent from the 1960 presidential election.

5.

In that election, the electors from Hawaii pledged to Vice President Nixon cast their ballots with certificates in hand from the governor of Hawaii certifying that Nixon had won the state by 141 votes.

6.

Kennedy's electors nonetheless met and voted on the day prescribed for the meeting of electors (December 19, 1960).

7.

On the same day, a Hawaii court ordered a recount of the entire state.

8.

On December 28th the Hawaii courts issued a final decision finding that Kennedy had in fact won the state by 105 votes.

9.

Because the Kennedy electors had taken care to vote on the proper day and the governor signed an amended certificate of election which was then reissued in time to be counted in Congress the electoral votes were awarded to Kennedy.

10.

As supported by the 1960 Kennedy-Nixon contest, the real safe harbor deadline is therefore January 6, 2021 and *Bush v. Gore*, January 6 is the date the Senate and House meet for the counting of electoral votes and 3 U.S.C. § 15 controls when the Senate and House determine "the validity of electoral votes." *Id.* 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

11.

Thus, January 6, 2021 is the <u>first</u> date on which any electoral votes are actually counted. On that date, the Twelfth Amendment directs, "[t]he President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

Art. II, § 1, cl. 4, gives Congress the power to specify the date "on which [the electors] shall give their votes, which Day shall be te same throughout the United States." Exercising that power, Congress has mandated that the electors "shall meet and give their votes on the first Monday after the second Wednesday in December" – this year, December 14, 2020 – "at such place in each State as the legislature of such State shall direct." 3 U.S.C. § 7.

Article II requires that all electors throughout the United States vote on the same day, whether Congress could validly count electoral votes cast on a later date. The basic responsibility of the electors is to "make and sign six certificates of the votes given by them" for President and Vice President, 3 U.S.C. § 9; "seal up the certificates so made by them," *Id.*, § 10; and forward them by registered mail to the President of the Senate and toother officials. *Id.*, § 11. These actions are carried out without any involvement by state officials.

It is also clear, that if, before the electors cast their votes, the candidates for whom they are voting have been issued certificates of election, it is the duty of the governor to deliver the certificates to the electors "on or before the day" they are required to meet, *Id. at* § 6, and the electors are then to attach the certificates to the electoral votes they transmit to the President of the Senate. *Id.*, § 9.

12.

But nothing in federal law requires States to resolve controversies over electoral votes prior to the meeting of the electors. Indeed, there is no set deadline for a State to transmit to Congress a certification of which slate of electors has been determined to be the valid one. The duty of the state governor is merely to transmit the certification "as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment...." *Id.,* § 6.

13.

The "safe harbor" provision of the Electoral Count Act, which purportedly mandates that a final result reached in a State by the safe harbor date "shall be conclusive" when votes are counted in Congress. 3 U.S.C. § 5. There is no legal authority stating that the Electoral Count Act, enacted by the 5th Congress in 1877, can have any binding effect on the 117th Congress which will convene on January 3, regarding its authority and obligation to count electoral votes as it sees fit. The Senate, which convenes in January, has the inherent authority to set whatever rules it wishes for deciding challenges to the electoral votes cast in the 2020 election. This is consistent with Art. I, § 5, providing that "[e]ach House may determine the Rules of its Proceedings...."

14.

Thus, since the true deadline is January 6, 2020, this action is not rendered moot and this action is ripe to proceed.

## IV. LEGAL STANDARD AND RELEVANT FACTS

13.

The emergency relief requested by Petitioner is necessary in light of Defendants' past conduct as alleged in the Verified Petition, incorporated herein by reference, and their stated intentions as to future conduct, including certification of a Presidential election where there is "sufficient evidence to change or place in doubt the result" due to "Misconduct, fraud or irregularity" by any "election official." O.C.G.A. § 21-2-522.

14.

In the absence of an emergency temporary restraining order, preliminary and interlocutory injunctions, Petitioner (and the Citizens of Georgia and the United States) will suffer immediate and irreparable harm for which there is no adequate remedy at law, while injunctive relief, if granted, will cause no harm or prejudice to Respondents, and will uphold the Declared public policy of this State to "protect the integrity of the democratic process and to ensure fair elections for constitutional offices…" O.C.G.A. § 21-5-2.

15.

Respondents have a duty to implement the rules and regulations of the State Election Board which in part is "to obtain uniformity in the practices and proceedings…" of elections as well as "the legality and purity in all …. elections." O.C.G.A. § 21-2-31.

16.

Immediate and irreparable injury, loss, or damage will result to the Petitioners (as well as the Citizens of Georgia and the United States) if the requested emergency injunctive relief is not granted because the Verified Petition alleges and sets forth and attaches actual data proof based on

presumptively[3] accurate government documents that the 2020 election was not "fair[ly], legal[ly] and orderly" conducted. O.C.G.A. § 21-2-50.

17.

There will be immediate and irreparable damage to Petitioner David Schaffer in his capacity as a presidential elector and in his personal capacity as a registered voter in the State of Georgia by being precluded from voting as an elector.

18.

There will be immediate and irreparable damage to the Citizens of Georgia by allowing an illegal, improper, fraudulent, irregular, error-ridden presidential election to be certified by an election official that is a "Violator" as defined in O.C.G.A. § 21-2-2(37), thereby improperly appointing Georgia's electors for Mr. Biden even though the Contested Election is in doubt and sufficient evidence exists to change the result of the election. *See* Verified Complaint and Declarations/Affidavits attached thereto.

19.

There will be irreparable damage to the Citizens of Georgia through their loss of confidence in the integrity of the democratic election process by virtue of 1) the illegal votes included in the tabulations of the Contested Election, and 2) permitting an election official "Violator" to continue to willfully violate provisions of the Election Code. The foregoing and the declared public policy of this State outweighs any potential harm to Respondents.

---

[3] O.C.G.A. §803-8 et seq.

20.

Granting the requested relief will not disserve the public interest, on the contrary, it is the stated public policy of this State to require such relief in connection with elections.

21.

Petitioners will be irreparably injured in the event the prayed for injunctive relief is not granted. Specifically, President Trump will be denied votes to which he is entitled in the electoral college and potentially denied election to the presidency. Donald J. Trump for President, Inc. will be harmed by being denied from fulfilling its purpose viz. the reelection of President Trump. David Schaffer, will be denied his ability cast a vote as a member of the Electoral College for President Trump, and further his vote as a qualified Georgia voter will be diluted.

22.

It is further in the public interest and public policy to grant Petitioner's request for emergency injunctive relief so that Georgia voters can have confidence that the January 5, 2021, Senate election is conducted in accordance with the Election Code and is a "pure" election free from "misconduct, fraud or irregularity" that substantially alters the election.

23.

Petitioners are further entitled to the injunctive relief sought herein because there is a substantial likelihood of success on the merits as the alleged misconduct, fraud or irregularity calls into question validity of cast ballots that ***exceed the delta of the votes*** that Mr. Biden currently holds in the election above Petitioner Trump, as Candidate. These same irregularities, if not enjoined, shall substantially impact the upcoming Senate runoffs and will perpetuate fraud, misconduct and irregularity that is repugnant to our democratic process and the required "purity"

(O.C.G.A. § 21-2-31) of elections in the State of Georgia; and the certification will be put in place by a "Violator." (O.C.G.A. § 21-2-2(37))

24.

The damage to Petitioners is not readily compensable by money.

25.

The balance of equities favors entry of a temporary restraining order, interlocutory, and preliminary emergency injunctive relief, or other equitable relief imposed by this Honorable Court, against Respondents and would not be adverse to any conceivable legitimate public interest.

26.

As early as possible, notice to Respondents of Petitioners' Motion for emergency injunctive relief will be made via email and / or telephone. Service of the Verified Petition is also in the process of being served on the State Election Board as required by law.

## ARGUMENT AND CITATION OF AUTHORITIES

Pursuant to O.C.G.A. § 9-11-65 *et seq.*, a temporary restraining order and an interlocutory injunction may be issued ***if it clearly appears from specific facts shown by*** an affidavit or by ***the Verified Complaint that immediate and irreparable injury, loss or damage will result to Plaintiff.*** O.C.G.A. § 9-11-65 *et seq.* (Emphasis added.) An interlocutory injunction and TRO "are designed to preserve the status quo pending a final adjudication of the case, and in so doing, the trial court must balance the conveniences of the parties pending the final adjudication, with consideration being given to whether greater harm might come from granting the injunction or denying it." *Bijou Salon & Spa, LLC v. Kensington Enterprises, Inc.,* 283 Ga. App. 857, 860, 643 S.E.2d 531 (2007).

A trial court "may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction." *Hampton Island Founders v. Liberty Capital,* 283 Ga. 289, 293, 658 S.E.2d 619 (2008). ***"There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy."*** *Id.* (Emphasis added.) The granting and continuing of injunctions "shall always rest in the sound discretion of the judge, according to the circumstances of each case" and "this power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." *O.C.G.A. § 9-5-8.* Moreover, equity itself requires under O.C.G.A. § 5-9-1, 23-3-1 *et seq.* that this Honorable Court exercise its inherently vested "equitable powers" to impose extraordinary measures through equitable relief.

Here, it clearly appears from the Verified Petition and from the impending certification of the 2020 election has been tainted by misconduct, fraud or irregularity based on evidence that sufficiently may change the outcome of the 2020 and 2021 elections or place in doubt the result of same, that there is a vital necessity for the issuance of the injunction; otherwise, Petitioners will be irreparably harmed and the entire election process shall be called into doubt.

First, as many as 2,560 felons with uncompleted sentences were allowed to register to vote and cast ballots.

Second, at least 66,247 underaged and therefore ineligible people illegally registered to vote and subsequently voted.

Third, 4,926 individuals registered to vote in another state after having registered in Georgia, effectively unregistering them as qualified voters in Georgia. At least 395 such individuals voted.

Fourth, at least 15,700 individuals voted in Georgia who filed a national change of address form with the United States Post office.

Fifth, at least 40,279 individuals who moved across counties lines at least 30 days prior to Election Day and failed to reregister after having moved voted.

Sixth, 1,043 registered to vote using a post office box as their habitation in violation of state law.

Seventh, as many as 10,315 deceased persons voted in the Contested Election.

Eight, Respondents violated state law with respect to signature verification of absentee ballots.

Ninth, Respondents allowed at least 92 individuals to vote whose absentee ballots were returned and accepted prior to the individual requesting an absentee ballot.

Tenth, Respondents allowed at least 50 individuals to vote whose absentee ballots were returned prior to the earliest date that absentee ballots were permitted by law to be sent out.

Eleventh, the Secretary of State has admitted that multiple county election boards, supervisors, employees, election officials and their agents failed to follow the Election Code and State election Board Rules and Regulations, and called for several resignations.

Twelfth, Fulton County committed fraud with how they claimed a "pipe burst" and when they claimed they had finished counting ballots for the night and required all Republican monitors and members of the public to leave the State Farm Arena before they resumed counting ballots.

Thirteenth, there are a myriad of other election irregularities detailed in the Complaint and its attached exhibits incorporated by reference herein.

Simply put, if immediate emergency injunctive relief is not granted, irreparable harm and injury to Petitioners will result.

**WHEREFORE,** Petitioners pray for the following relief:

(1) That the Court and/or Special Master issue a RULE NISI *instanter* and that the Court conduct an emergency hearing on this Motion;

(2) That the Court issue a temporary restraining order, interlocutory and preliminary injunction, and/or other injunction or equitable relief in favor of Petitioners;

(3) That the Court grant expedited discovery proceedings in this action, and limit the time for response accordingly along with entry of any applicable or necessary Protective Orders to protect personal identifying information and other potentially sensitive information;

(4) And for such other and further relief as is just, proper and equitable.

Respectfully submitted, this 7th day of December 2020.

THE HILBERT LAW FIRM, LLC

_____
KURT R. HILBERT
Attorney for Petitioners
Georgia Bar No. 352877

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the above and foregoing *MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND INCORPORATED BRIEF IN SUPPORT* upon all parties and their counsel via this Court's e-file system, via STATUTORY ELECTRONIC SERVICE (O.C.G.A. § 9-11-5) and/or by placing a copy of the same in the United States mail, first class, with sufficient postage thereon to ensure delivery, addressed as follows:

Brad Raffensperger, in his official capacity as Secretary of State of Georgia
214 State Capitol
Atlanta, Georgia 30334


Rebecca N. Sullivan, in her official capacity as Vice Chair of the Georgia State Election Board,
214 State Capitol
Atlanta, Georgia 30334


David J. Worley, in his official capacity as a Member of the Georgia State Election Board
214 State Capitol
Atlanta, Georgia 30334


Matthew Mashburn, in his official capacity as a Member of the Georgia State Election Board
214 State Capitol
Atlanta, Georgia 30334


Anh Le, in her official capacity as a Member of the Georgia State Election Board
214 State Capitol
Atlanta, Georgia 30334


Richard L Barron in his official capacity as Director of Registration and Elections for Fulton County,
141 Pryor St. SW
Atlanta, GA 30303


Janine Eveler in her official capacity as Director of Registration and Elections for Cobb County

P.O. Box 649
Marietta, GA 30061-0649


Erica Hamilton, in her official capacity as Director of Voter Registration and Elections for
DeKalb County
1300 Commerce Drive
Decatur, GA 30030

Kristi Royston, in her official capacity as Elections Supervisor for Gwinnett County
455 Grayson Highway
Lawrenceville, GA 30046


Russell Bridges, in his official capacity as Elections Supervisor for Chatham County
1117 Eisenhower Drive, Suite F
Savannah, Georgia 31406


Anne Dover, in her official capacity as Acting Director of Elections and Voter Registration for
Cherokee County,
2782 Marietta Highway, Suite 100
Canton, GA 30114

Shauna Dozier, in her official capacity as Elections Director for Clayton County,
112 Smith Street
Jonesboro, GA 30236


Mandi Smith, in her official capacity as Director of Voter Registration and Elections for Forsyth
County
1201 Sawnee Drive
Cumming, GA 30040

Ameika Pitts, in her official capacity as Director of the Board of Elections & Registration for
Henry County,
140 Henry Parkway
McDonough, GA 30253


Lynn Bailey, in her official capacity as Executive Director of Elections for Richmond County
535 Telfair Street
Augusta, GA 30901

,

Debra Presswood, in her official capacity as Registration and Election Supervisor for Houston County

801 Main Street - Room 237, P.O. Box 945
Perry, GA 31069

Vanessa Waddell, in her capacity as Chief Clerk of Elections for Floyd County
12 East 4th Avenue, Suite 20
Rome, GA 30161

Julianne Roberts, in her official capacity as Supervisor of Elections and Voter Registration for Pickens County,
83 Pioneer Road
Jasper, GA 30143

Joseph Kirk, in his official capacity as Elections Supervisor for Bartow County
135 West Cherokee Avenue
Cartersville, GA 30120

Gerald McCown, in his official capacity as Elections Supervisor for Hancock County
12630 Broad Street
Sparta, GA 31087

This 12th day of December, 2020.

THE HILBERT LAW FIRM, LLC

_____
KURT R. HILBERT
Attorney for Petitioners
Georgia Bar No. 352877

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com