# EXHIBIT H

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

DONALD J. TRUMP, in his capacity as a
Candidate for President, DONALD J.
TRUMP FOR PRESIDENT, INC., and
DAVID J. SHAFER, in his capacity as a
Registered Voter and Presidential Elector
pledged to Donald Trump for President,

Petitioners,

v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,
REBECCA N. SULLIVAN, in her official
capacity as Vice Chair of the Georgia State
Election Board, DAVID J. WORLEY, in
his official capacity as a Member of the
Georgia State Election Board, MATTHEW
MASHBURN, in his official capacity as a
Member of the Georgia State Election
Board, ANH LE, in her official capacity as
a Member of the Georgia State Election
Board, RICHARD L. BARRON, in his
official capacity as Director of Registration
and Elections for Fulton County, JANINE
EVELER, in her official capacity as
Director of Registration and Elections for
Cobb County, ERICA HAMILTON, in her
official capacity as Director of Voter
Registration and Elections for DeKalb
County, KRISTI ROYSTON, in her official
capacity as Elections Supervisor for
Gwinnett County, RUSSELL BRIDGES, in
his official capacity as Elections Supervisor
for Chatham County, ANNE DOVER, in
her official capacity as Acting Director of
Elections and Voter Registration for
Cherokee County, SHAUNA DOZIER, in
her official capacity as Elections Director
for Clayton County, MANDI SMITH, in
her official capacity as Director of Voter
Registration and Elections for Forsyth
County, AMEIKA PITTS, in her official

CIVIL ACTION FILE NO.

2020 CV 343255

capacity as Director of the Board of
Elections & Registration for Henry County,
LYNN BAILEY, in her official capacity as
Executive Director of Elections for
Richmond County, DEBRA PRESSWOOD,
in her official capacity as Registration and
Election Supervisor for Houston County,
VANESSA WADDELL, in her capacity as
Chief Clerk of Elections for Floyd County,
JULIANNE ROBERTS, in her official
capacity as Supervisor of Elections and
Voter Registration for Pickens County,
JOSEPH KIRK, in his official capacity as
Elections Supervisor for Bartow County,
and GERALD MCCOWN, in his official
capacity as Elections Supervisor for
Hancock County,

      Respondents.

## SECOND MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND INCORPORATED BRIEF IN SUPPORT

**COME NOW** Petitioners DONALD J. TRUMP, in his capacity as a Candidate for

President and DAVID J. SHAFER, in his capacity as a Registered Voter and Presidential

Elector pledged to Donald Trump for President ("Movants"), and through their undersigned

counsel of record, and file this, Second Motion for Emergency Injunctive Relief and Incorporated

Memorandum of Law, respectfully showing this Honorable Court as follows.

On December 4, 2020, Petitioners filed a Verified Petition to Contest Georgia's Presidential

Election Results for Violations of the Constitution and Laws of the State of Georgia, and a Request

for Emergency Declaratory and Injunctive Relief (the "Verified Petition"), in which, they sought an

injunction prohibiting the Georgia Secretary of State from certifying Georgia's election results.  (*See*

D.E. 1.1.)

On December 7, 2020, Petitioner Shafer moved for Emergency Injunctive Relief.  (*See* D.E.

3.)

On December 8, 2020, the Georgia Secretary of State certified Georgia's Election results, after which, Petitioners Voluntary withdrew their Motion for Emergency Injunctive Relief. (*See* D.E. 10.)

Also, on December 8, 2020, Petitioners filed a Motion to Amend the Verified Petition (the "Motion to Amend") which, among other things, updated the facts regarding the Georgia Secretary of State's certification and added a new request for Emergency Injunctive Relief seeking to decertify Georgia's election results. (*See* D.E. 16.) That Motion to Amend the Verified Petition is pending.

Movants now move for a Second Emergency Temporary Restraining order, as well as preliminary and interlocutory injunctive and respectfully request a hearing on this And to set a hearing for the Motion to Amend and this Second Motion for Emergency Injunctive Relief on Monday, December 14, 2020, or as soon as possible thereafter.

Movants further ask that the Court, pursuant to O.C.G.A. § 9-11-65 and/or O.C.G.A. §§ 9-5-1, 23-3-1 et seq.:

   a. Decertify the certification of the results of the Contested Election by Respondent counties and the Secretary of State;

   b. Enjoin the Secretary of State from appointing the Electors to the Electoral College;

   c. Order expedited discovery and strict compliance with all existing and future open records requests;

   d. Order Respondents to preserve any and all evidence concerning election documents as contemplated by O.C.G.A. § 21-2-52, including without limitation, applications, envelopes (whether exterior or interior envelopes, and whether stamped or not), and any and all ballots;

   e. Require Respondents to immediately fulfill their obligations under the Election Code to properly maintain and update Georgia's list of registered voters to remove ineligible voters;

h. Prevent Respondents from allowing unqualified, unregistered, and otherwise ineligible individuals from voting in Georgia elections, including but not limited to the upcoming January 5, 2021 run-off;

i. Require an immediate audit of the signatures on absentee ballot applications and ballots as described in Exhibit 16;

j. Order a new Presidential Election to occur at the earliest opportune time; and

1. For such other relief that this Court deems just and proper under the circumstances.

1.

The date by which electors must vote in their respective states is not December 8, 2020, but rather January 6, 2020. Thus, Petitioner's Petition is not moot or rendered moot, and is ripe to be heard on an expedited basis.

2.

Assuming the electors pledged to Trump meet on December 14, 2020, to cast their votes in the state capitol and send their votes to the President of the Senate in time to be opened on January 6, 2020, a Court decision or state legislature action rendered after December 14, 2020 should be considered timely.

3.

As Justice Ginsburg noted in *Bush v. Gore,* the date which has "ultimate significance" under federal law is the "sixth day of January." 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

4.

Such ripeness is further illustrated by precedent from the 1960 presidential election.

5.

In that election, the electors from Hawaii pledged to Vice President Nixon cast their ballots with certificates in hand from the governor of Hawaii certifying that Nixon had won the state by 141 votes.

6.

Kennedy's electors nonetheless met and voted on the day prescribed for the meeting of electors (December 19, 1960).

7.

On the same day, a Hawaii court ordered a recount of the entire state.

8.

On December 28th the Hawaii courts issued a final decision finding that Kennedy had in fact won the state by 105 votes.

9.

Because the Kennedy electors had taken care to vote on the proper day and the governor signed an amended certificate of election which was then reissued in time to be counted in Congress the electoral votes were awarded to Kennedy.

10.

As supported by the 1960 Kennedy-Nixon contest, the real safe harbor deadline is therefore January 6, 2021 and under *Bush v. Gore,* January 6 is the date the Senate and House meet for the counting of electoral votes and 3 U.S.C. § 15 controls when the Senate and House determine "the validity of electoral votes." *Id.* 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

11.

Thus, January 6, 2021 is the first date on which any electoral votes are actually counted. On that date, the Twelfth Amendment directs, "[t]he President of the Senate shall, in the presence

of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

12.

Art. II, § 1, cl. 4, gives Congress the power to specify the date "on which [the electors] shall give their votes, which Day shall be to same throughout the United States." Exercising that power, Congress has mandated that the electors "shall meet and give their votes on the first Monday after the second Wednesday in December" — this year, December 14, 2020 — "at such place in each State as the legislature of such State shall direct." 3 U.S.C. § 7.

13.

Article II requires that all electors throughout the United States vote on the same day, whether Congress could validly count electoral votes cast on a later date. The basic responsibility of the electors is to "make and sign six certificates of the votes given by them" for President and Vice President, 3 U.S.C. § 9; "seal up the certificates so made by them," *Id., § 10;* and forward them by registered mail to the President of the Senate and toother officials. *Id , § 11.* These actions are carried out without any involvement by state officials.

14.

It is also clear, that if, before the electors cast their votes, the candidates for whom they are voting have been issued certificates of election, it is the duty of the governor to deliver the certificates to the electors "on or before the day" they are required to meet, *Id at § 6*, and the electors are then to attach the certificates to the electoral votes they transmit to the President of the Senate. *Id. § 9.*

12.

But nothing in federal law requires States to resolve controversies over electoral votes prior to the meeting of the electors. Indeed, there is no set deadline for a State to transmit to Congress a certification of which slate of electors has been determined to be the valid one. The duty of the state governor is merely to transmit the certification "as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment...." *Id. § 6.*

13.

The "safe harbor" provision of the Electoral Count Act, which purportedly mandates that a final result reached in a State by the safe harbor date "shall be conclusive" when votes are counted in Congress. 3 U.S.C. § 5. There is no legal authority stating that the Electoral Count Act, enacted by the 5th Congress in 1877, can have any binding effect on the 117th Congress which will convene on January 3, regarding its authority and obligation to count electoral votes as it sees fit. The Senate, which convenes in January, has the inherent authority to set whatever rules it wishes for deciding challenges to the electoral votes cast in the 2020 election. This is consistent with Art. I, § 5, providing that "[each House may determine the Rules of its Proceedings...."

14.

Thus, since the true deadline is January 6, 2020, this action is not rendered moot and this action is ripe to proceed.

## LEGAL STANDARD AND RELEVANT FACTS

13.

The emergency preliminary, interlocutory, and permanent injunctive relief requested by Petitioners in this Second Motion is necessary in light of Defendants' past conduct as alleged in the Verified Petition, incorporated herein by reference, and their stated intentions as to future conduct, including a refusal to certify three different prior certifications of a Presidential election where there is "sufficient evidence to change or place in doubt the result" due to "Misconduct, fraud or irregularity" by any "election official." O.C.G.A. § 21-2-522.

14.

In the absence of an emergency temporary restraining order, preliminary and interlocutory injunctions, Petitioner (and the Citizens of Georgia and the United States) will suffer immediate and irreparable harm for which there is no adequate remedy at law, while injunctive relief, if granted, will cause no harm or prejudice to Respondents, and will uphold the Declared public policy of this State to "protect the integrity of the democratic process and to ensure fair elections for constitutional offices ... " O.C.G.A. § 21-5-2.

15.

Respondents have a duty to implement the rules and regulations of the State Election Board which in part is "to obtain uniformity in the practices and proceedings..." of elections as well as "the legality and purity in all .... elections." O.C.G.A. § 21-2-31.

16.

Immediate and irreparable injury, loss, or damage will result to the Petitioners (as well as the Citizens of Georgia and the United States) if the requested emergency preliminary, interlocutory, and permanent injunctive relief is not granted because the Verified Petition alleges and sets forth and

attaches actual data proof based on presumptively[1] accurate government documents that the 2020 election was not "fair[ly], legal[ly] and orderly" conducted.  O.C.G.A. § 21-2-50.

17.

There will be immediate and irreparable damage to the President in his capacity as a Candidate for President if the wrong electoral slate is allowed to vote, thereby denying him Georgia's electoral votes.  Petitioner David Schaffer in his official capacity as a presidential elector and in his personal capacity as a registered voter in the State of Georgia by being precluded from voting as an elector.

18.

There will be immediate and irreparable damage to the Citizens of Georgia by allowing an illegal, improper, fraudulent, irregular, error-ridden presidential election to be certified by an election official that is a "Violator" as defined in O.C.G.A. § 21-2-2(37), thereby improperly appointing Georgia's electors for Mr. Biden even though the Contested Election is in doubt and sufficient evidence exists to change the result of the election.  *See* Verified Complaint and Declarations/Affidavits attached thereto.

19.

There will be irreparable damage to the Citizens of Georgia through their loss of confidence in the integrity of the democratic election process by virtue of 1) the illegal votes included in the tabulations of the Contested Election, and 2) permitting an election official "Violator" to continue to willfully violate provisions of the Election Code. The foregoing and the declared public policy of this State outweighs any potential harm to Respondents.

---

[1] O.C.G.A. §803-8 et seq.

20.

Granting the requested relief will not disserve the public interest, on the contrary, it is the stated public policy of this State to require such relief in connection with elections.

21.

Movants will be irreparably injured in the event the prayed for injunctive relief is not granted. Specifically, President Trump will be denied votes to which he is entitled in the electoral college and potentially denied election to the presidency. David Schaffer, will be denied his ability cast a vote as a member of the Electoral College for President Trump, and further his vote as a qualified Georgia voter will be diluted.

22.

It is further in the public interest and public policy to grant Movant's request for emergency injunctive relief so that Georgia voters can have confidence that the January 5, 2021, Senate election is conducted in accordance with the Election Code and is a "pure" election free from "misconduct, fraud or irregularity" that substantially alters the election.

23.

Movants are further entitled to the injunctive relief sought herein because there is a substantial likelihood of success on the merits as the alleged misconduct, fraud or irregularity calls into question validity of cast ballots that *exceed the delta of the votes* that Mr. Biden currently holds in the election above Petitioner Trump, as Candidate. These same irregularities, if not enjoined, shall substantially impact the upcoming Senate runoffs and will perpetuate fraud, misconduct and irregularity that is repugnant to our democratic process and the required "purity" (O.C.G.A. § 21-

2-31) of elections in the State of Georgia; and the certification will be put in place by a "Violator." (O.C.G.A. § 21-2-2(37))

24.

The damage to Petitioners is not readily compensable by money.

25.

The balance of equities favors entry of a temporary restraining order, interlocutory, and/or preliminary emergency injunctive relief, or other equitable relief imposed by this Honorable Court, against Respondents and would not be adverse to any conceivable legitimate public interest.

26.

As early as possible, notice to Respondents of this Second Motion for Emergency Injunctive Relief will be made via email and / or telephone.  Service of the Verified Petition is also in the process of being served on the State Election Board as required by law.

## ARGUMENT AND CITATION OF AUTHORITIES

Pursuant to O.C.G.A. § 9-11-65 *et seq.*, a temporary restraining order and an interlocutory injunction may be issued *if it clearly appears from specific facts shown by* an affidavit or by *the Verified Complaint that immediate and irreparable injury, loss or damage will result to Plaintiff.* O.C.G.A. § 9-11-65 *et seq.* (Emphasis added.) An interlocutory injunction and TRO "are designed to preserve the status quo pending a final adjudication of the case, and in so doing, the trial court must balance the conveniences of the parties pending the final adjudication, with consideration being given to whether greater harm might come from granting the injunction or denying it." *Bijou Salon & Spa, LLC v. Kensington Enterprises, Inc.*, 283 Ga. App. 857, 860, 643 S.E.2d 531 (2007).

A trial court "may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction." *Hampton Island Founders v. Liberty Capital,* 283 Ga. 289, 293, 658 S.E.2d 619 (2008). ***"There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." Id.*** (Emphasis added.) The granting and continuing of injunctions "shall always rest in the sound discretion of the judge, according to the circumstances of each case" and "this power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." *O. C. G.A. § 9-5-8.* Moreover, equity itself requires under O.C.G.A. § 5-9-1, 23-3-1 *et seq.* that this Honorable Court exercise its inherently vested "equitable powers" to impose extraordinary measures through equitable relief.

Here, it clearly appears from the Verified Petition and from the impending certification of the 2020 election has been tainted by misconduct, fraud or irregularity based on evidence that sufficiently may change the outcome of the 2020 and 2021 elections or place in doubt the result of same, that there is a vital necessity for the issuance of the injunction; otherwise, Petitioners will be irreparably harmed and the entire election process shall be called into doubt.

First, as many as 2,560 felons with uncompleted sentences were allowed to register to vote and cast ballots.

Second, at least 66,247 under-aged and therefore ineligible people illegally registered to vote and subsequently voted.

Third, 4,926 individuals registered to vote in another state after having registered in Georgia, effectively unregistering them as qualified voters in Georgia. At least 395 such individuals voted.

Fourth, at least 15,700 individuals voted in Georgia who filed a national change of address form with the United States Post office.

Fifth, at least 40,279 individuals who moved across counties lines at least 30 days prior to Election Day and failed to reregister after having moved voted.

Sixth, 1,043 registered to vote using a post office box as their habitation in violation of state law.

Seventh, as many as 10,315 deceased persons voted in the Contested Election.

Eight, Respondents violated state law with respect to signature verification of absentee ballots.

Ninth, Respondents allowed at least 92 individuals to vote whose absentee ballots were returned and accepted prior to the individual requesting an absentee ballot.

Tenth, Respondents allowed at least 50 individuals to vote whose absentee ballots were returned prior to the earliest date that absentee ballots were permitted by law to be sent out.

Eleventh, the Secretary of State has admitted that multiple county election boards, supervisors, employees, election officials and their agents failed to follow the Election Code and State election Board Rules and Regulations, and called for several resignations.

Twelfth, Fulton County committed fraud with how they claimed a "pipe burst" and when they claimed they had finished counting ballots for the night and required all Republican monitors and members of the public to leave the State Farm Arena before they resumed counting ballots.

Thirteenth, the Board of Elections and Registration of Coffee County submitted a letter to the Georgia Secretary of State regarding inconsistencies with its electronic recount performed and regarding its refusal to certify electronic results (which is attached to the Amended Petition) and a letter to the Georgia House Governmental Affairs Committee containing an election summary report containing inconsistencies (which is attached hereto as **Exhibit A**).  And the Supervisor of the Coffee County Board of Elections is recorded on video depicting systematic problems with their voting tabulation machines.  A copy of this video will be provided to the Court and has been tendered as part of Exhibit 17 to the Petition.  There are also photographs attached to an exhibit of an election official monitor ignoring his official duties.  *See* (**Exhibit B** attached hereto and incorporated herein).

Fifteenth, there are a myriad of other election irregularities detailed in the Complaint and its attached exhibits incorporated by reference herein.

Simply put, if immediate emergency injunctive relief is not granted, irreparable harm and injury to Petitioners will result.

WHEREFORE, Petitioners pray for the following relief:

(1)     That the Court and/or Special Master issue a RULE NISI *instanter* and that the Court conduct an emergency hearing on this Motion;

(2)     That the Court issue a temporary restraining order, interlocutory and preliminary injunction, and/or other injunction or equitable relief in favor of Petitioners;

(3)     That the Court grant expedited discovery proceedings in this action, and limit the time for response accordingly along with entry of any applicable or necessary Protective

Orders to protect personal identifying information and other potentially sensitive information;

(4)     And for such other and further relief as is just, proper and equitable.

Respectfully submitted, this 11th day of December 2020.

THE HILBERT LAW FIRM , LLC

Kurt R. Hilbert
Georgia Bar No. 352877
Attorneys for Petitioners

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

15

# COFFEE COUNTY BOARD OF
# ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
**Misty Martin**, Election Supervisor
Jil Ridlehoover Elections Assistant

12/04/2020

Brad Raffensperger
214 State Capitol
Atlanta, GA. 30334

Dear Mr. Raffensperger,

The Coffee County Board of Elections and Registration cannot certify the electronic recount numbers given its inability to repeatably duplicate creditable election results. Any system, financial, voting, or otherwise, that is not repeatable nor dependable should not be used. To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount.

I am enclosing a spread sheet which illuminates that the electronic recount lacks credibility. NO local election board has the ability to reconcile the anomalies reflected in the attached. Accordingly, the Coffee County Board of Elections and Registration have voted to certify the votes cast in the election night report. The election night numbers are reflected in the official certification of results submitted by our office.

Respectfully,
Coffee County Board of Elections and Registration

Ernestine Thomas-Clark
Chairperson
Signed by Chairperson by expressed permission and consent of 100% of the board.

cc
Dominic LaRiccia
Tyler Harper



EXHIBIT
4

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | No Vote* | Total Votes | Internal Delta | Total Delta | Net Discrepency Between Total and Internal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 40 | 15237 | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | NA | 15238 | | | |
| | Compare 2 to 1 | | 0 | 0 | +1 | NA | NA | +1 | +1 | +1 | 0 |
| 11/30/2020 | Electronic Recount | 3 | 10596 | 4518 | 13 | 0 | 15 | 15127 | | | |
| | Compare 3 to 1 | | +18 | +7 | -112 | | | -110 | -87 | -110 | +23 |
| | Compare 3 to 2 | | +18 | +7 | -112 | | | -110 | -88 | -110 | +22 |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | 74 | NO CHANGE | | | |
| | The tabluated Electonic Recount revealed the above discrepencies | | | | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos:  we then ran these ballots | | | | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | | | | |
| | The Dominion Rep directed the Board of Elections to make a decision about what to do. | | | | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | | | 15236 | | | |
| | Compare 5 to 1 | | +19 | +9 | +9 | | | -1 | +37 | +16 | +21 |
| | Compare 5 to 2 | | +19 | +9 | +9 | | | -2 | +38 | +16 | +22 |
| | There is a discrepency between Electronic Recount and total votes for both 1 & 2 | | | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount. | | | | | | | | | | |
| | Anomilies in software recounts create irreconciable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | | | | |

# COFFEE COUNTY BOARD OF
# ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

**224 West Ashley Street**
**Douglas, GA 31533**
**(912) 384-7018**
**FAX (912) 384-1343**
E-Mail: misty.hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
**Misty Martin**, Election Supervisor
Jil Ridlehoover, Elections Assistant

December 10, 2020

House Governmental Affairs Committee
Elections Investigative Hearing
Shaw Blackmon – Chairman
401 State Capitol
Atlanta, Ga. 30334

We want to thank the Governmental Affairs Committee for allowing the Coffee County Board of Election's to express its dilemma regarding certifying the electronic recount performed in the November 3, 2020 General Election. As you know, the certification process requires the Election Supervisor to swear under oath and under penalty of perjury that the certified votes are a true and accurate reflection of the count, or recount. In the instant case, the Election Supervisor of Coffee County could not honestly make such an attestation given the inherent inconsistencies existing within the electronic summary report generated by the Dominion voting system.

The basis for the dilemma is simple the election summary report for the electronic recount tabulated votes in a manner that resulted in more collective votes being cast for the Presidential candidates than the total number of votes reflected within the report. The inconsistent count could not be reconciled.

This fact (inherent inconsistency) alone was grounds not to certify the election based on the Dominion data set and report. However, the reluctance to certify the electronic recount was compounded where those results were considered in context with the two prior vote count results.

As this committee knows, a hand count of the original General Election balloting occurred on November 16 – November 17. Coffee County's hand count yielded one more ballot than was reflected on the ballot count on election night. At the direction of the Secretary of State, if the hand count yields a net vote difference of less than five votes, the board was instructed to certify the original vote tally. Coffee County certified on the original elections results on November 9, 2020.

The election report used to certify the original election results was internally consistent, meaning that the sum of the votes for each presidential candidate equaled the total votes reflected on the report. The hand count also yielded the same internal consistency within the report. See Exhibit 5. It is worth noting that we believe Dominion election reports generated in prior elections were likewise internally consistent. The internal inconsistency of the election summary report stands in stark contrast to all other prior elections.

To this application we have attached the following exhibits:

Exhibit 1:     Election Night Summary Report
Exhibit 2:     Recount Data



Exhibit 3:     Electronic Electron Summary Report
Exhibit 4:     Letter to Secretary of State
Exhibit 5:     Spreadsheet with results (corrected)
Exhibit 6:     Certification Form

Exhibit 5 is a spreadsheet that summarizes the discrepancies thus far described. A review of Exhibit 5 illustrates the two glaring problems presented to the Coffee County Board of Elections. The report relating to the recount is patently inaccurate on its face. Moreover, if one is to consider the electronic recount in light of the two prior vote counts, there is no way the vote tally reflected in that report could be accurate. It is not credible to accept that the original count and the hand count, under counted the total ballots by material number of ballots. Considering the inherent inconsistency of the electronic recount data, and its unlikely accuracy when compared to the first two vote counts, the Coffee County Board of Elections refused to certify the electronic recount based on the mandate of the certification form.

The decision not to certify the electronic recount was the result of a unanimous vote by Coffee County Board of Elections. However, this decision was not made until the Board could first have the data reviewed and explained by its Dominion representative. The data reflected in this statement was presented to the representative. He had NO explanation for the inaccuracies. He could not reconcile the electronic recount report data or explain how it so dramatically differed from the two prior counts. Knowing this decision would certainly be scrutinized, the Board sent a letter explaining its dilemma, its decision and the supporting spreadsheet to the Secretary of State. This letter was sent to Brad Raffensperger, on Friday, December 4, 2020.

That same day, the Election Supervisor also communicated directly with Chris Harvey, Director of Elections about the findings and the decision. No one could explain what was wrong or what to do. No one from the Secretary of State's office came to help the Board determine if it made an error or if the inaccuracies are Dominion software related.

This committee must understand, in this same election cycle, we identified other problems with the Dominion System and reported the same to the Secretary of State. On November 13, 2020 a letter was written to the Secretary of State identifying other serious concerns. A copy of that letter and other relevant documents are attached as Exhibit 7. Our Board members and Election Supervisor have called the Secretary of State's office to both report these issues as well as ask for help to address those problems. All our concerns and requests for help have fallen on deaf ears.

One can understand why today, December 10, 2020, our Board is dismayed to learn that the Secretary of State has opened an "investigation" into our handling of the recount. We learned this not from the Secretary of State but through WALB News where Chris Harvey provided a statement for the media. Mr. Harvey did not show us the courtesy of a phone call.

The same is true as relates to a video created at a Coffee County Board of Elections meeting which is now widely distributed via the internet. This video demonstrates how the Dominion system can be manipulated to alter existing ballot results or create voter ballots out of thin air. This security issue was first discovered by the Coffee County Board of Elections supervisor in June, 2020. It was made known to some but not all of the Board members. Importantly however, the findings were reported to our State Representative  Dominic LaRiccia on or about June 10, 2020, with the hope that someone unassociated with Dominion would scrutinize this problem. The board never heard a word from Mr. LaRiccia or anyone from the Secretary of State's office or state government.

After the Presidential election was over, national attention focused on whether Dominion software could be manipulated to impact election results. Having previously demonstrated this fact, the full Board wanted to have this process documented during an open meeting. The video that captured this demonstration, along with other documents were requested to be produced via an Open Records Request. The content became public knowledge through this third-party request.

The Coffee County Board of Elections has for many months reported various aspects of these problems to the Secretary of State receiving no assistance in correcting these problems. As for the investigation, the Secretary of State <u>chose not</u> to assist us or help evaluate the root cause of the refusal to certify the election recount but certified the statewide election results despite our findings. The Coffee County Board of Elections took action which it believed accurately reflected the accurate vote of its citizens and certified that vote. If it has done so erroneously, it has been done, not nefariously or belligerently but honestly, humbly and with but one goal: to certify the true vote of the citizens of Coffee County.

This is particularly disappointing given that Eric Chaney personally called Chris Harvey and Dennis Carbone on November 13, 2020 to express his concerns over the Dominion System. Mr. Harvey nor Mr. Carbone returned this phone call. But the deafening silence from people in authority regarding our concerns go back to June 2020; their indifference is unfortunate.

As Exhibit 8 we have attached a list of individuals who, prior to Monday December 7, 2020, were made aware of some or all of the problems reflected in this statement. Not one person has offered any solution or explanation for these issues. The Secretary of State has been AWOL.

We look forward to our "investigation" which begins Friday. We stand ready to take any necessary action to correct any problems which are supported by the law and facts, even if we mistakenly erred in our decisions.

Respectfully,

Eric Chaney
Coffee County Board Member

# EXHIBIT LIST

1. Election night summary report
2. Hand recount election summary
3. Electronic recount ESR
4. Letter to Secretary State (Dec. 4th, 2020)
5. Spread sheet summary election results (correction)
6. Certification form
7. Letter to Secretary of State (Nov 11th, 2020)
8. People aware of problems prior to Monday Dec 7th, 2020

# EXHIBIT 1

# Election Summary Report

General Election

COFFEE

November 03, 2020

Summary for: All Contests, All Districts, All Tabulators, All Counting Groups

OFFICIAL AND COMPLETE

Precincts Reported: 6 of 6 (100.00%)

Registered Voters: 15,277 of 25,114 (60.83%)

Ballots Cast: 15,277

## President of the United States (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Donald J. Trump (I) (Rep) | | 2,587 | 7,066 | 917 | 8 | 10,578 |
| Joseph R. Biden (Dem) | | 1,100 | 2,411 | 995 | 5 | 4,511 |
| Jo Jorgensen (Lib) | | 41 | 67 | 17 | 0 | 125 |
| Total Votes | | 3,728 | 9,544 | 1,929 | 13 | 15,214 |

| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Unresolved Write-In | | 10 | 12 | 1 | 0 | 23 |

## US Senate (Perdue) (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| David A. Perdue (I) (Rep) | | 2,535 | 6,981 | 899 | 9 | 10,424 |
| Jon Ossoff (Dem) | | 1,067 | 2,298 | 913 | 3 | 4,281 |
| Shane Hazel (Lib) | | 85 | 155 | 46 | 0 | 286 |
| Total Votes | | 3,687 | 9,434 | 1,858 | 12 | 14,991 |

| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In | | 5 | 8 | 1 | 0 | 14 |

# Public Service Commission District 4 (Vote for 1)
# NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Lauren Bubba McDonald, Jr. (I) (Rep) | | 2,375 | 6,662 | 871 | 7 | 9,915 |
| Daniel Blackman (Dem) | | 1,008 | 2,156 | 910 | 3 | 4,077 |
| Nathan Wilson (Lib) | | 87 | 144 | 37 | 1 | 269 |
| Total Votes | | 3,470 | 8,962 | 1,818 | 11 | 14,261 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 2 | 4 | 2 | 0 | 8 |

# US House District 12 (Vote for 1)
# NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Rick W. Allen (I) (Rep) | | 2,483 | 6,909 | 916 | 7 | 10,315 |
| Liz Johnson (Dem) | | 1,054 | 2,247 | 938 | 4 | 4,243 |
| Total Votes | | 3,537 | 9,156 | 1,854 | 11 | 14,558 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 1 | 3 | 0 | 0 | 4 |

# State Senate District 7 (Vote for 1)
# NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Tyler Harper (I) (Rep) | | 2,948 | 7,790 | 1,216 | 7 | 11,961 |
| Total Votes | | 2,948 | 7,790 | 1,216 | 7 | 11,961 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 54 | 166 | 51 | 0 | 271 |

## Sheriff (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Doyle T. Wooten (I) (Rep) |  | 3,058 | 8,018 | 1,396 | 9 | 12,481 |  |
| Total Votes |  | 3,058 | 8,018 | 1,396 | 9 | 12,481 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 49 | 124 | 44 | 0 | 217 |  |

## Tax Commissioner (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Shanda Henderson (I) (Rep) |  | 3,132 | 8,175 | 1,412 | 9 | 12,728 |  |
| Total Votes |  | 3,132 | 8,175 | 1,412 | 9 | 12,728 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 15 | 61 | 33 | 0 | 109 |  |

## Surveyor (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Adam H. Evans (I) (Rep) |  | 3,004 | 7,933 | 1,350 | 9 | 12,296 |  |
| Total Votes |  | 3,004 | 7,933 | 1,350 | 9 | 12,296 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 18 | 66 | 26 | 0 | 110 |  |

## County Commission District 5 (Vote for 1)
## NP

Precincts Reported: 5 of 5 (100.00%)

| | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 1,134 | 1,916 | 345 | 6 | 3,401 / 5,144 | 66.12% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Ted Osteen (I) (Rep) | | 946 | 1,604 | 255 | 1 | 2,806 |
| Total Votes | | 946 | 1,604 | 255 | 1 | 2,806 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 7 | 9 | 0 | 16 |

## Soil and Water - Altamaha (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Total Votes | | 0 | 0 | 0 | 0 | 0 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 412 | 938 | 178 | 0 | 1,528 |

## Constitutional Amendment #1 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| YES | | 2,520 | 6,513 | 1,342 | 5 | 10,380 |
| NO | | 827 | 2,133 | 399 | 3 | 3,362 |
| Total Votes | | 3,347 | 8,646 | 1,741 | 8 | 13,742 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 0 | 0 | 0 | 0 |

# EXHIBIT 2

## Hand Recount Recap

####### BATCH RESULTS #######

| Jurisdiction | Batch Name | Batch Type | Trump | Biden | Jorgensen | Invalid Write-In | Valid Write-iin | Blank/Unde | Overvote |
|---|---|---|---|---|---|---|---|---|---|
| COFFEE | 1 | Absentee By Mail | 441 | 1 | 17 | 0 | 0 | 0 | 0 |
| COFFEE | 2 | Absentee By Mail | 484 | 527 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 3 | Absentee By Mail | 0 | 474 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 10 | Election Day | 376 | 565 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 11 | Election Day | 879 | 185 | 95 | 0 | 0 | 0 | 0 |
| COFFEE | 12 | Election Day | 489 | 182 | 13 | 0 | 0 | 0 | 0 |
| COFFEE | 13 | Election Day | 625 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 14 | Election Day | 872 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 15 | Election Day | 966 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 16 | Election Day | 1071 | 430 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 17 | Election Day | 0 | 0 | 0 | 23 | 0 | 0 | 0 |
| COFFEE | 4 | Election Day | 393 | 8 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 5 | Election Day | 1046 | 7 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 6 | Election Day | 866 | 639 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 7 | Election Day | 461 | 592 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 8 | Election Day | 674 | 316 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 9 | Election Day | 935 | 585 | 0 | 0 | 0 | 0 | 0 |
| | | Election Day | 9653 | 3509 | 17 | 23 | | 13202 | Total Votes |
| | | Absentee By Mail | 925 | 1002 | 108 | | | 2035 | Total Votes |

10588   4518   125

15,237 *

This total did not include the additional ballot (15,238) based on SoS guidance.

# EXHIBIT 3

# Election Summary Report

General Election

COFFEE

November 03, 2020

Summary for: All Contests, All Districts, All Tabulators, All Counting Groups

OFFICIAL AND COMPLETE RECOUNT

Precincts Reported: 6 of 6 (100.00%)

Registered Voters: 15,327 of 25,114 (61.03%)

Ballots Cast: 15,327

## President of the United States (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Donald J. Trump (I) (Rep) | | 9,671 | 0 | 926 | 0 | 10,597 |
| Joseph R. Biden (Dem) | | 3,519 | 0 | 1,001 | 0 | 4,520 |
| Jo Jorgensen (Lib) | | 119 | 0 | 17 | 0 | 136 |
| Total Votes | | 13,309 | 0 | 1,944 | 0 | 15,253 |

| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 |
| Unresolved Write-In | | 5 | 0 | 0 | 0 | 5 |

## US Senate (Perdue) (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| David A. Perdue (I) (Rep) | | 9,525 | 0 | 906 | 0 | 10,431 |
| Jon Ossoff (Dem) | | 3,375 | 0 | 917 | 0 | 4,292 |
| Shane Hazel (Lib) | | 248 | 0 | 45 | 0 | 293 |
| Total Votes | | 13,148 | 0 | 1,868 | 0 | 15,016 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 13 | 0 | 1 | 0 | 14 |

## Public Service Commission District 4 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Lauren Bubba McDonald, Jr. (I) (Rep) | | 9,037 | 0 | 873 | 0 | 9,910 |
| Daniel Blackman (Dem) | | 3,167 | 0 | 912 | 0 | 4,079 |
| Nathan Wilson (Lib) | | 237 | 0 | 38 | 0 | 275 |
| Total Votes | | 12,441 | 0 | 1,823 | 0 | 14,264 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 6 | 0 | 2 | 0 | 8 |

## US House District 12 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Rick W. Allen (I) (Rep) | | 9,398 | 0 | 921 | 0 | 10,319 |
| Liz Johnson (Dem) | | 3,308 | 0 | 939 | 0 | 4,247 |
| Total Votes | | 12,706 | 0 | 1,860 | 0 | 14,566 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 4 | 0 | 0 | 0 | 4 |

## State Senate District 7 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Tyler Harper (I) (Rep) | | 10,743 | 0 | 1,219 | 0 | 11,962 |
| Total Votes | | 10,743 | 0 | 1,219 | 0 | 11,962 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 219 | 0 | 53 | 0 | 272 |

12/2/2020 5:24:08 PM

## Sheriff (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Doyle T. Wooten (I) (Rep) | | 11,081 | 0 | 1,396 | 0 | 12,477 | |
| Total Votes | | 11,081 | 0 | 1,396 | 0 | 12,477 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 173 | 0 | 46 | 0 | 219 | |

## Tax Commissioner (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Shanda Henderson (I) (Rep) | | 11,314 | 0 | 1,414 | 0 | 12,728 | |
| Total Votes | | 11,314 | 0 | 1,414 | 0 | 12,728 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 76 | 0 | 35 | 0 | 111 | |

## Surveyor (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Adam H. Evans (I) (Rep) | | 10,944 | 0 | 1,352 | 0 | 12,296 | |
| Total Votes | | 10,944 | 0 | 1,352 | 0 | 12,296 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 84 | 0 | 28 | 0 | 112 | |

## County Commission District 5 (Vote for 1)
## NP

Precincts Reported: 5 of 5 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | | Total | |
|---|---|---|---|---|---|---|---|---|
| Times Cast | | 3,066 | 0 | 350 | 0 | | 3,416 / 5,144 | 66.41% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|---|
| Ted Osteen (I) (Rep) | | 2,553 | 0 | 255 | 0 | | 2,808 |
| Total Votes | | 2,553 | 0 | 255 | 0 | | 2,808 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In | 7 | 0 | 9 | 0 | | 16 |

## Soil and Water - Altamaha (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | | Total | |
|---|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|---|
| Total Votes | | 0 | | | | | |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In | 1,350 | 0 | 178 | 0 | | 1,528 |

## Constitutional Amendment #1 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | | Total | |
|---|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|---|
| YES | | 9,041 | 0 | 1,342 | 0 | | 10,383 |
| NO | | 2,961 | 0 | 399 | 0 | | 3,360 |
| Total Votes | | 12,002 | 0 | 1,741 | 0 | | 13,743 |

| | Election Day | Advanced Voting | Absentee by Mail | Provisional | | Total |
|---|---|---|---|---|---|---|
| Unresolved Write-In | 0 | 0 | 0 | 0 | | 0 |

# EXHIBIT 4

### COFFEE COUNTY BOARD OF
### ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
**Misty Martin**, Election Supervisor
Jil Ridlehoover Elections Assistant

12/04/2020

Brad Raffensperger
214 State Capitol
Atlanta, GA. 30334

Dear Mr. Raffensperger,

The Coffee County Board of Elections and Registration cannot certify the electronic recount numbers given its inability to repeatably duplicate creditable election results. Any system, financial, voting, or otherwise, that is not repeatable nor dependable should not be used. To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount.

I am enclosing a spread sheet which illuminates that the electronic recount lacks credibility. NO local election board has the ability to reconcile the anomalies reflected in the attached. Accordingly, the Coffee County Board of Elections and Registration have voted to certify the votes cast in the election night report. The election night numbers are reflected in the official certification of results submitted by our office.

Respectfully,
Coffee County Board of Elections and Registration

Ernestine Thomas-Clark
Chairperson
Signed by Chairperson by expressed permission and consent of 100% of the board.

cc
Dominic LaRiccia
Tyler Harper

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | No Vote* | Total Votes | Internal Delta | Total Delta | Net Discrepency Between Total and Internal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 40 | 15237 | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | NA | 15238 | | | |
| | Compare 2 to 1 | | 0 | 0 | +1 | NA | NA | +1 | +1 | +1 | 0 |
| 11/30/2020 | Electronic Recount | 3 | 10596 | 4518 | 13 | 0 | 15 | 15127 | | | |
| | Compare 3 to 1 | | +18 | +7 | -112 | | | -110 | -87 | -110 | +23 |
| | Compare 3 to 2 | | +18 | +7 | -112 | | | -110 | -88 | -110 | +22 |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | 74 | NO CHANGE | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | | | 15236 | | | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | -1 | +37 | +16 | +23 |
| | Compare 5 to 2 | | +19 | +9 | +11 | | | -2 | +38 | +16 | +24 |

The tabulated Electronic Recount revealed the above discrepencies

Investigation revealed we negelected to run 185 ballots; we then ran these ballots

we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added

The on Site Dominion Rep could not explain why system would not update votes

The Dominion Rep directed the Board of Elections to make a decision about what to do.

FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY

THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM

There is a discrepency between Electronic Recount and total votes for both 1 & 2

Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount.

Anomilies in software recounts create irreconciable difference in vote count which leaves the Board with no clear guidance as to which count to certify.

* Write-IN and NO Votes are NOT included in the Total Votes

# EXHIBIT 5

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | Total Votes | Internal Delta |
|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 15237 | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | 15238 | |
| | Compare 2 to 1 | | 0 | 0 | +1 | | +1 | +1 |
| 11/30/2020 | Electronic Recount | 3 | 10597 | 4520 | 136 | 0 | 15258 | |
| | Compare 3 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 3 to 2 | | +19 | +9 | +12 | | | +40 |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | NO CHANGE | |
| | The tabluated Electonic Recount revealed the above discrepencies | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos:  we then ran these ballots | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | |
| | The Dominion Rep directed the Board of Elections  to make a decision about what to do. | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | 5 | 15258 | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 5 to 2 | | +19 | +9 | +12 | | | +40 |
| | There is a discrepancy between Electronic Recount and total votes for both 1 & 2 | | | | | | | |
| | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orginal election counts, the hand recount, and the electronic recount. | | | | | | | |
| | | | | | | | | |
| | Anomilies in software recounts create irreconcilable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | |
| | | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | |

Revised 12/10/2020

# EXHIBIT 6

## CERTIFICATION OF RETURNS FOR:

NOVEMBER 3, 2020 GENERAL ELECTION  RECOUNT

_____
(COUNTY)

---

Instructions: Prepare and print 4 copies of fhe Election Summary for the General Election (county consolidated vote totals report that is generated by EMS).
Attach copies of this consolidated certification report as follows:

1. White sheet is attached to Election Summary and returned to Secretary of State.
2. Yellow sheet is attached to Election Summary and maintained by Superintendent.
3. Pink sheet is attached to Election Summary and sent to Clerk of Superior Court.
4. Goldenrod sheet is attached to Election Summary and immediately posted at the Courthouse.

ELECTION SUMMARY MUST BE ATTACHED TO THIS FORM

---

We, the undersigned Superintendent/Supervisor of Elections and his/her Assistants, do jointly and severally certify that the attached Election Summary is a true and correct count of the votes cast in this County for the candidates in the General Election.
In TESTIMONY WHEREOF, We have hereunto set our hands and seals this _____ day of
_____, 20 _____ . SIGNED IN QUADRUPLICATE.

_____ Assistant        _____
_____ Assistant        Superintendent/Supervisor Of Elections
_____ Assistant
_____ Assistant
_____ Assistant

CR-GE-20

# EXHIBIT 7

# COFFEE COUNTY BOARD OF
## ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there

is no accountability.  We also believe that the adjudication process may not be observed from any distance beyond that of the operator of the ICC.  Given the computer screen it is not possible to observe the change being completed from any further distance.

In a Mockup election we were able to count ballot multiple times.  It was during this mockup election we have verified and recreated the above deficiencies

Respectfully,

Ernestine Thomas-Clark

Wendell Stone

Matthew McCullough

Eric Chaney

Delivered by: Overnight and fax  404-656-0513

Transmission Log

Coffee Co Commission                 Friday, 2020-11-13  16:28                   9123840291

| Date | Time | Type | Job # | Length | Speed | Fax Name/Number | Pgs | Status |
| ---- | ---- | ---- | ----- | ------ | ----- | --------------- | --- | ------ |
| 2020-11-13 | 16:27 | SCAN | 09289 | 0:32 | 14400 | 814046560513 | 1 | OK -- V.17 AB31 |

---

**COFFEE COUNTY BOARD OF
ELECTIONS AND REGISTRATION**
224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jill Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of
Elections and Registration discovered deficiencies in the current Dominion
election system. We are writing to ensure you are aware of these and that they
may be immediately rectified.

The adjudication process allows the ICC operator to choose how
adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank
ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate
and change votes on all ballots, even if the ballot was correctly and cleanly
voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors
would duplicate the voter's intent on a new ballot on all races possible. A
representative from the Democratic and Republican Party plus a board
member, would all agree on the marking or duplicating the ballot. We, also,
all 3 sign the top tab of the ballot that we attach to the void ballot so that we
may recreate the process and see who was making the changes. We have
proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail
can be created. This allows ANYONE to make a change to the vote so there

# USPS Tracking®

FAQs >

Track Another Package +

Tracking Number: EJ475214345US

Remove X

Scheduled Delivery by

## MONDAY

# 16 NOVEMBER 2020 ⓘ

by
**3:00pm** ⓘ

## Delivery Attempt

November 14, 2020 at 10:09 am
Delivery Attempted - No Access to Delivery Location
30334

Get Updates ⌄

Feedback

Text & Email Updates                                                      ⌃

Select what types of updates you'd like to receive and how. Send me a notification for:

| Text | Email | |
|---|---|---|
| ☐ | ☐ | All Below Updates |
| ☐ | ☐ | Expected Delivery Updates ⓘ |
| ☐ | ☐ | Day of Delivery Updates ⓘ |
| ☐ | ☐ | Package Delivered ⓘ |
| ☐ | ☐ | Available for Pickup ⓘ |
| ☐ | ☐ | Delivery Exception Updates ⓘ |
| ☐ | ☐ | Package In-Transit Updates ⓘ |

Proof of Delivery                                                          ⌃

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=EJ475214345US

EXHIBIT 8

The following 15 people have received calls or letters identifying the following cartological problems with the Dominion software and other issues.

1. The adjudication processes and the ability to manipulate votes
2. The absence of audit trail to identify who changed data in adjudication process and who witnessed to the adjudication of any given ballot.
3. Change by the SOS in the adjudication process changing the old system which required a rep from each party, plus a board member, to determine the voter's intent.

  Under the Dominion adjudication process anyone can adjudicate change a vote with out any oversite or accountability from any neutral 3 party.  A single ballot can be scanned and counted multiple times.

4. Multiple complaints and concerns have been logged over training, equipment failure and inexplicable software anomalies.

Secretary of State Brad Raffensperger

Gary Gainous _ Dominion Tech

Dominic LaRiccia – State House Representatives for Dist 169 6/10

Butch Miller – Senator 12/3

Mike Dugan – Senator 12/3

Steve Gooch – Senator 12/3

John Kennedy – Senator 12/3

Larry Walker – Senator 12/3

Dean Burke – Senator 12/3

Tyler Harper – Senator 12/3

Blake Tillery 12/3 & 12/4

Cardan Summers 12/3 & 12/8

Cathy Latham 12/7 & 12/8

Whitney Argenbright – Albany News - 12/7

Robert Preston 12/7 & 12/8

Brad Schrade with AJC 12/8



COFFEE COUNTY CLERK/ELECTION OFFICIAL
VIDEO OF VOTING EQUIPMENT USE

STATE OF GEORGIA

COUNTY OF FULTON

Personally appeared before me, the undersigned officer duly authorized to administer oaths, **MARK AMICK**, who, after having been sworn, deposes and says as follows:

On October 23, 2020, I was recognized by the Secretary of State of the State of Georgia as having been designated by the Republican Party of Georgia to serve as a statewide poll watcher for the November 3, 2020 election.

On November 6, I was at State Farm Arena from 8:20 a.m. until approximately 10:15 p.m. where Fulton County election workers were processing provisional ballots, military ballots (UOCAVA), and absentee ballots. I left the premises only between 6:30 and 7:20 p.m. in order to get dinner.

I observed that there was present a representative from the Office of the Secretary of State ("SOS representative") on site. However, this person provided virtually no oversight to the processing and counting of the ballots, instead spending the vast majority of his time at the back of the observation area on his phone.

There were tables and chairs situated in the front part of the viewing area from which one could observe the processing of the ballots at a distance. I arrived in the room by 8:30 a.m. and remained seated or standing at these tables the entire time observing the processing of the ballots except for a few brief restroom breaks and leaving for dinner between 6:30 and 7:20 p.m. Fulton County election workers started processing the ballots at approximately 8:50 a.m.

The SOS representative entered the viewing area sometime in the late morning. I observed that the SOS representative was sitting in the back of the room not observing the processing of the ballots almost the entire time that he was there. Rather than sitting at the tables and chairs provided closest to the area where the ballots were being processed, the SOS representative sat in the back of the room an estimated fifteen to twenty feet further away which would have made it extremely difficult to observe the processing of the ballots in addition to observers sitting in front as well as two camera crews obscuring his view. In addition, the SOS representative was on his phone appearing to be disengaged from the process almost the entire time he was there.

At 1:35pm, a Supervisor stood in the middle of the room to address the workers. The SOS representative was on the floor with him briefly at this time. This was the first time I had actually seen him out on the floor by the workers even though the work had stopped at this time. Upon the end of the announcement, he returned to his chair in the back of the observation area. I observed that the SOS representative in the back of the viewing room on his phone and not watching the processing of the ballots also throughout the afternoon and evening except for two brief stretches as follows. Attached to this affidavit is Exhibit A which includes several images of the SOS representative sitting as described in the back of the room on his phone over my


EXHIBIT
B

shoulder. What follows are the various activities of the SOS representative I observed that afternoon:

- o   4:00 pm – The SOS representative left the room and returned soon after.

- o   5:00 pm (approximately) – The SOS representative took a phone call in the hall.

- o   5:15 pm (approximately) – The SOS representative stood by the door to the viewing room and watched for approximately 3 minutes. However, he did not enter the room to observe the processing of the ballots. His view would have been very limited from where he was standing at the door due to the configuration of the room.

- o   5:20 pm – The SOS representative left the room. He returned a few minutes later and stood at door.

- o   5:26 pm – The SOS representative left the room.  He returned a few minutes later.

- o   5:30 pm – The SOS representative left the room.

- o   5:39 pm – The SOS representative returned but someone was in his chair in the back corner so he sat at a different spot in the back along the wall.

- o   5:53 pm –The SOS representative walked into the area where they were processing the ballots and spoke with a supervisor.

- o   6:02 pm – The SOS returned to his chair in the back corner of the room and did not appear to be paying attention to the processing of the ballots.

- o   6:30 - 7:20 p.m. – I left to get dinner for myself and others.

- o   7:48 pm – The SOS representative was on the phone down the hall past the bathrooms.

- o   7:49 pm – Upon exiting the bathroom, the SOS representative was walking behind me and talking on the phone discussing some concern about the cost of parking.

- o   7:58 pm – The SOS representative was in the corner by the door and then went and sat outside the room.

- o   8:14 pm – The SOS representative returned to sitting at the back of the room as members of the media had come in and taken up more of the back wall.

- o   9:15 pm – The SOS representative was in hall and appeared to be socializing with an election worker or supervisor.

- o  9:22 pm – The worker or supervisor came back in and soon after that the SOS representative returned to his chair at the back of the room.

- o  10:15 pm – I left for the evening.

Other than a few minutes at approximately 1:35pm and 5:15 p.m. and for about 10 minutes at around 5:53 p.m., I personally observed that the SOS representative was not watching or monitoring the processing of the ballots at the State Farm Arena.

MARK AMICK



Sworn to and subscribed before me
this 9th day of November, 2020
and notarized by me on said day.

My commission expires:  2/3/2024

KAREN I HENTSCHEL
Notary Public, Georgia
Cobb County
My Commission Expires
February 03, 2024

Exhibit A

2:37pm



3:51pm



4:47pm



5:41pm



## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the above and foregoing *SECOND MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND INCORPORATED BRIEF IN SUPPORT* upon all parties and their counsel via this Court's e-file system, via STATUTORY ELECTRONIC SERVICE (O.C.G.A. § 9-11-5) and/or by placing a copy of the same in the United States mail, first class, with sufficient postage thereon to ensure delivery, addressed as follows:

Brad Raffensperger, in his official capacity as Secretary of State of Georgia

214 State Capitol
Atlanta, Georgia 30334


Rebecca N. Sullivan, in her official capacity as Vice Chair of the Georgia State Election Board,

214 State Capitol
Atlanta, Georgia 30334


David J. Worley, in his official capacity as a Member of the Georgia State Election Board

214 State Capitol
Atlanta, Georgia 30334


Matthew Mashburn, in his official capacity as a Member of the Georgia State Election Board

214 State Capitol
Atlanta, Georgia 30334


Anh Le, in her official capacity as a Member of the Georgia State Election Board

214 State Capitol

Atlanta, Georgia 30334


Richard L Barron in his official capacity as Director of Registration and Elections for Fulton County,

16

141 Pryor St. SW
Atlanta, GA 30303


Janine Eveler in her official capacity as Director of Registration and Elections for Cobb County


P.O. Box 649
Marietta, GA 30061-0649


Erica Hamilton, in her official capacity as Director of Voter Registration and Elections for
DeKalb County
1300 Commerce Drive
Decatur, GA 30030

Kristi Royston, in her official capacity as Elections Supervisor for Gwinnett County

455 Grayson Highway
Lawrenceville, GA 30046


Russell Bridges, in his official capacity as Elections Supervisor for Chatham County

1117 Eisenhower Drive, Suite F
Savannah, Georgia 31406


Anne Dover, in her official capacity as Acting Director of Elections and Voter Registration for
Cherokee County,
2782 Marietta Highway, Suite 100
Canton, GA 30114

Shauna Dozier, in her official capacity as Elections Director for Clayton County,

112 Smith Street
Jonesboro, GA 30236


Mandi Smith, in her official capacity as Director of Voter Registration and Elections for Forsyth
County
1201 Sawnee Drive
Cumming, GA 30040

Ameika Pitts, in her official capacity as Director of the Board of Elections & Registration for
Henry County,

17

140 Henry Parkway
McDonough, GA 30253

Lynn Bailey, in her official capacity as Executive Director of Elections for Richmond County

535 Telfair Street
Augusta, GA 30901

Debra Presswood, in her official capacity as Registration and Election Supervisor for Houston County

801 Main Street - Room 237, P.O. Box 945
Perry, GA 31069

Vanessa Waddell, in her capacity as Chief Clerk of Elections for Floyd County

12 East 4th Avenue, Suite 20
Rome, GA 30161

Julianne Roberts, in her official capacity as Supervisor of Elections and Voter Registration for Pickens County,
83 Pioneer Road
Jasper, GA 30143

Joseph Kirk, in his official capacity as Elections Supervisor for Bartow County

135 West Cherokee Avenue
Cartersville, GA 30120

Gerald McCown, in his official capacity as Elections Supervisor for Hancock County

12630 Broad Street
Sparta, GA 31087

This the 11th day of December, 2020.

THE HILBERT LAW FIRM , LLC

_____
Kurt R. Hilbert
Georgia Bar No. 352877

18

*Attorneys for Petitioners Donald J.*
*Trump and David Shafer*

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com