# EXHIBIT K

Fulton County Superior Court
***EFILED***MH
Date: 12/29/2020 5:53 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**DONALD J. TRUMP,** in his capacity as )
A Candidate for President, et al. )
)
      Petitioner, )    CIVIL ACTION
)     FILE NO: 2020CV343255
v. )
)
**BRAD RAFFENSPERGER,** in his official )
Capacity as Secretary of State of Georgia, )
et al. )
)
      Respondent. )

## RENEWED REQUEST TO IMMEDIATELY APPOINT ADMINISTRATIVE LAW JUDGE AND MOTION FOR RECONSIDERATION OF THE COURT'S STATUS ORDER OF DECEMBER 29, 2020 AND INCORPORATED BRIEF IN SUPPORT

**COME NOW**, Petitioners, by and through their counsel of record, and file this Renewed

Request to Immediately Appoint Administrative Law Judge and For Reconsideration of the

Court's December 29, 2020 Status Order respectfully showing as follows:

The Petitioners, including the President of the United States, again respectfully request that

this Honorable Court judiciously and expeditiously appoint a judge that is legally eligible to hear

this urgent and important case pursuant to O.C.G.A. § 21-2-523 *et seq.* In an abundance of caution,

Petitioners further request, therefore, that this Honorable Court deem any Notice of Appeal

previously filed be construed as withdrawn, especially since the Georgia Supreme Court dismissed

the appeal for lack of jurisdiction, and, therefore, the Court shall immediately cause a judge with

the requisite authority to be appointed. *Id.*

As the Court knows, this action was filed on December 4, 2020. It is presumed that Fulton

County Superior Clerk of Court did her constitutionally required job as well as complied with her

obligations under O.C.G.A. § 21-2-523(c), whereby, "Upon the filing of the contest petition, the

clerk of the superior court having jurisdiction shall *immediately* notify the administrative judge for the judicial administrative district in which that county lies…" (*emphasis added*) which automatically triggers this Court's obligations under O.C.G.A. § 21-2-523 (b) through (e).  Your Honor, Chief Judge Brasher, is the administrative judge for this District.  Unfortunately, to date, although notice has been completed, the appointment process has yet to happen, and a preliminary order was entered in the case stating that the case would proceed in the "normal course." Consequently, Petitioners ask the Court to appoint a proper judge – especially since the Supreme Court of Georgia rejected jurisdiction and/or Petitioners have now withdrawn any known appeal at the Court's request.

## I.      RELEVANT FACTS

The following procedural timeline and facts are outlined below to inform the Court of how this action got to its current status:

- **December 4, 2020**: Petitioners timely filed their Petition in Fulton County Superior Court. Petitioners' Prayer for Relief (¶ 1) includes a specific request for assignment to a judge that has standing to hear this matter. Additionally, due to the nature of the Petition both the Fulton County Superior Court Clerk and this Court were to coordinate and cooperate in expeditiously assigning this matter to a proper judge with authority to hear this case. The Clerk was also to issue "special process" to the Sheriff for timely service.  Rather, service by the Sheriff has been delayed, and the case was improperly assigned to Judge Constance C. Russell – who lacked authority to hear this case under O.C.G.A. § 21-2-523.  A true and

correct copy of the Petition (without Exhibits) is attached hereto and incorporated by reference as **EXHIBIT 1.**[1]

- **December 9, 2020:** Judge Constance C. Russell, lacking authority, issued an "Order On Case Status" stating that "…the action shall proceed in the normal course." No mention of the procedure set forth in O.C.G.A. § 21-2-523 was mentioned. A true and correct copy of the Order On Case Status is attached hereto and incorporated by reference as **EXHIBIT 2.**

- **December 10, 2020:** It appearing that no action would be taken by the Court to obtain the appointment of a judge with authority to hear the Petition, Petitioners unilaterally filed a Notice and Emergency Request to appoint an Administrative law Judge to comply with O.C.G.A. § 21-2-523 ("Notice"). This Notice, in detail, laid out the requirements and the factual predicate for why The Honorable Constance C. Russell could not actively preside over this election contest. A true and correct copy of Petitioner's Notice of Emergency Request to Appoint Administrative Law Judge is attached hereto and incorporated herein by reference as **EXHIBIT 3.**

- **December 11, 2020:** Without a proper judge or a hearing date, and now with the filing of a Second Emergency Motion for Injunctive Relief[2] pending as well as Judge Russell's improper Order stating that the Petition would run a "normal" scheduling course,

---

[1] Petitioners have since filed a motion for leave to amend and file its First Amended Petition, which is incorporated herein by reference.

[2] Petitioners withdrew their Emergency Motion to Enjoin the Secretary of State's 3rd Certification of the Presidential Election Results as the Secretary certified the results *prior* to the Petitioner's having a judge assigned and the hearing of the Emergency Motion. Consequently, Petitioners then filed on December 11, 2020 an Emergency Motion to Decertify the Election Results. Petitioner's Second *Emergency* Motion remains pending and in abeyance. A true and correct copy of Petitioner's Second Emergency Motion is attached hereto and incorporated herein by reference as **EXHIBIT 4.**

Petitioners felt compelled to file an Emergency Petition to the Supreme Court of Georgia to seek relief from the Order and to request extraordinary relief to adhere to the Election Code processes and to seek relief from the "normal course" ("Notice of Appeal"). The Notice of Appeal iterated the improper designation of Judge Russell, the improper order entered, and the lack of an eligible presiding judge. A true and correct copy of Petitioner's Notice of Appeal and Intention to Seek Writ of Certiorari to the Supreme Court of Georgia is attached hereto and incorporated by reference as **EXHIBIT 5.**

- **December 11, 2020:** This Honorable Court acknowledging Petitioners' "Notice of Emergency Request to Appoint Administrative Judge," unilaterally filed its own "Notice of Time for Response to Request To Appoint Administrative Law Judge." The Court asked that objections, if any, to the appointment be made prior to December 16, 2020. No objections were made within the time frame; yet no judge was appointed pursuant to O.C.G.A. § 21-2-523. A true and correct copy of the Court's Order is attached hereto and incorporated by reference as **EXHIBIT 6.**

- **December 12, 2020:** The very next day, the Supreme Court of Georgia rejected Petitioners' Emergency Petition for Writ of Certiorari of Judge Russell's "non-final order" because the "Court [Supreme Court of Georgia] lacks jurisdiction to consider the petition and dismisses it." To date, no remittitur has been filed by the Supreme Court of Georgia and it is a legal question whether such remittitur is required in this circumstance, and whether the Georgia Supreme Court has ever accepted or retained jurisdiction over this Election Contest. A true and correct copy of the Supreme Court's Order is attached hereto and incorporated by reference as **EXHIBIT 7.**

- **December 29, 2020:** This Honorable Court entered an order stating that "…this Court will not consider this request [to appoint a Judge] until either the appeal is concluded or the notice of appeal is withdrawn." A true and correct copy of this Court's Order is attached hereto and incorporated by reference as **EXHIBIT 8.**

- **December 29, 2020:** Petitioners file this renewed request for the Court to immediately appoint an Administrative Law Judge, and incorporated Motion for Reconsideration and within this request, withdrew any Notice of Appeal or other appeal.

## II.      ARGUMENT AND CITATION OF AUTHORITIES

The Court has not only the jurisdiction and authority to appoint a judge with standing to hear this Petition under O.C.G.A. § 21-2-523 (b) – (e), but Petitioners request this Court expeditiously make this appointment. The continued delay is becoming a denial of justice. Although this case is brought, in part, by the President of the United States and thus has high political sensitivities and ramifications, it is the *raison d'etre* of the Courts to handle such difficult cases and, above all else, certainly facilitate the procedural mechanisms necessary to afford Petitioners their day in court. Petitioners request neither greater nor lesser justice than available to any other legal person afforded under Georgia law.

It is unquestionable that this Honorable Court has jurisdiction to enter an order appointing an independent administrative judge. At the court's request, Petitioners have withdrawn any notice of appeal. Seventeen days have expired since the Georgia Supreme Court dismissed the emergency appeal. Eighteen days have expired since this Honorable Court entered its Order requesting that objections, if any, to the appointment be made prior to December 16, 2020. This objection deadline has expired. No objections were filed by any party on or before December 16, 2020. This matter is more than ripe to be assigned a judge with standing to hear this Petition.

Petitioners are unaware of any objection or other impediment, at this time, to the immediate appointment of an administrative law judge.  To not immediately appoint an eligible judge, who then follows the process under O.C.G.A. § 21-2-523 would be an abuse of discretion, and a manifest injustice at this juncture. *See Cuffie v. Armstrong*, 355 Ga. App. 471, 471, 843 S.E.2d 599, 601 (2020) citing *Bd. of Regents of the Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 15-16, 749 S.E.2d 23 (2013) (holding an appellate court reviews a trial court's denial of a motion for reconsideration for abuse of discretion. An abuse of discretion occurs where the trial court significantly misapplies the law or clearly errs in a material factual finding.); *Postell v. Alfa Ins. Corp.*, 332 Ga. App. 22, 28, 772 S.E.2d 793 (2015).  To not grant Petitioners request to simply comply with the Election Code appointment process *immediately*, especially since we have complied with this Court's request to withdraw any notice of appeal, is tantamount to an express violation of Constitutional due process. *See e.g., Chatman v. Mancill*, 280 Ga. 253, 256, 626 S.E.2d 102 (2006) (held due process violation considerations for inordinate appellate delays); *see also, Ferrell v. Young*, 323 Ga. App. 338, 342, 746 S.E.2d 167, 172 (2013) ("[A] statute which confers discretion upon a judge to decide a particular question also imposes a correlative duty to exercise that discretion when the occasion arises.")

**WHEREFORE**, Petitioners respectfully request that this Honorable Court immediately appoint an administrative law judge, who then will, by statute, appoint the presiding judge over this matter under O.C.G.A. § 21-2-523 (b) – (e), that its Order of December 29, 2020 be vacated *nunc pro tunc*, and for such other and further relief to afford Petitioners their day in court for the merits and evidence to be heard, and to do manifest justice.

Respectfully submitted, this 29th day of December, 2020.

THE HILBERT LAW FIRM, LLC

_____
Kurt R. Hilbert
Georgia Bar No. 352877
Lead Counsel for Petitioners

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

SMITH & LISS, LLC
/s/ Ray S. Smith, III

_____
Ray S. Smith, III
Georgia Bar No. 662555
Co- Counsel for Petitioners

Five Concourse Parkway
Suite 2600
Atlanta, GA 30328
T: (404) 760-6000
F: (404) 760-0225
E: rsmith@smithliss.com

Fulton County Superior Court
***EFILED***QW
Date: 12/4/2020 6:26 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

DONALD J. TRUMP, in his capacity as a )
Candidate for President, DONALD J. )
TRUMP FOR PRESIDENT, INC., and )
DAVID J. SHAFER, in his capacity as a )
Registered Voter and Presidential Elector )
pledged to Donald Trump for President, )
                                          )

    Petitioners, )
                                          )

v. )
                                          )

BRAD RAFFENSPERGER, in his official )
capacity as Secretary of State of Georgia, )
REBECCA N. SULLIVAN, in her official )
capacity as Vice Chair of the Georgia State )
Election Board, DAVID J. WORLEY, in )
his official capacity as a Member of the )
Georgia State Election Board, )
MATTHEW MASHBURN, in his official )
capacity as a Member of the Georgia State )
Election Board, ANH LE, in her official )
capacity as a Member of the Georgia State )
Election Board, RICHARD L. BARRON, )
in his official capacity as Director of )
Registration and Elections for Fulton )
County, JANINE EVELER, in her official )
capacity as Director of Registration and )
Elections for Cobb County, ERICA )
HAMILTON, in her official capacity as )
Director of Voter Registration and )
Elections for DeKalb County, KRISTI )
ROYSTON, in her official capacity as )
Elections Supervisor for Gwinnett County, )
RUSSELL BRIDGES, in his official )
capacity as Elections Supervisor for )
Chatham County, ANNE DOVER, in her )
official capacity as Acting Director of )
Elections and Voter Registration for )
Cherokee County, SHAUNA DOZIER, in )
her official capacity as Elections Director )
for Clayton County, MANDI SMITH, in )
her official capacity as Director of Voter )
Registration and Elections for Forsyth )

CIVIL ACTION FILE NO.

2020CV343255

EXHIBIT
" 1 "

County, AMEIKA PITTS, in her official )
capacity as Director of the Board of )
Elections & Registration for Henry )
County, LYNN BAILEY, in her official )
capacity as Executive Director of Elections )
for Richmond County, DEBRA )
PRESSWOOD, in her official capacity as )
Registration and Election Supervisor for )
Houston County, VANESSA WADDELL, )
in her capacity as Chief Clerk of Elections )
for Floyd County, JULIANNE ROBERTS, )
in her official capacity as Supervisor of )
Elections and Voter Registration for )
Pickens County, JOSEPH KIRK, in his )
official capacity as Elections Supervisor )
for Bartow County, and GERALD )
MCCOWN, in his official capacity as )
Elections Supervisor for Hancock County, )
)
Respondents. )

---

## VERIFIED PETITION TO CONTEST GEORGIA'S PRESIDENTIAL ELECTION RESULTS FOR VIOLATIONS OF THE CONSTITUTION AND LAWS OF THE STATE OF GEORGIA, AND REQUEST FOR EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF

COME NOW Donald J. Trump, in his capacity as a Candidate for President, Donald J. Trump for President, Inc., and David J. Shafer, in his capacity as a Georgia Registered Voter and Presidential Elector pledged to Donald Trump for President (collectively "Petitioners"), Petitioners in the above-styled civil action, by and through their undersigned counsel of record, and file this, their Verified Petition to Contest Georgia's Presidential Election Results for Violations of the Constitution and Laws of the State of Georgia, and Request for Emergency Declaratory and Injunctive Relief (the "Petition"), respectfully showing this honorable Court as follows:

# INTRODUCTION

## 1.

The United States Constitution sets forth the authority to regulate federal elections: "The Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators." U.S. Const. art. I, § 4.

## 2.

With respect to the appointment of presidential electors, the Constitution further provides, "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in Congress." U.S. Const. art. II, § 1.

## 3.

In Georgia, the General Assembly is the "legislature." *See* Ga. Const. art. III, § 1, para. I.

## 4.

Pursuant to the legislative power vested in the Georgia General Assembly (the "Legislature"), the Legislature enacted the Georgia Election Code governing the conduct of elections in the State of Georgia. *See* O.C.G.A. §§ 21-2-1 et seq. (the "Election Code").

## 5.

Thus, through the Election Code, the Legislature promulgated a statutory framework for choosing the presidential electors, as directed by the Constitution.

6.

In this case, Petitioners present to this Court substantial evidence that the November 3, 2020, Presidential Election in Georgia (the "Contested Election") was not conducted in accordance with the Election Code and that the named Respondents deviated significantly and substantially from the Election Code.

7.

Due to significant systemic misconduct, fraud, and other irregularities occurring during the election process, many thousands of illegal votes were cast, counted, and included in the tabulations from the Contested Election for the Office of the President of the United States, thereby creating substantial doubt regarding the results of that election.

8.

Petitioners demonstrate that the Respondents' repeated violations of the Election Code constituted an abandonment of the Legislature's duly enacted framework for conducting the election and for choosing presidential electors, contrary to Georgia law and the United States Constitution.

9.

Petitioners bring this contest pursuant to O.C.G.A. §21-2-522.

10.

"Honest and fair elections must be held in the selection of the officers for the government of this republic, at all levels, or it will surely fall. If [this Court] place[s] its stamp of approval upon an election held in the manner this one [was] held, it is only a matter of a short time until

Page 4 of 64

unscrupulous men, taking advantage of the situation, will steal the offices from the people and set up an intolerable, vicious, corrupt dictatorship." *Bush v. Johnson,* 111 Ga. App. 702, 705, 143 S.E.2d 21, 23 (1965).

11.

The Georgia Supreme Court has made clear that it is not incumbent upon Petitioners to show how voters casting irregular ballots would have voted had their ballots been regular. Petitioners "only [have] to show that there were enough irregular ballots to place in doubt the result." *Mead v. Sheffield,* 278 Ga. 268, 271, 601 S.E.2d 99, 101 (2004) (citing *Howell v. Fears,* 275 Ga. 627, 628, 571 S.E.2d 392, 393 (2002)).

12.

To allow Georgia's presidential election results to stand uncontested, and its presidential electors chosen based upon election results that are erroneous, unknowable, not in accordance with the Election Code and unable to be replicated with certainty, constitutes a fraud upon Petitioners and the Citizens of Georgia, an outcome that is unlawful and must not be permitted.

**THE PARTIES**

13.

President Donald J. Trump ("President Trump") is President of the United States of America and a natural person. He is the Republican candidate for reelection to the Presidency of the United States of America in the November 3, 2020, General Election conducted in the State of Georgia.

14.

Donald J. Trump for President, Inc. is a federal candidate committee registered with, reporting to, and governed by the regulations of the Federal Election Commission, established pursuant to 52 U.S.C. §§ 30101 et seq. as the principal authorized committee of President Trump, candidate for President, which also serves as the authorized committee for the election of the Vice Presidential candidate on the same ticket as President Trump (the "Committee"). The agent designated by the Committee in the State of Georgia is Robert Sinners, Director of Election Day Operations for the State of Georgia for President Trump (collectively the "Trump Campaign"). The Trump Campaign serves as the primary organization supporting the election of presidential electors pledged to President Trump and Vice President Pence.

15.

David J. Shafer ("Elector Shafer") is a resident of the State of Georgia and an aggrieved elector who was entitled to vote, and did vote, for President Trump in the November 3, 2020, General Election. Elector Shafer is an elector pledged to vote for President Trump at the Meeting of Electors pursuant to United States Constitution and the laws of the State of Georgia.

16.

Petitioners are "Contestants" as defined by O.C.G.A. § 21-2-520(1) who are entitled to bring an election contest under O.C.G.A. § 21-2-521 (the "Election Contest").

17.

Respondent Brad Raffensperger is named in his official capacity as the Secretary of State of Georgia.[1] Secretary Raffensperger serves as the Chairperson of Georgia's State Election Board, which promulgates and enforces rules and regulations to (i) obtain uniformity in the practices and proceedings of election officials as well as legality and purity in all primaries and general elections, and (ii) be conducive to the fair, legal, and orderly conduct of primaries and general elections. *See* O.C.G.A. §§ 21-2-30(d), 21-2-31, 21-2-33.1. Secretary Raffensperger, as Georgia's chief elections officer, is also responsible for the administration of the Election Code. *Id.*

18.

Respondents Rebecca N. Sullivan, David J. Worley, Matthew Mashburn, and Anh Le in their official capacities as members of the Georgia State Election Board (the "State Election Board"), are members of the State Election Board in Georgia, responsible for "formulat[ing], adopt[ing], and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections." O.C.G.A. § 21-2-31(2). Further, the State Election Board "promulgate[s] rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system" in Georgia. O.C.G.A. § 21-2-31(7).

---

[1] Secretary Raffensperger is a state official subject to suit in his official capacity because his office "imbues him with the responsibility to enforce the [election laws]." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).

19.

Respondent Richard L. Barron is named in his official capacity as Director of Registration and Elections for Fulton County, Georgia, and conducted the Contested Election within that county.

20.

Respondent Janine Eveler is named in her official capacity as Director of Registration and Elections for Cobb County, Georgia, and conducted the Contested Election within that county.

21.

Respondent Erica Hamilton is named in her official capacity as Director of Voter Registration and Elections for DeKalb County, Georgia, and conducted the Contested Election within that county.

22.

Respondent Kristi Royston is named in her official capacity as Elections Supervisor for Gwinnett County, Georgia, and conducted the Contested Election within that county.

23.

Respondent Russell Bridges is named in his official capacity as Elections Supervisor for Chatham County, Georgia, and conducted the Contested Election within that county.

24.

Respondent Anne Dover is named in her official capacity as Acting Director of Elections and Voter Registration for Cherokee County, Georgia, and conducted the Contested Election within that county.

25.

Respondent Shauna Dozier is named in her official capacity as Elections Director for Clayton County, Georgia, and conducted the Contested Election within that county.

26.

Respondent Mandi Smith is named in her official capacity as Director of Voter Registration and Elections for Forsyth County, Georgia, and conducted the Contested Election within that county.

27.

Respondent Ameika Pitts is named in her official capacity as Director of the Board of Elections & Registration for Henry County, Georgia, and conducted the Contested Election within that county.

28.

Respondent Lynn Bailey is named in her official capacity as Executive Director of Elections for Richmond County, Georgia, and conducted the Contested Election within that county.

29.

Respondent Debra Presswood is named in her official capacity as Registration and Election Supervisor for Houston County, Georgia, and conducted the Contested Election within that county.

30.

Respondent Vanessa Waddell is named in her official capacity as Chief Clerk of Elections for Floyd County, Georgia, and conducted the Contested Election within that county.

31.

Respondent Julianne Roberts is named in her official capacity as Supervisor of Elections and Voter Registration for Pickens County, Georgia, and conducted the Contested Election within that county.

32.

Respondent Joseph Kirk is named in his official capacity as Elections Supervisor for Bartow County, Georgia, and conducted the Contested Election within that county.

33.

Respondent Gerald McCown is named in his official capacity as Elections Supervisor for Hancock County, Georgia, and conducted the Contested Election within that county.

34.

All references to Respondents made herein include named Respondent and those election workers deputized by Respondents to act on their behalf during the Contested Election.

## JURISDICTION AND VENUE

### 35.

Jurisdiction is proper in this Court pursuant to O.C.G.A. § 21-2-523(a) as the Superior Court of the county where Secretary Raffensperger, the State Board of Elections, and Respondent Richard L. Barron are located. *See also Ga. Dep't of Human Servs. v. Dougherty Cty.*, 330 Ga. App. 581, 582, 768 S.E.2d 771, 772 (2015).

### 36.

Venue is proper before this Court.

## FACTUAL BACKGROUND

### *The Georgia Election Code and Election Contest Provisions*

### 37.

The Election Code sets forth the manner in which the Citizens of Georgia are allowed to participate in the Legislature's duty of choosing presidential electors by specifying, *inter alia*, which persons are eligible to register to vote in Georgia, the circumstances and actions by which a voter cancels his or her voter registration, the procedures for voting in person and by absentee ballot, the manner in which elections are to be conducted, and the specific protocols and procedures for recounts, audits, and recanvasses. *See* O.C.G.A. §§ 21-2-1 et seq.

### 38.

The Election Code in O.C.G.A. § 21-2-522 provides the means for a candidate in a federal election to contest the results of said election based on:

1. Misconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result;
2. When the defendant is ineligible for the nomination or office in dispute;
3. When illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result;
4. For any error in counting the votes or declaring the result of the primary or election, if such error would change the results; or
5. For any other cause which shows that another was the person legally nominated, elected, or eligible to compete in a run-off primary or election.[2]

39.

The results of an election may be set aside when a candidate has "clearly established a violation of *election procedures* and has demonstrated that the violation has placed the result of the election in doubt." *Martin v. Fulton Cty. Bd. of Registration & Elections*, 307 Ga. 193-94, 835 S.E.2d 245, 248 (2019) (quoting *Hunt v. Crawford*, 270 GA 7, 10, 507 S.E.2d 723 (1998) (emphasis added).

40.

The Election Code "allows elections to be contested through litigation, both as a check on the integrity of the election process and as a means of ensuring the fundamental right of citizens to vote and to have their votes counted securely." *Martin*, 307 Ga. at 194.

41.

The Georgia Supreme Court has made clear that "it [is] not incumbent upon [Petitioners] to show *how . . . voters would have voted* if their . . . ballots had been regular. [Petitioners] only ha[ve] to show that there were enough irregular ballots to place in doubt the result." *Mead* at 268 (emphasis added).

---

[2] Petitioners do not contest pursuant O.C.G.A. § 21-2-522 Ground (2).

*The Contested Election*

42.

On November 3, 2020, the Contested Election for electors for President of the United States took place in the State of Georgia.

43.

President Trump, former Vice President Joseph R. Biden (Mr. Biden), and Jo Jorgensen were the only candidates on the ballot for President in the Contested Election.

44.

The original results reported by Secretary Raffensperger for the Contested Election (the "Original Result") consisted of a purported total of 4,995,323 votes cast, with Mr. Biden "ahead" by a margin of 12,780 votes.

45.

The results of the subsequent Risk Limiting Audit conducted by the Secretary of State (the "Risk Limiting Audit") included a total of 5,000,585 votes cast, with Mr. Biden "ahead" by a margin of 12,284 votes.

46.

On November 20, 2020, the Contested Election was declared and certified for Mr. Biden by a margin of only 12,670 votes (the "Certified Result").[3]

---

[3] The first certified number of votes.

47.

On November 21, 2020, President Trump and the Trump Campaign notified Secretary Raffensperger of President Trump's request to invoke the statutory recount authorized by O.C.G.A. § 21-2-495(c) for elections in which the margin is less than one-half of one percent (the "Statutory Recount"). A true and correct copy of President Trump's request for the Statutory Recount is attached hereto and incorporated by reference as **Exhibit 1**.

48.

The Statutory Recount is ongoing as of the time of the filing of this Petition.

49.

On multiple occasions Secretary Raffensperger announced he does not anticipate the Statutory Recount to yield a substantial change in the results of the Contested Election.

50.

On December 1, 2020, Robert Gabriel Sterling, Statewide Voting System Implementation Manager for the Secretary of State, gave a press conference to discuss the status of the ongoing Statutory Recount.

51.

During his press conference, Mr. Sterling stated that at least two counties needed to recertify their vote counts as the totals reached during the Statutory Recount differed from the Certified Results.

52.

As of the date of this Petition, not all of Georgia's 159 counties have certified their results from the Statutory Recount.

53.

Consequently, as of the date of this Petition, Secretary Raffensperger has yet to certify the results from the Statutory Recount.

54.

The presidential electors of the States are scheduled to meet on December 14, 2020. Therefore, this matter is ripe, and time is of the essence.

55.

An actual controversy exists.

56.

Because the outcome of the Contested Election is in doubt, Petitioners jointly and severally hereby contest Georgia's November 3, 2020, election results for President of the United States pursuant to O.C.G.A. §§ 21-2-521 and 21-2-522, et seq.

57.

Petitioners assert that the laws of the State of Georgia governing the conduct of the Contested Election were disregarded, abandoned, ignored, altered, and otherwise violated by Respondents, jointly and severally, allowing a sufficient number of illegal votes to be included in

Page 15 of 64

the vote tabulations, such that the results of the Contested Election are invalid, and the declaration of the presidential election in favor of Mr. Biden must be enjoined, vacated, and nullified.

## THERE WERE SYSTEMIC IRREGULARITIES AND VIOLATIONS OF THE GEORGIA ELECTION CODE IN THE CONTESTED ELECTION

### *Requirements to Legally Vote in Georgia*

58.

The Election Code sets forth the requirements for voting in Georgia, including the requirements that a voter must be: (1) "Registered as an elector in the manner prescribed by law; (2) A citizen of this state and of the United States; (3) At least 18 years of age on or before the date of the…election in which such person seeks to vote; (4) A resident of this state and of the county or municipality in which he or she seeks to vote; and (5) "Possessed of all other qualifications prescribed by law." O.C.G.A. § 21-2-216(a). "No person shall remain an elector longer than such person shall retain the qualifications under which such person registered." O.C.G.A. § 21-2-216(f).

59.

In violation of O.C.G.A. § 21-2-216, Respondents, jointly and severally, allowed thousands of unqualified persons to register to vote and to cast their vote in the Contested Election. These illegal votes were counted in violation of Georgia law. **Exhibits 2, 3, 4, and 10** attached hereto and incorporated by reference.

60.

O.C.G.A. § 21-2-216(b) provides that "[n]o person who has been convicted of a felony involving moral turpitude may register, remain registered, or vote except upon completion of the sentence."

61.

In violation of O.C.G.A. § 21-2-216(b), Respondents, jointly and severally, allowed as many as 2,560 felons with an uncompleted sentence to register to vote and to cast their vote in the Contested Election.  **Exhibit 3** attached hereto and incorporated by reference.

62.

In violation of Georgia law, Respondents, jointly and severally, counted these illegal votes in the Contested Election.

63.

"Any person who possesses the qualifications of an elector except that concerning age shall be permitted to register to vote if such person will acquire such qualification within six months after the day of registration." O.C.G.A. § 21-2-216(c).

64.

In violation of O.C.G.A. § 21-2-216(c), Respondents, jointly and severally, allowed at least 66,247 underage—and therefore ineligible—people to illegally register to vote, and subsequently illegally vote. *See* **Exhibit 3**.

65.

In violation of Georgia law, Respondents, jointly and severally, counted these illegal votes in the Contested Election.

66.

In order to vote in Georgia, a person must register to vote.

67.

Respondents, jointly and severally, allowed at least 2,423 individuals to vote who were not listed in the State's records as having been registered to vote. *See* Exhibit 3.

68.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election.

69.

Because determining a voter's residency is necessary to confirm he or she is a qualified voter in this state and in the county in which he or she seeks to vote, the Election Code provides rules for determining a voter's residency and when a voter's residency is deemed abandoned. *See* O.C.G.A. § 21-2-217.

70.

"The residence of any person shall be held to be in that place in which such person's habitation is fixed." O.C.G.A. § 21-2-217(a)(1).

71.

Additionally, "[t]he specific address in the county...in which a person has declared a homestead exemption...shall be deemed the person's residence address." O.C.G.A. § 21-2-217(a)(14).

72.

A voter loses his or her Georgia and/or specific county residence if he or she: (1) "register[s] to vote or perform[s] other acts indicating a desire to change such person's citizenship and residence;" (2) "removes to another state with the intention of making it such person's residence;" (3) "removes to another county or municipality in this state with the intention of making it such person's residence;" or (4) "goes into another state and while there exercises the right of a citizen by voting." O.C.G.A. § 21-2-217(a); *see also* O.C.G.A. § 21-2-218(f) ("No person shall vote in any county or municipality other than the county or municipality of such person's residence except ["an elector who moves from one county...to another after the fifth Monday prior to a[n]...election"] O.C.G.A.§ 21-2-218(e).)

73.

In violation of O.C.G.A. § 21-2-217, Respondents, jointly and severally, allowed at least 4,926 individuals to vote in Georgia who had registered to vote in another state after their Georgia voter registration date. *See* **Exhibit 2**.

74.

It is illegal to vote in the November 3, 2020, general election for president in two different states.

75.

It is long established that "one man" or "one person" has only one vote.

76.

In violation of O.C.G.A. § 21-2-217, Respondents, jointly and severally, allowed at least 395 individuals to vote in Georgia who also cast ballots in another state (the "Double Voters"). *See* **Exhibit 2**.

77.

The number of Double Voters is likely higher than 395, yet Respondents have the exclusive capability and access to data to determine the true number of Double Voters.

78.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

79.

Despite having the exclusive ability to determine the true number of Double Voters in Contested Election, to date Respondents, jointly and severally, have failed to properly analyze and remove the Double Voters from the election totals.

80.

To date, and despite multiple requests, Respondents, jointly and severally, have failed to provide identifying information or coordinate with the other 49 states and U.S. Territories to adequately determine the number of Double Voters.

81.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

82.

In violation of O.C.G.A. § 21-2-217, Respondents, jointly and severally, allowed at least 15,700 individuals to vote in Georgia who had filed a national change of address with the United States Postal Service prior to November 3, 2020. *See* **Exhibit 2**.

83.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

84.

If a Georgia voter "who is registered to vote in another county…in this state…moves such person's residence from that county…to another county…in this state," that voter "shall, at the time of making application to register to vote in that county…provide such information as specified by the Secretary of State in order to notify such person's former voting jurisdiction of the person's application to register to vote in the new place of residence and to cancel such person's registration in the former place of residence." O.C.G.A. § 21-2-218(b); *see also The Democratic Party of Georgia, Inc. v. Crittenden*, Civil Action File No. 1:18-CV-05181-SCJ, Doc. 33, Supplemental Declaration of Chris Harvey, Elections Director of the Office of the Secretary of State, ¶ 11 (N.D. Ga. Nov. 13, 2018) ("If the state allowed out of county voting, there would be no practical way of knowing if a voter voted in more than one county.").

85.

In violation of O.C.G.A. § 21-2-218(b), Respondents, jointly and severally, allowed at least 40,279 individuals to vote who had moved across county lines at least 30 days prior to Election Day and who had failed to properly re-register to vote in their new county after moving.  **Exhibit 4** attached hereto and incorporated by reference.

86.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

87.

In violation of O.C.G.A. § 21-2-217, Respondents, jointly and severally, allowed at least 1,043 individuals to cast ballots who had illegally registered to vote using a postal office box as their habitation.  *See* **Exhibit 2.**

88.

Respondents then, jointly and severally improperly counted these illegal votes in the Contested Election.

89.

A postal office box is not a residential address.

90.

One cannot reside within a postal office box.

91.

It is a violation of Georgia law to list a postal office box as one's voter place of habitation. *See* O.C.G.A. § 21-2-217(a)(1).

92.

A person desiring "to vote at any...general election" must apply to register to vote "by the close of business on the fifth Monday...prior to the date of such...general election." O.C.G.A. § 21-2-224(a).

93.

The application for registration is "deemed to have been made as of the date of the postmark affixed to such application," or if received by the Secretary of State through the United States Postal Service, by "the close of business on the fourth Friday prior to a . . . general election." O.C.G.A. § 21-2-224(c).

94.

In violation of O.C.G.A. § 21-2-224, Respondents, jointly and severally, allowed at least 98 individuals to vote who the state records as having registered after the last day permitted under law. *See* **Exhibit 3**.

95.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

96.

"Each elector who makes timely application for registration, is found eligible by the board of registrars and placed on the official list of electors, and is not subsequently found to be disqualified to vote shall be entitled to vote in any…election." O.C.G.A. § 21-2-224(d).

97.

Secretary Raffensperger is required to maintain and update a list of registered voters within this state.

98.

On the 10th day of each month, each county is to provide to the Secretary of State a list of convicted felons, deceased persons, persons found to be non-citizens during a jury selection process, and those declared mentally incompetent. *See* O.C.G.A. § 21-2-231(a)-(b), (d).

99.

In turn, any person on the Secretary of State's list of registered voters is to be removed from the registration list if the voter dies, is convicted of a felony, is declared mentally incompetent, confirms in writing a change of address outside of the county, requests his or her name be removed from the registration list, or does not vote or update his or her voter's registration through two general elections. *See* O.C.G.A. §§ 21-2-231, 21-2-232, 21-2-235.

100.

Respondents, jointly and severally, did not update the voter registration list(s).

Page **24** of **64**

101.

In violation of O.C.G.A. § 21-2-231(a)-(b) and (d), Respondents, jointly and severally, allowed as many as 10,315 or more individuals to vote who were deceased by the time of Election Day. *See* **Exhibit 3**.

102.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

103.

Of these individuals, 8,718 are recorded as having perished prior to the date the State records as having accepted their vote. *See* **Exhibit 3**.

104.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election.

105.

For example, Affiant Lisa Holst received three absentee mail-in ballots for her late father-in-law, Walter T. Holst, who died on May 13, 2010. **Exhibit 5** attached hereto and incorporated by reference.

106.

Voter history shows that an absentee ballot was returned for Mr. Holst on October 28, 2020.

107.

Someone deceased for 10 years should not have received three absentee ballots.

108.

Someone deceased for 10 years should not have received any absentee ballot.

109.

Someone deceased for 10 years should not have had any absentee ballot counted.

110.

Another Affiant, Sandy Rumph, has stated that her father-in-law, who died on September 9, 2019, had his voter registration change from "deceased" to "active" 8 days *after* he passed away. **Exhibit 6** attached hereto and incorporated by reference.

111.

With his registration status change, his address was also changed online from his real address in Douglasville to an unfamiliar address in DeKalb County. *Id.*

112.

Respondents jointly and severally failed to maintain and update voter registration lists which allowed voter registration information to be changed after the death of an elector.

113.

Respondents jointly and severally failed to maintain and update voter registration lists which allowed absentee ballots to be used fraudulently.

## RESPONDENTS COMMITTED SUBSTANTIAL VIOLATIONS OF GEORGIA LAW WITH RESPECT TO ABSENTEE BALLOTS

114.

The Legislature has established procedures for absentee voting in the state.

115.

Pursuant to O.G.C.A. 21-2-381, absentee ballots must be requested by the voter, or the voter's designee, before they can be sent out.

116.

In violation of O.C.G.A. § 21-2-381, Respondent Raffensperger sent unsolicited absentee ballot applications before the 2020 primary election to all persons on the list of qualified electors, whether or not an application had been requested by the voter.

117.

The unlawfully sent applications allowed the recipient to check a box to request an absentee ballot for the Contested Election in advance of the period for which an absentee ballot could be requested.

118.

Individuals wishing to vote absentee may apply for a mail-in ballot **"not more than 180 days prior to the date of the primary or election."** O.C.G.A. § 21-2-381(a)(1)(A) (emphasis added).

119.

In violation of O.C.G.A. § 21-2-381(a)(1)(A), Respondents, jointly and severally, allowed at least 305,701 individuals to vote who, according to State records, applied for an absentee ballot more than 180 days prior to the Contested Election. *See* **Exhibit 3**.

120.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

121.

Pursuant to O.C.G.A. § 21-2-381(b) an absentee voter must have requested an absentee ballot before such ballot is capable of being received by the voter.

122.

If such applicant is eligible under the provisions of the Election Code, an absentee ballot is to be mailed to the voter.

123.

In violation of O.C.G.A. § 21-2-385, Respondents, jointly and severally, allowed at least 92 individuals to vote whose absentee ballots, according to State records, were returned and accepted prior to that individual requesting an absentee ballot. *See* **Exhibit 3**.

124.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

Page **28** of **64**

125.

Absentee ballots may only be mailed after determining the applicant is registered and eligible to vote in the election. O.C.G.A. § 21-2-381(b)(1).

126.

In violation of O.C.G.A. § 21-2-381(b)(1), Respondents, jointly and severally, allowed state election officials to mail at least 13 absentee ballots to individuals who were not yet registered to vote according to the state's records. *See* **Exhibit 3**.

127.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

128.

Pursuant to O.C.G.A. § 21-2-384(a)(2) absentee ballots may not be mailed more than 49 days prior to an election.

129.

Respondents, jointly and severally, mailed at least 2,664 absentee ballots to individuals prior to the earliest date permitted by law. *See* **Exhibit 3**.

130.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

131.

According to State records, Respondents jointly and severally allowed at least 50 individuals to vote whose absentee ballots were returned and accepted prior to the earliest date that absentee ballots were permitted by law to be sent out. *See* **Exhibit 3.**

132.

Respondents then, jointly and severally improperly counted these illegal votes in the Contested Election. *Id.*

133.

An absentee voter's application for an absentee ballot must have been accepted by the election registrar or absentee ballot clerk in order for that individual's absentee ballot vote to be counted. O.C.G.A. § 21-2-385.

134.

In violation of O.C.G.A. § 21-2-385, Respondents, jointly and severally, allowed at least 2 individuals to vote whose absentee ballot applications had been rejected, according to state records. *See* **Exhibit 3.**

135.

Respondents, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

136.

It is not possible for an absentee voter to have applied by mail, been issued by mail, and returned by mail an absentee ballot, and for that ballot to have accepted by election officials, all on the same day.

137.

In violation of O.C.G.A. § 21-2-384, Respondents, jointly and severally, allowed at least 217 individuals to vote whose absentee ballots, according to state records, were applied for, issued, and received all on the same day. *See* **Exhibit 3**.

138.

Respondents then, jointly and severally, improperly counted these illegal votes in the Contested Election. *Id.*

**RESPONDENTS FAILED TO COMPLY WITH GEORGIA LAW PROVISIONS FOR MATCHING SIGNATURES AND CONFIRMING VOTER IDENTITY FOR ELECTORS SEEKING TO VOTE ABSENTEE**

139.

O.C.G.A. §21-2-381(b) mandates the procedures to be followed by election officials upon receipt of an absentee ballot application:

"Upon receipt of a timely application for an absentee ballot, a registrar or absentee ballot clerk...shall determine...if the applicant is eligible to vote in the...election involved. In order to be found eligible to vote an absentee ballot by mail, the registrar or absentee ballot clerk **shall compare the identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card.** In order to be found eligible to vote an absentee ballot in person...shall show one of the forms of identification listed in Code Section 21-2-417 and the registrar or absentee ballot clerk shall compare the

identifying information on the application with the information on file in the registrar's office." O.C.G.A. § 21-2-381(b) (emphasis added).

140.

O.C.G.A. § 21-2-386(a)(1)(B) mandates the procedures to be followed by election officials upon receipt of an absentee ballot:

> Upon receipt of each [absentee] ballot, a registrar or clerk shall write the day and hour of the receipt of the ballot on its envelope. The registrar or clerk shall then **compare the identifying information on the oath with the information on file in his or her office, shall compare the signature or make on the oath with the signature or mark on the absentee elector's voter card or the most recent update to such absentee elector's voter registration card and application for absentee ballot or a facsimile of said signature or maker taken from said card or application,** and shall, if the information and signature appear to be valid and other identifying information appears to be correct, so certify by signing or initialing his or her name below the voter's oath. Each elector's name so certified shall be listed by the registrar or clerk on the numbered list of absentee voters prepared for his or her precinct. O.C.G.A. § 21-2-386(a)(1)(B) (emphasis added).

141.

O.C.G.A. § 21-2-386(a)(1)(C) mandates the procedures to be followed by election officials with respect to defective absentee ballots:

> **If the elector has failed to sign the oath, or if the signature does not appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office,** or if the elector is otherwise found disqualified to vote, the registrar or clerk *shall* write across the face of the envelope "Rejected," giving the reason therefor. The board of registrars or absentee ballot clerk *shall* promptly **notify the elector of such rejection,** a copy of which notification *shall* be retained in the files of the board of registrars or absentee ballot clerk for at least one year. O.C.G.A. § 21-2-386(a)(1)(C) (emphasis added).

## RESPONDENT RAFFENSPERGER DISREGARDED THE ELECTION CODE BY FIAT AND INSTRUCTED THE RESPONDENT COUNTIES TO DO LIKEWISE

142.

On March 6, 2020, Respondents Raffensperger and the State Election Board entered into a "Compromise and Settlement Agreement and Release" (the "Consent Decree") in litigation filed by the Democratic Party of Georgia, Inc., the Democrat Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee (collectively the "Democrat Party Agencies").[4] A true and correct copy of the Consent Decree is attached hereto and incorporated by reference as **Exhibit 7.**

143.

The litigation was one of more than one hundred lawsuits nationwide filed by Democrats and partisan affiliates of the Democratic Party to seeking to rewrite the duly enacted election laws of the states.  **Exhibit 8** attached hereto and incorporated by reference.

144.

Without legislative authority, Respondents unlawfully adopted standards to be followed by the clerks and registrars in processing absentee ballots inconsistent with the election code.

145.

The Consent Decree exceeded Respondents' authority under the Georgia Constitution. *See* Ga. Const. art. III, §1; **Exhibit 15** attached hereto and incorporated by reference; *see also* O.C.G.A. § 21-2-31 (providing that the State Election Board shall "formulate, adopt, and promulgate such

---

[4] *See Democratic Party of Georgia, Inc., et al. v. Raffensperger, et al.*, Civil Action File No. 1:19-cv-05028-WMR, Doc. 56-1, Joint Notice of Settlement as to State Defendants, Att. A, Compromise Settlement Agreement and Release (N.D. Ga. Mar. 6, 2020).

rules and regulations, *consistent with the law*, as will be conducive to the fair, legal, and orderly conduct of primaries and elections" (emphasis added)).

146.

The Consent Decree changed the plain language of the statute for receiving and processing absentee ballot applications and ballots.

147.

The Consent Decree increased the burden on election officials to conduct the mandatory signature verification process by adding additional, cumbersome steps.

148.

For example, the Consent Decree tripled the number of personnel required for an absentee ballot application or ballot to be rejected for signature mismatch.

149.

The unlawful Consent Decree further violated the Election Code by purporting to allow election officials to match signatures on absentee ballot envelopes against the application, rather than the voter file as required by O.C.G.A. §§ 21-2-381, 21-2-385.

**RESPONDENTS DID NOT CONDUCT MEANINGFUL VERIFICATION OF ABSENTEE BALLOT APPLICANT AND VOTER IDENTITIES**

150.

Notwithstanding the unlawful changes made by the Consent Decree, the mandatory signature verification and voter identification requirements were not altogether eliminated.

151.

Despite the legal requirement for signature matching and voter identity verification, Respondents failed to ensure that such obligations were followed by election officials. **Exhibit 9** attached hereto and incorporated by reference.

152.

According to state records, an unprecedented 1,768,972 absentee ballots were mailed out in the Contested Election. **Exhibit 10** attached hereto and incorporated by reference.

153.

Of the total number of absentee ballots mailed out in the Contested Election, 1,317,000 were returned (i.e., either accepted, spoiled, or rejected). *Id.*

154.

The number of absentee ballots returned in the Contested Election represents a greater than 500% increase over the 2016 General Election and a greater than 400% increase over the 2018 General Election. *Id.*

155.

The state received over a million more ballots in the Contested Election than the 2016 and 2018 General Elections. *Id.*

156.

The number of returned absentee ballots that were rejected in the Contested Election was 4,471, yielding a 0.34% rejection rate. *Id.*

157.

The number of returned absentee ballots that were rejected in the 2016 General Election was 6,059, yielding a 2.90% rejection rate. *Id.*

158.

The number of returned absentee ballots that were rejected in the 2018 General Election was 7,889, yielding a 3.46% rejection rate. *Id.*

159.

Stated differently, the percentage of rejected ballots fell to 0.34% in 2020 from 2.9% in 2016 and 3.46% in 2018, despite a nearly sixfold increase in the number of ballots returned to the state for processing.

160.

The explosion in the number of absentee ballots received, counted, and included in the tabulations for the Contested Election, with the simultaneous precipitous drop in the percentage of absentee ballots rejected, demonstrates there was little or no proper review and confirmation of the eligibility and identity of absentee voters during the Contested Election.

161.

Had the statutory procedure for signature matching, voter identity and eligibility verification been followed in the Contested Election, Georgia's historical absentee ballot rejection rate of 2.90-3.46% applied to the 2020 absentee ballot returned and processed, between 38,250 and 45,626 ballots should have been rejected in the Contested Election. *See* **Exhibit 10.**

## RESPONDENTS VIOLATED GEORGIANS' FUNDAMENTAL RIGHT TO A TRANSPARENT AND OPEN ELECTION

162.

A fair, honest, and transparent vote count is a cornerstone of democratic elections. INTERNATIONAL INSTITUTE FOR DEMOCRACY AND ELECTORAL ASSISTANCE, INTERNATIONAL ELECTORAL STANDARDS, GUIDELINES FOR REVIEWING THE LEGAL FRAMEWORK OF ELECTIONS (2002).

163.

All citizens, including Georgians, have rights under the United States Constitution to the full, free, and accurate elections built upon transparency and verifiability. *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 7 (2006) (per curiam).

164.

Citizens are entitled—and deserve—to vote in a transparent system that is designed to protect against vote dilution. *Bush v. Gore*, 531 U.S. 98, 104-05, 121 S. Ct. 525, 529-30 (2000); *Anderson v. United States*, 417 U.S. 211, 227 (1974); *see also Baker v. Carr*, 369 U.S. 186, 208, 82 S. Ct. 691, 705 (1962).

165.

This requires that votes be counted, tabulated and consolidated in the presence of the representatives of parties and candidates and election observers, and that the entire process by which a winner is determined is fully and completely open to public scrutiny. INTERNATIONAL ELECTORAL STANDARDS at 77.

166.

The importance of watchers and representatives serving as an important check in elections is recognized internationally. *Id.*

167.

Georgia law recognizes "the fundamental right of citizens to vote *and to have their votes counted accurately.*" *Martin* at 194 (emphasis added).

168.

The right to have one's vote counted accurately infers a right to a free, accurate, public, and transparent election, which is reflected throughout Georgia election law. *Cf. Ellis v. Johnson*, 263 Ga. 514, 516, 435 S.E.2d 923, 925 (1993) ("Of particular importance is that the General Assembly has provided the public with the right to examine . . . the actual counting of the ballots, . . . and the computation and canvassing of returns . . . .").

169.

Georgia law requires "[s]uperintendents, poll officers, and other officials engaged in the conducting of primaries and elections . . . shall perform their duties in public." O.C.G.A. §21-2-406.

170.

Each political party who has nominated a candidate "shall be entitled to designate ... state-wide poll watchers." O.C.G.A. § 21-2-408 (b)(2).

171.

Poll watchers "may be permitted behind the enclosed space for the purpose of observing the conduct of the election and the counting and recording of votes." O.C.G.A. § 21-2-408 (d).

172.

"All proceedings at the tabulating center and precincts shall be open to the view of the public." O.C.G.A, § 21-2-483(b).

173.

Under O.C.G.A. § 21-2-493, "[t]he superintendent shall, at or before 12:00 noon on the day following the primary or election, at his or her office or at some other convenient **public place** at the county seat or in the municipality, of which **due notice of shall have been given** as provided by Code Section 21-2-492, **publicly commence** the computation and canvassing of returns and continue the same from the day until completed." (Emphasis added.)

174.

During the tabulation of votes cast during an election, vote review panels are to convene to attempt to determine a voter's intent when that intent is unclear from the ballot, consisting of equal Republican and Democratic representation. *See* O.C.G.A. § 21-2-483(g)(2).

175.

The activities of the vote review panel are required to be open to the view of the public. *See* O.C.G.A. § 21-2-483(a).

Page **39** of **64**

176.

Moreover, Respondent Raffensperger declared that for the Risk Limiting Audit:

Per the instructions given to counties as they conduct their audit triggered full hand recounts, **designated monitors will be given complete access to observe the process from the beginning.** While the audit triggered recount **must be open to the public and media, designated monitors will be able to observe more closely.** The general public and the press will be restricted to a public viewing area. **Designated monitors will be able to watch the recount while standing close to the elections' workers conducting the recount.**

Political parties are allowed to designate a minimum of two monitors per county at a ratio of one monitor per party for every ten audit boards in a county . . . . **Beyond being able to watch to ensure the recount is conducted fairly and securely, the** two-person audit boards conducting the hand recount call out the votes as they are recounted, **providing monitors and the public an additional way to keep tabs on the process.**[5]

177.

Respondents, jointly and severally, violated Petitioners' fundamental right to a free, accurate, public, and transparent election under the Constitution of the State of Georgia in the Contested Election and the Risk Limiting Audit. *See* composite Affidavit Appendix attached hereto and incorporated by reference as **Exhibit 17.**

178.

Respondents, jointly and severally, violated provisions of the Georgia Election Code mandating meaningful public oversight of the conduct of the election and the counting and recording of votes in the Contested Election and the Risk Limiting Audit. *Id.*

---

[5] Office of Secretary of State Brad Raffensperger, *Monitors Closely Observing Audit-Triggered Full Hand Recount: Transparency is Built Into Process* (Nov. 17, 2020), https://sos.ga.gov/index.php/elections/monitors_closely_observing_audit_triggered_full_hand_recount_transparency _is_built_into_process.

179.

Respondents, jointly and severally, failed to adhere to Respondent Raffensperger's own guidelines promising a free, accurate, public, and transparent process in the Risk Limiting Audit. *Id.*

## RESPONDENTS HAVE ADMITTED MISCONDUCT, FRAUD, AND WIDESPREAD IRREGULARITIES COMMITTED BY MULTIPLE COUNTIES

180.

The Secretary of State has admitted that multiple county election boards, supervisors, employees, election officials and their agents failed to follow the Election Code and State Election Board Rules and Regulations.[6]

181.

The Secretary of State has called The Fulton County Registration and Elections Board and its agents' ("Fulton County Elections Officials") job performance prior to and through the Election Contest "dysfunctional."

182.

The Secretary of State and members of his staff have repeatedly criticized the actions, poor judgment, and misconduct of Fulton County Elections Officials.

---

[6] Note: These are samples and not an exhaustive list of the Secretary of State's admissions of Respondents' failures and violations of Georgia law.

183.

Fulton County Elections Officials' performance in the 2020 primary elections was so dysfunctional that it was fined $50,000 and subject to remedial measures.

184.

Describing Respondent Barron's Fulton County Elections in the Election Contest, Secretary Raffensperger stated, "Us and our office, and I think the rest of the state, is getting a little tired of always having to wait on Fulton County and always having to put up with [Fulton County Elections Officials'] dysfunction."

185.

The Secretary of State's agent, Mr. Sterling, said initial findings from an independent monitor allegedly show "generally bad management" with Fulton's absentee ballots.[7]

*Fulton County Elections' Deception and Fraud*

186.

The Secretary of State's Office claims it is currently investigating an incident where Fulton County election officials fraudulently stated there was a "flood" and "a pipe burst," which was later revealed to be a "leaky" toilet.

---

[7] Ben Brasch, *Georgia Opens 2 Investigations Into Fulton's Elections Operations,* The Atlanta Journal-Constitution (Nov. 17, 2020), https://www.ajc.com/news/atlanta-news/georgia-opens-2-investigations-into-fultons-elections-operations/EVCBN4ZJTZELPDHMH63POL3RKQ/.

187.

At approximately 10:00 p.m. on November 3, 2020, Fulton County Election Officials, who were handling and scanning thousands of ballots at the State Farm Arena, instructed Republican poll watchers and the press that they were finished working for the day and that the Republican poll watchers and the press were to leave.  The Fulton County Elections Officials further stated that they would restart their work at approximately 8:00 a.m. on November 4, 2020.

188.

The Fulton County Election Officials lied.

189.

Deliberate misinformation was used to instruct Republican poll watchers and members of the press to leave the premises for the night at approximately 10:00 p.m. on November 3, 2020. **Exhibits 12, 13, and 14** attached hereto and incorporated by reference.

190.

After Fulton County Elections Officials **lied and defrauded** the Republican poll watchers and members of the press, whereby in reasonable reliance the Republican poll watchers and members of the press left the State Farm Arena (where they had been observing the ballots being processed), without public transparency Fulton County Elections Officials continued to process, handle, and transfer many thousands of ballots. *See* **Exhibit 14.**

191.

Fulton County Elections Officials' fraudulent statements not only defrauded the Republican poll watchers and the press, but also deprived every single Fulton County voter,

Page **43** of **64**

Georgian, American, and Petitioners of the opportunity for a transparent election process and have thereby placed the Election Contest in doubt.

*Spalding County Elections & Voter Registration Supervisor and Her Agents' Failures*

192.

Respondent Raffensperger has called for the resignation of the Spalding County Elections and Voter Registration Supervisor, who has, as of this filing, resigned.[8]

193.

Respondent Raffensperger cited "serious management issues and poor decision-making" by Election Supervisor Marcia Ridley during the Contested Election.

*Floyd County Elections & Voter Registration Supervisor and Her Agents' Failures*

194.

Respondent Raffensperger has called for the resignation of the Executive Director of the Floyd County Board of Registrations and Elections for his failure to follow proper election protocols.[9]

---

[8] David Wickert, *Georgia Officials Call for Spalding Election Director to Resign*, The Atlanta Journal-Constitution (Nov. 17, 2020), https://www.ajc.com/politics/election/georgia-officials-call-for-spalding-election-director-to-resign/YYUISCBSV5FTHDZPM3N5RJVV6A/.
[9] Jeffrey Martin, Georgia Secretary of State Calls for Resignation of County Election Director After 2,600 Ballots Discovered (Nov. 16, 2020), https://www.newsweek.com/georgia-secretary-state-calls-resignation-county-election-director-after-2600-ballots-discovered-1547874.

## RESPONDENTS CONSPIRED TO DISREGARD THE ELECTION CODE AND TO SUBSTITUTE THEIR OWN UNLAWFUL EDICTS

195.

In violation of O.C.G.A. § 21-2-386 et seq. the State Board of Election promulgated a rule that authorized county election board to begin processing absentee ballots on the third Monday preceding the election, provided they give the Secretary of State and the public notice of such intention to begin processing absentee ballots.

196.

Failure to follow the process directed by the statute is a derogation of the Election Code and denies voters the ability to cancel their absentee ballot up until Election Day.

197.

Respondents, jointly and severally, were complicit in conspiring to violate and violating the Election Code.

198.

As a direct and proximate result of Respondents multiple, continued, and flagrant disregard of the Election Code, the outcome of the Contested Election is not capable of being known with certainty.

199.

Petitioners incorporate by reference and reallege all prior paragraphs of this Petition and the paragraphs in the Counts below as though set forth fully herein.

200.

Despite Respondents receiving substantial funding from the Center for Technology and Civic Life (CTCL), Respondents failed to use such funds to train the election workers regarding signature verification, the proper procedures for matching signatures, and how to comply fully with the Election Code. **Exhibit 11** attached hereto and incorporated by reference.

201.

Due to the lack of uniform guidance and training, the signature verification and voter identity confirmation was performed poorly or not at all in some counties and served as virtually no check against improper voting. *See* **Exhibit 9.**

**RESPONDENT SECRETARY OF STATE <u>MUST</u> ALLOW AND CONDUCT AN AUDIT OF THE SIGNATURES ON ABSENTEE BALLOT APPLICATIONS AND ABSENTEE BALLOTS IN ORDER TO DETERMINE WHETHER THE SIGNATURES WERE PROPERLY MATCHED PRIOR TO BEING COUNTED AND INCLUDED IN THE TABULATIONS**

202.

The data regarding the statistically tiny rejection rate of absentee ballots cast and counted in the Contested Election gives rise to sufficient concerns that there were irregularities that should be reviewed and investigated.

203.

Petitioners have brought these concerns about the signature matching and voter verification process to the attention of Respondent Raffensperger **on five separate occasions** since the Contested Election, requesting that the Secretary conduct an audit of the signatures on the absentee ballot applications and absentee ballots, via Letter on November 10, 2020; Letter on November

12, 2020; Letter on November 23, 2020; Email on November 23, 2020, and again via Letter on November 30, 2020. **Exhibit 18** attached hereto and incorporated by reference.

204.

The Secretary of State is obligated by law to "to permit the public inspection or copying, in accordance with this chapter, of any return, petition, certificate, paper, account, contract, report, or any other document or record in his or her custody." O.G.C.A. § 21-2-586(a).

205.

Failure to comply with any such request by the Secretary of State or an employee of his or her office shall [constitute] a misdemeanor." O.G.C.A. § 21-2-586(a).

206.

The Secretary of State's refusal on five separate occasions to comply with requests to produce the signatures used to request absentee ballots and to confirm the identities of those individuals requesting such ballots in the contested election is a violation of O.G.C.A. § 21 2 586(a).

207.

In order for the Secretary of State to comply with O.G.C.A. § 21-2-586(a), professional handwriting experts recommend a minimum of Ten Thousand (10,000) absentee ballot signatures be professionally evaluated. **Exhibit 16** attached hereto and incorporated by reference.

**Page 47 of 64**

208.

Petitioners respectfully request that the Court order the production of the records of the absentee ballot applications and absentee ballots, for purposes of conducting an audit of the signatures on absentee ballot applications and absentee ballots cast in the Contested Election.

## THERE ARE MYRIAD REPORTS OF IRREGULARITIES AND VIOLATIONS OF THE ELECTION CODE DURING THE CONTESTED ELECTION

209.

Petitioners have received hundreds of incident reports regarding problems, irregularities, and violations of the Election Code during the Contested Election.

210.

From those reports, Petitioners have attached affidavits from dozens of Citizens of Georgia, sworn under penalty of perjury, attesting to myriad violations of law committed by Respondents during the Contested Election. *See* **Exhibit 17.**

211.

The affidavits are attached to this Petition as an Appendix, with details of the multiple violations of law. *Id.*

212.

Also included in the Appendix are sworn declarations from data experts who have conducted detailed analysis of irregularities in the State's voter records. *See* **Exhibits 2, 3, 4, and 10.**

## COUNTS

## COUNT I:

### ELECTION CONTEST

### O.C.G.A §21-2-521 *et seq.*

213.

Petitioners incorporate by reference and re-allege paragraphs 1 through 212 this Petition as set forth herein verbatim.

214.

Respondents, jointly and severally, have violated the Constitution of the State of Georgia.

215.

Respondents, jointly and severally, have violated the laws of the State of Georgia.

216.

Respondents, jointly and severally, have violated the Election Code.

217.

Respondents, jointly and severally, have violated State Election Board Rules and Regulations.

218.

Respondents, jointly and severally, have violated the basic tenants of an open, free, and fair election.

219.

Respondents, jointly and severally, have failed in their duties to their constituents, the people of the State of Georgia, and the entire American democratic process.

220.

The Contested Election has been timely and appropriately contested per O.C.G.A. § 21-2-522 et seq.

221.

As a direct and proximate result of Respondents' actions, the Contested Election is fraught with misconduct, fraud, and irregularities.

222.

Due to the actions and failures of Respondents, many thousands of illegal votes were accepted, cast, and counted in the Contested Election, and legal votes were rejected.

223.

The fraud, misconduct, and irregularities that occurred under the "supervision" of Respondents are sufficient to change the purported results of the Contested Election.

224.

The fraud, misconduct, and irregularities that occurred under the "supervision" of Respondents are sufficient to place the Contested Election in doubt.

225.

Respondents' misconduct is sufficient to change the purported results in the Contested Election in President Trump's favor.

226.

Respondents' misconduct is sufficient to place the purported Contested Election results in doubt.

227.

Respondents, jointly and severally, erred in counting the votes in the Contested Election.

228.

Respondents' error in counting the votes in the Contested Election would change the result in President Trump's favor.

229.

Respondents, jointly and severally, erred in declaring the Contested Election results in favor of Mr. Biden.

230.

Respondents' systemic negligent, intentional, willful, and reckless violations of the Georgia Constitution, Georgia law, as well as the fundamental premise of a free and fair election created such error and irregularities at every stage of the Contested Election—from registration through certification and every component in between—that the outcome of the Contested Election is in doubt.

231.

As a result, there is substantial doubt as to the outcome of the Contested Election, and the Contested Election and any certification associated therewith shall be enjoined, vacated, and nullified and either a new presidential election be immediately ordered that complies with Georgia

law or, in the alternative, that such other just and equitable relief is obtained so as to comport with the Constitution of the State of Georgia.[10]  *See* O.C.G.A. § 21-2-522.

## COUNT II:
## VIOLATIONS OF THE GEORGIA CONSTITUTION'S EQUAL PROTECTION PROVISION

### 232.

Petitioners incorporate by reference and re-allege paragraphs 1 through 212 f this Petition as set forth herein verbatim.

### 233.

The Constitution of the State of Georgia provides, "Protection and property is the paramount duty of government and shall be impartial and complete.  No person shall be denied the equal protection of the laws." Ga. Const. art. I, § I, para. II.

### 234.

Under Georgia's Equal Protection Clause, "the government is required to treat similarly situated individuals in a similar manner." *State v. Jackson*, 271 GA 5 (1999), *Favorito v. Handel*, 285 Ga. 795, 798 (2009) (citation and quotations omitted). *See* **Exhibit 15**.

### 235.

This requires establishing a uniform procedure for all counties to conduct absentee voting, advance voting, and Election Day in-person voting.

---

[10] In the event this Court enjoins, vacates, and nullifies the Contested Election, the Legislature shall direct the manner of choosing presidential electors.  U.S. art II, § 1; *see also Bush v. Gore*, 531 U.S. 98.

236.

Respondents, jointly and severally, failed to establish such uniform procedure for the verification of signatures of absentee ballots.

237.

Respondents, jointly and severally, failed to establish a uniform level of scrutiny for signature matching.

238.

Respondents, jointly and severally, failed to train those who would be conducting signature verification on how to do so.

239.

The burdens of applying for and voting an absentee ballot were different in various counties throughout the State of Georgia.

240.

Electors voting via by absentee mail-in ballot were not required to provide identification, other than a matching signature.

241.

Electors voting in person were required to show photo identification and verify the voter's identity.

242.

The burdens of applying for and voting via absentee mail-in ballot were different from those for absentee in person.

243.

Georgia voters were treated differently depending on how they voted (i.e., whether by mail or in person), where they voted, when they voted, and for whom they voted.

244.

An elector in one county casting a ballot would not have his or her ballot treated in a similar manner as a voter in a different county.

245.

Electors in the same county would not have their ballots treated in a similar manner as electors at different precincts.

246.

Electors in the same precinct would not have their ballots treated in a similar manner whose votes were tabulated using different tabulators.

247.

Respondents, jointly and severally, failed to establish uniform procedures for treating similarly situated electors similarly.

248.

Respondents' systemic failure to even attempt uniformity across the state is a flagrant violation of the Constitution of the State of Georgia.

249.

Such a violation of the rights of the Citizens of Georgia constitutes misconduct and irregularity by election officials sufficient to change or place in doubt the result of the Contested Election.

250.

As a result, there is substantial doubt as to the outcome of the Contested Election, and the Contested Election and any certification associated therewith should be enjoined, vacated, and nullified and either a new presidential election be immediately ordered that complies with Georgia law or such other just and equitable relief is obtained so as to comport with the Constitution of the State of Georgia. *See* O.C.G.A. § 21-2-522.

## COUNT III:
## VIOLATIONS OF THE GEORGIA CONSTITUTION'S DUE PROCESS PROVISIONS

251.

Petitioners incorporate by reference and re-allege paragraphs 1 through 212 of this Petition and Count II as set forth herein verbatim.

252.

Pursuant to the Constitution of the State of Georgia, "No person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. art. I, § I, para. I.

253.

Moreover, "All citizens of the United States, resident in this state, are hereby declared citizens of this state; and it shall be the duty of the General Assembly to enact such laws as will protect them in the full enjoyment of the rights, privileges, and immunities due to such citizenship." Ga. Const. art. I, § 1, para. VII.

254.

The right to vote is a fundamental right.

255.

When a fundamental right is allegedly infringed by government action, substantive due process requires that the infringement be narrowly tailored to serve a compelling state interest. *Old S. Duck Tours v. Mayor & Aldermen of City of Savannah*, 272 Ga. 869, 872, 535 S.E.2d 751, 754 (2000).

256.

By allowing illegal ballots to be cast and counted, Respondents diluted the votes of qualified Georgia electors.

257.

By allowing illegal ballots to be cast and counted, Respondents, by and through their misconduct, allowed the disenfranchisement of qualified Georgia electors.

258.

Respondents, jointly and severally, violated the Due Process protections of qualified Georgia Electors guaranteed by the Georgia State Constitution.

259.

As a result, there is substantial doubt as to the outcome of the Contested Election and any certification associated therewith should be enjoined, vacated, and nullified and either a new presidential election be immediately ordered that complies with Georgia law or such other just and equitable relief is obtained so as to comport with the Constitution of the State of Georgia.

## COUNT IV:
## DECLARATORY JUDGMENT AND RELIEF

260.

Petitioners incorporate by reference and re-allege paragraphs 1 through 259 of this Petition as set forth herein verbatim.

261.

This claim is an action for a declaratory judgment pursuant to O.C.G.A. §§ 9-4-1 et seq.

262.

An actual controversy is ripe and exists between Petitioners and Respondents with regard to the misconduct, fraud, and irregularities occurring in the Contested Election, specifically including but not limited to:

    a.  The illegal and improper inclusion of unqualified voters on Georgia's voter list;

    b.  allowing ineligible voters to vote illegally in the Contested Election;

    c.  whether the Contested Election results are invalid;

    d.  whether the Consent Decree is unauthorized under Georgia law such that it is null and void, and unlawfully interfered with the proper administration of the Election Code;

    e.  whether the results of the Contested Election are null and void.

263.

It is necessary and proper that the rights and status amongst the parties hereto be declared.

264.

This Honorable Court is a Court of Equity and therefore endowed with the authority to hear and the power to grant declaratory relief.

265.

As a result of the systemic misconduct, fraud, irregularities, violations of Georgia law, and errors occurring in the Contested Election and consequently in order to cure and avoid said uncertainty, Petitioners seek the entry of a declaratory judgment providing that:

    a.  ineligible and unqualified individuals are unlawfully included on Georgia's voter role;

    b.  unregistered, unqualified, and otherwise ineligible voters cast their votes during the Contested Election;

    c.  the Consent Decree is unauthorized under Georgia law and is therefore null and void; and

    d.  the results of the Contested Election are null and void.

## COUNT V:

## REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

### 266.

Petitioners incorporate by reference and re-allege paragraphs 1 through 265 of this Petition as set forth herein verbatim.

### 267.

Petitioners seek an emergency temporary restraining order, as well as preliminary and permanent injunctive relief per O.C.G.A. § 9-11-65, to:

a.  Order expedited discovery and strict compliance with all open records requests;

b.  Order Respondents to respond to this Petition within 3 days;

c.  Require Respondents to immediately fulfill their obligations under the Election Code to properly maintain and update Georgia's list of registered voters to remove ineligible voters;

d.  Prevent Respondents from allowing unqualified, unregistered, and otherwise ineligible individuals from voting in Georgia elections, including but not limited to the upcoming January 5, 2021 run-off[11];

e.  Require an immediate audit of the signatures on absentee ballot applications and ballots as described in Exhibit 16;

f.  Enjoin and restrain Respondents from taking any further actions or to further enforce the Consent Decree;

g.  Prevent the certification of the results of the Contested Election;

---

[11] To the extent ineligible voters have already voted absentee for the January 5, 2021, runoff, those votes should be put into a provisional status.

h.  Enjoin the Secretary of State from appointing the Electors to the Electoral College;

i.  **Order a new Presidential Election to occur at the earliest opportune time; and**

j.  For such other relief that this Court deems just and proper under the circumstances.

268.

In the absence of an emergency temporary restraining order and preliminary and permanent injunctions, Petitioners (and the Citizens of Georgia and the United States) will suffer irreparable harm for which there is no adequate remedy at law, while injunctive relief will cause no harm to Respondents.

269.

Immediate and irreparable injury, loss, or damage will result to the Petitioners (as well as the Citizens of Georgia and the United States) if the requested emergency injunctive relief is not granted.

270.

There will be immediate and irreparable damage to the Citizens of Georgia by allowing an illegal, improper, fraudulent, error-ridden presidential election to be certified, thereby improperly appointing Georgia's electors for Mr. Biden even though the Contested Election is in doubt.

271.

There will be irreparable damage to the Citizens of Georgia through their loss of confidence in the integrity of the election process by virtue of the illegal votes included in the tabulations of the Contested Election, which outweighs any potential harm to Respondents.

272.

Granting the requested relief will not disserve the public interest.

**Page 60 of 64**

273.

Petitioners will be irreparably injured in the event the prayed for injunctive relief is not granted.

274.

It is further in the public interest to grant Petitioner's request for emergency injunctive relief so that Georgia voters can have confidence that the January 5, 2021, Senate election is conducted in accordance with the Election Code.

275.

As early as possible, notice to Respondents of Petitioners' motion for emergency injunctive relief will be made via email and / or telephone.

276.

Petitioners are further entitled to the injunctive relief sought herein because there is a substantial likelihood of success on the merits.

277.

The damage to Petitioners is not readily compensable by money.

278.

The balance of equities favors entry of a temporary restraining order and injunctive relief against Respondents and would not be adverse to any legitimate public interest.

**WHEREFORE**, Petitioners respectfully pray as follows for emergency and permanent relief as follows:

1. That this Court, pursuant to O. C. G. A. § 21-2-523, expeditiously assign a Superior Court or Senior Judge to preside over this matter;

2. That this Court issue a declaratory judgment that systemic, material violations of the Election Code during the Contested Election for President of the United States occurred that has rendered the Contested Election null and void as a matter of law;

3. That this Court issue a declaratory judgment that systemic, material violations of the Election Code during the Contested Election violated the voters' due process rights under the Georgia Constitution have rendered the Contested Election null and void as a matter of law;

4. That this Court issue a declaratory judgment that systemic, material violations of the Election Code violated the voters' equal protection rights under the Constitution of the State of Georgia that have rendered the Contested Election null and void as a matter of law;

5. That the Court issue an injunction requiring all Respondents to decertify the results of the Contested Election;

6. That the Court order a new election to be conducted in the presidential race, in the entirety of the State of Georgia at the earliest date, to be conducted in accordance with the Election Code;

7. *Alternatively*, that the Court issue an injunction prohibiting the Secretary of State from appointing the slate of presidential electors due to the systemic irregularities in the Contested Election sufficient to cast doubt on its outcome;

8. That the Court order expedited discovery and hearing, since time is of the essence, given the legal requirements that the presidential electors from the State of Georgia are to meet on December 14, 2020, and that the electoral votes from the State of Georgia are to be delivered to and counted by the United States Congress on January 6, 2021;

9. That this Court issue a declaratory judgment that the Consent Decree violates the Constitution of the State of Georgia and the laws of the State of Georgia;

10. *Alternatively*, that the Consent Decree be stayed during the pendency of this matter;

11. That the Court order Respondents to make available 10,000 absentee ballot applications and ballot envelopes from Respondents, as per Exhibit 16, and access to the voter registration database sufficient to complete a full audit, including but not limited to a comparison of the signatures affixed to absentee ballot applications and envelopes to those on file with the Respondents;

12. That the Court order the Secretary of State and other Respondents to release to Petitioners for inspection all records regarding the Contested Election pursuant to O.C.G.A. § 21-2-586;

13. That the Court order all Respondents to immediately identify and remove felons with uncompleted sentences, cross-county voters, out-of-state voters, deceased voters, and other ineligible persons from Respondents' voter rolls within the next 30 days;

14. That the Court declare that all rules adopted by the Respondents Secretary of State or the State Election Board in contravention of the Georgia Election Code be invalidated, specifically regarding the authentication and processing of absentee ballots, to wit State Election Board Rule 183-1-14-0.9-.15;

15. That the Court order such other relief as it finds just and proper.

Respectfully submitted this  7th day of December, 2020.

SMITH & LISS, LLC

*/s/ Ray S. Smith III*

RAY S. SMITH, III
Georgia Bar No. 662555
*Attorney for Petitioners Donald J. Trump, in his capacity as a Candidate for President, and Donald J. Trump for President, Inc.*

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone:  (404) 760-6000
Facsimile:  (404) 760-0225

MARK POST LAW, LLC

*/s/ Mark C. Post*

MARK C. POST
Georgia Bar No. 585575
*Attorney for Petitioner David J. Shafer, in his capacity as a Registered Voter and Presidential Elector Candidate pledged to Donald Trump for President*

3 Bradley Park Court
Suite F
Columbus, Georgia 31904
Telephone: (706) 221-9371
Facsimile:  (706) 221-9379

Page 64 of 64

Fulton County Superior Court
***EFILED***QW
Date: 12/9/2020 5:06 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

DONALD J. TRUMP; IN HIS CAPACITY AS   *
A CANDIDATE FOR PRESIDENT ,
DONALD J. TRUMP FOR PRESIDENT, INC.   *   **Civil Action No. : 2020CV343255**
DAVID J. SHAFER, IN HIS CAPACITY AS A   *
REGISTERED VOTER AND PRESIDENTIAL
ELECTOR PLEDGED TO DONALD TRUMP   *
FOR PRESIDENT,
     Petitioners,   *

      v.

BRAD RAFFENSPERGER, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF STATE OF
GEORGIA, et. al.,
     Respondents.

## ORDER ON CASE STATUS

    The action was filed on December 4, 2020. On December 8, 2020 Petitioners filed a voluntary withdrawal of their Motion for Emergency Injunctive Relief. The request for emergency relief having been withdrawn, the action shall proceed in the normal course. All counsel seeking admission pro hac vice must comply with Uniform Superior Court Rule 4.4.

So Ordered This ___9___ Day of ___December___, 2020.

Judge Constance C. Russell
Fulton County Superior Court
Atlanta Judicial Circuit

EXHIBIT
"2"

Fulton County Superior Court
***EFILED***MH
Date: 12/10/2020 7:32 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

DONALD J. TRUMP, in his capacity as a )
Candidate for President, *et a.l* )
    *Petitioners,* )
         )    Civ. Act. No. 2020CV343255
      v. )
BRAD RAFFENSPERGER, in his official capacity )
As Secretary of State of Georgia, *et al.,* )
         )

## NOTICE OF EMERGENCY REQUEST TO APPOINT
## ADMINISTRATIVE LAW JUDGE

**COME NOW** THE PETITIONERS, by and through the undersigned counsel, and hereby

respectfully provide Notice of their Emergency Request to Appoint an Administrative Law Judge

pursuant to O.C.G.A. § 21-2-523 and in support state as follows:

### FACTS

1.

Petitioners filed the instant action on December 4, 2020.

2.

On December 9, 2020, Petitioners filed a Motion for Leave to Amend the Complaint along

with an Amended Complaint and new *and pending* emergency motion for injunctive relief to

account for the Secretary of State's certification of the re-count results that occurred after

Petitioner's initial filing.



EXHIBIT

3

3.

On December 9, 2020, the Honorable Constance C. Russell was assigned the case and entered an Order on Case Status and in said order stated that the matter "shall proceed in the normal course."

4.

Judge Russell is a resident of Fulton County, GA.

5.

Judge Russell has not taken senior status at this time.

6.

Petitioners respectfully suggest that Judge Russell lacked authority to enter such an Order and to preside over this case under the Georgia Election Code.

7.

Pursuant to O.C.G.A. § 21-2-523 (c) when a contest petition is filed, the administrative judge for that Judicial District is to be immediately notified. Under O.C.G.A. § 21-2-523 (d) if the administrative judge is a member of the Circuit in which the proceeding was filed, then the administrative judge shall select an administrative judge of an adjoining district to select a Superior Court judge from that district, or a senior judge who is not a resident of the circuit wherein the proceeding was filed.

8.

In the context of the instant case filed in the 5th Judicial Administrative District, The Honorable Chief Judge Christopher S. Brasher is the Administrative Judge.

9.

Because Judge Brasher is a member of the Atlanta Judicial Circuit, as are all members of the 5th Administrative District, the statute requires he select an administrative judge of an adjoining district viz. from the 4th, 6th ,7th, or 9th Judicial Districts.

10.

If Judge Brasher chooses the administrative judge from the 7th Judicial District, that judge must choose a Superior Court judge from Cherokee, Cobb, Conasauga, Douglas, Lookout Mountain, Paulding, Rome, or Tallapoosa counties.

11.

If Judge Brasher chooses the administrative judge from the 6th Judicial District that judge must chose a superior court judge from Coweta, Griffin, Clayton, Flint or Towaliga counties to preside.

12.

If Judge Brasher chooses the administrative judge from the 4th Judicial District, that judge must choose a Superior Court judge from Stone Mountain or Rockdale counties to preside.

13.

If Judge Brasher chooses the administrative judge from the 9th Judicial District, that judge must choose a Superior Court judge from Appalachian, Blue Ridge, Bell-Forsyth, Gwinnett, North-Eastern, Enotah, or Mountain counties.

14.

Any of the aforementioned administrative judges could also select a senior status judge who does *not* live in Fulton County.

15.

The law gives Judge Brasher complete discretion to choose which administrator shall assign the judge to hear the case.

16.

Upon information and belief, Judge Russell was not appointed to this case pursuant to the relevant statutes and is a current resident of Fulton County who is not yet on Senior Judge status.

17.

Since Judge Russell was not properly appointed to this case and lacked statutory authority to preside, any action in this matter taken by her was void *ab initio*.

18.

Petitioners are seeking an emergency appointment of a judge that is proper and mete to preside over this action so as not to prejudice the legal rights of Petitioners to have a contested election challenge under the Georgia Election Code.

19.

Due to the gravitas of the issues presented by this action, Petitioners are hopeful that this matter and request is addressed promptly and *sua sponte*.

**WHEREFORE**, because the Honorable Constance C. Russell is a resident of Fulton County and has not yet taken senior status, although a well respected jurist in Fulton County, she therefore is unfortunately ineligible to serve as a presiding judge in this case and any Orders entered by her were void ab *initio*, and Petitioners respectfully request that the Election Code be

followed in an emergency appointment of a judge under the process set forth therein so as not to create appellate error or causing undue delay.

Respectfully submitted, this 10th day of December, 2020.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Ga Bar No. 352877
*Lead Counsel for Petitioners*

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

Fulton County Superior Court
***EFILED***AC
Date: 12/11/2020 4:00 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

DONALD J. TRUMP, in his capacity as a
Candidate for President, DONALD J.
TRUMP FOR PRESIDENT, INC., and
DAVID J. SHAFER, in his capacity as a
Registered Voter and Presidential Elector
pledged to Donald Trump for President,

Petitioners,

v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,
REBECCA N. SULLIVAN, in her official
capacity as Vice Chair of the Georgia State
Election Board, DAVID J. WORLEY, in
his official capacity as a Member of the
Georgia State Election Board, MATTHEW
MASHBURN, in his official capacity as a
Member of the Georgia State Election
Board, ANH LE, in her official capacity as
a Member of the Georgia State Election
Board, RICHARD L. BARRON, in his
official capacity as Director of Registration
and Elections for Fulton County, JANINE
EVELER, in her official capacity as
Director of Registration and Elections for
Cobb County, ERICA HAMILTON, in her
official capacity as Director of Voter
Registration and Elections for DeKalb
County, KRISTI ROYSTON, in her official
capacity as Elections Supervisor for
Gwinnett County, RUSSELL BRIDGES, in
his official capacity as Elections Supervisor
for Chatham County, ANNE DOVER, in
her official capacity as Acting Director of
Elections and Voter Registration for
Cherokee County, SHAUNA DOZIER, in
her official capacity as Elections Director
for Clayton County, MANDI SMITH, in
her official capacity as Director of Voter
Registration and Elections for Forsyth
County, AMEIKA PITTS, in her official

CIVIL ACTION FILE NO.

2020 CV 343255



EXHIBIT
"4"

capacity as Director of the Board of
Elections & Registration for Henry County,
LYNN BAILEY, in her official capacity as
Executive Director of Elections for
Richmond County, DEBRA PRESSWOOD,
in her official capacity as Registration and
Election Supervisor for Houston County,
VANESSA WADDELL, in her capacity as
Chief Clerk of Elections for Floyd County,
JULIANNE ROBERTS, in her official
capacity as Supervisor of Elections and
Voter Registration for Pickens County,
JOSEPH KIRK, in his official capacity as
Elections Supervisor for Bartow County,
and GERALD MCCOWN, in his official
capacity as Elections Supervisor for
Hancock County,

      Respondents.

## SECOND MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND INCORPORATED BRIEF IN SUPPORT

**COME NOW** Petitioners DONALD J. TRUMP, in his capacity as a Candidate for

President and DAVID J. SHAFER, in his capacity as a Registered Voter and Presidential

Elector pledged to Donald Trump for President ("Movants"), and through their undersigned

counsel of record, and file this, Second Motion for Emergency Injunctive Relief and Incorporated

Memorandum of Law, respectfully showing this Honorable Court as follows.

On December 4, 2020, Petitioners filed a Verified Petition to Contest Georgia's Presidential

Election Results for Violations of the Constitution and Laws of the State of Georgia, and a Request

for Emergency Declaratory and Injunctive Relief (the "Verified Petition"), in which, they sought an

injunction prohibiting the Georgia Secretary of State from certifying Georgia's election results. (*See*

D.E. 1.1.)

On December 7, 2020, Petitioner Shafer moved for Emergency Injunctive Relief. (*See* D.E.

3.)

On December 8, 2020, the Georgia Secretary of State certified Georgia's Election results, after which, Petitioners Voluntary withdrew their Motion for Emergency Injunctive Relief. (*See* D.E. 10.)

Also, on December 8, 2020, Petitioners filed a Motion to Amend the Verified Petition (the "Motion to Amend") which, among other things, updated the facts regarding the Georgia Secretary of State's certification and added a new request for Emergency Injunctive Relief seeking to decertify Georgia's election results. (*See* D.E. 16.) That Motion to Amend the Verified Petition is pending.

Movants now move for a Second Emergency Temporary Restraining order, as well as preliminary and interlocutory injunctive and respectfully request a hearing on this And to set a hearing for the Motion to Amend and this Second Motion for Emergency Injunctive Relief on Monday, December 14, 2020, or as soon as possible thereafter.

Movants further ask that the Court, pursuant to O.C.G.A. § 9-11-65 and/or O.C.G.A. §§ 9-5-1, 23-3-1 et seq.:

a. Decertify the certification of the results of the Contested Election by Respondent counties and the Secretary of State;

b. Enjoin the Secretary of State from appointing the Electors to the Electoral College;

c. Order expedited discovery and strict compliance with all existing and future open records requests;

d. Order Respondents to preserve any and all evidence concerning election documents as contemplated by O.C.G.A. § 21-2-52, including without limitation, applications, envelopes (whether exterior or interior envelopes, and whether stamped or not), and any and all ballots;

e. Require Respondents to immediately fulfill their obligations under the Election Code to properly maintain and update Georgia's list of registered voters to remove ineligible voters;

h. Prevent Respondents from allowing unqualified, unregistered, and otherwise ineligible individuals from voting in Georgia elections, including but not limited to the upcoming January 5, 2021 run-off;

i. Require an immediate audit of the signatures on absentee ballot applications and ballots as described in Exhibit 16;

j. Order a new Presidential Election to occur at the earliest opportune time; and

l. For such other relief that this Court deems just and proper under the circumstances.

## 1.

The date by which electors must vote in their respective states is not December 8, 2020, but rather January 6, 2020. Thus, Petitioner's Petition is not moot or rendered moot, and is ripe to be heard on an expedited basis.

## 2

Assuming the electors pledged to Trump meet on December 14, 2020, to cast their votes in the state capitol and send their votes to the President of the Senate in time to be opened on January 6, 2020, a Court decision or state legislature action rendered after December 14, 2020 should be considered timely.

## 3.

As Justice Ginsburg noted in *Bush v. Gore*, the date which has "ultimate significance" under federal law is the "sixth day of January." 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

## 4.

Such ripeness is further illustrated by precedent from the 1960 presidential election.

## 5.

In that election, the electors from Hawaii pledged to Vice President Nixon cast their ballots with certificates in hand from the governor of Hawaii certifying that Nixon had won the state by 141 votes.

6.

Kennedy's electors nonetheless met and voted on the day prescribed for the meeting of electors (December 19, 1960).

7.

On the same day, a Hawaii court ordered a recount of the entire state.

8.

On December 28th the Hawaii courts issued a final decision finding that Kennedy had in fact won the state by 105 votes.

9.

Because the Kennedy electors had taken care to vote on the proper day and the governor signed an amended certificate of election which was then reissued in time to be counted in Congress the electoral votes were awarded to Kennedy.

10.

As supported by the 1960 Kennedy-Nixon contest, the real safe harbor deadline is therefore January 6, 2021 and under *Bush v. Gore,* January 6 is the date the Senate and House meet for the counting of electoral votes and 3 U.S.C. § 15 controls when the Senate and House determine "the validity of electoral votes." *Id.* 531 U.S. 98, 144 (2000) (Ginsburg, J., dissenting).

11.

Thus, January 6, 2021 is the first date on which any electoral votes are actually counted. On that date, the Twelfth Amendment directs, "[t]he President of the Senate shall, in the presence

of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

12.

Art. II, § 1, cl. 4, gives Congress the power to specify the date "on which [the electors] shall give their votes, which Day shall be to same throughout the United States." Exercising that power, Congress has mandated that the electors "shall meet and give their votes on the first Monday after the second Wednesday in December" — this year, December 14, 2020 — "at such place in each State as the legislature of such State shall direct." 3 U.S.C. § 7.

13.

Article II requires that all electors throughout the United States vote on the same day, whether Congress could validly count electoral votes cast on a later date. The basic responsibility of the electors is to "make and sign six certificates of the votes given by them" for President and Vice President, 3 U.S.C. § 9; "seal up the certificates so made by them," *Id., § 10;* and forward them by registered mail to the President of the Senate and toother officials. *Id , § 11.* These actions are carried out without any involvement by state officials.

14.

It is also clear, that if, before the electors cast their votes, the candidates for whom they are voting have been issued certificates of election, it is the duty of the governor to deliver the certificates to the electors "on or before the day" they are required to meet, *Id at § 6,* and the electors are then to attach the certificates to the electoral votes they transmit to the President of the Senate. *Id. § 9.*

12.

But nothing in federal law requires States to resolve controversies over electoral votes prior to the meeting of the electors. Indeed, there is no set deadline for a State to transmit to Congress a certification of which slate of electors has been determined to be the valid one. The duty of the state governor is merely to transmit the certification "as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment...." *Id.* § 6.

13.

The "safe harbor" provision of the Electoral Count Act, which purportedly mandates that a final result reached in a State by the safe harbor date "shall be conclusive" when votes are counted in Congress. 3 U.S.C. § 5. There is no legal authority stating that the Electoral Count Act, enacted by the 5th Congress in 1877, can have any binding effect on the 117th Congress which will convene on January 3, regarding its authority and obligation to count electoral votes as it sees fit. The Senate, which convenes in January, has the inherent authority to set whatever rules it wishes for deciding challenges to the electoral votes cast in the 2020 election. This is consistent with Art. I, § 5, providing that "[each House may determine the Rules of its Proceedings...."

14.

Thus, since the true deadline is January 6, 2020, this action is not rendered moot and this action is ripe to proceed.

## LEGAL STANDARD AND RELEVANT FACTS

### 13.

The emergency preliminary, interlocutory, and permanent injunctive relief requested by Petitioners in this Second Motion is necessary in light of Defendants' past conduct as alleged in the Verified Petition, incorporated herein by reference, and their stated intentions as to future conduct, including a refusal to certify three different prior certifications of a Presidential election where there is "sufficient evidence to change or place in doubt the result" due to "Misconduct, fraud or irregularity" by any "election official." O.C.G.A. § 21-2-522.

### 14.

In the absence of an emergency temporary restraining order, preliminary and interlocutory injunctions, Petitioner (and the Citizens of Georgia and the United States) will suffer immediate and irreparable harm for which there is no adequate remedy at law, while injunctive relief, if granted, will cause no harm or prejudice to Respondents, and will uphold the Declared public policy of this State to "protect the integrity of the democratic process and to ensure fair elections for constitutional offices ... " O.C.G.A. § 21-5-2.

### 15.

Respondents have a duty to implement the rules and regulations of the State Election Board which in part is "to obtain uniformity in the practices and proceedings..." of elections as well as "the legality and purity in all .... elections." O.C.G.A. § 21-2-31.

### 16.

Immediate and irreparable injury, loss, or damage will result to the Petitioners (as well as the Citizens of Georgia and the United States) if the requested emergency preliminary, interlocutory, and permanent injunctive relief is not granted because the Verified Petition alleges and sets forth and

attaches actual data proof based on presumptively[1] accurate government documents that the 2020 election was not "fair[ly], legal[ly] and orderly" conducted.  O.C.G.A. § 21-2-50.

17.

There will be immediate and irreparable damage to the President in his capacity as a Candidate for President if the wrong electoral slate is allowed to vote, thereby denying him Georgia's electoral votes.  Petitioner David Schaffer in his official capacity as a presidential elector and in his personal capacity as a registered voter in the State of Georgia by being precluded from voting as an elector.

18.

There will be immediate and irreparable damage to the Citizens of Georgia by allowing an illegal, improper, fraudulent, irregular, error-ridden presidential election to be certified by an election official that is a "Violator" as defined in O.C.G.A. § 21-2-2(37), thereby improperly appointing Georgia's electors for Mr. Biden even though the Contested Election is in doubt and sufficient evidence exists to change the result of the election.  *See* Verified Complaint and Declarations/Affidavits attached thereto.

19.

There will be irreparable damage to the Citizens of Georgia through their loss of confidence in the integrity of the democratic election process by virtue of 1) the illegal votes included in the tabulations of the Contested Election, and 2) permitting an election official "Violator" to continue to willfully violate provisions of the Election Code. The foregoing and the declared public policy of this State outweighs any potential harm to Respondents.

---

[1] O.C.G.A. §803-8 et seq.

20.

Granting the requested relief will not disserve the public interest, on the contrary, it is the stated public policy of this State to require such relief in connection with elections.

21.

Movants will be irreparably injured in the event the prayed for injunctive relief is not granted. Specifically, President Trump will be denied votes to which he is entitled in the electoral college and potentially denied election to the presidency. David Schaffer, will be denied his ability cast a vote as a member of the Electoral College for President Trump, and further his vote as a qualified Georgia voter will be diluted.

22.

It is further in the public interest and public policy to grant Movant's request for emergency injunctive relief so that Georgia voters can have confidence that the January 5, 2021, Senate election is conducted in accordance with the Election Code and is a "pure" election free from "misconduct, fraud or irregularity" that substantially alters the election.

23.

Movants are further entitled to the injunctive relief sought herein because there is a substantial likelihood of success on the merits as the alleged misconduct, fraud or irregularity calls into question validity of cast ballots that *exceed the delta of the votes* that Mr. Biden currently holds in the election above Petitioner Trump, as Candidate. These same irregularities, if not enjoined, shall substantially impact the upcoming Senate runoffs and will perpetuate fraud, misconduct and irregularity that is repugnant to our democratic process and the required "purity" (O.C.G.A. § 21-

2-31) of elections in the State of Georgia; and the certification will be put in place by a "Violator." (O.C.G.A. § 21-2-2(37))

24.

The damage to Petitioners is not readily compensable by money.

25.

The balance of equities favors entry of a temporary restraining order, interlocutory, and/or preliminary emergency injunctive relief, or other equitable relief imposed by this Honorable Court, against Respondents and would not be adverse to any conceivable legitimate public interest.

26.

As early as possible, notice to Respondents of this Second Motion for Emergency Injunctive Relief will be made via email and / or telephone. Service of the Verified Petition is also in the process of being served on the State Election Board as required by law.

## ARGUMENT AND CITATION OF AUTHORITIES

Pursuant to O.C.G.A. § 9-11-65 *et seq.*, a temporary restraining order and an interlocutory injunction may be issued *if it clearly appears from specific facts shown by* an affidavit or by *the Verified Complaint that immediate and irreparable injury, loss or damage will result to Plaintiff.* O.C.G.A. § 9-11-65 *et seq.* (Emphasis added.) An interlocutory injunction and TRO "are designed to preserve the status quo pending a final adjudication of the case, and in so doing, the trial court must balance the conveniences of the parties pending the final adjudication, with consideration being given to whether greater harm might come from granting the injunction or denying it." *Bijou Salon & Spa, LLC v. Kensington Enterprises, Inc.*, 283 Ga. App. 857, 860, 643 S.E.2d 531 (2007).

A trial court "may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction." *Hampton Island Founders v. Liberty Capital,* 283 Ga. 289, 293, 658 S.E.2d 619 (2008). ***"There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." Id.*** (Emphasis added.) The granting and continuing of injunctions "shall always rest in the sound discretion of the judge, according to the circumstances of each case" and "this power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." *O. C. G.A. § 9-5-8.* Moreover, equity itself requires under O.C.G.A. § 5-9-1, 23-3-1 *et seq.* that this Honorable Court exercise its inherently vested "equitable powers" to impose extraordinary measures through equitable relief.

Here, it clearly appears from the Verified Petition and from the impending certification of the 2020 election has been tainted by misconduct, fraud or irregularity based on evidence that sufficiently may change the outcome of the 2020 and 2021 elections or place in doubt the result of same, that there is a vital necessity for the issuance of the injunction; otherwise, Petitioners will be irreparably harmed and the entire election process shall be called into doubt.

First, as many as 2,560 felons with uncompleted sentences were allowed to register to vote and cast ballots.

Second, at least 66,247 under-aged and therefore ineligible people illegally registered to vote and subsequently voted.

Third, 4,926 individuals registered to vote in another state after having registered in Georgia, effectively unregistering them as qualified voters in Georgia. At least 395 such individuals voted.

Fourth, at least 15,700 individuals voted in Georgia who filed a national change of address form with the United States Post office.

Fifth, at least 40,279 individuals who moved across counties lines at least 30 days prior to Election Day and failed to reregister after having moved voted.

Sixth, 1,043 registered to vote using a post office box as their habitation in violation of state law.

Seventh, as many as 10,315 deceased persons voted in the Contested Election.

Eight, Respondents violated state law with respect to signature verification of absentee ballots.

Ninth, Respondents allowed at least 92 individuals to vote whose absentee ballots were returned and accepted prior to the individual requesting an absentee ballot.

Tenth, Respondents allowed at least 50 individuals to vote whose absentee ballots were returned prior to the earliest date that absentee ballots were permitted by law to be sent out.

Eleventh, the Secretary of State has admitted that multiple county election boards, supervisors, employees, election officials and their agents failed to follow the Election Code and State election Board Rules and Regulations, and called for several resignations.

Twelfth, Fulton County committed fraud with how they claimed a "pipe burst" and when they claimed they had finished counting ballots for the night and required all Republican monitors and members of the public to leave the State Farm Arena before they resumed counting ballots.

Thirteenth, the Board of Elections and Registration of Coffee County submitted a letter to the Georgia Secretary of State regarding inconsistencies with its electronic recount performed and regarding its refusal to certify electronic results (which is attached to the Amended Petition) and a letter to the Georgia House Governmental Affairs Committee containing an election summary report containing inconsistencies (which is attached hereto as **Exhibit A**).  And the Supervisor of the Coffee County Board of Elections is recorded on video depicting systematic problems with their voting tabulation machines.  A copy of this video will be provided to the Court and has been tendered as part of Exhibit 17 to the Petition.  There are also photographs attached to an exhibit of an election official monitor ignoring his official duties.  *See* (**Exhibit B** attached hereto and incorporated herein).

Fifteenth, there are a myriad of other election irregularities detailed in the Complaint and its attached exhibits incorporated by reference herein.

Simply put, if immediate emergency injunctive relief is not granted, irreparable harm and injury to Petitioners will result.

WHEREFORE, Petitioners pray for the following relief:

(1)     That the Court and/or Special Master issue a RULE NISI *instanter* and that the Court conduct an emergency hearing on this Motion;

(2)     That the Court issue a temporary restraining order, interlocutory and preliminary injunction, and/or other injunction or equitable relief in favor of Petitioners;

(3)     That the Court grant expedited discovery proceedings in this action, and limit the time for response accordingly along with entry of any applicable or necessary Protective

Orders to protect personal identifying information and other potentially sensitive information;

(4)    And for such other and further relief as is just, proper and equitable.

Respectfully submitted, this 11th day of December 2020.

THE HILBERT LAW FIRM , LLC

Kurt R. Hilbert
(Georgia Bar No. 352877
Attorneys for Petitioners

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

**COFFEE COUNTY BOARD OF**
**ELECTIONS AND REGISTRATION**

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

12/04/2020

Brad Raffensperger
214 State Capitol
Atlanta, GA. 30334

Dear Mr. Raffensperger,

The Coffee County Board of Elections and Registration cannot certify the electronic recount numbers given its inability to repeatably duplicate creditable election results. Any system, financial, voting, or otherwise, that is not repeatable nor dependable should not be used. To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount.

I am enclosing a spread sheet which illuminates that the electronic recount lacks credibility.  NO local election board has the ability to reconcile the anomalies reflected in the attached.  Accordingly, the Coffee County Board of Elections and Registration have voted to certify the votes cast in the election night report.  The election night numbers are reflected in the official certification of results submitted by our office.

Respectfully,
Coffee County Board of Elections and Registration

Ernestine Thomas-Clark
Chairperson
Signed by Chairperson by expressed permission and consent of 100% of the board.

cc
Dominic LaRiccia
Tyler Harper



EXHIBIT
4

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | No Vote* | Total Votes | Internal Delta | Total Delta | Net Discrepancy Between Total and Internal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 40 | 15237 | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | NA | 15238 | | | |
| | Compare 2 to 1 | | 0 | 0 | +1 | NA | NA | +1 | +1 | +1 | 0 |
| 11/30/2020 | Electronic Recount | 3 | 10596 | 4518 | 13 | 0 | 15 | 15127 | | | |
| | Compare 3 to 1 | | +18 | +7 | -112 | | | -110 | -87 | -110 | +23 |
| | Compare 3 to 2 | | +18 | +7 | -112 | | | -110 | -88 | -110 | +22 |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | 74 | NO CHANGE | | | |
| | The tabluated Electronic Recount revealed the above discrepencies | | | | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos: we then ran these ballots | | | | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | | | | |
| | The Dominion Rep directed the Board of Elections to make a decision about what to do. | | | | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | | | 15236 | | | |
| | Compare 5 to 1 | | +19 | +9 | +9 | | | -1 | +37 | +16 | +21 |
| | Compare 5 to 2 | | +19 | +9 | +9 | | | -2 | +38 | +16 | +22 |
| | There is a discrepency between Electronic Recount and total votes for both 1 & 2 | | | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand | | | | | | | | | | |
| | recount, and the electronic recount. | | | | | | | | | | |
| | Anomilies in software recounts create irreconcilable difference in vote count which leaves the Board with no clear | | | | | | | | | | |
| | guidance as to which count to certify. | | | | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | | | | |

# COFFEE COUNTY BOARD OF
# ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty.hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

December 10, 2020

House Governmental Affairs Committee
Elections Investigative Hearing
Shaw Blackmon – Chairman
401 State Capitol
Atlanta, Ga. 30334

We want to thank the Governmental Affairs Committee for allowing the Coffee County Board of Election's to express its dilemma regarding certifying the electronic recount performed in the November 3, 2020 General Election. As you know, the certification process requires the Election Supervisor to swear under oath and under penalty of perjury that the certified votes are a true and accurate reflection of the count, or recount. In the instant case, the Election Supervisor of Coffee County could not honestly make such an attestation given the inherent inconsistencies existing within the electronic summary report generated by the Dominion voting system.

The basis for the dilemma is simple the election summary report for the electronic recount tabulated votes in a manner that resulted in more collective votes being cast for the Presidential candidates than the total number of votes reflected within the report. The inconsistent count could not be reconciled.

This fact (inherent inconsistency) alone was grounds not to certify the election based on the Dominion data set and report. However, the reluctance to certify the electronic recount was compounded where those results were considered in context with the two prior vote count results.

As this committee knows, a hand count of the original General Election balloting occurred on November 16 – November 17. Coffee County's hand count yielded one more ballot than was reflected on the ballot count on election night. At the direction of the Secretary of State, if the hand count yields a net vote difference of less than five votes, the board was instructed to certify the original vote tally. Coffee County certified on the original elections results on November 9, 2020.

The election report used to certify the original election results was internally consistent, meaning that the sum of the votes for each presidential candidate equaled the total votes reflected on the report. The hand count also yielded the same internal consistency within the report. See Exhibit 5. It is worth noting that we believe Dominion election reports generated in prior elections were likewise internally consistent. The internal inconsistency of the election summary report stands in stark contrast to all other prior elections.

To this application we have attached the following exhibits:

Exhibit 1:    Election Night Summary Report
Exhibit 2:    Recount Data



EXHIBIT
"A"

Exhibit 3:     Electronic Electron Summary Report
Exhibit 4:     Letter to Secretary of State
Exhibit 5:     Spreadsheet with results (corrected)
Exhibit 6:     Certification Form

Exhibit 5 is a spreadsheet that summarizes the discrepancies thus far described. A review of Exhibit 5 illustrates the two glaring problems presented to the Coffee County Board of Elections. The report relating to the recount is patently inaccurate on its face. Moreover, if one is to consider the electronic recount in light of the two prior vote counts, there is no way the vote tally reflected in that report could be accurate. It is not credible to accept that the original count and the hand count, under counted the total ballots by material number of ballots. Considering the inherent inconsistency of the electronic recount data, and its unlikely accuracy when compared to the first two vote counts, the Coffee County Board of Elections refused to certify the electronic recount based on the mandate of the certification form.

The decision not to certify the electronic recount was the result of a unanimous vote by Coffee County Board of Elections. However, this decision was not made until the Board could first have the data reviewed and explained by its Dominion representative. The data reflected in this statement was presented to the representative. He had NO explanation for the inaccuracies. He could not reconcile the electronic recount report data or explain how it so dramatically differed from the two prior counts. Knowing this decision would certainly be scrutinized, the Board sent a letter explaining its dilemma, its decision and the supporting spreadsheet to the Secretary of State. This letter was sent to Brad Raffensperger, on Friday, December 4, 2020.

That same day, the Election Supervisor also communicated directly with Chris Harvey, Director of Elections about the findings and the decision. No one could explain what was wrong or what to do. No one from the Secretary of State's office came to help the Board determine if it made an error or if the inaccuracies are Dominion software related.

This committee must understand, in this same election cycle, we identified other problems with the Dominion System and reported the same to the Secretary of State. On November 13, 2020 a letter was written to the Secretary of State identifying other serious concerns. A copy of that letter and other relevant documents are attached as Exhibit 7. Our Board members and Election Supervisor have called the Secretary of State's office to both report these issues as well as ask for help to address those problems. All our concerns and requests for help have fallen on deaf ears.

One can understand why today, December 10, 2020, our Board is dismayed to learn that the Secretary of State has opened an "investigation" into our handling of the recount. We learned this not from the Secretary of State but through WALB News where Chris Harvey provided a statement for the media. Mr. Harvey did not show us the courtesy of a phone call.

The same is true as relates to a video created at a Coffee County Board of Elections meeting which is now widely distributed via the internet. This video demonstrates how the Dominion system can be manipulated to alter existing ballot results or create voter ballots out of thin air. This security issue was first discovered by the Coffee County Board of Elections supervisor in June, 2020. It was made known to some but not all of the Board members. Importantly however, the findings were reported to our State Representative Dominic LaRiccia on or about June 10, 2020, with the hope that someone unassociated with Dominion would scrutinize this problem. The board never heard a word from Mr. LaRiccia or anyone from the Secretary of State's office or state government.

After the Presidential election was over, national attention focused on whether Dominion software could be manipulated to impact election results. Having previously demonstrated this fact, the full Board wanted to have this process documented during an open meeting. The video that captured this demonstration, along with other documents were requested to be produced via an Open Records Request. The content became public knowledge through this third-party request.

The Coffee County Board of Elections has for many months reported various aspects of these problems to the Secretary of State receiving no assistance in correcting these problems. As for the investigation, the Secretary of State chose not to assist us or help evaluate the root cause of the refusal to certify the election recount but certified the statewide election results despite our findings. The Coffee County Board of Elections took action which it believed accurately reflected the accurate vote of its citizens and certified that vote. If it has done so erroneously, it has been done, not nefariously or belligerently but honestly, humbly and with but one goal: to certify the true vote of the citizens of Coffee County.

This is particularly disappointing given that Eric Chaney personally called Chris Harvey and Dennis Carbone on November 13, 2020 to express his concerns over the Dominion System. Mr. Harvey nor Mr. Carbone returned this phone call. But the deafening silence from people in authority regarding our concerns go back to June 2020; their indifference is unfortunate.

As Exhibit 8 we have attached a list of individuals who, prior to Monday December 7, 2020, were made aware of some or all of the problems reflected in this statement. Not one person has offered any solution or explanation for these issues. The Secretary of State has been AWOL.

We look forward to our "investigation" which begins Friday. We stand ready to take any necessary action to correct any problems which are supported by the law and facts, even if we mistakenly erred in our decisions.


Respectfully,


Eric Chaney
Coffee County Board Member

# EXHIBIT LIST

1. Election night summary report
2. Hand recount election summary
3. Electronic recount ESR
4. Letter to Secretary State (Dec. 4th, 2020)
5. Spread sheet summary election results (correction)
6. Certification form
7. Letter to Secretary of State (Nov 11th, 2020)
8. People aware of problems prior to Monday Dec 7th, 2020

# EXHIBIT 1

12/7/2020 11:03:51 AM

# Election Summary Report

General Election

COFFEE

November 03, 2020

Summary for: All Contests, All Districts, All Tabulators, All Counting Groups

OFFICIAL AND COMPLETE

Precincts Reported: 6 of 6 (100.00%)
Registered Voters: 15,277 of 25,114 (60.83%)
Ballots Cast: 15,277

## President of the United States (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Donald J. Trump (I) (Rep) |  | 2,587 | 7,066 | 917 | 8 | 10,578 |  |
| Joseph R. Biden (Dem) |  | 1,100 | 2,411 | 995 | 5 | 4,511 |  |
| Jo Jorgensen (Lib) |  | 41 | 67 | 17 | 0 | 125 |  |
| Total Votes |  | 3,728 | 9,544 | 1,929 | 13 | 15,214 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 |  |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 |  |
| Unresolved Write-In |  | 10 | 12 | 1 | 0 | 23 |  |

## US Senate (Perdue) (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| David A. Perdue (I) (Rep) |  | 2,535 | 6,981 | 899 | 9 | 10,424 |  |
| Jon Ossoff (Dem) |  | 1,067 | 2,298 | 913 | 3 | 4,281 |  |
| Shane Hazel (Lib) |  | 85 | 155 | 46 | 0 | 286 |  |
| Total Votes |  | 3,687 | 9,434 | 1,858 | 12 | 14,991 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 5 | 8 | 1 | 0 | 14 |  |

12/7/2020 11:03:51 AM

## Public Service Commission District 4 (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Lauren Bubba McDonald, Jr. (I) (Rep) |  | 2,375 | 6,662 | 871 | 7 | 9,915 |  |
| Daniel Blackman (Dem) |  | 1,008 | 2,156 | 910 | 3 | 4,077 |  |
| Nathan Wilson (Lib) |  | 87 | 144 | 37 | 1 | 269 |  |
| Total Votes |  | 3,470 | 8,962 | 1,818 | 11 | 14,261 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 2 | 4 | 2 | 0 | 8 |  |

## US House District 12 (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,574 | 1,936 | 13 | 15,277 / 25,114 | 60.83% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Rick W. Allen (I) (Rep) |  | 2,483 | 6,909 | 916 | 7 | 10,315 |  |
| Liz Johnson (Dem) |  | 1,054 | 2,247 | 938 | 4 | 4,243 |  |
| Total Votes |  | 3,537 | 9,156 | 1,854 | 11 | 14,558 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 1 | 3 | 0 | 0 | 4 |  |

## State Senate District 7 (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Tyler Harper (I) (Rep) |  | 2,948 | 7,790 | 1,216 | 7 | 11,961 |  |
| Total Votes |  | 2,948 | 7,790 | 1,216 | 7 | 11,961 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 54 | 166 | 51 | 0 | 271 |  |

12/7/2020 11:03:51 AM

## Sheriff (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Doyle T. Wooten (I) (Rep) | | 3,058 | 8,018 | 1,396 | 9 | 12,481 | |
| Total Votes | | 3,058 | 8,018 | 1,396 | 9 | 12,481 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 49 | 124 | 44 | 0 | 217 | |

## Tax Commissioner (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Shanda Henderson (I) (Rep) | | 3,132 | 8,175 | 1,412 | 9 | 12,728 | |
| Total Votes | | 3,132 | 8,175 | 1,412 | 9 | 12,728 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 15 | 61 | 33 | 0 | 109 | |

## Surveyor (Vote for 1)
NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Adam H. Evans (I) (Rep) | | 3,004 | 7,933 | 1,350 | 9 | 12,296 | |
| Total Votes | | 3,004 | 7,933 | 1,350 | 9 | 12,296 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 18 | 66 | 26 | 0 | 110 | |

## County Commission District 5 (Vote for 1)
## NP

12/7/2020 11:03:51 AM

Precincts Reported: 5 of 5 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 1,134 | 1,916 | 345 | 6 | 3,401 / 5,144 | 66.12% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Ted Osteen (I) (Rep) | | 946 | 1,604 | 255 | 1 | 2,806 | |
| Total Votes | | 946 | 1,604 | 255 | 1 | 2,806 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 0 | 7 | 9 | 0 | 16 | |

## Soil and Water - Altamaha (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Total Votes | | 0 | 0 | 0 | 0 | 0 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 412 | 938 | 178 | 0 | 1,528 | |

## Constitutional Amendment #1 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,754 | 9,573 | 1,933 | 13 | 15,273 / 25,114 | 60.81% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| YES | | 2,520 | 6,513 | 1,342 | 5 | 10,380 | |
| NO | | 827 | 2,133 | 399 | 3 | 3,362 | |
| Total Votes | | 3,347 | 8,646 | 1,741 | 8 | 13,742 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 0 | 0 | 0 | 0 | 0 | |

# EXHIBIT 2

Hand Recount Recap

###### BATCH RESULTS ######

| Jurisdiction | Batch Name | Batch Type | Trump | Biden | Jorgensen | Invalid Write-In | Valid Write-iin | Blank/Unde | Overvote |
|---|---|---|---|---|---|---|---|---|---|
| COFFEE | 1 | Absentee By Mail | 441 | 1 | 17 | 0 | 0 | 0 | 0 |
| COFFEE | 2 | Absentee By Mail | 484 | 527 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 3 | Absentee By Mail | 0 | 474 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 10 | Election Day | 376 | 565 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 11 | Election Day | 879 | 185 | 95 | 0 | 0 | 0 | 0 |
| COFFEE | 12 | Election Day | 489 | 182 | 13 | 0 | 0 | 0 | 0 |
| COFFEE | 13 | Election Day | 625 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 14 | Election Day | 872 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 15 | Election Day | 966 | 0 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 16 | Election Day | 1071 | 430 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 17 | Election Day | 0 | 0 | 0 | 23 | 0 | 0 | 0 |
| COFFEE | 4 | Election Day | 393 | 8 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 5 | Election Day | 1046 | 7 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 6 | Election Day | 866 | 639 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 7 | Election Day | 461 | 592 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 8 | Election Day | 674 | 316 | 0 | 0 | 0 | 0 | 0 |
| COFFEE | 9 | Election Day | 935 | 585 | 0 | 0 | 0 | 0 | 0 |
| | | Election Day | 9653 | 3509 | 17 | 23 | | 13202 Total Votes | 0 |
| | | Absentee By Mail | 925 | 1002 | 108 | 23 | | 2035 Total Votes | 0 |

10588  4511  125

15,237 *

This total did not include the additional ballot (15238) based on SOS guidance.

# EXHIBIT 3

12/2/2020 5:24:08 PM

# Election Summary Report

General Election

COFFEE

November 03, 2020

Summary for: All Contests, All Districts, All Tabulators, All Counting Groups

OFFICIAL AND COMPLETE RECOUNT

Precincts Reported: 6 of 6 (100.00%)

Registered Voters: 15,327 of 25,114 (61.03%)

Ballots Cast: 15,327

## President of the United States (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Donald J. Trump (I) (Rep) | | 9,671 | 0 | 926 | 0 | 10,597 | |
| Joseph R. Biden (Dem) | | 3,519 | 0 | 1,001 | 0 | 4,520 | |
| Jo Jorgensen (Lib) | | 119 | 0 | 17 | 0 | 136 | |
| Total Votes | | 13,309 | 0 | 1,944 | 0 | 15,253 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Loren Collins | WRITE-IN | 0 | 0 | 0 | 0 | 0 | |
| Gloria La Riva | WRITE-IN | 0 | 0 | 0 | 0 | 0 | |
| Unresolved Write-In | | 5 | 0 | 0 | 0 | 5 | |

## US Senate (Perdue) (Vote for 1)
### NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| David A. Perdue (I) (Rep) | | 9,525 | 0 | 906 | 0 | 10,431 | |
| Jon Ossoff (Dem) | | 3,375 | 0 | 917 | 0 | 4,292 | |
| Shane Hazel (Lib) | | 248 | 0 | 45 | 0 | 293 | |
| Total Votes | | 13,148 | 0 | 1,868 | 0 | 15,016 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 13 | 0 | 1 | 0 | 14 | |

## Public Service Commission District 4 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Lauren Bubba McDonald, Jr. (I) (Rep) |  | 9,037 | 0 | 873 | 0 | 9,910 |
| Daniel Blackman (Dem) |  | 3,167 | 0 | 912 | 0 | 4,079 |
| Nathan Wilson (Lib) |  | 237 | 0 | 38 | 0 | 275 |
| Total Votes |  | 12,441 | 0 | 1,823 | 0 | 14,264 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 6 | 0 | 2 | 0 | 8 |

## US House District 12 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,379 | 0 | 1,948 | 0 | 15,327 / 25,114 | 61.03% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Rick W. Allen (I) (Rep) |  | 9,398 | 0 | 921 | 0 | 10,319 |
| Liz Johnson (Dem) |  | 3,308 | 0 | 939 | 0 | 4,247 |
| Total Votes |  | 12,706 | 0 | 1,860 | 0 | 14,566 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 4 | 0 | 0 | 0 | 4 |

## State Senate District 7 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  |  | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |

| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|---|
| Tyler Harper (I) (Rep) |  | 10,743 | 0 | 1,219 | 0 | 11,962 |
| Total Votes |  | 10,743 | 0 | 1,219 | 0 | 11,962 |

|  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |
|---|---|---|---|---|---|
| Unresolved Write-In | 219 | 0 | 53 | 0 | 272 |

## Sheriff (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Doyle T. Wooten (I) (Rep) |  | 11,081 | 0 | 1,396 | 0 | 12,477 |  |
| Total Votes |  | 11,081 | 0 | 1,396 | 0 | 12,477 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 173 | 0 | 46 | 0 | 219 |  |

## Tax Commissioner (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Shanda Henderson (I) (Rep) |  | 11,314 | 0 | 1,414 | 0 | 12,728 |  |
| Total Votes |  | 11,314 | 0 | 1,414 | 0 | 12,728 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 76 | 0 | 35 | 0 | 111 |  |

## Surveyor (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

|  | Party | Election Day | Advanced Vot | Absentee by | Provisional | Total |  |
|---|---|---|---|---|---|---|---|
| Times Cast |  | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Adam H. Evans (I) (Rep) |  | 10,944 | 0 | 1,352 | 0 | 12,296 |  |
| Total Votes |  | 10,944 | 0 | 1,352 | 0 | 12,296 |  |
|  |  | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total |  |
| Unresolved Write-In |  | 84 | 0 | 28 | 0 | 112 |  |

12/2/2020 5:24:08 PM

## County Commission District 5 (Vote for 1)
## NP

Precincts Reported: 5 of 5 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 3,066 | 0 | 350 | 0 | 3,416 / 5,144 | 66.41% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Ted Osteen (I) (Rep) | | 2,553 | 0 | 255 | 0 | 2,808 | |
| Total Votes | | 2,553 | 0 | 255 | 0 | 2,808 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 7 | 0 | 9 | 0 | 16 | |

## Soil and Water - Altamaha (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Total Votes | | 0 | 0 | 0 | 0 | 0 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 1,350 | 0 | 178 | 0 | 1,528 | |

## Constitutional Amendment #1 (Vote for 1)
## NP

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | Advanced Vot | Absentee by | Provisional | Total | |
|---|---|---|---|---|---|---|---|
| Times Cast | | 13,356 | 0 | 1,945 | 0 | 15,301 / 25,114 | 60.93% |
| Candidate | Party | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| YES | | 9,041 | 0 | 1,342 | 0 | 10,383 | |
| NO | | 2,961 | 0 | 399 | 0 | 3,360 | |
| Total Votes | | 12,002 | 0 | 1,741 | 0 | 13,743 | |
| | | Election Day | Advanced Voting | Absentee by Mail | Provisional | Total | |
| Unresolved Write-In | | 0 | 0 | 0 | 0 | 0 | |

# EXHIBIT 4

**COFFEE COUNTY BOARD OF
ELECTIONS AND REGISTRATION**

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

12/04/2020

Brad Raffensperger
214 State Capitol
Atlanta, GA. 30334

Dear Mr. Raffensperger,

The Coffee County Board of Elections and Registration cannot certify the electronic recount numbers given its inability to repeatably duplicate creditable election results. Any system, financial, voting, or otherwise, that is not repeatable nor dependable should not be used. To demand certification of patently inaccurate results neither serves the objective of the electoral system nor satisfies the legal obligation to certify the electronic recount.

I am enclosing a spread sheet which illuminates that the electronic recount lacks credibility. NO local election board has the ability to reconcile the anomalies reflected in the attached. Accordingly, the Coffee County Board of Elections and Registration have voted to certify the votes cast in the election night report. The election night numbers are reflected in the official certification of results submitted by our office.

Respectfully,
Coffee County Board of Elections and Registration

Ernestine Thomas-Clark
Chairperson
Signed by Chairperson by expressed permission and consent of 100% of the board.

cc
Dominic LaRiccia
Tyler Harper

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | No Vote* | Total Votes | Internal Delta | Total Delta | Net Discrepency Between Total and Internal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 40 | 15237 | | | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | NA | 15238 | | | |
| | Compare 2 to 1 | | 0 | 0 | +1 | | | +1 | +1 | | 0 |
| 11/30/2020 | Electronic Recount | 3 | 10596 | 4518 | 13 | 0 | 15 | 15127 | | | |
| | Compare 3 to 1 | | +18 | +7 | -112 | | | -110 | -87 | -110 | +23 |
| | Compare 3 to 2 | | +18 | +7 | -112 | | | -110 | -88 | -110 | +22 |
| | The tabulated Electronic Recount revealed the above discrepencies | | | | | | | | | | |
| | Investigation revealed we negelected to run 185 ballos: we then ran these ballots | | | | | | | | | | |
| | we reviewed the results but there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | | | | |
| | The Dominion Rep directed the Board of Elections to make a decision about what to do. | | | | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | | | | |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | 74 | NO CHANGE | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | | | 15236 | | | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | -1 | +37 | +16 | +23 |
| | Compare 5 to 2 | | +19 | +9 | +11 | | | -2 | +38 | +16 | +24 |
| | There is a discrepency between Electronic Recount and total votes for both 1 & 2 | | | | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount. | | | | | | | | | | |
| | Anomilies in software recounts create irreconcilable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | | | | |

* Write-IN and NO Votes are NOT included in the Total Votes

# EXHIBIT 5

# DISCREPENCIES IN THE NOVEMBER 3, 2020 GENERAL ELECTION AND RECOUNTS

| Date | Activity | Action # | Trump | Biden | Jorgensen | Write-IN* | Total Votes | Internal Delta |
|---|---|---|---|---|---|---|---|---|
| 11/3/2020 | Election Day 1 | 1 | 10578 | 4511 | 125 | 23 | 15237 | |
| 11/17/2020 | Hand Recount | 2 | 10578 | 4511 | 126 | NA | 15238 | |
| | Compare 2 to 1 | | 0 | 0 | +1 | | +1 | +1 |
| 11/30/2020 | Electronic Recount | 3 | 10597 | 4520 | 136 | 0 | 15258 | |
| | Compare 3 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 3 to 2 | | +19 | +9 | +12 | | | +40 |
| 11/30/2020 | 2nd uploaded 185 BALLOTS | 4 | NO CHANGE | NO CHANGE | NO CHANGE | 0 | NO CHANGE | |
| | The tabluated Electonic Recount revealed the above discrepencies | | | | | | | |
| | Investigation revealed we negelected to run 185 balltos: we then ran these ballots | | | | | | | |
| | we reviewed the resultsbut there was No Change in Vote Count Despite 185 Ballots Added | | | | | | | |
| | The on Site Dominion Rep could not explain why system would not update votes | | | | | | | |
| | The Dominon Rep directed the Board of Elections to make a decision about what to do. | | | | | | | |
| | FOR SOME REASON NO WRITE-IN COLUMN PRINTED ON THE RECOUNT SUMMARY | | | | | | | |
| | THERE WAS NO EXPLANATION OR SOLUTION TO THIS PROBLEM | | | | | | | |
| 12/2/2020 | Prepare to Certify | 5 | 10597 | 4520 | 136 | 5 | 15258 | |
| | Compare 5 to 1 | | +19 | +9 | +11 | | | +39 |
| | Compare 5 to 2 | | +19 | +9 | +12 | | | +40 |
| | There is a discrepency between Electronic Recount and total votes for both 1 & 2 | | | | | | | |
| | Stated Differently after 3 counts a clear inconsistency exists as one compares the orgional election counts, the hand recount, and the electronic recount. | | | | | | | |
| | Anomilies in software recounts create irreconcable difference in vote count which leaves the Board with no clear guidance as to which count to certify. | | | | | | | |
| | * Write-IN and NO Votes are NOT included in the Total Votes | | | | | | | |

Revised 12/10/2020

# EXHIBIT 6

## CERTIFICATION OF RETURNS FOR:

NOVEMBER 3, 2020 GENERAL ELECTION  RECOUNT

_____
(COUNTY)

---

Instructions: Prepare and print 4 copies of the Election Summary for the General Election (county consolidated vote totals report that is generated by EMS).
Attach copies of this consolidated certification report as follows:

1. White sheet is attached to Election Summary and returned to Secretary of State.
2. Yellow sheet is attached to Election Summary and maintained by Superintendent.
3. Pink sheet is attached to Election Summary and sent to Clerk of Superior Court.
4. Goldenrod sheet is attached to Election Summary and immediately posted at the Courthouse.

ELECTION SUMMARY MUST BE ATTACHED TO THIS FORM

---

We, the undersigned Superintendent/Supervisor of Elections and his/her Assistants, do jointly and severally certify that the attached Election Summary is a true and correct count of the votes cast in this County for the candidates in the General Election.
In TESTIMONY WHEREOF, We have hereunto set our hands and seals this _____ day of
_____, 20 _____ . SIGNED IN QUADRUPLICATE.

_____ Assistant        _____

_____ Assistant        Superintendent/Supervisor Of Elections

_____ Assistant

_____ Assistant

_____ Assistant

CR-GE-20

# EXHIBIT 7

# COFFEE COUNTY BOARD OF
# ELECTIONS AND REGISTRATION

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there

is no accountability.  We also believe that the adjudication process may not be observed from any distance beyond that of the operator of the ICC.  Given the computer screen it is not possible to observe the change being completed from any further distance.

In a Mockup election we were able to count ballot multiple times.  It was during this mockup election we have verified and recreated the above deficiencies

Respectfully,

Ernestine Thomas-Clark

Wendell Stone

Matthew McCullough

Eric Chaney

Delivered by: Overnight and fax  404-656-0513

# Transmission Log

Coffee Co Commission                Friday, 2020-11-13  16:28                    9123840291

| Date | Time | Type | Job # | Length | Speed | Fax Name/Number | Pgs | Status |
|------|------|------|-------|--------|-------|-----------------|-----|--------|
| 2020-11-13 | 16:27 | SCAN | 09289 | 0:32 | 14400 | 814046560513 | 1 | OK -- V.17 AB31 |

---

### COFFEE COUNTY BOARD OF
### ELECTIONS AND REGISTRATION
224 West Ashley Street
Douglas, GA 31533
(912) 384-7018
FAX (912) 384-1343
E-Mail: misty-hampton@coffeecounty-ga.gov

Ernestine Thomas-Clark, Chairman
Wendell Stone, Vice-chairman
C.T. Peavy, Member

Eric Chaney, Member
Matthew McCullogh, Member
Misty Martin, Election Supervisor
Jil Ridlehoover Elections Assistant

Brad Raffensperger
2 MLK Jr. Dr. S.E. Ste. 814
Floyd W Tower
Atlanta, Ga. 30334

November 11, 2020

Dear Mr. Raffensperger,

During the election conducted on 11/3/2020 the Coffee County Board of Elections and Registration discovered deficiencies in the current Dominion election system. We are writing to ensure you are aware of these and that they may be immediately rectified.

The adjudication process allows the ICC operator to choose how adjudication occurs, i.e. ambiguous marks, over vote, under vote, blank ballots, or ALL ballots. With the setting on "all ballots" we could adjudicate and change votes on all ballots, even if the ballot was correctly and cleanly voted. We believe a statewide standard would be appropriate.

Using the old Diebold system, absentee ballots by mail that have errors would duplicate the voter's intent on a new ballot on all races possible. A representative from the Democratic and Republican Party plus a board member, would all agree on the marking or duplicating the ballot. We, also, all 3 sign the top tab of the ballot that we attach to the void ballot so that we may recreate the process and see who was making the changes. We have proof it was agreed by all.

During the adjudication process with the Dominion system, no such trail can be created. This allows ANYONE to make a change to the vote so there

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Track Another Package  +

Tracking Number: EJ475214345US

Remove X

**Scheduled Delivery by**

**MONDAY**

**16** NOVEMBER 2020 ⓘ  by **3:00pm** ⓘ

## Delivery Attempt

November 14, 2020 at 10:09 am
Delivery Attempted - No Access to Delivery Location
30334

Get Updates ⌄

---

Text & Email Updates   ∧

Select what types of updates you'd like to receive and how. Send me a notification for:

| Text | Email | |
|------|-------|--|
| ☐ | ☐ | All Below Updates |
| ☐ | ☐ | Expected Delivery Updates ⓘ |
| ☐ | ☐ | Day of Delivery Updates ⓘ |
| ☐ | ☐ | Package Delivered ⓘ |
| ☐ | ☐ | Available for Pickup ⓘ |
| ☐ | ☐ | Delivery Exception Updates ⓘ |
| ☐ | ☐ | Package In-Transit Updates ⓘ |

---

Proof of Delivery   ∧

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=EJ475214345US

# EXHIBIT 8

The following 15 people have received calls or letters identifying the following cartological problems with the Dominion software and other issues.

1. The adjudication processes and the ability to manipulate votes
2. The absence of audit trail to identify who changed data in adjudication process and who witnessed to the adjudication of any given ballot.
3. Change by the SOS in the adjudication process changing the old system which required a rep from each party, plus a board member, to determine the voter's intent.

Under the Dominion adjudication process anyone can adjudicate change a vote with out any oversite or accountability from any neutral 3 party.  A single ballot can be scanned and counted multiple times.

4. Multiple complaints and concerns have been logged over training, equipment failure and inexplicable software anomalies.

Secretary of State Brad Raffensperger

Gary Gainous _ Dominion Tech

Dominic LaRiccia – State House Representatives for Dist 169 6/10

Butch Miller – Senator 12/3

Mike Dugan – Senator 12/3

Steve Gooch – Senator 12/3

John Kennedy – Senator 12/3

Larry Walker – Senator 12/3

Dean Burke – Senator 12/3

Tyler Harper – Senator 12/3

Blake Tillery 12/3 & 12/4

Cardan Summers 12/3 & 12/8

Cathy Latham 12/7 & 12/8

Whitney Argenbright – Albany News - 12/7

Robert Preston 12/7 & 12/8

Brad Schrade with AJC 12/8



COFFEE COUNTY CLERK/ELECTION OFFICIAL
VIDEO OF VOTING EQUIPMENT USE

STATE OF GEORGIA

COUNTY OF FULTON

Personally appeared before me, the undersigned officer duly authorized to administer oaths, **MARK AMICK**, who, after having been sworn, deposes and says as follows:

On October 23, 2020, I was recognized by the Secretary of State of the State of Georgia as having been designated by the Republican Party of Georgia to serve as a statewide poll watcher for the November 3, 2020 election.

On November 6, I was at State Farm Arena from 8:20 a.m. until approximately 10:15 p.m. where Fulton County election workers were processing provisional ballots, military ballots (UOCAVA), and absentee ballots. I left the premises only between 6:30 and 7:20 p.m. in order to get dinner.

I observed that there was present a representative from the Office of the Secretary of State ("SOS representative") on site. However, this person provided virtually no oversight to the processing and counting of the ballots, instead spending the vast majority of his time at the back of the observation area on his phone.

There were tables and chairs situated in the front part of the viewing area from which one could observe the processing of the ballots at a distance. I arrived in the room by 8:30 a.m. and remained seated or standing at these tables the entire time observing the processing of the ballots except for a few brief restroom breaks and leaving for dinner between 6:30 and 7:20 p.m. Fulton County election workers started processing the ballots at approximately 8:50 a.m.

The SOS representative entered the viewing area sometime in the late morning. I observed that the SOS representative was sitting in the back of the room not observing the processing of the ballots almost the entire time that he was there. Rather than sitting at the tables and chairs provided closest to the area where the ballots were being processed, the SOS representative sat in the back of the room an estimated fifteen to twenty feet further away which would have made it extremely difficult to observe the processing of the ballots in addition to observers sitting in front as well as two camera crews obscuring his view. In addition, the SOS representative was on his phone appearing to be disengaged from the process almost the entire time he was there.

At 1:35pm, a Supervisor stood in the middle of the room to address the workers. The SOS representative was on the floor with him briefly at this time. This was the first time I had actually seen him out on the floor by the workers even though the work had stopped at this time. Upon the end of the announcement, he returned to his chair in the back of the observation area. I observed that the SOS representative in the back of the viewing room on his phone and not watching the processing of the ballots also throughout the afternoon and evening except for two brief stretches as follows. Attached to this affidavit is Exhibit A which includes several images of the SOS representative sitting as described in the back of the room on his phone over my



shoulder. What follows are the various activities of the SOS representative I observed that afternoon:

o  4:00 pm -- The SOS representative left the room and returned soon after.

o  5:00 pm (approximately) -- The SOS representative took a phone call in the hall.

o  5:15 pm (approximately) -- The SOS representative stood by the door to the viewing room and watched for approximately 3 minutes. However, he did not enter the room to observe the processing of the ballots. His view would have been very limited from where he was standing at the door due to the configuration of the room.

o  5:20 pm -- The SOS representative left the room. He returned a few minutes later and stood at door.

o  5:26 pm -- The SOS representative left the room.  He returned a few minutes later.

o  5:30 pm -- The SOS representative left the room.

o  5:39 pm -- The SOS representative returned but someone was in his chair in the back corner so he sat at a different spot in the back along the wall.

o  5:53 pm --The SOS representative walked into the area where they were processing the ballots and spoke with a supervisor.

o  6:02 pm -- The SOS returned to his chair in the back corner of the room and did not appear to be paying attention to the processing of the ballots.

o  6:30 - 7:20 p.m. -- I left to get dinner for myself and others.

o  7:48 pm -- The SOS representative was on the phone down the hall past the bathrooms.

o  7:49 pm -- Upon exiting the bathroom, the SOS representative was walking behind me and talking on the phone discussing some concern about the cost of parking.

o  7:58 pm -- The SOS representative was in the corner by the door and then went and sat outside the room.

o  8:14 pm -- The SOS representative returned to sitting at the back of the room as members of the media had come in and taken up more of the back wall.

o  9:15 pm -- The SOS representative was in hall and appeared to be socializing with an election worker or supervisor.

    o   9:22 pm – The worker or supervisor came back in and soon after that the SOS representative returned to his chair at the back of the room.

    o   10:15 pm – I left for the evening.

Other than a few minutes at approximately 1:35pm and 5:15 p.m. and for about 10 minutes at around 5:53 p.m., I personally observed that the SOS representative was not watching or monitoring the processing of the ballots at the State Farm Arena.

_____

MARK AMICK



Sworn to and subscribed before me this 9th day of November, 2020 and notarized by me on said day.

My commission expires:   2/3/2024

KAREN I HENTSCHEL
Notary Public, Georgia
Cobb County
My Commission Expires
February 03, 2024

Exhibit A

2:37pm

3:51pm

4:47pm

5:41pm

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the above and foregoing *SECOND MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND INCORPORATED BRIEF IN SUPPORT* upon all parties and their counsel via this Court's e-file system, via STATUTORY ELECTRONIC SERVICE (O.C.G.A. § 9-11-5) and/or by placing a copy of the same in the United States mail, first class, with sufficient postage thereon to ensure delivery, addressed as follows:

Brad Raffensperger, in his official capacity as Secretary of State of Georgia

214 State Capitol
Atlanta, Georgia 30334

Rebecca N. Sullivan, in her official capacity as Vice Chair of the Georgia State Election Board,

214 State Capitol
Atlanta, Georgia 30334

David J. Worley, in his official capacity as a Member of the Georgia State Election Board

214 State Capitol
Atlanta, Georgia 30334

Matthew Mashburn, in his official capacity as a Member of the Georgia State Election Board

214 State Capitol
Atlanta, Georgia 30334

Anh Le, in her official capacity as a Member of the Georgia State Election Board

214 State Capitol

Atlanta, Georgia 30334

Richard L Barron in his official capacity as Director of Registration and Elections for Fulton County,

16

141 Pryor St. SW
Atlanta, GA 30303

Janine Eveler in her official capacity as Director of Registration and Elections for Cobb County

P.O. Box 649
Marietta, GA 30061-0649

Erica Hamilton, in her official capacity as Director of Voter Registration and Elections for
DeKalb County
1300 Commerce Drive
Decatur, GA 30030

Kristi Royston, in her official capacity as Elections Supervisor for Gwinnett County

455 Grayson Highway
Lawrenceville, GA 30046

Russell Bridges, in his official capacity as Elections Supervisor for Chatham County

1117 Eisenhower Drive, Suite F
Savannah, Georgia 31406

Anne Dover, in her official capacity as Acting Director of Elections and Voter Registration for
Cherokee County,
2782 Marietta Highway, Suite 100
Canton, GA 30114

Shauna Dozier, in her official capacity as Elections Director for Clayton County,

112 Smith Street
Jonesboro, GA 30236

Mandi Smith, in her official capacity as Director of Voter Registration and Elections for Forsyth
County
1201 Sawnee Drive
Cumming, GA 30040

Ameika Pitts, in her official capacity as Director of the Board of Elections & Registration for
Henry County,

17

140 Henry Parkway
McDonough, GA 30253

Lynn Bailey, in her official capacity as Executive Director of Elections for Richmond County

535 Telfair Street
Augusta, GA 30901

Debra Presswood, in her official capacity as Registration and Election Supervisor for Houston County

801 Main Street - Room 237, P.O. Box 945
Perry, GA 31069

Vanessa Waddell, in her capacity as Chief Clerk of Elections for Floyd County

12 East 4th Avenue, Suite 20
Rome, GA 30161

Julianne Roberts, in her official capacity as Supervisor of Elections and Voter Registration for Pickens County,
83 Pioneer Road
Jasper, GA 30143

Joseph Kirk, in his official capacity as Elections Supervisor for Bartow County

135 West Cherokee Avenue
Cartersville, GA 30120

Gerald McCown, in his official capacity as Elections Supervisor for Hancock County

12630 Broad Street
Sparta, GA 31087

This the 11th day of December, 2020.

THE HILBERT LAW FIRM , LLC

Kurt R. Hilbert
Georgia Bar No. 352877

18

*Attorneys for Petitioners Donald J.*
*Trump and David Shafer*

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DONALD J. TRUMP, in his capacity as a | ) | |
| Candidate for President, *et. Al* | ) | |
|     *Petitioners,* | ) | Civ. Act. No 2020CV343255 |
| | ) | |
|     v. | ) | |
| BRAD RAFFENSPERGER, in his official capacity | ) | |
| As Secretary of State of Georgia, *et al.* | ) | |
| | ) | |

## NOTICE OF APPEAL AND INTENTION TO SEEK WRIT OF CERTIORARI
## TO THE SUPREME COURT OF GEORGIA

**COME NOW** THE PETITIONERS, by and through the undersigned counsel, and respectfully inform the Court of their appeal and intention to seek a writ of certiorari to the Supreme Court of Georgia to review the "Order on Case Status" re Withdrawal of Motion for Emergency Injunctive Relief entered on December 9, 2020 at 5:06 PM, attached hereto as Exhibit A. This appeal is timely filed within ten (10) days of the entry of that Order. The Supreme Court has jurisdiction to hear this appeal under Georgia Constitution art. VI, Section VI, Par 2, cl. 2 as this is an Election Contest exclusively vested in the appellate jurisdiction of the Georgia Supreme Court. The Order is void *ab initio* and is a nullity, but is tantamount to a "final" order for purposes of O.C.G.A. § 5-6-34 as Petitioners cannot obtain relief of any kind and nature from this Court, including without limitation, interlocutory, preliminary or permanent injunctive relief, while the Order is entered, and while the Honorable Constance C. Russell remains presiding in the case in direct violation of the Election Code as she is an active sitting judge in Fulton County, Georgia and also a resident of that same county making her legally incapable of adjudicating this case.

The Clerk of Court shall omit nothing from the entire record on appeal and Petitioners hereby request that the record be prepared and expedited to the Supreme Court of Georgia immediately. Petitioners shall pay the costs as necessary for such expeditious preparation of the record.

EXHIBIT

3

Respectfully submitted, this 11th day of December, 2020

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
GEORGIA BAR NO. 352877
ATTORNEY FOR PETITIONERS

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

Fulton County Superior Court
***EFILED***QW
Date: 12/9/2020 5:06 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

DONALD J. TRUMP; IN HIS CAPACITY AS  *
A CANDIDATE FOR PRESIDENT ,                      *
DONALD J. TRUMP FOR PRESIDENT, INC.    *   **Civil Action No. : 2020CV343255**
DAVID J. SHAFER, IN HIS CAPACITY AS A   *
REGISTERED VOTER AND PRESIDENTIAL     *
ELECTOR PLEDGED TO DONALD TRUMP       *
FOR PRESIDENT,                                              *
    Petitioners,                                              *

     v.

BRAD RAFFENSPERGER, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF STATE OF
GEORGIA, et. al.,
    Respondents.

### ORDER ON CASE STATUS

    The action was filed on December 4, 2020. On December 8, 2020 Petitioners filed a voluntary withdrawal of their Motion for Emergency Injunctive Relief. The request for emergency relief having been withdrawn, the action shall proceed in the normal course. All counsel seeking admission pro hac vice must comply with Uniform Superior Court Rule 4.4.

So Ordered This _____9_____ Day of _____December_____, 2020.

Judge Constance C. Russell
Fulton County Superior Court
Atlanta Judicial Circuit



EXHIBIT
A

Fulton County Superior Court
***EFILED***JT
Date: 12/11/2020 5:40 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **DONALD J. TRUMP, in his capacity as a Candidate for President, et al.** | ) |
| | ) |
| Petitioner, | ) |
| v. | ) |
| | ) |
| | ) |
| **BRAD RAFFENSPERGER, in his official Capacity as Secretary of State of Georgia, Et al.** | ) |
| | ) |
| | ) |
| Respondent | ) |

**CIVIL ACTION**
**FILE NO: 2020CV343255**

## NOTICE OF TIME FOR RESPONSE TO REQUEST TO APPOINT ADMINISTRATIVE LAW JUDGE

The Undersigned, as the Chief Administrative Judge for the 5th Judicial Administrative District, has received the Notice of Emergency Request to Appoint Administrative Law Judge filed by Petitioners. This Notice requests that the undersigned appoint an Administrative Law Judge pursuant to O.C.G.A. § 21-2-523. Objections or responses to this narrow request, if any, must be filed on or before the close of business on Wednesday, December 16, 2020.

SO ORDERED this 11th day of December , 2020.

_____
The Honorable Christopher S. Brasher
Chief Administrative Judge for
The Fifth Judicial Administrative District
Atlanta Judicial Circuit

*Filed and served electronically via eFileGA*





**SUPREME COURT OF GEORGIA**
Case No. S21M0561

December 12, 2020

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

## DONALD J. TRUMP et al. v. BRAD RAFFENSPERGER et al.

Petitioners filed this "Emergency Petition for Writ of Certiorari" to challenge the superior court's December 9, 2020 "Order on Case Status," which order provided that, because in the underlying election contest petitioners had withdrawn their request for emergency injunctive relief, the case would proceed "in the normal course." As the basis for their petition, they reference Supreme Court Rules 39 and 40, but those rules provide for petitions for writ of certiorari to this Court from opinions or orders issued by the Court of Appeals filed under Supreme Court Rule 38, and thus do not apply here. For the reasons that follow, we dismiss the petition for lack of jurisdiction.

To the extent that the petition can be construed as a direct appeal from the December 9 order, we note as an initial matter that this Court has subject matter jurisdiction over "election contest[s]," Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2), and the underlying case fits within that definition, as it is challenging the result of an election. See *Cook v. Bd. of Registrars of Randolph County*, 291 Ga. 67, 70 (727 SE2d 478) (2012). However, the December 9 order is not a final judgment, see OCGA § 5-6-34 (a) (1) (direct appeals may be taken from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below"), and therefore the petitioners were required to follow interlocutory appeal procedures in order to obtain review of the order. See OCGA § 5-6-34 (b); *Duke v. State*, 306 Ga. 171, 171 (829 SE2d 348) (2019). Although there are some exceptions to that general rule, this case does not fit within any



EXHIBIT
" 7 "

of those exceptions. See OCGA § 5-6-34 (a) (2) - (13) (setting out directly appealable non-final orders).

Additionally, petitioners' reliance on the collateral order doctrine is unavailing. See *Duke*, 306 Ga. at 174. Furthermore, to the extent petitioners challenge the authority of the superior court judge to preside over the pending matter, it does not appear that any order has been entered on the challenge to her authority that they represent has been filed below, and thus this issue provides no basis for invoking the Court's jurisdiction. See *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003) (order is not appealable until written, signed by judge, and filed with the clerk).

Finally, to the extent that petitioners seek original relief, petitioners have not shown that this is one of those extremely rare cases that would invoke our original jurisdiction. See generally *Brown v. Johnson*, 251 Ga. 436 (306 SE2d 655) (1983). Accordingly for all these reasons, this Court lacks jurisdiction to consider the petition and dismisses it.

*Melton, C. J., Nahmias, P. J., and Boggs, Peterson, Warren, Bethel, Ellington, and McMillian, JJ., concur.*

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

*Therese S Barnes*  , Clerk

Fulton County Superior Court
***EFILED***AC
Date: 12/29/2020 9:34 AM
Cathelene Robinson, Clerk

### IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

DONALD J. TRUMP, in his capacity as a
Candidate for President, et al.          )
                                         )
Petitioner,                              )
v.                                       )      CIVIL ACTION
                                         )      FILE NO:  2020CV343255
                                         )
BRAD RAFFENSPERGER, in his official      )
Capacity as Secretary of State of Georgia, )
Et al.                                   )
                                         )
Respondent                               )

### STATUS OF REQUEST TO
APPOINT ADMINISTRATIVE LAW JUDGE

As provided in the notice of December 11, 2020, this Court has received Petitioner's

Notice of Emergency Request to Appoint Administrative Law Judge, which, in fact sought

a referral to a Judge outside this district. Before this Court had an opportunity to consider

such request, the Petitioner filed a Notice of Appeal seeking to present this issue to the

appellate courts.  Accordingly, this Court will not consider this request until either the

appeal is concluded or the notice of appeal is withdrawn.

SO ORDERED this __29th__ day of __December__, 2020.

_____
The Honorable Christopher S. Brasher
Chief Administrative Judge for
The Fifth Judicial Administrative District
Atlanta Judicial Circuit

*Filed and served electronically via eFileGA*



## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the above and foregoing **RENEWED REQUEST TO IMMEDIATELY APPOINT ADMINISTRATIVE LAW JUDGE AND MOTION FOR RECONSIDERATION OF THE COURT'S STATUS ORDER OF DECEMBER 29, 2020 AND INCORPORATED BRIEF IN SUPPORT** upon the following alleged parties via this Court's e-file Odyssey system, via STATUTORY ELECTRONIC SERVICE (O.C.G.A. § 9-11-5) and/or by placing a copy of the same in the United States mail, first class, with sufficient postage thereon to ensure delivery, addressed as follows:

**<u>Attorneys for Proposed Intervenor-Biden Electors</u>**
Halsey G. Knapp. Jr
Joyce Gist Lews
Susan P. Coppedge
Adam M. Sparks
Krevolin and Horst, LLC
One Atlantic Center
1201 W. Peachtree Street, NW
Suite 3250
Atlanta, GA 30309

Marc E. Elias
Amanda R. Callais
Jacob D. Shelly
PERKINS COIE, LLP
700 Thirteenth Street, NW
Suite 800
Washington, DC 20005-3960

Kevin Hamilton
Stephaie R. Holstein
Thomas Tobin
Heath Hyatt
PERKINS COIE, LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101
Jessica Frenkel
PERKINS COIE, LLP
1900 Sixteenth Street
Suite 1400
Denver, CO 80202-5255

8 of 11

**Attorneys for Proposed Intervenor-NAACP**
William Custer
Jennifer Dempse
Christian Bromley
BRYAN CAVE LEIGHTON PAISNER, LLP
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309

Kristen Clarke
Jon Greenbaum
Ezra Rosenberg
Julie Houk
John Powers
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005

Attorneys for Proposed Intervenor – John Wood

Todd Harding
MADDOX & HARDING
113 E. Solomon Street
Griffin, GA 30223

Erick Kaardal
MOHRMAN, KAARDAL & ERICKSON, P.A.
150 South Fifth Street
Suite 3100
Minneapolis, MN 55402

**Attorney for Proposed Intervenor – Sean Draime**

Paul Kunst
PAUL C. KUNST, PC
941 Thomaston Street
Barnesville, GA 30204

**Attorney for Proposed Intervenor – Ameika Pitts**

Patrick D. Jaugstetter
JARRARD & DAVIS, LLP
222 Webb Street
Cumming, GA 30040

**Attorney for Proposed Intervenor – Erica Hamilton**

Irene Vander Els

Shelly D. Momo
DEKALB COUNTY LAW DEPARTMENT
1300 Commerce Drive, 5th Floor
Decatur, GA 30030

**Attorney for Proposed Intervenor – Janine Eveler**

Daniel White
Gregg Litchfield
HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA 30060

**Attorney for Proposed Intervenor – Anne Dover**

Anne S. Brumbaugh
Law Office of Ann S. Brumbaugh, LLC
309 Sycamore Street
Decatur, GA 30030

**Attorney for Proposed Intervenor – Kristi Royston**

Melanie F. Wilson
Tuwanda Rush Williams
GWINNETT COUNTY DEPARTMENT OF LAW
75 Langley Drive
Lawrenceville, GA 30046

**Attorney for Proposed Intervenor – Shauna Dozier**

John R. Hancock
A. Ali Sabzevari
FREEMAN MATHIS & GARY, LLP
661 Forest Parkway, Suite E
Forest Park, GA 30297

**Attorney for Proposed Intervenor – Richard Barron**

Kaye Woodard Burwell
Cheryl Ringer
David Lowman
OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor Street, SW
Suite 4038
Atlanta, GA 30303

**State Respondents**

Christopher M. Carr
Office of the Attorney General
Georgia Department of Law

40 Capitol Square SW
Atlanta, Georgia 30334

Christopher S. Anulewicz
BALCH & BINGHAM LLP
30 Ivan Allen Jr., Blvd. N.W., Suite 700
Atlanta, Georgia 30308

Any and all other persons making a special entry of appearance or other entry of appearance in this

matter shall be served through the Odyssey efile system.

Respectfully submitted, this 29th day of December, 2020.

THE HILBERT LAW FIRM, LLC

Kurt R. Hilbert
Georgia Bar No. 352877
*Lead Counsel for Petitioners*

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com