# EXHIBIT M



# INVESTIGATIONS DIVISION

**Case Number**: SEB2020- 257

**Case Name:** **Cobb County- Absentee Ballot Signature Verifications**

**Date:** 12/29/2020

### Georgia Secretary of State/Georgia Bureau of Investigation
### ABM Signature Audit Report

**Task**

On Monday, December 14, 2020, Georgia Secretary of State Brad Raffensperger announced that a signature audit of absentee-by-mail (ABM) ballot oath envelopes would be conducted in Cobb County. The Secretary of State's Office partnered with the Georgia Bureau of Investigation (GBI) to review a statistically significant sample of signatures on oath envelopes from the November 3, 2020, General Election.  Signatures and other identifying information on the ABM ballot oath envelopes would be compared to records in both the Cobb County Elections and Voter Registration Department database and the State of Georgia's voter registration system. The audit would be performed by law enforcement investigators with the Secretary of State's Office and GBI special agents.

**Summary of Findings**

The audit team, consisting of law enforcement officers with the Secretary of State's office and GBI, reviewed 15,118 ABM ballot oath envelopes from randomly selected boxes that stored the 150,431 ABM ballots received in Cobb County for the November 3, 2020 General Election. The sample size of oath envelopes reviewed was chosen in order to reach a 99% confidence level in the results. Utilizing the decision guidelines set forth below, the audit team confirmed the accuracy of the initial determination of the Cobb County Elections Department in all but two

1

cases. In the two cases where the audit team determined that the voter should have received a cure notification, the audit team was able to confirm by interviews with the voters that the actual voters in question cast the ballots. Based on the results of the audit, the Cobb County Elections Department had a 99.99% accuracy rate in performing correct signature verification procedures. The audit team was also able to confirm that the two ballots that should have initially been identified by Cobb County Elections Department staff as requiring a cure notification were actually cast by the voters to whom they were issued. No fraudulent absentee ballots were identified during the audit.

**Method**

**Sample size:** It was determined the audit sample size would be approximately 10% of the total ABM ballots as reported by the Cobb County Elections Department.   The breakdown of ABM ballots was as follows:

- 149,988         **Accepted** ABM ballots
- 78                  ABM ballots **rejected** due to missing signature, not cured (see SEB Rule 183-1-14-.13)
- 32                  ABM ballots **rejected** due to invalid signature, not cured (see SEB Rule 183-1-14-.13)
- 333                ABM ballots **rejected** due to receipt after deadlines.
- 150,431         Total ABM ballots received

**Sample selection:** All ABM ballot oath envelopes were previously secured in boxes by the Cobb County Elections Department. The following was noted:
- All envelopes which contained Cobb County Elections Department rejected ABM ballots were audited. Ballots that were rejected due to receipt after the deadline were confirmed to have been received after the deadline.
- It was determined that the remaining sample size would be pulled from 30 randomly selected boxes of the accepted ABM ballots and one box identified as accepted Electronic Ballot Delivery ABM ballots.
- The boxes had previously been labeled with a unique box number.
- Those unique box numbers were entered into a random number generator application to determine which boxes would be selected for the sample.
- Envelopes were randomly selected and audited within each box.

**Standard of comparison:** OCGA 21-2-386(a)(1)(B): … *The registrar or clerk shall then compare the identifying information on the oath with the information on file in his or her office, shall compare the signature or mark on the oath with the signature or mark on the absentee elector's voter registration card or the most recent update to such absentee elector's voter registration card and application for absentee ballot or a facsimile of said signature or mark taken from said card or application, and shall,* **if the information and signature appear to be valid and other identifying information appears to be correct***, so certify by signing or initialing his or her name below the voter's oath.*

**Signature comparison:** Law enforcement officers (LEOs) would analyze and compare the known signatures, markings, and identifying information of the elector as stored in databases with the signature, markings, and identifying information on the elector's ABM ballot oath envelope. LEOs would look for distinctive characteristics and unique qualities such as letters and word spacing, letter and word slant, size and proportionality of letters and numbers, unusual and unique formations of letters and numbers, flourishes, baseline alignment, and other individual attributes of the signature, mark, or other identifying information.  LEOs would evaluate the similarities and differences between the two and make a judgment of the validity of the signature on each envelope based on the totality of the documents.

**Document comparison:** LEOs were given access to the Cobb County Elections Department's database which included some or all of the following documents for comparison:
- Voter registration forms (including Department of Drivers Services, mail-in voter registration cards, Federal Postcard Applications)
- Absentee Ballot Applications
- Voter Certificates
- Confirmation Notices for voters
- Signature Cure Affidavits
- Passports
- Certificates of Naturalization

**Decision Guidelines:** The audit team, consisting of Secretary of State investigators and GBI special agents, was divided into 18 two-member teams identified as "inspection teams" and two three-member teams identified as "investigation teams" for the task of evaluating signatures, marks, and identifying information on envelopes.

- **Inspection team decision guidelines:**
  - If both team members agreed that signature/identifying information appeared valid, the envelope was accepted.
  - If both team members agreed that signature/identifying information appeared invalid, the envelope was submitted to an investigation team.
  - If team members were split on judging the validity of the signature/identifying information, a designated "referee" made the deciding vote on acceptance of the envelope or its submission to an investigation team.
  - Envelopes were submitted to investigations teams automatically when there was no signature or if there were no documents for the elector in the Cobb County Elections Department database to be used for comparison.

- **Investigation team decision guidelines:**
  - The investigation teams received copies of envelopes from the inspection teams for additional examination.

- o The investigation team accessed the State of Georgia voter registration system database for additional elector documents and requested additional documents from the Cobb County Elections Department.
- o After further evaluation, if two of the three investigation team members agreed that signature/identifying information appeared valid, the envelope was accepted.
- o If two of the three investigation team members agreed that signature/identifying information appeared invalid, the elector would be located and interviewed.

**Findings**

- 15,118 ABM ballot oath envelopes were evaluated by the inspection teams.  On six occasions, referees were called upon by the inspection teams as the third vote to decide to accept the signature/identifying information as valid or refer the envelope to the investigation teams.
- The inspection teams submitted 396 envelopes to the investigation teams for comparison with additional documents or follow-up with the elector.
- After evaluation of the inspection teams' envelopes, 386 were accepted as valid.  The remaining ten envelopes were referred for contact with the elector for the following reasons:
  - o 8 – Elector's signatures/identifying information did not appear to be consistent with documents on record.
  - o 1 – Contained no signature or mark
  - o 1 – Contained a signature, but was not the signature of the elector
- All ten electors were located, positively identified, and interviewed.  Those interviews found the following:
  - o All eight electors whose signatures were deemed valid by Cobb County Elections Department staff but not consistent by the LEOs conducting the audit, acknowledged completing and signing the ABM ballot oath envelope in question, verifying that the initial Cobb County Elections Department initial determination of validity was correct.
  - o The elector whose envelope contained no signature or mark, acknowledged submitting the ABM ballot oath envelope in question, but reported signing the front of the envelope only. The final envelope in question was found to be mistakenly signed by the elector's spouse. The elector confirmed that he filled out the absentee ballot himself.
- **Of the 15,118 envelopes sampled, the following was found:**
  - o **Two of the ten previously identified ABM ballot oath envelopes should have been identified by the Cobb County Elections Department as requiring an opportunity for the voter to cure the ballots prior to acceptance.**
  - o **No fraudulent absentee ballots were identified during the audit.**

**O.C.G.A. 21-2-386.** Safekeeping, certification, and validation of absentee ballots; rejection of ballot; delivery of ballots to manager; duties of managers; precinct returns; notification of challenged elector

**(a)** (1) (A) The board of registrars or absentee ballot clerk shall keep safely, unopened, and stored in a manner that will prevent tampering and unauthorized access all official absentee ballots received from absentee electors prior to the closing of the polls on the day of the primary or election except as otherwise provided in this subsection.

**(B)** Upon receipt of each ballot, a registrar or clerk shall write the day and hour of the receipt of the ballot on its envelope. The registrar or clerk shall then compare the identifying information on the oath with the information on file in his or her office, shall compare the signature or mark on the oath with the signature or mark on the absentee elector's voter registration card or the most recent update to such absentee elector's voter registration card and application for absentee ballot or a facsimile of said signature or mark taken from said card or application, and shall, if the information and signature appear to be valid and other identifying information appears to be correct, so certify by signing or initialing his or her name below the voter's oath. Each elector's name so certified shall be listed by the registrar or clerk on the numbered list of absentee voters prepared for his or her precinct.

**(C)** If the elector has failed to sign the oath, or if the signature does not appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the registrar or clerk shall write across the face of the envelope "Rejected," giving the reason therefor. The board of registrars or absentee ballot clerk shall promptly notify the elector of such rejection, a copy of which notification shall be retained in the files of the board of registrars or absentee ballot clerk for at least two years. Such elector shall have until the end of the period for verifying provisional ballots contained in subsection (c) of Code Section 21-2-419 to cure the problem resulting in the rejection of the ballot. The elector may cure a failure to sign the oath, an invalid signature, or missing information by submitting an affidavit to the board of registrars or absentee ballot clerk along with a copy of one of the forms of identification enumerated in subsection (c) of Code Section 21-2-417 before the close of such period. The affidavit shall affirm that the ballot was submitted by the elector, is the elector's ballot, and that the elector is registered and qualified to vote in the primary, election, or runoff in question. If the board of registrars or absentee ballot clerk finds the affidavit and identification to be sufficient, the absentee ballot shall be counted.


**SEB Rule 183-1-14-.13. Prompt Notification of Absentee Ballot Rejection**
When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure by mailing written notice and attempt to notify the elector by telephone and email, if a telephone number or email is on the elector's voter registration record or absentee ballot application, no later than the close of business on the third business day after receiving the absentee ballot. However, for any timely submitted absentee ballot that is rejected within eleven days of Election Day, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and

5

opportunity to cure by mailing written notice and attempt to notify the elector by telephone and email, if a telephone number or email is on the elector's voter registration record or absentee ballot application, no later than close of business on the next business day.