# **EXHIBIT O**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| DONALD J. TRUMP, in his capacity as a Candidate for President, DONALD J. TRUMP FOR PRESIDENT, INC., and DAVID J. SHAFER, in his capacity as a Registered Voter and Presidential Elector pledged to Donald Trump for President,<br><br>Petitioners,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a Member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a Member of the Georgia State Election Board, ANH LE, in her official capacity as a Member of the Georgia State Election Board, RICHARD L. BARRON, in his official capacity as Director of Registration and Elections for Fulton County, JANINE EVELER, in her official capacity as Director of Registration and Elections for Cobb County, ERICA HAMILTON in her official capacity as Director of Voter Registration and Elections for DeKalb County, KRISTI ROYSTON, in her official capacity as Elections Supervisor for Gwinnett County, RUSSELL BRIDGES, in his official capacity as Elections Supervisor for Chatham County, ANNE DOVER, in her official capacity as Acting Director of Elections and Voter Registration for Cherokee County, SHAUNA DOZIER, in her official capacity as Elections Director for Clayton County, MANDI SMITH, in her official capacity as Director of Voter Registration and Elections for Forsyth County, AMEIKA PITTS, in her official | Civil Action No. 2020CV343255 |

9638056.2

| | |
|---|---|
| **capacity as Director of the Board of Elections & Registration for Henry County, LYNN BAILEY, in her official capacity as Executive Director of Elections for Richmond County, DEBRA PRESSWOOD, in her official capacity as Registration and Election Supervisor for Houston County, VANESSA WADDELL, in her capacity as Chief Clerk of Elections for Floyd County, JULIANNE ROBERTS, in her official capacity as Supervisor of Elections and Voter Registration for Pickens County, JOSEPH KIRK, in his official capacity as Elections Supervisor for Bartow County, and GERALD MCCOWN, in his official capacity as Elections Supervisor for Hancock County,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Respondents.** | ) ) ) |

## AFFIDAVIT OF CHRIS HARVEY

CHRIS HARVEY, having personally appeared before the undersigned officer, duly authorized to administer oaths, and after being sworn, testifies as follows:

1.

My name is Chris Harvey. I am over the age of 21 and am competent to make this affidavit. The facts set forth below are made upon my personal knowledge.

2.

I am currently employed as the Elections Director with the Election Division of the Georgia Secretary of State's Office. My duties require me to be familiar with several voter databases maintained by the Georgia Secretary of State including the Secretary of State's Voter Registration Files, the Voter Absentee Files and the Voter History Files (collectively "The Secretary of State's Databases"). My duties also require me to be familiar with the statutes, rules and regulations

governing elections in the State of Georgia, including those laws as they related to the November 3, 2020 election for President and Vice President of the United States.

3.

I reviewed the Affidavits of Matt Braynard and Bryan Geels attached as Exhibits 2, 3 and 10 to the Verified Petition to Contest Georgia's Presidential Election Results for Violations of the Constitution and Laws of the State of Georgia, and Request for Emergency Declaratory and Injunctive Relief, filed in the Superior Court of Fulton County, Georgia, Civil Action No. 2020CV343255 ("Verified Petition").

4.

I offer the following preliminary responses to the Matt Braynard's Affidavit,

   a. Mr. Braynard states that he relied on several alleged databases, including the National Change of Address Source, which he alleges is maintained by the United States Postal Service ("NCOA database"), the United States Postal Service's list of owned and leased facilities ("USPS Owned and Leased Facilities Report") and a national voter database maintained by an entity described as "L2 Political."

   b. The Georgia Secretary of State does not use, rely on or otherwise incorporate the NCOA database, the USPS Owned and Leased Facilities Report, or any database maintained by L2 Political to develop the State of Georgia's Voter Registration Files, the Voter Absentee Files or the Voter History Files. It also does not use the USPS Owned and Leased Facilities Report or any database maintained by L2 Political to maintain any of the State Databases. It will use the USPS NCOA database on occasion to maintain some of its databases.

9638056.2

c. Information contained in the NCOA database, the USPS Owned and Leased Facilities Report, or any database maintained by L2 Political is not, standing alone, sufficient to prove an ineligible person voted in the November 3 election.

d. Information contained in the Georgia Secretary of State Databases standing alone, is also not sufficient to prove an ineligible voter cast a ballot in the November 3, 2020 election except it can functionally serve such a purpose only when the person is listed as "cancelled-deceased", a category Mr. Braynard is not using.

e. Paragraph 18 of Braynard's affidavit refers to "strong matches" between Georgia's early and absentee voter lists to "his national voter file." Mr. Braynard does not define what a "strong match" is. Importantly, Mr. Braynard does not allege the "strong matches" are in fact the same people.

f. The Georgia Secretary of State does not invalidate votes or deny ballots to any person. Counties are responsible for determining the eligibility of a voter and sending absentee ballots. It would be improper to disenfranchise a Georgia citizen because that voter's information in one database appears similar to information in what Mr. Braynard believes is a "strong match" to information in another database.

g. People considered "strong matches" by Mr. Braynard can subsequently be determined to not be actual matches after investigation. For example, in 2008, allegations were made that approximately 30,000 people in Georgia had voted or requested absentee ballots in two different places. This allegation was based on apparent matches of people in databases. I was responsible for investigating

these claims. My investigation determined that of the 30,000 people alleged to have voted or requested absentee ballots in two places, approximately three people actually did vote in two places. And these people all had explanations for doing so, including mental challenges.

h. Paragraph 12 of the Braynard Affidavit claims that 4,926 absentee or early voters were no longer legal residents of Georgia when they voted "[d]ue to their subsequent voter registration in another state." Mr. Braynard also claims that 15,700 voters "may have vacated their residence in the State of Georgia", which he claims is evidenced by their filing of a notice of change of address in another state. He then apparently adds these two numbers together to conclude that 20,312 individuals cast "illegal ballots" in the November 3, 2020 election, though adding the two numbers gives a total of 20, 626.

i. Registering to vote in another state does not necessarily render an individual ineligible to vote in the Georgia November 3, 2020 presidential election. For example, a person could register in Georgia, move, register in another state, then move back to Georgia. In such event, the Georgia Secretary of State Databases may list this person's original registration date in its databases unless the original registration was affirmatively cancelled or cancelled through other legal process.

j. Filling out a change of address form with the United States Postal Office also does not make an individual ineligible to vote in Georgia. Changing an address, even to an out of state address, does not always equal a change of legal residency for many people. For example, college students, military personnel

or mentally handicap persons can submit a change of address form to the USPS, move to another state, but still be considered residents of the State of Georgia. Other people could temporarily move to another state for some purpose, such as caring for a loved one, a temporary work assignment or having a vacation home and still be eligible to vote in Georgia.

k. Additionally, a cursory investigation of Mr. Braynard's data casts doubt on its accuracy. The first page of Exhibit 2 to his affidavit ("GA Out of State Subsequent Registration") contains 48 line items of people. Mr. Braynard testified that every voter on this list has exhibited a "[c]lear indication of their intent to establish residency in another state". Aff. At ¶20.

l. I reviewed research results concerning the names and addresses of the 48 people listed on the first page of Braynard Affidavit, Exhibit 2. This research results reveal that at least 38 of them appear to possibly be currently living in Georgia right now. Cursory research of the other ten could not establish Georgia residency, but also did not conclusively establish they were residing out of state either. In other words, preliminary research suggests at least 80% of the people Braynard believed showed a "clear intention to establish residency in another state" still quite possibly appear to live in Georgia.

m. The names are highlighted of the 38 for whom cursory research showed appear to currently reside in Georgia. Those who could not be easily established to have a residency based on a cursory look are not highlighted. Those highlights appear on **Exhibit 1**. The people's last names are redacted.

n. Paragraph 13 of the Braynard Affidavit claims that 1,043 early and absentee ballots were allegedly cast by people who were "illegally registered" using a post office box "disguised as a residential address."

o. Listing a post office box as a person's address does not render that person ineligible to vote in Georgia because the person can still reside in Georgia. If a post office box is listed as the voter's address, the voter should update their Georgia voter registration to include a physical address.

p. However, I reviewed research results of a cursory spot check of Mr. Branyard's post office box information that shows it too may be inaccurate for people. Again, a cursory review of the results of the research for the first few pages of addresses Mr. Braynard identifies as being post office boxes are actually apartment or condominium buildings. While researchers did not check all addresses, a few minutes on the computer showed the following address are likely legitimate residential addresses: (1) 5 W. Broughton Street, Savannah; (2) 4920 Atlanta Highway, Alpharetta; (3) 245 N. Highland Ave. NE, Atlanta and; (4) 1700 Northside Drive, Atlanta.

q. Researchers highlighted these addresses taken from Exhibit 4 of Mr. Braynard's Affidavit and they are attached to this Affidavit as **Exhibit 2**. Researchers redacted the people's last names. The sections highlighted appear to be apartment buildings or condominium buildings. Pictures of these buildings are also attached behind the highlighted portion of Mr. Braynard's spreadsheet.

r. Paragraph 23 of Braynard's Affidavit claims 395 peopled voted in multiple states including Georgia. Mr. Braynard claims this is proven by matching

9638056.2

      individuals through comparisons of L2 Political databases, which Mr. Braynard does not provide.

  s. The publicly available Georgia Secretary of State Databases does not contain enough information to determine someone illegally voted twice in two states. Making that determination would require additional investigation beyond matches in various databases even if the matches appear to represent the same individuals, a fact Mr. Braynard has not shown.

5.

With Respect to the Geels Affidavits:

  a. Geels' Affidavit claims his searching of databases identified what he refers to as "risk buckets." *See* para 34-44. He goes on these describe votes made by people in the various "risk buckets" as either "questionable," "highly questionable," or "extremely risky."

  b. Geels does not provide the results of his searches. I cannot see who the people are in the various "risk buckets" he discusses.

  c. The Georgia Secretary of State does not invalidate votes or deny ballots to any person. Counties are responsible for determining the eligibility of a voter and sending absentee ballots. It would be improper to disenfranchise an eligible Georgia voter because the person casting the vote is in a "risk bucket" identified by Mr. Geels that may, or may not, make the vote questionable, highly questionable or extremely risky.

  d. Paragraph 13 of his Affidavit claims to identify 305,701 individuals with records showing they applied for absentee ballots more than 180 days before

the general election. Requesting an absentee ballot prior to May 6, 2020 does not necessarily render that individual ineligible to vote in Georgia. For example, O.C.G.A. § 21-2-381 (B) and (D) and O.C.G.A. § 21-2-219, allows certain categories of voters, including disabled, people over 65 years of age and members of the military, to request their ballots more than 180 days before the election. If a member in one of these groups requests an absentee ballot for the primary, they are automatically sent an absentee ballot for the general election. However, the date in which the voter requested this ballot is still listed as the date of the original request in the Secretary of State's databases.

I, Chris Harvey declare that the foregoing is true and correct.

Robin Kiefer
Notary Public
Houston County, Georgia
My Commission Expires 09/25/2022

Executed this 15 day of December, 2020.

Chris Harvey

9638056.2