## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONALD J. TRUMP, in his capacity as a candidate for President of the United States,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BRIAN P. KEMP, in his official capacity as Governor of the State of Georgia; BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State,**<br><br>    **Defendants.** | **CIVIL ACTION FILE**<br><br>**NO. 1:20-CV-5310-MHC** |

## ORDER

This matter is before the Court on Plaintiff's Motion for Expedited and Declaratory and Injunctive Relief [Doc. 2]. After considering the briefs of the parties and with the benefit of argument at a hearing conducted by the Court on January 5, 2021,[1] it is hereby **ORDERED** that Plaintiff's motion is **DENIED**.

---

[1] Plaintiff's Motion for Expedited Hearing [Doc. 2] was granted and a hearing was held on January 5, 2021.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On Tuesday, November 3, 2020, an election for President of the United States was conducted in the United States, including the State of Georgia. Defendant Brad Raffensperger is the Secretary of State of Georgia, serves as the "chief election official" of Georgia, and is required by law to certify the votes cast for all presidential candidates "not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted." O.C.G.A. §§ 21-2-50(b); 20-2-499(b). It is undisputed that Secretary Raffensperger performed this statutory duty in a timely manner and certified the results of the presidential election in Georgia on November 20, 2020.[2] Georgia law also requires Defendant Governor Brian P. Kemp "to certify the slates of presidential electors receiving the highest number of votes . . . no later than 5:00 P.M. on the eighteenth day following the date on which such [presidential] election was conducted." Id.

---

[2] Prior to this certification, Secretary Raffensperger directed a "risk-limiting audit" in accordance with Georgia law, which entailed a full hand recount of all ballots cast in the presidential election. See O.C.G.A. § 21-2-498. Because the margin after this first recount still was less than one-half of one percent, Plaintiff's campaign requested a second recount within two days after the certification of the election results in accordance with Georgia law. See O.C.G.A. § 21-2-495(c)(1). The second recount was completed and Secretary Raffensperger re-certified the results of the November 3, 2020, presidential election on December 7, 2020. Both recounts upheld the original outcome of the presidential race, which was that Joseph R. Biden, Jr. was the winner in Georgia.

§ 21-2-499(b).  It is undisputed that Governor Kemp performed his duty in a timely

manner and certified Georgia's slate of presidential electors on November 21,

2020.

Georgia law provides a procedure upon which a result of an election may be

contested.  Under O.C.G.A. § 21-2-524(a), a petition to contest the result of an

election must be filed with the clerk of the superior court having jurisdiction within

five (5) days after the certification of the election.  On December 4, 2020, Plaintiff,

along with others not parties to this lawsuit, filed a "Verified Petition to Contest

Georgia's Presidential Election Results for Violations of the Constitution and Laws

of the State of Georgia, and Request for Emergency Declaratory and Injunctive

Relief" in the Superior Court of Fulton County, Georgia, naming Secretary

Raffensperger as a respondent along with the members of the State Election Board

and a number of county elections officials.  Trump v. Raffensperger, Super. Ct. of

Fulton Cnty., No. 2020CV343255 ("Trump I") [Doc. 1-1 at 12-75].  However, on

December 8, 2020, the petitioners in Trump I voluntarily withdrew their motion for

emergency injunctive relief.  Id., Voluntary Withdrawal of Mot. for Emergency

Inj. Relief, filed Dec. 8, 2020.[3]  Based upon the withdrawal of the petitioners'

---

[3] Although this particular filing was not attached to Plaintiff's Complaint, the
Court may take judicial notice of records filed on the docket in state court cases.

3

motion for emergency relief in <u>Trump I</u>, Fulton Superior Court Judge Constance C.

Russell issued an order indicating that the election contest "shall proceed in the

normal course." <u>Id.</u>, Dec. 9, 2020, Order on Case Status [Doc. 1-4 at 7].

The petitioners in <u>Trump I</u> then filed a Notice of Emergency Request to

Appoint an Administrative Law Judge to hear their election contest case, a notice

of appeal of Judge Russell's Order on Case Status to the Supreme Court of

Georgia, and a Second Motion for Emergency Injunctive Relief. <u>Id.</u>, Dec. 10,

2020, Notice of Emergency Request to Appoint Administrative Law Judge [Doc.

1-4 at 8-12]; Dec. 11, 2020, Notice of Appeal and Intention to Seek Writ of

Certiorari to the Supreme Ct. of Ga. [Doc. 1-4 at 13]; Dec. 11, 2020, Second Mot.

for Emergency Inj. Relief [Doc. 1-4 at 98-110].  On December 12, 2020, the

Supreme Court of Georgia dismissed the petitioner's "Emergency Petition for Writ

of Certiorari" which sought emergency injunctive relief. <u>Trump v. Raffensperger</u>,

Supreme Ct. of Ga., No. S21M0561 [Doc. 1-4 at 17-18].  However, the petitioners

did not dismiss their notice of appeal.  On December 29, 2020, Chief Fulton

County Superior Court Judge Christopher S. Brasher issued a status order which

indicated the court would not act on the petitioners' emergency request to appoint

---

<u>Paez v. Sec'y, Fla. Dep't of Corr.</u>, 947 F.3d 649 (11th Cir. 2020) (citing FED. R.
EVID. 201(b)(2)).

4

an administrative law judge until the appeal was resolved or withdrawn. Trump I, Dec. 29, 2020, Status of Request to Appoint Administrative Law Judge [Doc. 1-4 at 19]. The petitioners in Trump I then filed a renewed request for the superior court to appoint an administrative law judge, indicating their intent to withdraw their notice of appeal. Id., Dec. 29, 2020, Renewed Request to Immediately Appoint Administrative Law Judge [Doc. 1-4 at 20-26]. On December 30, 2020, Chief Judge Brasher entered an order re-assigning Trump I to another judicial administrative district, Senior Judge Adele Grubbs was then appointed to hear the petitioner's election contest and, on December 31, 2020, Senior Judge Grubbs set the matter for hearing and trial on January 8, 2021, at 10:00 A.M. Id., Dec. 30, 2020, Order Reassigning Case to Seventh Judicial Administrative District; Dec. 30, 2020, Order Directing the Clerk to Accept & File the Order Appointing Senior Judge Grubbs; Dec. 31, 2020, Rule Nisi Order.[4]

Plaintiff's motion for expedited declaratory and injunctive relief asks this Court to take the unprecedented action of decertifying the results of the presidential election in Georgia and directing the Georgia General Assembly to

---

[4] See n.3, *supra*.

appoint presidential electors.  Pl.'s Mem. of Law in Supp. of Mot. for Expedited

Declaratory and Injunctive Relief ("Pl.'s Br.") [Doc. 2-1] at 11.

## II.    LEGAL STANDARD

In order to obtain a preliminary injunction, Plaintiff must demonstrate: (1) a

substantial likelihood of success on the merits; (2) that irreparable injury will be

suffered if the relief is not granted; (3) that the threatened injury outweighs the

harm the relief would inflict on the non-movant; and (4) that entry of the relief

would not be adverse to the public interest.  Scott v. Roberts, 612 F.3d 1279, 1290

(11th Cir. 2010); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26

(11th Cir. 2005).  "The burden of persuasion in all of the four requirements is at all

times upon the plaintiff."  Ne. Fla. Chapter Ass'n of Gen. Contractors of Am. v.

City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted).  A

preliminary injunction is "an extraordinary and drastic remedy" and should be

granted only when the movant clearly carries the burden of persuasion as to the

four prerequisites.  Four Seasons Hotels & Resorts v. Consorcio Barr, 320 F.3d

1205, 1210 (11th Cir. 2003); Morgan Stanley BW, Inc. v. Frisby, 163 F. Supp. 2d

1371, 1374 (N.D. Ga. 2001).

## III.    DISCUSSION

### A.    Standing

As a threshold matter, the Court must first consider Plaintiff's standing to bring his claims in this Court. Plaintiff's two-count Complaint alleges that: (1) in certifying the November 3, 2020, election results for President, Defendants violated the "Electors Clause" of the United States Constitution, which provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of [Presidential] Electors, U.S. CONST. art. II, § 1, cl. 2 (Count I); and (2) Defendants violated the Fourteenth Amendment's Due Process Clause by "improperly certif[ying] the November General Election results while a statutory election contest was pending[.]" (Count II). Compl. ¶¶ 70-75.

The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court

jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quotation and citation omitted).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). To demonstrate standing, a plaintiff "must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1245 (11th Cir. 2020) (citation omitted). The elements of standing are "an indispensable part of the plaintiff's case." Lujan, 504 U.S. at 561. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1647 (2017) (quotation and citation omitted).

## 1.    Claim Pursuant to the Electors Clause

Count One of Plaintiff's Complaint alleges that Defendants violated the Electors Clause by certifying the November 3, 2020, election results when the election "was not conducted in accord with election laws established by the Legislature." Compl. ¶ 71. The Electors Clause grants the right to prescribe the manner in which presidential electors are selected to each state legislature, in this case the Georgia General Assembly. Id. Therefore, Plaintiff's Electors Clause

claim belongs, if it belongs to anyone, only to the Georgia General Assembly. See Bognet v. Sec'y Commonwealth of Pa., 980 F.3d 336, 350 (citation omitted) ("Plaintiffs here are four individual voters and a candidate for federal office; they in no way constitute the General Assembly, nor can they be said to comprise any part of the law-making processes of Pennsylvania. Because Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses.").

Accordingly, the Court finds that Plaintiff does not have standing to bring a claim under the Electors Clause based on the facts alleged in his Complaint.

### 2. Claim Alleging Fourteenth Amendment Due Process Violation

Count Two of Plaintiff's Complaint alleges that Defendants violated his Fourteenth Amendment Due Process rights by improperly certifying

> the November 3 General Election results while a statutory election contest was pending, and which nearly four weeks after filing, is still pending without even the assignment of a judge or assignment of a court, or the setting of a hearing date for a hearing on the merits. Defendant's certification of final results without Plaintiff being afforded his statutory right to an election contest violates Due Process.

Compl. ¶ 73. The crux of the claim is Plaintiff's allegation that he has not been afforded his right to an election contest. Id.

Plaintiff's claim fails to meet the causation and redressability prongs of Article III standing. "To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"[5] Jacobson, 974 F.3d at 1253 (quoting Lujan, 504 U.S. at 560). In this case, Plaintiff has failed to establish that Plaintiff's alleged injury was tied to any alleged action on the part of Defendants. To the extent that Plaintiff has been deprived of his ability to contest the general election pursuant to O.C.G.A. § 21-2-524, that deprivation is due to Plaintiff's own dilatory actions or the action (or inaction) of the Fulton County Superior Court and has nothing to do with Defendants in this case. Plaintiff has not made one allegation of any act on the part of Defendants that thwarted his ability to seek relief in the superior court pursuant to O.C.G.A. § 21-2-524. Plaintiff's claim similarly is deficient with regard to redressability as Plaintiff is seeking an opportunity to contest the general election pursuant to O.C.G.A. § 21-2-524, but Defendants are not capable of providing this relief.

---

[5] Plaintiff's brief in support of his motion does not address the causation or redress ability prongs, and Plaintiff's argument that "there is a direct causal connection between Plaintiff's injury and the relief sought" fundamentally misunderstands the standard. Compl. ¶ 54.

Additionally, to the extent Plaintiff alleges that his Fourteenth Amendment Due Process deprivation is based on the allegation that the general election was "improperly certified" because "illegal votes" were cast and counted, see Compl. ¶ 74, Plaintiff's claim still fails to meet the causation and redressability prongs of Article III standing. In Jacobson, the Eleventh Circuit considered whether voters and organizations could challenge a statute governing the order in which candidates appeared on the ballots. Jacobson, 974 F.3d at 1241. The defendant in that case was the Florida Secretary of State. Id. In analyzing the plaintiffs' standing to bring a lawsuit for, *inter alia*, the violation of their Fourteenth Amendment rights, the court found that the plaintiffs did not have standing because any injury they might suffer was neither fairly traceable to the Secretary of State nor redressable by any judgment against the Secretary of State:

> Even if the voters and organizations had proved an injury in fact, they would still lack standing because any injury would be neither traceable to the Secretary nor redressable by relief against her. Instead, any injury would be traceable only to 67 Supervisors of Elections and redressable only by relief against them. The voters and organizations' failure to join the Supervisors as defendants is an independent reason that they lack standing to maintain this action.

> To satisfy the causation requirement of standing, a plaintiff's injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. The voters and organizations contend that they are injured because Republicans, not Democrats, appear first on the ballot in Florida's general elections. So for them to have standing, the order in

which candidates appear on the ballot must be traceable to the Secretary—the only defendant in this action. The problem for the voters and organizations is that Florida law tasks the Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute. The Secretary is responsible only for certifying to the supervisor of elections of each county the names of persons nominated. The voters and organizations have offered no contrary evidence to establish that the Secretary plays any role in determining the order in which candidates appear on ballots. Because the Secretary didn't do (or fail to do) anything that contributed to their harm, the voters and organizations cannot meet Article III's traceability requirement.

Jacobson, 974 F.3d at 1253 (quotations and citations omitted, internal punctuation accepted).

Similarly, in this case, to the extent that Plaintiff's Fourteenth Amendment injury is alleged to have been caused by the counting of allegedly illegal votes in the November 3, 2020, general election, Plaintiff has failed to trace that harm to any action on the part of Defendants. This very issue in the context of alleged irregularities associated with the processing of Georgia absentee ballots in the November 3, 2020, general election recently was decided in Ga. Republican Party, Inc. v. Sec'y of State for Ga., No. 20-14741-RR, 2020 WL 7488181, at *2 (11th Cir. Dec. 21, 2020). Relying on the holding in Jacobson, the Eleventh Circuit found that the plaintiffs did not meet the traceability or redressability standing requirements:

Here, as in Jacobson, the Campaigns did not sufficiently allege a redressable injury to establish standing. Like in Jacobson, the Campaigns sued the Secretary of State. They alleged that the Secretary is the state's chief election officer, that he has the authority and responsibility to manage Georgia's electoral system, and that he, along with the election board members, has the duty to promulgate rules and regulations to obtain uniformity in the practices of election officials and to ensure a fair, legal, and orderly conduct of elections. But, just as in Jacobson, the absentee ballot statute puts the duty to "compare the signature" and accept or reject a ballot on the "registrar or clerk"—not the Secretary of State.

Other than being the chief election officer responsible for election laws, there is no allegation that the Secretary controls the local supervisors or has control over the signature verification process. While the Secretary has rulemaking authority, as in Jacobson, this power is limited to rules and regulations that are "consistent with law." O.C.G.A. § 21-2-31(2). And the law gives the authority to conduct the signature-verification process to local supervisors, not the Secretary. Id. § 21-2-386(a)(1)(B). The Campaigns' motion for injunction asks us to do what we said could not be done in Jacobson: order a nonparty county official to do something contrary to state law. Since the Secretary and the election board do not conduct the signature matching process, are not the election officials that review the voter's signature, and do not control whether the signature matching process can be observed, the Campaigns' alleged injury is not traceable to the Secretary. And the Secretary does not have the authority to redress it.

Id., 2020 WL 7488181, at *2.

This case is directly analogous. Under Georgia election law, county election officials are solely responsible for processing, validating, and tabulating both absentee and in-person ballots. See O.C.G.A. §§ 21-2-386, 21-2-493. Therefore, because Defendants did not have any role in the counting of any allegedly illegal

13

votes, Plaintiff is unable to show that any injury he suffered was fairly traceable to any action on the part of Defendants or redressable by any judgment against Defendants.

Accordingly, the Court finds that Plaintiff does not have standing to bring his claim alleging the violation of his Due Process rights under the Fourteenth Amendment.

## B.     Jurisdiction and Preliminary Injunction Factors

Assuming that Plaintiff does have standing to bring his claims, the Court now evaluates those claims to determine whether this Court has jurisdiction to hear them and, if so, whether Plaintiff has satisfied the four factors to obtain a preliminary injunction.

### 1.     This Court Lacks Jurisdiction to Grant the Relief that Sought by Plaintiff.

As a remedy for the alleged constitutional violations alleged in Plaintiff's two-count Complaint, Plaintiff seeks an order from this Court (1) declaring that violations of state and constitutional law occurred during the November 3, 2020, election in Georgia that render the election results that were certified null and void and (2) directing the Defendants to decertify the election results. See Compl.

14

¶¶ 67-68, Prayer for Relief; Pl.'s Br. at 10-11. However, this Court is without jurisdiction to grant the relief sought by Plaintiff.

      **a.**    **Plaintiff's Attempt to Effectively "Remove" the Election Contest Presently Pending in the Superior Court of Fulton County Must Fail.**

Georgia law provides that "[a] petition to contest the result of a primary or election shall be filed in the office of the clerk of the superior court having jurisdiction within five days after the official consolidation of the returns of that particular office or question and certification thereof." O.C.G.A. § 21-2-524(a). Federal courts "do not intervene in state election contests for the purpose of deciding issues of state law." Hubbard v. Ammerman, 465 F.2d 1169, 1181 (5th Cir. 1972).[6] Plaintiff filed an election contest case before the state court having exclusive jurisdiction to hear that case, the Superior Court of Fulton County, raising all of the allegations of fraud that he attempts to bring before this Court. Plaintiff does not challenge the state law providing for the filing of an election contest; in fact, Trump I is still pending in superior court with a hearing set for later this week. The sole reason for Plaintiff's attempt to "remove" Trump I to this

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Court is the purported failure of the superior court to consider his election contest as expeditiously as he would prefer. Compl. at 11-17. But the delay is Plaintiff's own doing:

- Although Secretary Raffensperger certified the presidential election results on November 20, 2020, Plaintiff waited until December 4, 2020, to file his election contest.

- Plaintiff never sought an order from a judge of a superior court in Georgia to alter the statutory deadline for Secretary Raffensperger to certify the results for the presidential election; see O.C.G.A. § 21-2-499(b) ("Notwithstanding the deadlines specified in this Code section, such times may be altered for just cause by an order of the judge of superior court of this state.").

- Plaintiff voluntarily withdrew his motion for emergency relief in superior court on December 8, 2020, which sought to stop the re-certification of the election results.

- Plaintiff filed a notice of appeal of Judge Russell's procedural order on case status on December 11, 2020 (which would have not been filed had Plaintiff not withdrawn his original request for emergency

relief), effectively depriving the superior court of jurisdiction to consider his second motion for emergency injunctive relief.

- Plaintiff did nothing for over two weeks after the Supreme Court of Georgia denied his emergency petition for writ of certiorari on December 12, 2020.

- After Chief Judge Brasher reminded Plaintiff on December 29, 2020, that as long as his notice of appeal was pending, the superior court could not hear his election contest, Plaintiff then withdrew his notice of appeal on December 30, 2020, after which the superior court promptly appointed a judge from outside the judicial district to hear the election contest this week.

Plaintiff offers no authority to support a federal court hijacking a pending state election contest case under any circumstances, and certainly not when the failure to expedite was the result of Plaintiff's own actions.[7]

> **b.** **The Sole Remedy for Objecting to the Counting of Electoral Votes After Certification Lies with the Congress of the United States.**

---

[7] In fact, even if jurisdiction over this claim existed, it would be within this Court's discretion to abstain under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). In Colorado River, the Supreme Court affirmed the district court's dismissal of a case with parallel state court proceedings for the primary purpose of avoiding piecemeal litigation over the issue.

Plaintiff seeks an order from this Court decertifying the November 3, 2020, election results. See Compl., Prayer for Relief ¶¶ A, D; Pl.'s Br. at 11 (requesting, *inter alia*, that the Court issue an injunction decertifying the electors certified and directing the Georgia General Assembly to appoint a new slate of electors). 3 U.S.C. § 15 provides the only process by which the electoral votes are to be counted and potentially challenged. Specifically, when Congress is in session on the sixth day of January following a presidential election, after each state's electoral votes are read to the members of the Senate and the House of Representatives, "the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives." 3 U.S.C. § 15. The objections are to be submitted to both the Senate and the House, and "the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified." Id. Plaintiff has failed to cite any statute or case that provides for any mode of challenging electoral votes already certified and counted by the Electoral

College outside the congressional method outlined in 3 U.S.C. § 15.[8]  Thus, this Court finds no grounds upon which to independently order the decertification of Georgia's election results.

### 2. Plaintiff Fails to Establish a Substantial Likelihood of Success of His Claim Under the Electors Clause (Count I).

Count I of Plaintiff's Complaint alleges in conclusory fashion that Defendants' certification of the November 3, 2020, election, which Plaintiff alleges was not performed in accordance with Georgia election laws, was in violation of Article II, Section 1, clause 2 of the United States Constitution.  Compl. ¶ 71 (citing U.S. CONST. art. II, § 1, cl. 2).  The Complaint does not elaborate specifically how the Electors Clause was violated.  Plaintiff's brief in support of his Motion for Expedited Declaratory and Injunctive Relief does little to clarify the matter.  See Pl.'s Mem. of Law in Supp. of Mot. for Expedited Declaratory and Injunctive Relief ("Pl.'s Br.") [Doc. 2-1] at 6-8.  Plaintiff argues in conclusory fashion that because Defendants violated the Georgia Election Code they thereby

---

[8] The Court notes that Plaintiff could have petitioned a judge of the superior court of this state to alter the time under which Governor Kemp was required to certify the slates of presidential electors, but Plaintiff failed to do so. See O.C.G.A. § 21-2-499(b).

violated the Electors Clause.[9] Id. By certifying an election conducted in violation of Georgia election law, "Defendants infringed on the exclusive province of the [Georgia] Legislature under the Electors Clause." Id. at 7.

The Electors Clause directs state legislatures to appoint presidential electors in a manner of their choosing. U.S. CONST. art. II, § 1, cl. 2. The Supreme Court has described this clause as "conveying the broadest power of determination" over who becomes an elector. Chiafalo v. Washington, 140 S. Ct. 2316, 2324 (2020) (quoting McPherson v. Blacker, 146 U.S. 1, 27 (1892)). The manner of appointment among the states is largely uniform as all states use an appointment process tied to the popular vote, with political parties fielding presidential candidates having the responsibility to nominate slates of presidential electors. Id. at 2321-22. The Georgia General Assembly's decision to appoint the state's presidential electors by popular vote is contained in O.C.G.A. § 21-2-499:

> The Secretary of State shall also, upon receiving the certified returns for presidential electors, proceed to tabulate, compute, and canvass the votes cast for each slate of presidential electors and shall immediately lay them before the Governor. Not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted, the Secretary of State shall certify the votes cast for all candidates described in subparagraph (a)(4)(A) of Code Section 21-2-

---

[9] Plaintiff also argues that Defendants violated the Elections Clause, but the Complaint fails to allege a violation of the Elections Clause, U.S. CONST. art. I, § 4, cl. 1. Pl.'s Br. at 6.

497 and upon all questions voted for by the electors of more than one county and shall no later than that same time lay the returns for presidential electors before the Governor. The Governor shall enumerate and ascertain the number of votes for each person so voted and shall certify the slates of presidential electors receiving the highest number of votes. The Governor shall certify the slates of presidential electors no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted. Notwithstanding the deadlines specified in this Code section, such times may be altered for just cause by an order of a judge of superior court of this state.

O.C.G.A. § 21-2-499(b).

Plaintiff argues that Defendants' alleged violation of Georgia election laws means that the "manner" for choosing electors established by the legislature was not followed and is in violation of Article II of the U.S. Constitution. Pl.'s Br. at 6-8. This argument confuses and conflates the "manner" of appointing presidential electors—by popular election—with underlying rules of election administration. The former implicates the Electors Clause while the latter implicates the Elections Clause. As used in the Electors Clause, the word "manner" refers to the "[f]orm" or "method" of selection of the Presidential Electors. Chiafalo, 140 S. Ct. at 2330 (Thomas, J., concurring) (citations omitted). It "requires state legislatures merely to set the approach for selecting Presidential electors." Id. Put another way, it refers simply to "the mode of appointing electors—consistent with the plain meaning of the term." Id.

The method for appointing presidential electors chosen by the Georgia General Assembly is by general ballot at the general election and requires the Governor to certify the slate of electors for the candidate who receives the "highest number of votes." O.C.G.A. § 21-2-499(b). There is no dispute that this is precisely how Defendants determined the appointment of Georgia's presidential electors. Absent proof that Defendants failed to follow this "manner" of determining the state's presidential electors, Plaintiff has not and cannot show a violation of the Electors Clause.

Although it is clear that Plaintiff has not alleged a violation of the Elections Clause in his Complaint, see Count I, the argument asserted in support of his Motion for Expedited Declaratory and Injunctive Relief indicates that he may be relying on an alleged violation of the Elections Clause in support of his argument that he is entitled to injunctive relief. Pretermitting any discussion on whether the absence of any allegation in the Complaint precludes Plaintiff from relying on such an argument in this Motion, the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of any such claim.

The Elections Clause, U.S. CONST. art. I, § 4, cl. 1, provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." This provision vests

authority in the individual states to regulate the mechanics of federal elections. Foster v. Love, 522 U.S. 67, 69 (1997). Plaintiff alleges that Defendants ignored the "Georgia Legislature's express directions regarding the collection, handling, processing, canvassing, and counting of absentee ballots, and related activities and/or through improper certification of elections and/or electors and related activities by and through implementation of an unconstitutional settlement agreement,"[10] in violation of the Georgia Election Code and "thereby also violated the Electors and Elections Clauses." Pl.'s Br. at 6. Put another way, Plaintiff argues Defendants usurped the role of the Georgia General Assembly—and thereby violated the United States Constitution—by implementing a settlement agreement that provided additional safeguards regarding absentee ballots not found in the Georgia Election Code.

As Georgia's Secretary of State, Defendant Raffensperger is "the state's chief election official." Compl. ¶ 3; O.C.G.A. § 21-2-50 (recognizing that the Secretary of State is the "state's chief election official."). In this position, he is

---

[10] The "settlement agreement" refers to "a March 2020 'Compromise and Settlement Agreement and Release' . . . agreed to by Secretary Raffensperger and the State Election Board in response to litigation filed by Democratic Party of Georgia, Inc., the Democratic Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee" that dealt with the process by which absentee votes are verified. Compl. ¶ 13.

permitted "[t]o formulate, adopt, and promulgate such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections." O.C.G.A. § 21-2-31. A similar challenge to the settlement agreement was recently considered and rejected in this district. As Judge Steven D. Grimberg found, the implementation of the settlement agreement "is a manifestation of Secretary Raffensperger's statutorily granted authority. It does not override or rewrite state law. It simply adds an additional safeguard to ensure election security by having more than one individual review an absentee ballot's information and signature for accuracy before the ballot is rejected." Wood v. Raffensperger, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *10 (N.D. Ga. Nov. 20, 2020), aff'd, 981 F.3d 1307 (11th Cir. 2020). State legislatures "possess the authority to delegate their authority over elections to state officials in conformity with the Elections and Electors Clauses" like the Georgia General Assembly did in giving the Georgia Secretary of State authority to enter into the settlement agreement under O.C.G.A. § 21-2-31. See id. at *10 (citing Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 576 U.S. 787, 816 (2015) ("The Elections Clause [ ] is not reasonably read to disarm States from adopting modes of legislation that place the lead rein in the people's hands . . . it is characteristic of our federal system that States retain autonomy to establish their own governmental

processes."); see also Corman v. Torres, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) ("The Elections Clause, therefore, affirmatively grants rights to state legislatures, and under Supreme Court precedent, to other entities to which a state may, consistent with the Constitution, delegate lawmaking authority."). This Court agrees with Judge Grimberg's analysis.

Accordingly, the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success of any claim under the Electors or Elections Clauses.

### 3. Plaintiff Fails to Establish a Substantial Likelihood of Success of His Fourteenth Amendment Claim (Count II).

Count II of Plaintiff's Complaint alleges that Defendants violated due process by improperly certifying the November 3, 2020, general election results while a statutory election contest was pending. Compl. ¶ 73. The Complaint does not indicate if Plaintiff's due process challenge is procedural or substantive and his brief filed in support the Motion for Expedited Declaratory and Injunctive Relief does not clarify the matter. Pl.'s Br. at 8. Plaintiff argues that the election contest filed in Trump I "alleges there are enough illegal votes sufficient to either change the outcome or to place the result of that election in doubt, as well as constitutional claims under equal protection and due process clauses of State Constitutions." Id. But, once again, Plaintiff fails to show that the election contest process in superior

court does not provide him with available relief should he present sufficient evidence as to the presence of sufficient illegal votes. As previously discussed, any delay in having the superior court render a decision in Trump I is due to Plaintiff's own actions in that litigation.

## B.    Irreparable Injury

Plaintiff has not shown that he is likely to suffer the irreparable harm required to merit injunctive relief. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07 (1959). Here, there is a clear, legal remedy for the injuries alleged, and it does not lie with this Court. Pursuant to 3 U.S.C. § 15, Congress will convene in Joint Session on January 6, 2021, and it will count and certify the electoral votes. The same statute provides the means for members of Congress to object to the count and reject any electoral votes deemed to be invalid. 3 U.S.C. § 15. Plaintiff asserts that harm will be irreparable if this Court does not act before Congress is given the opportunity to carry out its statutorily mandated duty, but this argument presumes that the federal statutory remedy under 3 U.S.C. § 15 is inadequate.

Moreover, as discussed by the Court, Plaintiff's delay in seeking injunctive relief in this Court principally was due to his failure to: (1) file an election contest

petition right after Secretary Raffensperger's certification on November 20, 2020;

(2) request that a superior court judge delay the certification of the election and/or

the slate of presidential electors; and (3) withdraw a notice of appeal which

prevented the superior court from conducting a hearing on his election contest on a

more expedited basis. See Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1249

(11th Cir. 2016) (finding that delay in seeking a preliminary injunction goes to the

irreparable harm prong). The Complaint also fails to explain how, even if this

Court granted the relief requested, Plaintiff will avoid any specific harm. The State

of Georgia has sixteen (16) votes in the electoral college. If this Court did grant

the relief requested, it would not change the result of the November 3, 2020,

Presidential Election that Joseph R. Biden, Jr. obtained the 270 or more electoral

votes needed for election as President.

### C.    Balance of Equities and Public Interest

The Court finds that the threatened injury to Defendants as state officials

and the public at large far outweigh any burden on Plaintiff. Plaintiff seeks an

extraordinary and unprecedented remedy: the decertification of the votes cast in the

presidential election, after millions of people lawfully cast their ballots. To

interfere with the result of an election that has already concluded and has been

audited and certified on multiple occasions would be unprecedented and harm the

public in countless ways.  See Wood, 2020 WL 6817513, at *13 (citing Sw. Voter

Registration Educ. Project v. Shelley, 344 F.3d 914, 919 (9th Cir. 2003)).

Granting injunctive relief here would breed confusion, undermine the public's trust

in the election, and potentially disenfranchise of millions of Georgia voters.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion

for Expedited Declaratory and Injunctive Relief [Doc. 2] is **DENIED**.

**IT IS SO ORDERED** this 5th day of January, 2021.

MARK H. COHEN
United States District Judge