# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DONALD J. TRUMP, in his capacity as )
a candidate for President of the United )
States, )
            )
     *Plaintiff,* )
            )
         v. )       CIVIL ACTION FILE NO.:
            )       1:20-cv-05310-MHC
BRIAN P. KEMP, in his official capacity )
as Governor of the State of Georgia; )
BRAD RAFFENSPERGER, in his official )
capacity as Georgia Secretary of State, )
            )
            )
     *Defendants.* )

## NOTICE OF FILING TRANSCRIPT OF MOTIONS HEARING OF JANUARY 5, 2021

**COMES NOW** THE PLAINTIFF and respectfully files the transcript of the

hearing on January 5, 2021 attached hereto as **Exhibit "A."**

Respectfully submitted, this 7th day of January, 2021.

                       THE HILBERT LAW FIRM, LLC

                       KURT R. HILBERT
                       *Attorneys for Plaintiff*
                       Georgia Bar No. 352877

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

```
1                    UNITED STATES DISTRICT COURT
2              FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION
3

4    DONALD J. TRUMP, in his       )
     capacity as a candidate for   )
5    President of the United States,)
                                   )
6                    Plaintiff,    )
                                   ) DOCKET NO. 1:20-CV-5310-MHC
7          -vs-                    )
                                   )
8    BRIAN P. KEMP, in his official )
     capacity as Governor of the   )
9    State of Georgia; BRAD        )
     RAFFENSPERGER, in his official )
10   capacity as Georgia Secretary )
     of State,                     )
11                                 )
                     Defendant.    )
12   _____

13
              TRANSCRIPT OF MOTION PROCEEDINGS BEFORE
14               THE HONORABLE MARK H. COHEN
                 UNITED STATES DISTRICT JUDGE
15               TUESDAY, JANUARY 5, 2021

16

17

18

19

20

21

22

23          VIOLA S. ZBOROWSKI, CRR, CRC, CMR, FAPR
                   OFFICIAL COURT REPORTER
24              UNITED STATES DISTRICT COURT
                     ATLANTA, GEORGIA
25
```

—UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT—

```
1   APPEARANCES:

2   ON BEHALF OF THE PLAINTIFF:

3     KURT ROBERT HILBERT, ESQ.
      THE HILBERT LAW FIRM, LLC
4
      JOHN EASTMAN, ESQ.
5

6   ON BEHALF OF THE DEFENDANTS:

7     RUSSELL D. WILLARD, ESQ.
           -and-
8     CHARLENE S. McGOWAN, ESQ.
      Office of the Attorney General
9
      CHRISTOPHER S. ANULEWICZ, ESQ.
10          -and-
      JAMES L. HOLLIS, ESQ.
11    BALCH & BINGHAM LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (JANUARY 5, 2021)

 2      (PROCEEDINGS HELD IN OPEN COURT AND VIA ZOOM AT 9:30 a.m.)

 3           THE COURT:  All right.  This is the case of Donald J.

 4  Trump versus Brian P. Kemp and Brad Raffensperger, Civil Action

 5  20-CV-5310.

 6           Will counsel for the parties please identify themselves

 7  for the record beginning with the plaintiff.

 8           MR. HILBERT:  Good morning, Your Honor.  This is

 9  attorney Kurt Hilbert of the Hilbert Law Firm, and I represent the

10  plaintiff, the President of the United States.

11           THE COURT:  Good morning, Mr. Hilbert.

12           MR. HILBERT:  Good morning.

13           MR. EASTMAN:  Good morning, Your Honor.  This is John

14  Eastman.  I represent the plaintiff.  My pro hac vice application

15  is pending.

16           THE COURT:  Good morning, Mr. Eastman.

17           All right, who is here on behalf of the defendants?

18           MR. ANULEWICZ:  Your Honor, this is Chris Anulewicz.

19  I'm one of the lawyers on behalf of the defendants.

20           THE COURT:  Good morning, Mr. Anulewicz.

21           MR. ANULEWICZ:  Good morning, Judge.

22           MR. HOLLIS:  Your Honor, this is James L. Hollis also on

23  behalf of the defendants.

24           THE COURT:  Good morning, Mr. Hollis.

25           MR. WILLARD:  Good morning, Your Honor, this is Russ
```

1  Willard from the Attorney General's office here on behalf of the

2  state defendants.

3      THE COURT:  Good morning, Mr. Willard.

4      MR. HILBERT:  Good morning, Your Honor.  This is

5  Charlene McGowan, also with the Attorney General's office on

6  behalf of the state defendants.

7      THE COURT:  And good morning to you, Ms. McGowan.

8      All right, this is an argument which the Court expedited

9  on plaintiff's motion for expedited declaratory and injunctive

10  relief.  Before we get started, I wanted to state for the record

11  that as counsel was probably not surprised to hear, we had a lot

12  of calls this morning from members of the public that want to know

13  why we couldn't audio in via the Internet on this case, and as

14  I -- we informed counsel for the parties yesterday, the court does

15  have a pilot project which allows live streaming of cases of

16  public interest through audio through the Internet, but one of the

17  prerequisites of that project is that all the parties have to

18  agree to have that done.  And because counsel for plaintiff did

19  not agree to have that done, we did not put this out for audio

20  live streaming.  So I wanted to make that clear for the record,

21  and that is what we are informing members of the public who call

22  up that ask why we can't see this over the Internet.  So I wanted

23  to make that clear to everyone.

24      All right.  Mr. Hilbert, I assume you're going to begin

25  the arguments.  So you can go forward.

1          MR. HILBERT:  Thank you, Your Honor.  May it please the

2     Court, it is our honor and privilege to represent the President of

3     the United States in this matter.  I am here, as you know, with

4     co-counsel Professor John Eastman.  He's a constitutional law

5     scholar, who is also private counsel to the President.  He will be

6     sharing in the presentation today and will be bifurcating what we

7     argue for the Court.

8          I want to personally thank the Court for setting this

9     hearing this morning as this hearing is extremely important to the

10    democratic process, our fundamental voting rights, our election

11    process, upholding the rule of law and the Constitution itself.

12         It is my understanding that this hearing today is on the

13    President's motion for temporary restraining order and preliminary

14    injunctive relief under Federal Rules of Procedures 65 and that is

15    the status and quote injunction, and if granted by this Honorable

16    Court, a full permanent injunction and declaratory judgment

17    hearing will take place at a later date.

18         We are requesting at this time a consolidation of the

19    TRO portion with also the preliminary hearing portion of the

20    hearing and our motion under 65.  We have extensively agreed to

21    this matter so the Court can rely on the verified complaint which

22    is evidence for purposes of this hearing today.

23         THE COURT:  Mr. Hilbert, let me just say for the record,

24    I have reviewed everything that has been filed in this case both

25    from the plaintiff's side and from the defendant's side, so...

```
 1              MR. HILBERT:  Thank you, Your Honor.  We believe we have
 2   made our prima facie case on the face of the verified complaint
 3   and the relief sought under the Georgia Election Code.  I want to
 4   emphasize and point out and focus on the oral argument here today
 5   that the defendants filed last evening and ostensibly tried (audio
 6   disruption) each of the arguments that we wrote with no merit
 7   whatsoever, and emphasize how the briefing glaringly downplays the
 8   unconstitutional settlement entered into by Defendant
 9   Raffensperger that ostensively put all of this -- problem that we
10   are here before the Court in place.
11              THE COURT:  Has it -- let me interrupt you, Mr. Hilbert.
12   The issue of the settlement agreement, this case has been decided
13   by one of my colleagues, Wood versus Raffensperger, which
14   considered a challenge to the settlement agreement under the
15   theory that the Secretary of State, you know, usurped the power of
16   the General Assembly in entering into that -- entering into that
17   settlement agreement.  Judge Grimberg found that that was not the
18   case and the fact Secretary Raffensperger was acting in a valid
19   manner pursuant to delegation that he's given as -- in his
20   capacity as chief state election office -- officer.  So why should
21   I basically review this matter?
22              And let me also ask you this question, because it
23   is -- it is pervasive through, I think, a procedural problem you
24   have in coming to me at this late date.  And that is, why now?
25   This settlement agreement I believe was entered into back in March
```

1  of last year, which is, what, nine months ago and you wait

2  until -- I don't even know if it's the eleventh hour or even

3  beyond the eleventh hour to come to this court to challenge the

4  settlement agreement which has been in place for months.  I mean,

5  the plaintiff could have challenged that agreement the week after

6  it was entered.  Certainly, in -- in a large period of time

7  between the time it was entered and now.  So I've got a situation

8  where you sat on your rights with respect to challenging the

9  agreement, plus the very argument you're making has been rejected

10  by another Court in this district.  So convince me why those two

11  factors basically would not lead me to reject your argument.

12       MR. HILBERT:  No, Your Honor.  Thank you for the

13  opportunity.  There's a lot in there and I'll try to unpack it all

14  as I go here, specifically as to the settlement agreement.  First

15  and foremost, that -- the Wood versus Raffensperger case, they

16  were different parties.  The President of the United States is the

17  actual candidate here in this case.  He was not a part of that

18  case.

19       THE COURT:  Well, I -- let me interrupt you.  I know he

20  wasn't a part of that case, and, you know, one of the alternative

21  holdings of that case had to deal with standing and I understand

22  that.  But Judge Grimberg went to the merits of the matter.  He

23  basically said, I assume that everyone's got standing to challenge

24  this, and even if they do, their challenge falls.  So just because

25  we have a different plaintiff, we have the exact same argument

1  that was decided by another judge of this district.  So convince

2  me why Judge Grimberg was wrong.

3         MR. HILBERT:   Okay.  So Judge Grimberg was indeed wrong

4  on multiple levels.  First of all, this was an absolute arrogation

5  of the Legislature under Georgia law, first of all.  The Secretary

6  of State is imbued with overseeing the elections.  He's not imbued

7  with the authority to add law to the existing code.  This

8  settlement agreement on its face alters the law.  It is at void ab

9  initio as a matter of law and can be challenged at any time by any

10 party at any time.  That's why the argument fails.  That's why the

11 mootness argument fails.  This argument was not raised for the

12 court in front of Judge Grimberg.  The issue of the state law of

13 O.C.G.A. 13-8-2 which is -- are void as a matter of public policy

14 statute under Georgia law specifically says under the first

15 section of that statute that any contract tending to corrupt

16 legislation is void as a matter of law and public policy.  That is

17 the declared policy of the State of Georgia.  That argument was

18 not presented or put before the Court in any capacity.

19        The Court then further said, well, this was just a

20 natural extension of delegation of his powers as Secretary of

21 State.  I respectfully disagree with Judge Grimberg because this

22 is a separation of powers issue.  He is an executive with the

23 Executive Branch of the government.  He's not part of the

24 Legislature and he cannot dictate new law through a private

25 settlement agreement.  This is a contract under Georgia law that

1   is void ab initio and can be attacked collaterally at any time and

2   at any point in time that -- that we decide that it needs to be

3   challenged.  The fact that it has been in place for months since

4   March 2020 is an irrelevant argument.  It is void ab initio.  It

5   is a nullity.  It is unconstitutional.  And for the Court to have

6   said that this was somehow an extension of authority of the

7   Secretary of State is just simply a flawed analysis.  It's wrong

8   on the law.  This is void as a matter of public policy because it

9   tended to corrupt state legislation.  And when it tends to

10  corrupt, it does not even have to actually corrupt, it just has to

11  tend to corrupt.  But what we have shown in our verified complaint

12  and throughout this entire 2020 general election, is that we

13  actually have corruption in fact.

14          The other part that was not raised before Judge Grimberg

15  is an extremely important factor, the Georgia Election Code.  The

16  extension of authority of the Secretary of State, they left out

17  one critical part of their analysis in their argument, and that is

18  the Secretary of State still has to act consistent with existing

19  law.  That's in the election code itself.  The acting consistent

20  with the existing law, he did not do that.  He entered into a

21  private settlement agreement with the Democratic party, the GOP

22  was not a party, the Libertarian party was not a party.  Under

23  Georgia law it is abundantly clear, and we cited this in our

24  briefing, that non-parties to a settlement agreement cannot be

25  bound to its terms, and it can be challenged at any time.  The

 1  statute of limitation for a contract challenge under Georgia law
 2  is six years.  A fraud challenge is four years.  We are well
 3  within the statute of limitations on a simple contract analysis or
 4  a fraudulent inducement analysis.
 5          THE COURT:  But you're coming to this Court -- it's not
 6  just you're challenging an agreement that you want in the future
 7  not to be enforced; you're basically using this eleventh hour
 8  challenge to a settlement agreement as one of your arguments for
 9  this Court to take the absolutely extraordinary action to
10  basically stop -- stop the results of an election.  So that -- I
11  mean, it's interesting.  The one case that you created in your
12  brief, which I think is the Carson --
13          MR. HILBERT:  Yes.
14          THE COURT:  -- case in which there was a challenge to a
15  settlement agreement, it's not binding on me.  It's another
16  circuit obviously.  But you know what's interesting about that
17  case, they brought the challenge a month or more before the
18  election.  So the Court actually when it made its decision was not
19  overturning the results of an election.  It was before the
20  election ever took place.  What was the reason if the settlement
21  agreement was such a horrible agreement that was entered that you
22  didn't come forward well before now to challenge it?  In fact,
23  before the election.  Why couldn't you have come forward before
24  the election to challenge it?
25          MR. HILBERT:  The simple answer to that question, Your

1 | Honor, is that we didn't know what the results of the election

2 | were until after the election occurred.

3 |        THE COURT:  Ahh, so now we get to the -- now we get to

4 | the bottom line.  The agreement's only illegal if the election

5 | doesn't turn out your way.  If the election turns out your way,

6 | then you're fine with the agreement, right?

7 |        MR. HILBERT:  No, Your Honor.  That is not -- that is

8 | not the case at all.  It is void ab initio because it was an

9 | illegal arrogation of power from the Legislature.

10 |        THE COURT:  Okay.  And why not, because it's in your

11 | view an illegal agreement before the election, get the thing

12 | thrown out so that it is not implemented during the election?

13 |        MR. HILBERT:  We don't have to, Your Honor.  A void --

14 |        THE COURT:  I know you -- but why -- you're not

15 | answering my question.  Why did you not?  Because if your argument

16 | is that this agreement is illegal and beyond the authority of the

17 | Secretary of State, why allow an election to go forward under an

18 | agreement that's illegal?  What I hear you saying is we didn't

19 | know what the results were going to be.

20 |        MR. HILBERT:  Your Honor, again it has to be consistent

21 | with existing law.  And until that happens it has -- it has to be

22 | consistent with existing law.  And the law that -- we're under an

23 | election contest here and that election contest has to happen

24 | after the election actually takes place.  So it does --

25 |        THE COURT:  The challenge to the agreement -- the

1    challenge -- excuse me, Mr. Hilbert.  The challenge to the

2    agreement has nothing to do with following an election contest.

3    You could have challenged the agreement independently of any

4    election contest.  That's -- that's my point.  If the agreement is

5    void ab initio, it can't be carried out, but it was carried out

6    because nobody filed any action in an attempt or you -- I'm not

7    going to say nobody.  I don't know what happened before.  But I'm

8    saying you on behalf of your client did not file an action before.

9    And I don't want to -- I mean, I'm beating a dead horse here, but

10   it's an important horse because it leads to the next issue.

11           And that is, your attempt to ultimately remove an

12   election challenge that's been filed in the Superior Court of

13   Fulton County to this court with literally days left before you

14   think the world is going to come to an end.  So let me ask you

15   this because this is an important -- an important thing to talk

16   about.

17           As I read your complaint, the thing that you got in

18   terms of dissatisfaction with the Superior Court of Fulton County

19   is that you believe the Superior Court has, basically, prevented

20   you from having the election contest decided in time enough so

21   that you can take action before Congress meets tomorrow.  I mean,

22   that's how I perceive what your complaint is.  But the truth of

23   the matter is, you filed the election -- well, you filed the

24   election challenge on December 4; is that correct?  I think I have

25   my dates correct.

1          MR. HILBERT:  That's correct, Your Honor.

2          THE COURT:  And I know the state brings up an issue that

3   the filing fee wasn't paid right away and you had to pay the

4   filing fee.  But follow these steps with me.  The election

5   challenge could have been filed, obviously, the day after

6   Secretary Raffensperger certified the election results on November

7   20th, 2020.  In fact, the election challenge is supposed to be

8   filed within five days of the certification.  You waited -- let me

9   finish, and I'll give you plenty of time to respond to this.  But

10  I want to get all of this out, so I don't interrupt you in the

11  middle.

12          So November 21st is the first day you could have filed

13  the election challenge.  You chose obviously to request a recount

14  which is your right after the Secretary of State had already done

15  one recount, and you chose to wait until after or close to when

16  that recount was finished to file your election contest.  All

17  right.  That was a legal strategy that you chose, but you lost two

18  weeks between the 21st and the 4th to file an election challenge.

19  Then you filed a motion to have the Superior Court consider it on

20  an expedited basis.  And then you immediately withdrew that

21  motion.  I think the motion was filed on the 7th or the 8th of

22  December and then the withdrawal occurred maybe -- I think the

23  motion was filed on the 7th, the withdrawal occurred on the 8th.

24          So right after the withdrawal occurs, Judge Russell

25  basically says well, they've withdrawn their request for expedited

1  review of this matter, so I don't have to do it on an expedited

2  basis.  I can treat this in the regular course of proceedings, and

3  she entered an order that basically said that.  Well, after she

4  entered that order on December 10th, you decided to do two things.

5  Number one is, you filed a second motion for expedited review, but

6  you also filed a notice of appeal to the Supreme Court appealing

7  her procedural order.  That stopped everything because the case

8  was appealed to the Supreme Court of Georgia.  So the Superior

9  Court of Fulton County didn't have any jurisdiction anymore to

10  consider your renewed efforts to expedite your appeal.

11          You then go to the Supreme Court of Georgia, you try to

12  get them to do an emergency writ of certiorari.  They deny you the

13  next day on the 12th of December.  I think I have my dates right.

14  And then from the 12th of December until the 29th of December,

15  that's a 17-day period, you did nothing.  You did nothing

16  and -- and I understand the reason you probably did nothing is you

17  had a pending notice of appeal that was still pending in the

18  Supreme Court of Georgia.  And then Chief Judge Brasher, who

19  realized you still had a motion to expedite that couldn't be taken

20  up because you had a notice of appeal filed, did an order that

21  kind of reminded plaintiffs, look, if you want us to take this up

22  on an expedited basis, you can't pursue your appeal.  You have to

23  withdraw it.  You need to make a decision.  And then you decided

24  the next day, the 30th of December to withdraw your notice of

25  appeal and then right after you did that, the Superior Court acted

1  expeditiously, they got a judge from outside the district pursuant

2  to your request to consider the election contest, and it's Judge

3  Grubbs and she set a hearing for this week.  So they acted as

4  quickly as they could after you finally withdraw your notice of

5  appeal.

6         You decided as a matter of legal strategy you'd rather

7  be in the Supreme Court of Georgia.  That's a strategy.  But when

8  you do that strategy, you give up your right to have the case

9  heard in the lower court.  So let me go back.

10        There's two weeks between November 20th and December 4th

11 when you filed your election contest.  There's another 17 days

12 between your notice of appeal and the time you withdrew your

13 notice of appeal.  That's a month.  That's a month.  That's about

14 75 percent of the time from the date of the certification of the

15 election results until you filed the case in this court.

16        So my problem is, obviously, that you come to me at the

17 last minute, you had more than sufficient opportunity in the

18 Fulton Superior Court to get a hearing before now.  You probably

19 would have gotten it resolved and you probably -- if you had not

20 wanted the Superior Court, you would have been up at the Supreme

21 Court by now.  So that's -- that's your doing.  That's not

22 anything that anyone else did.  Go ahead and comment on it.

23        MR. HILBERT:  Okay.  Let me back up and explain where

24 that analysis is a little -- little flawed.  First of all, I want

25 to go back to the previous argument that you brought up during --

1  the Secretary of State.  The Secretary of State himself said that

2  that settlement agreement was consistent with existing election

3  law.  We did not know that that was a lie until after (audio

4  disruption).  I just want to make that clear for the record.  The

5  Secretary of State himself said that that settlement agreement was

6  consistent with law and we did not know that it was not consistent

7  with law until we realized after the election that hundreds of

8  thousands of illegal votes took place in this state.

9          All right.  Now as to your procedural arguments and

10  issues.  Let me address all of those.

11          First of all, there were three separate certifications

12  by the Secretary of State, all of which had different numbers.

13  The reason why we had to wait after the third certification to

14  challenge it, which we promptly did within five days under the

15  state election code, was because we didn't know what the real

16  number was until the third certification came out from the

17  Secretary of State.  The very fact that there were three different

18  numbers shows that the process was flawed to begin with.

19          THE COURT:  Well, let me -- I hate -- I have to

20  interrupt, but here's the thing.  You could have, could you have

21  not, filed an election contest after the -- I think it's actually

22  the second certification because they actually did a hand count

23  before the first certification.  So I mean, there was -- it was a

24  first recount, if you were, before the Secretary of State

25  certified the election results.  So could you have not under

1  Georgia law filed an election contest after that certification was

2  done on November 20th, yes or no?

3          MR. HILBERT:  The answer to that is yes, with the caveat

4  that that was a risk-limiting audit.  It was not true signature

5  match.  It was not true, you know, verification of illegal votes

6  that had been counted in this election.  The type of

7  certifications that took place were different throughout all three

8  of them, but to answer your question --

9          THE COURT:  But Mr. Hilbert, do you agree -- Mr.

10 Hilbert, do you agree that that was the certification that the

11 Secretary of State was required to do within 17 days of the date

12 of the election?  That was the statutory certification that he was

13 required to perform and he performed it.  And you had the right to

14 file an election contest right after that was done, true or false?

15         MR. HILBERT:  True.  I'm not --

16         THE COURT:  All right.

17         MR. HILBERT:  -- going to dispute that.

18         THE COURT:  I understand and you determined you just

19 chose -- you just chose not to because you wanted to wait for the

20 next certification to be done.  And -- and again, that's a legal

21 strategy.  I get that.  But at that point, you knew that the

22 certification was that Joe Biden won by a certain number of votes,

23 and if history proves, you know, what we go by, you know, we have

24 seen in hundreds of election contests that when you got the number

25 of votes separated between the first and second place people when

1   they do these recounts, it doesn't change in the thousands and

2   tens of thousands; it changes, you know, 1,000 or 1,500 or a

3   hundred or whatever.  But you decided -- you decided and it was a

4   legal decision and I'm not -- I'm not faulting you for that.

5   That's a legal decision that you made.  But -- but it was the

6   decision knowing that you were risking that 14 days of time that

7   you took up by not filing that election contest which took that 14

8   days away from the Superior Court to be able to resolve your

9   election contest.

10          MR. HILBERT:  But let me answer you, Your Honor.

11          THE COURT:  Okay.  Go ahead.  Go ahead.

12          MR. HILBERT:  So first of all, the election code allows

13  us -- it's almost like a civil code.  It doesn't have -- it

14  doesn't even mention laches.  It doesn't mention anything else.

15  It's a civil code and allows us to do it in five days.  So for us

16  to say that it could have been done then or now, we have the

17  statutory obligation and remedy to file it when we did.

18          But to get into your point about the legal strategy of

19  what happened in the state court.  Let me address that for a

20  moment.  In our original petition, the first thing that we

21  requested in our prayer for relief was for the immediate

22  appointment of an administrative judge.  That was on December 4th.

23  It is not the obligation of my -- me as counsel or my co-counsel

24  in that state court action to inform the Court of its job to

25  independently look at the pleading and actually realize that this

1 is an election contest and appoint a judge in a timely manner.

2 That was done on December 4th.  The Court had knowledge, the Clerk

3 of Court had knowledge, the Clerk under the election code

4 specifically was required to give notice.  That didn't happen.

5 　　　　　Now, let's get to the -- to the procedural issue of --

6 that you brought up regarding the order that was entered by Judge

7 Constance Russell who is a dear friend of mine.  She was illegally

8 appointed.  She had no eligibility to preside over this case under

9 the election code.  She was an acting judge and she resided in the

10 county.  Under the election code, she had no authority to enter an

11 order at all.  It was a nullity.  That order -- we were left with

12 no choice but to try to appeal that order because it completely

13 shut down the case.  There was nothing literally legally or

14 procedurally that we could do to file with the Court to say, wait

15 a minute, Your Honor, that order that you illegally entered

16 because you have no lawful right to preside over this case, must

17 be vacated.  She could do nothing.

18 　　　　　And, in fact, Judge Russell called me on the phone and

19 specifically told me, I don't think I can do anything further in

20 this case.  It was that -- upon that reliance of what she said to

21 me that we had to take the extraordinary relief to go up to the

22 Georgia Supreme Court to get them to try to do their duty to

23 nullify that order, so that we could proceed in an expedited

24 fashion.

25 　　　　　THE COURT:  But -- but you were unsuccessful.  The

1   Supreme Court turned you down within a day; right?

2            MR. HILBERT:  They think that it was a non-final order.

3   We argued it was a nullity on its face; and, therefore, the Court

4   had no ability to stop the procedure of this case.

5            THE COURT:  Okay.  And at that point you knew that the

6   Georgia Supreme Court was not going to give you an expedited

7   hearing on this.  That was done.  So at that point you had to make

8   a decision and that is, well, do we stick with the notice of

9   appeal knowing as you well know as an experienced attorney, that

10  nothing is going to happen fast.  When you got a notice of appeal

11  pending and the appellate court has denied your ability to take it

12  up on expedited basis.  So you had to determine at that point

13  well, do we maintain the notice of appeal or not?  Did you go back

14  to the Superior Court and beg, you know, oh, my God, we need to

15  have a hearing tomorrow, now that we've been turned aside?  And,

16  no, you didn't do anything.  And it wasn't until Judge Brasher

17  issued his order that basically said, hey, you know, I'm ready to

18  appoint someone else to hear your election contest case, but

19  you've still got your notice of appeal pending, what do you want

20  me to do?

21           MR. HILBERT:  I disagree, Your Honor.  We did do

22  something.  We gave notice to the Court.  We filed notices on the

23  record with the Superior Court to appoint the judge, and also for

24  the Clerk to do its duty.  But what the Court also is not

25  mentioning is the first order that was entered by Judge Brasher

1  that delayed five days in order to raise objections to the

2  appointment of a judge.

3          THE COURT:  But so why?  At that point you had filed a

4  notice of appeal.  So what?

5          MR. HILBERT:  Well, no, no, no, no.  He -- I believe he

6  filed that previous -- if I'm correct, and I might be mistaken on

7  that.

8          THE COURT:  He filed it on the 11th of December; right?

9          MR. HILBERT:  Well, regardless --

10         THE COURT:  You filed a notice of appeal on the 11th of

11 December, so...

12         MR. HILBERT:  I know.  It was the timing of getting it

13 to the Court and when it occurred and so on and so forth.  We were

14 left with no opportunity to proceed with the case at that point.

15 And then even when that five-day period went by and no objections

16 were raised, a judge was not appointed at the end of that day.

17 The judge -- that order from the Superior Court is a nullity.

18 It's arguable that the Superior Court still had jurisdiction to

19 enter an order in that case, because it was an absolute nullity.

20         THE COURT:  All right.  Go ahead.

21         MR. HILBERT:  All right, Your Honor.  I also want -- I

22 want to get to -- further on the issues of the brief that the

23 defendants filed last evening.  They failed entirely to cite the

24 Carson v. Simon case from the 8th Circuit, the 7th Circuit

25 decision, Wisconsin case, they didn't even address that as well.

1 And they also relied on De La Fuente, which is an unpublished

2 opinion and has no binding authority in the case.  Also, Allen v.

3 Wright, that has been distinguished as well, and they didn't

4 inform the Court of that.

5        When it gets to the four-prong test for the temporary

6 restraining order and preliminary injunction, the first prong is a

7 substantial likelihood of success on the merits.  And I want to

8 point out, we briefed this again in our pleadings and such, but I

9 want to point out a specific code section from the Georgia Code,

10 it's O.C.G.A. 21-2-524(c), and that, basically, says an absolute

11 right of the President or an aggrieved voter, as well, or an

12 aggrieved elector to challenge the election contest and demand a

13 recount.  And what's interesting about this particular code

14 section, is it specifically provides in the code section that no

15 evidence is required to even be pled for that relief to be given.

16        So it's our position, Your Honor, that under the Georgia

17 Election Code, which again is the arrogation of common law in

18 (audio disruption), there's almost a presumption of success on the

19 merits as regarding that particular claim.

20        We have Gabriel Sterling who is an agent of the

21 Secretary of State who has come out and said on behalf of himself

22 and the office that he admits that illegal voting took place.  So

23 we believe that there is going to be a substantial likelihood of

24 success on the merits of basically all of our claims once we're

25 able to actually have a hearing on the merits of -- in the lower

1    case.

2           Now, you mentioned earlier also that a trial has been

3    set on January 8th.  That is of significant import because,

4    obviously, January 6th Congress is meeting to open votes.  A

5    hearing on January 8th means nothing.  It ostensively moots the

6    entire election contest.  Therefore, we have irreparable harm, we

7    have immediate necessity for a hearing today (audio disruption).

8           THE COURT:  And I've given you that hearing.  But what

9    you're asking me to do is to take the unprecedented action of

10   decertifying an election.

11          MR. HILBERT:  Correct, Your Honor.

12          THE COURT:  Let me tell -- let me tell you something.

13   There is one remedy at this point.  The Secretary of State has

14   done what is required to do of him.  And that is, he certified the

15   election results under 21-2-499(b), I believe it is.  The Governor

16   then did what is required of him and that is, he's got one job to

17   do.  And that is once the Secretary of State certifies the

18   election results, he sees who won, you know, who got the most

19   votes and then he certifies the presidential electors.

20          The remedy for doing something with respect to objecting

21   to those electors is a single remedy.  It's a federal law.  It's

22   in 3 U.S. Code, Section 15.  And that remedy lies exclusively with

23   the Congress of the United States.  And as we know from what we

24   have read there are people in Congress that are going to pursue

25   that remedy, and that is, you know, once the President of the

1  Senate announces the electoral votes for each state, one senator

2  and one house member have the right to object to those votes being

3  accepted.  There's a provision in the statute for a debate to

4  occur in each of the bodies, and there's a vote in each of the

5  bodies as to whether or not to accept those electors.  Am I

6  correct about that?

7            MR. HILBERT:  You're correct about the process, but I

8  don't think you're correct --

9            THE COURT:  Name me -- name me -- name me any authority

10 that says that a district judge has the right to step in and usurp

11 the authority of the Congress of the United States and decertify

12 the electors that have been certified in -- by the State of

13 Georgia in this case.  Because you talk about, you know, people

14 talk about activist judges.  I cannot think of a more activist

15 thing for a judge to do than to basically cross the line into

16 another branch of government that has the authority and the sole

17 authority once the state certifies its electors to basically not

18 accept those electors.  Give me some authority, give me any

19 authority.

20           MR. HILBERT:  I'm going to give you the authority, Your

21 Honor.  I respectfully disagree with the analysis, because, first

22 of all, the Secretary of State certainly had a duty to count.  And

23 he did his duty to count.  But what he didn't do was he counted

24 illegal votes.

25           THE COURT:  And that's what election -- and that's what

1  election contests are for and that's -- wait a minute.  And that's

2  what you filed.  That's the procedure to challenge the

3  certification is to file the election contest, which you did, and

4  you just, you know, didn't do it expeditiously enough and now

5  you're -- you -- you have set this date of tomorrow as the

6  drop-dead date which, you know, you could have gotten this

7  resolved beforehand, but you didn't.

8          But here's -- here's the thing about that drop-dead

9  date.  Mr. Hilbert, let me finish.  Here is the thing about that

10 drop-dead date and that is, that is the drop-dead date for

11 Congress to do its job.  That's what that is.  So, you know, the

12 last remedy that there is for the plaintiff is for Congress to not

13 accept enough states to change the total electoral votes.  That's

14 his last remedy, because the election contest was not decided by

15 Fulton Superior Court in time, possibly to alter that.  And that's

16 not the fault of the Fulton Superior Court, as you've alleged.  So

17 that's the problem that you've got here with me taking what would

18 be an absolutely unprecedented action.

19         MR. HILBERT:  Let me give you the legal authority, Your

20 Honor, first under both state law and federal law.  The first is

21 O.C.G.A. 21-2-525, where the election code again which is in

22 derogation of common laws which says the court having jurisdiction

23 of the action, shall have plenary power throughout the area in

24 which the contested primary election was conducted to make, issue

25 and enforce all necessary orders, rules, processes and decrees

1  according to the course of practice in all civil cases and for a

2  full and proper understanding and final determination and also

3  enforcement of the decision in each and every case.  Also the

4  election code specifically says that the only exclusive remedy on

5  the election code is a new election under 21-2-527(d).  That's the

6  state law that we're operating under, Your Honor.

7        The federal law which also gives authority and power to

8  the Court to do this remedy is 3 U.S.C. Section 2.  And Professor

9  Eastman is going to speak and opine upon that.  And, Mr. Eastman,

10  if you would like to jump in here since we're on this argument at

11  this point in time.

12        MR. EASTMAN:  Sure, Your Honor.  Thank you very much.

13  Let me back up for just a moment.  Because one of the things that

14  the defendant alleges in their opposition papers yesterday is that

15  certification can't be undone at all.  That -- that would make the

16  whole contest statute meaningless, and there's lots of provisions

17  in the state code that allow for a revisiting of the certification

18  once the contest has been done.  Our issue here --

19        THE COURT:  As a matter -- excuse me, Mr. Eastman.  As a

20  matter of fact the General Assembly in its infinite wisdom did

21  provide for a remedy for delaying the certification of electors.

22  And it's contained in Code Section 21-2-499(b).  And after it

23  basically sets the deadlines for the Secretary of State to certify

24  the election and the Governor to certify the slate of presidential

25  electors, the general assembly provided as follows:

1       Notwithstanding the deadline specified in this code
2  section, such times may be altered for just cause by an order of a
3  judge of a superior court of this state.
4       Did plaintiff seek a delay of either of those deadlines
5  from a judge of the Superior Court of Georgia?
6       MR. EASTMAN:  No, Your Honor, but those were before the
7  certification and before the tally is even known.  The fact that
8  the contest statute allows us to file a challenge to the
9  certification within five days after the certification is entered,
10 would become meaningless if that certification was as defendants
11 alleged, something that can't be undone.  The fact of the matter
12 is the whole point of the contest election is to undo it if it --
13 if it was illegally entered as we allege it is.
14       And the fact that we have a number of -- of statutory
15 provisions that simply were not complied with in the conduct of
16 the election -- and I'll go back now to the federal issue.  The
17 Supreme Court in Bush v. Gore and this is the majority opinion,
18 the per curiam majority opinion acknowledges that when the
19 Legislature has decided to allow for a popular vote to choose the
20 elections, the right to vote is fundamental, but it's very
21 important the caveat it puts on that, as the Legislature has
22 prescribed.  Our argument here is that this did not occur as the
23 Legislature prescribed.  It didn't do it on the front end with the
24 violations that occurred in the state statutes during the
25 election, and it didn't occur on the back end with -- with the

1   contest not being -- not being timely considered.

2          I know you disagree with Mr. Hilbert on whether that was

3   the Court's fault or decision or whether our fault, but if we get

4   over that hurdle on the merits the fact that that wasn't done

5   means that that certification remained contingent and can be

6   changed.  And it is certainly within the power under 3 United

7   States Code Section 2, that means the election wasn't concluded.

8   It had failed to choose electors in a lawful manner as prescribed

9   by the Legislature on the date assigned by Congress.  And that

10  means under Section 2, the power is to void that statute.

11         And I think the Seventh Circuit's decision here that we

12  cite in the brief but -- but is very telling.  The Seventh Circuit

13  ultimately ruled against the Trump campaign on -- on laches

14  grounds, but held if it wasn't for that problem -- and by the way

15  that issue is pending in the Supreme Court on a sur-petition right

16  now.  The 7th Circuit specifically held if it wasn't because of

17  that, the proper remedy for the Court would be to void the

18  certification and leave it up to the Legislature to decide what

19  further action to take.  And that's precisely what we've asked

20  here.  And it's not unprecedented.

21         We cite in our brief a couple of -- of Georgia cases

22  that deal with the issue of changing or challenging the

23  certification or requiring it to be redone after -- after the

24  certification is issued.

25         THE COURT:  You're talking -- wait a second.  You're

1  talking about the certification of the election.  I'm talking

2  about the certification of the presidential electors, the slate

3  of -- that's been submitted to the electoral college.  None of

4  those cases say that a federal judge has the authority once the

5  state certifies its slate of presidential electors in accordance

6  with state law, the electoral college has met and chosen the

7  victor of the presidential race, at that point none of those cases

8  say that a federal court has the authority to basically stand in

9  the shoes of the Congress of the United States and start saying

10 that, well, I don't care what the electoral college did, I'm going

11 to say that Georgia's votes, -- Georgia's votes don't count,

12 Georgia electors that have been certified and that have gone

13 through the electoral college process that that is undone.  None

14 of those cases come close to saying that.  You're using

15 electoral -- you're using cases where -- where election contests

16 were made, where challenges were made to the certification of the

17 votes to try to extrapolate that into saying that a district court

18 somehow has a coextensive authority with the Congress of the

19 United States to throw out a slate of electors after the vote's

20 been done.  It's over.  The electoral college has met.  You think

21 that's not unprecedented.

22        MR. EASTMAN:  Well, Your Honor, two things:  One,

23 let's -- let's take it at its -- at its bare minimum.  If there

24 was conceded violations of state law that resulted in an election

25 that was illegally entered and that the results of that election

1    were then certified improperly, and the certification was in

2    error, and the election contest is not done by December 14th when

3    the electors meet and vote, what you're saying is that there is no

4    authority for the state to correct its own illegal certification

5    because once those electors vote and cast and send that letter of

6    certification to the Congress, there is nothing the state, the

7    federal courts or anybody can do.  I think that's contrary to

8    what -- the one example we have in -- in the last 150 years when

9    electors in Hawaii voted for President -- Vice President Nixon in

10   1960, and those certifications were entered.  There was a court

11   order to hold a recount.  At the end of that recount they

12   determined that in fact Senator Kennedy had won the election and

13   another certificate was entered by the newly elected governor of

14   that state and that one was sent to Washington as well.  But that

15   one was triggered by a court action ordering a recount after the

16   certification had been entered.  I do think that provides a

17   precedential authority and to hold otherwise would mean that there

18   is absolutely no way to correct the illegal certification.  And if

19   that's the only one before Congress, some have argued that

20   Congress has no authority to refuse to accept it.  That means a

21   blatantly illegal -- we have to assume for this purposes that the

22   certification was improperly entered.  That means an illegal

23   certification would result in illegal electoral votes being

24   counted in Congress with nobody being able to do anything, and

25   that renders void the statutory mechanism for challenging.  I

```
 1  don't think that can possibly be the right answer.  It's certainly
 2  not the answer we saw in Hawaii in 1960.
 3          MR. HILBERT:  Your Honor, I would like to add to that --
 4  that.  Under Georgia law as well, if the slate is decertified, the
 5  general Legislature -- the General Assembly of Georgia can meet
 6  and vote upon a new slate.  That is a remedy.  The court doesn't
 7  have to order that.  That can be done on its own when they come
 8  back into session, and it just so happens that they will be back
 9  in session or they are in session through January 11, is my
10  understanding.
11          So what Mr. Eastman or Professor Eastman has just said
12  we're essentially putting the imprimatur on an illegal certified
13  election, an illegally certified elector slate, and then Congress
14  then is going to say, okay, we're going to turn a blind eye to
15  this and we're going to put imprimatur that it was okay for all of
16  these illegal votes in Georgia to be counted and this electoral
17  slate to be tendered, opened and counted and that becomes somehow
18  a true and accurate representation of the voters of Georgia.  It
19  simply is not.
20          The general assembly of Georgia, their duty -- they
21  elected representatives of all of the voters of Georgia, all of
22  the citizens of Georgia.  Give them the opportunity to vote on
23  this issue and make it accurate.  Let them look into the illegally
24  counted votes.  We have just in four categories out of 39 alone,
25  to show that there are 20 -- in excess of 24,000 illegal votes
```

1  counted.  The disparity is only 11,779.  It's less than point one

2  percent difference.

3       So from my perspective, you know, the defendants have

4  argued disenfranchising millions of voters in Georgia.  No, I

5  disagree with that statement entirely.  The voters in Georgia,

6  they have voted for their elected officials.  There is a remedy

7  for them to step into their shoes and vote on their behalf to

8  create and have a proper certified electoral slate that is not

9  corrupted by illegal votes or an illegal constitutional settlement

10 contract.  I don't think this is extraordinary relief.  I don't

11 think it's extraordinary to say, General Assembly, you have the

12 power to do this, the constitution allows it, go and do it.  I

13 don't see how that's extraordinary.  It's already in the law.

14 We're just asking for the law to be applied.

15      MR. EASTMAN:  If I may, Your Honor, let me run through

16 real quickly some of the other points in their opposition brief

17 last night.

18      The question of standing, they rely on the Bognet case

19 out of the Third Circuit, but the Eighth Circuit's case in Carson

20 and the Seventh Circuit case in Trump versus Wisconsin Election

21 Commission holds exactly the opposite.  That the candidate is

22 different than private parties.  And so the three cases they cite,

23 Lance and Dillard and Wood all involve private parties.  And so

24 don't -- don't control on standing questions for candidates.  I

25 think the second -- Seventh Circuit's analysis is particularly out

1    there on the standing question.

2           On the mootness question, they say that they can't

3    decertify without running afoul of Bush v. Gore.  But what was at

4    issue in Bush v. Gore, was a state court altering the state

5    election scheme in order to decertify what had been done in

6    compliance with state law.

7           Here we were asking for decertification because the

8    state law was not complied with.  And I think that makes a very

9    important distinction.

10          On the laches question, the question pending before the

11   Supreme Court of the United States right now on the laches

12   question, is whether laches can ever prevent a federal court from

13   getting or a state court, Supreme Court in those two sur-petitions

14   out of Wisconsin from getting to the merits of a federal

15   constitutional issue.  And I think this is one of the major flaws

16   throughout their brief.  They keep saying it's only state law.

17          The Supreme Court made very clear -- well, Chief Justice

18   Rehnquist in his concurring opinion which most think is the

19   accurate description of the law, that when the state legislature

20   has decided the manner for choosing presidential electors and they

21   do that by enacting state law, those state laws take on an

22   independent authority as a matter of federal constitutional law.

23   And that's why we get the Bush v. Gore case in the first place.

24   It raised a federal constitutional question about whether the

25   state laws that had been adopted to pursue their federal authority

1  on choosing presidential electors, were actually being complied

2  with.  And then I'll touch on the Eleventh Amendment issue as well

3  because it centers on that as well.

4        The Eleventh amendment Ex Parte Young exception is

5  when -- and they're right about this, if we're only challenging

6  state law but because the state law has an independent authority

7  under federal law, Ex Parte Young exception applies here.  And the

8  same is true on the abstention doctrines because we're dealing

9  with a question of federal law, how that state law which

10 implements federal constitutional authority and, therefore, raises

11 federal constitutional issues, is being applied and the abstention

12 doctrines there are not relevant.

13       I think I've touched on all of the additional points

14 they raised.  I'd be happy to answer any questions you might have

15 about any of that.

16       THE COURT:  Thank you, Mr. Eastman.  Anything further,

17 Mr. Hilbert?

18       MR. HILBERT:  The only thing I would reference and then

19 I will abdicate here, is the Purcell doctrine that was cited by

20 the defendants in their brief.  Mr. Eastman can certainly talk

21 about that a little bit more, but I want to let the Court know

22 that we believe the citation of the Purcell doctrine actually may

23 be an admission by the defendants that the illegal settlement

24 agreement actually altered Georgia's Election Code.

25       The settlement agreement did not make new law as the

1  defendants claim and invalidate -- had no effect on Georgia's

2  election rules and Purcell doesn't apply at all.

3           THE COURT:  All right.  Thank you.  Before I go to the

4  defense, let me check with the court reporter who has been

5  diligently taking all this down.

6           (A discussion is held off record.)

7           THE COURT:  Okay, thank you very much.  Let me hear from

8  defendants.

9           MR. WILLARD:  Thank you, Your Honor.

10          Plaintiff threw a Hail Mary illegal pass here at the

11 thirteenth hour.  The problem with his Hail Mary pass is that the

12 quarterback is alone on the field.  The fans have gone home, the

13 marching bands have gone home, even his own team has gone home,

14 and the plaintiff continues to think that he has some viable path

15 forward to victory despite the fact that the popular vote is in,

16 counted, the electoral votes have been cast and all that is left

17 now is for Congress to count the votes.

18          Before I get into the legal arguments that we raise in

19 our brief, I just want to speak for the record.  There has been a

20 lot of regurgitation today by plaintiff's counsel of the phrase

21 invalid certification, illegal votes.  When you actually look at

22 their evidence, Your Honor, which the state court will do on

23 Friday, you will see how specious their arguments are, and how

24 factually unsupported their arguments are.  And you can see that

25 in their inclusion in the federal court pleadings of all their

1   state court pleadings.  They are throwing the equivalent of crap

2   up against the wall just hoping that some of it will stick and

3   convince someone, whether it's a member of Congress who believes

4   they have the ability to ignore their oath of office to consider

5   how the electorate has voted and how the electors have cast their

6   votes or whether they just want to continue to hoodwink the public

7   and -- or certain members of the public and continue to contribute

8   to legal defense funds and other things.

9           The fact of the matter is, the Secretary of State and

10  the governor acted pursuant to state law.  The certification of

11  the election was valid.  The certification of the ascertaining of

12  the presidential electors by the governor was valid, and it

13  reflects the express will of the Georgia people that have been

14  validated through three counts of the popular vote in the State of

15  Georgia.

16          Before we even get to the merits of the plaintiff's

17  complaint, though, you have the jurisdictional issues that have to

18  be overcome by the plaintiffs which they have woefully failed to

19  overcome.

20          The Eleventh Circuit in the recent Wood decision

21  established and reiterated that federal courts are not proper

22  venues for postelection contests about vote counting and alleged

23  violation of state law by state officials.  One component of that

24  federal restraint is an examination of Article III standing.

25  Plaintiff's argument today completely ignores their lack of

1    Article III standing.  It is plaintiff's burden to establish that

2    there has been an jury in fact, that is (audio disruption) and is

3    likely to be redressed by any court order.  And the crux of

4    plaintiff's complaint is they're asserting a violation of the

5    electors clause in certifying the election results and the

6    certificate of ascertainment, and a violation of the due process

7    clause by certifying while the contest was pending.

8              I believe as the Court has recognized, there is

9    significant doubt as to the whether the plaintiff's election

10   contest was actually pending at the time due to the failure to pay

11   the requisite fees on the Friday before the certification was

12   made.  That's the equivalent of saying that a complaint was

13   pending because you wrote it, you stuck it in your car, you drove

14   it to the courthouse and even though you forgot to walk it in and

15   get it filed, it was still pending.

16             As we argue in our brief, the plaintiff lacks the

17   standing to assert a claim under the electors clause.  The

18   plaintiff cannot stand instead of the General Assembly for any

19   alleged usurpation of the state lawmaking process.  It failed to

20   address how they have any standing to assert a violation of the

21   elector clause under any of the applicable circuit court decisions

22   that have addressed that, including the Wood decision by the

23   Eleventh Circuit.

24             Plaintiff also lacks standing to assert a due process

25   claim.  They make unsupported allegations of illegal votes being

1  counted, counting officials which is risible based upon the anemic

2  proof by the plaintiffs, and it is not traceable to any of the

3  state defendants.

4        The defendants were under a federal and state statutory

5  imperative to certify the results of the election due to the

6  failure of any party, including the plaintiff, to invoke the state

7  procedure that might have delayed the certification process for

8  presidential electors.  Even ignoring their lack of Article III

9  standing to bring these claims, the plaintiff's claims are moot.

10 We have litigated a number of cases over the intervening two

11 months since the November 3rd election.

12        In all of those cases, we have had a constantly shifting

13 example of what is the real imperative date from the plaintiffs,

14 including this plaintiff and his affiliated entity.  First it was

15 December 8th.  We've got to have everything done by December 8th

16 to invoke -- everything that has to be done, courts have got to

17 rule.  Then it was the date that the presidential electors cast

18 their ballot.  Everything has to be in, everything has to be done

19 by that.  Now it's January 6th when Congress will open and

20 tabulate the already cast electoral votes.  One can just imagine

21 as plaintiff continues to claw with the fingernails to this fix

22 that he can somehow overturn the vote of the Georgia population

23 and the popular vote in all 50 states, plus the District of

24 Columbia, then next we're going to hear, I'm still in office

25 through January 20th.  January 20th is the operative date.  I

1  don't care what Congress has certified.  I don't care what

2  Congress has tabulated.  I can still assert claims.

3          There is no case (audio disruption) anymore.  As the

4  Eleventh Circuit has held, federal courts are powerless to turn

5  back the clock to a time precertification.  It's just not

6  cognizable under either state or federal law to somehow ignore

7  what has already been done thus far.  And that is, there is

8  a -- there is an envelope sitting in the archives of the United

9  States that contains Georgia's cast electoral votes.  The only

10  thing left to do is tomorrow for Congress to discharge additional

11  obligation.  There's not a thing this court or any Georgia court

12  can do to undo that completed act.

13          In addition to the plaintiff's claims being moot,

14  plaintiff's claim are barred by the laches doctrine.  As the court

15  has already pointed out, the settlement agreement was entered into

16  not just by the Secretary of State, but the state election board

17  on March 6th.  Plaintiff did nothing at that time to challenge the

18  settlement agreement, nor did any of the other parties who post

19  November 3rd have raised challenges to that settlement agreement.

20  That settlement agreement was entered into pursuant to the lawful

21  delegation of authority from the General Assembly to the state

22  election board.  The state election board pursuant to that

23  delegated authority, entered into an agreement designed to ensure

24  as the General Assembly has changed them, with the uniform

25  application of election law throughout the state.  That is exactly

1   what the settlement agreement contemplated and reiterated.   And

2   the settlement agreement actually references the fact that a

3   proponent of the settlement agreement was the February adoption by

4   the state election board of the state election board rule.   At no

5   point in time has the plaintiff brought a declaratory judgment

6   action challenging the SEB's promulgation of its rule, nor has he

7   challenged the application of the settlement agreement prior to

8   the November 3rd general election.

9          The Fifth Circuit, before the circuit split, so its

10  analysis still holds true in the 1973 Tony decision, what you have

11  is a plaintiff who either is manufacturing a constitutional

12  violation now or was perfectly aware of a constitutional violation

13  at the time that it occurred, but was hoping to benefit from that

14  constitutional violation and so sat on his hands until it became

15  apparent that he was not benefiting from that.   And in neither

16  instance is it appropriate for a federal court to now come in

17  postelection and reward plaintiff for sitting on his hands.

18         The delay in this case by plaintiff is inexcusable.   We

19  had a November 3rd election.   We had a November 20th

20  certification.   Pursuant to the unsupported chatter out there

21  raised by the plaintiff and his supporters, the Secretary of State

22  ordered an unprecedented hand manual tabulation of the election

23  results.   Those, once again, confirm that the plaintiff had lost

24  the election.   Then pursuant to his statutory right, the plaintiff

25  asked for a recount.   That third tabulation of the votes once

1  again confirmed that the plaintiff had lost the State of Georgia.
2  At no time until the expiration of five days from or the December
3  7th certification, at that point the plaintiff suddenly decided
4  I'm going to bring an election challenge.  I'm not going to invoke
5  the specific procedures to delay the certification of the
6  presidential election or the certificate of ascertainment that
7  would go to the archivist of the United States, I'm just going to
8  file a garden variety election challenge and then through my own
9  inaction as well as some improvident decisions that I make in the
10 litigation context, I'm going to allow my case to compost in the
11 Fulton Superior Court.

12       As the Georgia Supreme Court has admonished election
13 contestants time and time again, most recently in the Cook
14 decision, just because the General Assembly has given you a
15 temporal window through which you can theoretically assert your
16 claims, does not mean that you can fully utilize that temporal
17 window if there will be some intervening act that occurs before
18 the judicial process can stay out.

19       In the Cook case there is a statutory right that you can
20 file appeal from an election contest ten days after the decision,
21 and what the plaintiff in that case did or what the appellant in
22 that case did was wait until the full ten days before filing their
23 appeal to the Georgia Supreme Court.  In the interim, you had the
24 certification of the results and you had the person, I believe,
25 take office.  And what the Georgia Supreme Court says is just

1  because the General Assembly has given you ten days, doesn't mean

2  that you can sit on your hands like the plaintiff has in this case

3  and wait for that full temporal period to elapse.  You've got to

4  move with expeditious discretion.  And the plaintiff here has at

5  every turn failed to move expeditiously.

6           If one were so inclined, one could read it as they don't

7  want a decision on the merits in the state court.  They want to

8  have the specter of uncertainty out there for their supporters and

9  Congress tomorrow because they know once a court examines their

10 complaint, a court will determine that it is specious.

11          Plaintiff's claims are also barred by the Eleventh

12 Amendment.  The relief against the state acts or is limited to

13 perspective injunctive relief under Ex Parte Young.  What

14 plaintiff wants to do here is to seek a remedy for something that

15 has occurred in the past and seek retrospective relief regarding

16 the decision of the secretary to certify the election results and

17 the decision by the governor to issue the certificate of

18 ascertainment to the archivist of the United States.  It is

19 improper for a federal court to consider the relief proposed by

20 the plaintiffs to undo those completed acts.

21          At this point in time the role of the Secretary of State

22 and the governor in the presidential electoral process is the same

23 as it is for any other member of the Georgia electorate.  And if

24 they so choose, watch the outcome in Congress tomorrow of the

25 tabulation of the electoral votes.  There is no further action

1   that can be restrained on the part of either the governor or the

2   Secretary of State.   And the request by the plaintiffs to create a

3   process through judicial fiat that would set aside the statutorily

4   enacted process by the General Assembly, the General Assembly has

5   decided we're going to allow the people of Georgia to vote, once

6   those results have been certified and that certification has been

7   transmitted to the governor, then we are going to delegate to the

8   governor the authority and the duty to transmit that certificate

9   of ascertainment to the archivist of the United States.   One week

10  later, we are going to delegate to the certified slate of

11  presidential electors to gather, as they do in all 50 states and

12  the District of Columbia, and cast their electoral votes for

13  president.   At which point they're going to be sealed in an

14  envelope and sent up for Congress to tabulate.   There is nothing

15  to enjoin for the secretary or the governor, nor can any mandatory

16  injunction issue to force them to, in effect, put White-Out on the

17  votes of the people of Georgia and live in this world of fiction

18  where the plaintiff prevails in the State of Georgia.

19          Even assuming that all the jurisdictional issues by the

20  plaintiffs could be overcome, which they have woefully failed to

21  address or much less set aside, there are core principles of

22  federalism at play here that caution against this Court inserting

23  itself into the electoral process and setting aside the

24  statutorily mandated process that the General Assembly has

25  adopted.

1          THE COURT:  Well, as a matter of fact, I mean the -- the
2    Eleventh Circuit or certainly the Fourth or Fifth Circuit of which
3    I'm bound by that precedent, has basically instructed me that I'm
4    not to insert myself into a state election contest where the
5    challenge is based on the misapplication of state law,
6    unless -- unless there can be some federal constitutional
7    violation.  And what -- I mean, what their -- what the plaintiff
8    is saying in this case is that they're alleging there was fraud
9    committed under state law.  This isn't a federal claim.  I mean,
10   it's a state claim that belongs in state court under a state
11   election contest challenge, and the -- the way in which plaintiff
12   is trying to make this now a federal issue, is that, goodness,
13   Congress is going to meet tomorrow and we've got to do something
14   about this.  But, you know, as I've already talked about, that
15   remedy lies with Congress, period.  I mean, there's a federal
16   statute at this point.  There's a single remedy to not count the
17   properly-certified electoral votes of the State of Georgia, and
18   that's if Congress goes through that procedure and federal law,
19   they're objections made, they debate those objections, and then
20   Congress votes pursuant to that federal statute not to accept
21   those electoral votes.  That's it.  I mean, that's the only thing
22   left right now.
23          So I mean, one of the problems that I've got, obviously,
24   is, you know, we get a lot of cases removed from federal
25   court -- I'm sorry, from state court a lot of times, some of which

1    I would -- I would argue we need to change the dollar amount for
2    minimum jurisdiction a little higher because I'm getting tired of
3    dealing with auto accident cases, but that's another issue for
4    another day.  But -- but not to make light of it, I mean, this is,
5    basically, kind of like a removal.  I mean, what they're trying to
6    do is to remove an election contest case to me to decide today
7    that, oh, my gosh, you know, there was all this fraud issued in
8    the Georgia election and we need to just turn the clock back.
9    And, you know, I just -- it's -- you know, I keep using the word
10   unprecedented, but it's -- it's -- it's even beyond that.
11   It's -- at some point in the law there is finalization, whether
12   we're dealing with elections, whether we're dealing with other
13   things.  And as long as there is an opportunity for a party to
14   challenge actions that the state has made or is going to make, due
15   process is satisfied.
16           Georgia provides multiple ways in which parties cannot
17   only contest elections, but in the presidential context, can
18   actually go to a court in Georgia to delay the certification.  I
19   mean, so there are these options that the state through its
20   legislature provided to folks like the plaintiff who decided for
21   whatever reason and, again, you know, it's -- it's not up to me to
22   criticize legal strategy.  Lawyers have strategies and you pick
23   one way to go and it sometimes doesn't work out and we've all been
24   there before, but there's a -- there's something that happens when
25   you pick that way and you don't pick another way, you've got to

1  live with the consequences.  And I think the problem that
2  plaintiffs have -- that plaintiff has here, is that plaintiff just
3  can't live with the consequences and there are other legal options
4  that were not taken.  And, again, you know, plaintiff I'm sure
5  went on advice of counsel and I understand that, but
6  there's -- that comes with -- with, you know, some final -- final
7  decisions that are made that you then can't reverse.  And that's
8  just the way things are.  And it's hard to accept sometimes, I
9  understand that.  But the truth of the matter is, the Secretary of
10  State did his duty here with respect to the certification of the
11  elections, and I understand there is still an ongoing election
12  contest going on and that's going to continue on through at least
13  this week.  And the governor did his duty in terms of certifying
14  the electors of the State of Georgia.  There was nothing done to
15  prevent that happening.  And something could have been done.
16  Georgia gave plaintiff and others the opportunity to delay that
17  and they chose not to do it and that's the choice, but they've got
18  to live with the choice.  And, you know, the answer to this case
19  is not that, well, mea culpa, we could have done all of this, we
20  didn't do it, now federal judge, go ahead and stop -- go ahead and
21  act like Congress and just stop the count.  Stop the count of the
22  electoral votes.  And, you know, this is one judge that is not
23  going to do that.  Because I took an oath, and the oath was not to
24  put myself in another branch of government.  It was to decide
25  cases that are brought before me in accordance with the law.  And

1  what plaintiff is asking me to do, quite frankly, would be

2  something that I think in another context would be criticized for

3  a judge going way beyond what a judge's duty and oath are.  So...

4        MR. HILBERT:  Your Honor, may I respond to Mr. Willard?

5        THE COURT:  I'm going to give you a chance to rebut but

6  I'll going to give Mr. Willard an opportunity to finish.

7        MR. WILLARD:  Thank you, Your Honor, and I will try to

8  keep it brief summing up what I have, and then I think Mr.

9  Anulewicz is going to address the PI factor for why the court

10 should, likewise, to grant relief to plaintiffs on that basis.

11       But the Court has hit the nail on the head.  We have

12 state law to choose and state law concerns.  They are just as

13 frivolous -- frivolously asserted as any of the constitutional

14 violations under federal law.  I will say that to the extent that

15 they are claiming a due process violation, that is all about how

16 their state law claims are going to be processed, I think would be

17 ludicrous in any context, especially in this context, to think

18 that a plaintiff could create delay in the state court, could

19 cause the state court to be unable to render a final decision, and

20 then to run to federal court and say, the state is violating my

21 rights because it's failing to act expeditiously in the state

22 court proceeding, but in effect that's what plaintiff has come in

23 today and is arguing before the Court, that this Court --

24       THE COURT:  Actions have consequences and, again, you

25 know, they may have an argument if the State of Georgia did not

1  provide a mechanism to delay the certification of both the vote

2  and the slate of presidential electors.  If there was no means by

3  which to do that, I mean, I don't know, they may have had a due

4  process argument that they were locked out of being able to do

5  that while they were pursuing their election challenge, but the

6  State of Georgia provides that.  I mean, clearly they could have

7  gone to either the superior court or -- they could have filed the

8  election challenge, of course, the day after the original

9  certification and then they could have asked that judge right then

10  and there we have an election challenge, please issue an order

11  keeping the governor, for example, from certifying the slate of

12  presidential electors under 21-2-499(b) and that was not done.

13  And again it's a choice.  People make choices and there are

14  consequences to the choices, and you can't just make those choices

15  and decide, you know, with 24 hours or less to go to come -- run

16  over to federal court and think the federal court is going to bail

17  you out of the consequences of your choices.  And that's the

18  position that the plaintiff has put this Court in and, you know,

19  it's -- it's -- you know, I've said what my concerns are about it.

20  So I'm not going to beat a dead horse.

21          MR. WILLARD:  Well, Your Honor, and I will sum up for

22  exactly what you have pointed out and what we have submitted in

23  our brief, that is why abstention even (audio disruption) they did

24  not have lack of (audio disruption) if these claims weren't moot,

25  if they are barred by laches, if their claims are not barred by

1   the Eleventh Amendment, then this Court should exercise abstention

2   whether it's under general federalism principles, whether it is

3   under the Pullman doctrine or whether it is under the Colorado

4   River doctrine to allow the state court proceeding to carry

5   forward to its ultimate conclusion now that the plaintiffs have

6   finally stopped shooting themselves in the foot, gotten out of the

7   way and allowed for the continuation of the state automatic court

8   proceeding.

9           And with that, Your Honor, I'll turn it -- if you have

10  no further questions, I'll turn it over to Mr. Anulewicz.

11          MR. ANULEWICZ:  And Judge, I'll be very brief.  I think

12  it has been pointed that in Article 2, Section 1, Clause 2, the

13  Constitution says that the state Legislature will pick the banner

14  in which electors are chosen.  Georgia has vested that in the

15  citizens of the State of Georgia under 21.210.  And it says that

16  electors will be chosen by the people of this state.  In other

17  places in the statute the Georgia General Assembly explicitly sets

18  deadlines for which the governor and the Secretary of State will

19  certify those votes and transmit them to the federal government.

20  The reason why they set those deadlines are they want to make sure

21  that the votes of Georgia are cast and that they are considered

22  when the Congress takes these issues up.  And that's why the

23  deadlines are there.

24          And very few parts of the election code specifically

25  reference the vice president and the presidential elections but

1   499B does.  And it says that if you want to stop that

2   certification which we need in order to have our votes counted in

3   Congress, you have to get an order of the Superior Court prior to

4   the certification.  And that didn't happen.  And because that

5   didn't happen, you cannot undo the certifications.  I disagree

6   with my friend Mr. Eastman who suggested that the certification

7   can be undone.  No, that is what the Legislature said and it's the

8   only way to do it.  And if we rewrite how to do that now, then we

9   certainly do run afoul of Bush v. Gore.

10          On the preliminary injunction factors, I mean, obviously

11  we think that there is not a substantial likelihood of success on

12  the merits of any claims.  We set that forth in our brief.  We

13  submitted affidavits and other things to show why we believe their

14  claims are specious.  And one of the factors we have to do we have

15  to weigh the equities here.  And here on the one side we have

16  plaintiff who wants to basically exercise what I would consider a

17  political grab.  And on the other side we have balanced that in

18  the election and fundamental rights of the citizens of the State

19  of Georgia to have their votes counted and in the State of Georgia

20  having its votes counted in Congress tomorrow.  And because of

21  that, Your Honor, we believe that the preliminary injunction

22  should be denied.

23          And we thank you very much and happy to answer any

24  questions.

25          THE COURT:  All right.  Thank you, Mr. Anulewicz.  Let

1   me just ask the court reporter one more time.  I don't think we're

2   going to go much longer, but do you need a break?

3            (Whereupon a discussion is held off the record.)

4            THE COURT:  Okay.  Good.  Thank you.  Mr. Hilbert, you

5   can sum up.

6            MR. HILBERT:  Thank you, Your Honor.  I appreciate the

7   arguments of my colleagues here in Georgia.  But to begin with,

8   Mr. Willard, like his briefing, is based on a lot of hyperbole but

9   no facts.  Our facts are unrebutted in this case.  His affidavits

10  that he submitted are basically legal conclusions, they're not

11  actual evidence.  We have affidavits from actual irregularities,

12  misconduct or fraud, which is the legal standard sufficient to

13  change the outcome.  To use his own analogy if the quarterback is

14  alone, the referees in this case never even took the field.

15  That's what we're talking about here.  The Secretary of State and

16  the governor are violators under the Georgia Election Code.

17  Balance of the equities here, Your Honor, the imprimatur of --

18           THE COURT:  I want to use that analogy.  I think

19  actually what's happening here is I'm at a cross sports.  It's

20  kind of like plaintiff is -- is on a football field and there are

21  -- there are referees, there are officials that decide how the law

22  gets violated or how the rules get violated and what the -- what

23  the plaintiff wants to do is go into the baseball stadium and get

24  with the umpires and basically say, hey, go ahead and change what

25  those referees have done in the football field.  I mean, the

1  football field is the state where the election contest was filed,

2  the baseball field is where I am.  So I think, you know,

3  that's -- that's the problem you've got.  And -- and -- let me

4  just finish.

5      And Mr. Hilbert, you do a very good argument on behalf

6  of your client.  I hope he's paying you well, but you can tell him

7  on my account he needs to pay you even more.

8      But anyway, I think the problem you've got is that once

9  again, there are choices that you make in contesting elections

10  that you have to live with.  And I think the bottom line of your

11  argument here is no, Judge, we don't have to live with any of our

12  choices because at the end of the day we always have the ability

13  to bop on over to federal court and have a federal judge throw the

14  whole thing out.  And that is just not the way the law operates.

15  The law doesn't operate that way.  The law gives you options in

16  which to challenge an election, it's done at the state level.

17  There are other things you could have done which would have

18  delayed the certification of the presidential electors here.  You

19  didn't take that option.  And you have to live with the

20  consequences.  And it's not an answer to basically say, Judge,

21  you've got all encompassing power here, you can -- you can do this

22  whenever we show up.  And that's actually not the case.

23      MR. HILBERT:  I appreciate that, Your Honor.  I want to

24  highlight one last code section under the state code which I think

25  was also violated by the lower court here.  O.C.G.A. 21-2-525

1    specifically says within 20 days after the return date fixed in

2    the notice as provided in subsection A of Code Section 21-2-524 to

3    the defendant, the providing judge shall fix a place and time for

4    the hearing.   That's all we're asking, Your Honor, is for a

5    hearing on the merits.

6            And if you look at all of the concessions of all of the

7    procedural deficiencies and the frivolous arguments that opposing

8    counsel are making that actually relate back under the standing

9    order of Fulton County and make no sense, and the general known

10   principle of law that you get to the merits rather than procedural

11   technicalities under Hunter versus Warner and Herringdine versus

12   Nali Equipment (phonetic), the Court, when it finally appointed a

13   judge it was December -- December 30th, that is after the 20 day

14   period that is specifically required under the state election

15   code.   So we have been -- our due process rights have been

16   violated under that code when we filed a notice of the election

17   contest, regardless of whether we could have done this before, we

18   could have, you know, challenged it or appealed it or the

19   certification process or whatever.   The moment we filed our notice

20   of an election contest, there had to be a hearing in 20 days.

21   There was not one set because the presiding judge had not even

22   been appointed.

23           THE COURT:   Well, because you decided to file a notice

24   of appeal of a procedural order that the odds of you getting that

25   reversed by the Supreme Court of Georgia, let's be honest, were

1   slim and none.  And you did what you could have done and that was,

2   well, at least let me try to get an expedited ruling from the

3   Supreme Court, which you got within 24 hours, and it was thumbs

4   down.  And then you decided at that point, well, rather than go

5   back to Superior Court, withdraw your notice of appeal, because

6   the handwriting was on the wall by then, you decided to just let

7   it sit.  And you know, you have to live with those consequences,

8   Mr. Hilbert.

9         MR. HILBERT:  So I appreciate that, Your Honor.  I want

10  to also say with regard to the balancing of the equities, I think

11  that the Court needs to really seriously consider this precedent

12  that's being set here.  Because is it not a greater harm for a

13  court to allow an illegal certification to occur, than, you know,

14  alleged disenfranchisement of alleged, you know, voters of Georgia

15  based upon the federal (audio disruption) take place tomorrow.  I

16  just don't see how it's conceivable that a court can say -- just

17  turn a blind eye and say well, we're not going to look at those

18  because there were procedural mishaps or that you could have

19  gone -- you could have done something earlier.

20        THE COURT:  Well, the two -- the two people you've sued

21  here and there are only two people, you sued the Secretary of

22  State and the governor, they did the duty that was required upon

23  them under law.  Now, to the extent that you've got a beef with

24  local election officials which you've named, by the way, in your

25  election contest, they're not before me today.  They're before the

1  Superior Court of Fulton County.  You think they screwed up and

2  they committed -- they oversaw, you know, this virulent fraud that

3  took place, that's part of the election contest.  That's not

4  the -- I don't have them in front of me.  The only two people I

5  have in front of me are the governor and the Secretary of State

6  and there's nothing they did that they weren't required to do by

7  law and that is -- I know you're talking about it's an illegal

8  certification but again you're presuming that you're going to

9  succeed in your election contest and that's fine but they did not

10 illegally certify this election.  They certified the election

11 pursuant to Georgia law.  And I understand you still have a

12 hearing going on this week before Judge Grubbs in which you'll

13 make your case that it was illegal and that's fine, but, you know,

14 those are not the people I have in front of me.  I have the two

15 people in front of me that did the certification.

16       MR. HILBERT:  The only thing I can say to that, Your

17 Honor, is that the two people that did the certification at least

18 one of them was the actual person who changed the law under the

19 election code under the settlement agreement.  So that's my reply

20 to that.

21       THE COURT:  And that's already been decided by one of my

22 colleagues.  Okay.  Anything else, Mr. Hilbert?

23       MR. HILBERT:  Nothing further, Your Honor.  Thank you.

24       THE COURT:  All right.  Thank you.  All right the Court

25 is going to deny plaintiff's motion for expedited declaratory and

1  injunctive relief for many of the reasons that I've already
2  stated.  We will get an order out today as soon as possible.  I
3  just can't promise exactly when it's going to be.  Obviously I
4  needed to hear your arguments until I finalize the order.  So, you
5  know, I will do it as soon as -- I'm going to go right back there
6  now and start working on it, and I'll get it out today.  I just
7  can't promise a time.

8            And I'll just say again for the record, the reason that
9  we're all in this situation is because, you know, plaintiff filed
10 this particular lawsuit, I think at 11:03 p.m. on New Year's Eve
11 and did not indicate in the ECF filing that the plaintiff wanted
12 to have the case heard on the weekend or during a holiday, because
13 if you did, you know, you would have had a duty judge actually
14 hear the case this weekend.  But that didn't occur.  You know, I
15 got the case assigned to me on Monday morning.  So I acted as
16 expeditiously as I possibly could.  You know, I granted
17 plaintiff's order for an expedited hearing, and that's what we're
18 having today, but we only can do what we can do.  So I'm going
19 to -- like I said, I'm going to get the order out today, a written
20 order out today as fast as I can, but I wanted the parties to know
21 what the bottom line of the order was going to be.

22            Thank you.  Thank everyone for participating in this,
23 and for the arguments.  I really appreciate it.  And without
24 further ado, the Court stands in recess.

25            (Whereupon the hearing concluded at 11:01 a.m.)

—UNITED STATES DISTRICT COURT  OFFICIAL CERTIFIED TRANSCRIPT—

1                       C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT

4    NORTHERN DISTRICT OF GEORGIA

5

6       I do hereby certify that the foregoing pages are a true and

7    correct transcript of the proceedings taken down by me in the case

8    aforesaid.

9       This the 5th day of January, 2021.

10

11

12

13

14              /s/ Viola S. Zborowski
                VIOLA S. ZBOROWSKI, CRR, CRC, CMR, FAPR
15              OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this **NOTICE OF FILING TRANSCRIPT OF MOTIONS HEARING OF JANUARY 5, 2021** was prepared in Times New Roman, 14 point font, pursuant to Local Rule 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January 2021, I did cause to be sent though the Court's CM/ECF system a true and accurate copy of the foregoing Notice of Voluntary Dismissal to all parties receiving notice in this case.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
*Attorneys for Plaintiff*
Georgia Bar No. 352877

205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com